HAWAH S. AHMAD, ESQ.
Nevada State Bar No. 16374
AHMADLAW
300 S. Arlington Avenue, Ste B
Reno, Nevada 85901
Telephone: (775) 234-8760
Ahmad@alawnv.com
*Attorney for Plaintiff*

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| CARI-ANN P. BURGESS, | Case No. 3:25−cv−00065−MMD−CLB |
| Plaintiff, | |
| Vs. | **FIRST AMENDED COMPLAINT AND JURY DEMAND** |
| WASHOE COUNTY, a political Subdivision of the State of Nevada, ROES I through X, and Does 1 through 10, inclusive, | |
| Defendants. | |

Plaintiff, CARI-ANN P. BURGESS ("Plaintiff" or "Ms. Burgess"), by and through her counsel, Hawah S. Ahmad, Esq., of AhmadLaw, states and alleges causes of action against Defendant, Washoe County ("Defendant" or "County"), as follows:

## I.
## PARTIES

1.      Plaintiff is a citizen of the United States of America and that State of Nevada and at all material times was employed by Defendant as the Interim Registrar of Voters of Washoe.

2.      Plaintiff is a "qualified individual" within the meaning of 41 U.S.C. § 1211.

3.      Defendant is a political subdivision of the State of Nevada and a "person" subject to suit within the meaning of 42 U.S.C. § 1211, § 2000e, §1983, and NRS 613.310.

AHMADLAW
300 S. Arlington Avenue, Ste B
Reno, Nevada 85901
(775) 234-8760

4.     Defendants is an "employer" within the meaning of 42 U.S.C. § 1211 et. Se., and NRS 613.310.

5.     Defendants is a "Covered Entity" within the meaning of 42 U.S.C. § 12111.

6.     Plaintiff does not know the true names and capacities, whether a business entity, governmental, or individual, of those Defendants sued herein as ROES I through X, or DOES 1 through 10, inclusive. Plaintiff prays leave that when the true names and capacities of said Defendants are ascertained, she may be permitted to insert the same herein with appropriate allegations; but upon information and belief, Plaintiff alleges that each of said Defendant is legally responsible for the events happenings referred to herein and proximately caused damages to Plaintiff, as alleged herein.

7.     At all material times, ERIC BROWN ("Mr. Brown") worked for the Defendant and held the title of County Manager.

8.     At all material times, Mr. Brown was an agent and/or employee of Defendant, acting or failing to act within the scope, course, and authority of his employment and his employer.

9.     At all material times, KATE THOMAS ("Ms. Thomas") worked for the Defendant and held the title of Assistant County Manager.

10.     At all material times, Ms. Thomas was an agent and/or employee of Defendant, acting or failing to act within the scope, course, and authority of her employment and her employer.

11.     At all material times, MARY KANDARAS ("Ms. Kandaras") worked for the Defendant and held the title of Chief Deputy District Attorney.

12.     At all material times, Ms. Kandaras was an agent and/or employee of Defendant, acting or failing to act within the scope, course, and authority of her employment and her employer.

13.     At all material times, PATRICIA HURLEY ("Ms. Hurley") worked for the Defendant and held the title of Director of Human Resources.

AHMADLAW
300 S. Arlington Avenue, Ste B
Reno, Nevada 85901
(775) 234-8760

14. At all material times, Ms. Hurley was an agent and/or employee of Defendant, acting or failing to act within the scope, course, and authority of her employment and her employer.

15. At all material times, JULIE PAHOLKE ("Ms. Paholke") worked for the Defendant and held the title of Human Resources Manager Compensation and Recruitment.

16. At all material times, Ms. Paholke was an agent and/or employee of Defendant, acting or failing to act within the scope, course, and authority of her employment and her employer.

17. At all material times, ANDREW MCDONALD ("Mr. McDonald") was an agent and/or employee of Defendant and held the title of Deputy Registrar of Voters.

18. At all material times, Mr. McDonald was an agent and/or employee of Defendant, acting or failing to act within the scope, course, and authority of his employment and his employer.

19. At all material times, ADDISON VETTER ("Ms. Vetter") was an agent and/or employee of Defendant and held the title of Elections Specialist.

20. At all material times, Ms. Vetter was an agent and/or employee of Defendant, acting or failing to act within the scope, course, and authority of her employment and her employer.

21. At all material times, MARIA E. ALVARADO ("Ms. Alvarado") was an agent and/or employee of Defendant and held the title of Administrative Assistant I.

22. At all material times, Ms. Alvarado was an agent and/or employee of Defendant, acting or failing to act within the scope, course, and authority of her employment and her employer.

23. At all material times, ALEXIS HILL ("Ms. Hill") was an agent and/or elected representative of Defendant and held the title of County Commissioner.

24. At all material times, Ms. Hill was an agent and/or elected representative of Defendant, acting or failing to act within the scope, course, and authority of her elected position.

25. At all material times, CLARA ANDRIOLA ("Ms. Andriola") was an agent and/or elected representative of Defendant and held the title of County Commissioner.

26.    At all material times, Ms. Andriola was an agent and/or elected representative of Defendant, acting or failing to act within the scope, course, and authority of her elected position.

27.    Plaintiff does not know the true names and capacities, whether a business entity, governmental, or individual, of those Defendants sued herein as ROES I through X, or DOES 1 thorugh10, inclusive. Plaintiff prays leave that when the true names and capacities of said Defendants are ascertained, she may be permitted to insert the same herein with appropriate allegations; but upon information and belief, Plaintiff alleges that each of said Defendants is legally responsible for the events happenings referred to herein and proximately caused damages to Plaintiff, as alleged herein.

28.    All of the acts or failures to act herein were duly performed by and attributable to all Defendants, each acting as agent, employee, or under the direction and/or control of the others. Said acts or failures to act were within the scope of said agency and/or employment and each of the Defendants ratified the acts and omissions by the other Defendants. Whenever and wherever reference is made in this Complaint to any acts by Defendants, such allegations and references shall also be deemed to mean the acts of each of the Defendants acting individually, jointly or severally.

## II.
## JURISDICTION, VENUE, AND JURY DEMAND

29.    This case arises under the United States Constitution, 42 U.S.C. §§ 1983 and 1988, as amended, the Americans with Disabilities Act ("**ADA**" or "**Act**"), 42 U.S.C. § 12111 et. seq., § 12203, § 12132, and Section 504 of the Rehabilitation Act, 29 U.S.C. §794a.

30.    This Court has subject matter jurisdiction in this matter pursuant to 28 U.S.C § 1331, which gives district courts the jurisdiction over all civil actions arising under the Constitution, laws, and treaties of the United States.

31.    This Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1343, which gives district courts original jurisdiction over (a)(3) any civil action authorized by law to be brought by any person to redress the deprivation, under color of any state law, statute, ordinance, regulation,

AHMADLAW
300 S. Arlington Avenue, Ste B
Reno, Nevada 85901
(775) 234-8760

custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States; and (a)(4) any civil action to recover damages or to secure equitable relief under any Act of Congress providing for the protection of civil rights.

32.    The declaratory and injunctive relief sought is authorized by 28 U.S.C. §§ 2201 and 2202, 42 U.S.C. § 1983, and Rule 57 of the Federal Rules of Civil Procedure.

33.    This Court may exercise supplemental jurisdiction over Plaintiff's state law claims arising under the common law, statutes and regulations of the State of Nevada, and which arise from common nucleus of operative fact pursuant to 28 U.S.C. § 1367.

34.    This judicial district's unofficial northern division is the appropriate venue for this cause of action pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2). The actions complained of took place in this judicial district; employment records and other evidence relevant to the allegations are maintained in this judicial district; and the Defendant conducts its affairs in this judicial district. Plaintiff hereby requests a jury trial relative to all issues so triable.

## III.
## ADMINISTRATIVE PREREQUISITES

35.    Plaintiff has complied with any and all administrative prerequisites for filing a civil action under section the ADA and Section 504 of the Rehabilitation Act of 1973.

a. On October 17, 2024, Ms. Burgess timely filed a charge of discrimination and retaliation with the Nevada Equal Rights Commission ("NERC").

b. Plaintiff exhausted all available administrative remedies in accord with the aforementioned statutes prior to instituting this civil action, and Plaintiff and her counsel received a Right-to-Sue letter from the Nevada Equal Rights Commission (NERC) on December 16, 2024. *See* a true and correct copy of the Notice of Right to Sue Within 90 Days, attached hereto as **Exhibit 1**.

**AHMADLAW**
300 S. Arlington Avenue, Ste B
Reno, Nevada 85901
(775) 234-8760

AHMADLAW
300 S. Arlington Avenue, Ste B
Reno, Nevada 85901
(775) 234-8760

c. On October 28, 2024, Ms. Burgess timely filed a charge of discrimination and retaliation with the Equal Employment Opportunity Commission ("EEOC");

d. Plaintiff exhausted all available administrative remedies in accord with the aforementioned statutes prior to instituting this civil action, and Plaintiff and her counsel received a Right-to-Sue letter from the Los Angeles District Office of the EEOC on November 2, 2024. *See* a true and correct copy of the Notice of Right to Sue Within 90 Days, attached hereto as **Exhibit 2**.

e. On February 20, 2025, after Ms. Burgess was subject to additional discrimination and retaliation, Ms. Burgess timely filed a charge of discrimination and retaliation with the Equal Employment Opportunity Commission ("EEOC");

f. Plaintiff exhausted all available administrative remedies in accord with the aforementioned statutes prior to instituting this civil action, and Plaintiff and her counsel received a Right-to-Sue letter from the Los Angeles District Office of the EEOC on March 21, 2025. *See* a true and correct copy of the Notice of Right to Sue Within 90 Days, attached hereto as **Exhibit 3**.

## IV.
## GENERAL ALLEGATIONS

1. Plaintiff incorporates by reference each of the foregoing allegations as if fully set forth herein.

2. Under the Washoe County Organization Chart, the Registrar of Voters reports directly to the Washoe County Manager. As such, Plaintiff, Washoe County's Interim Registrar of Voters of reports directly to County Manager Eric Brown ("Mr. Brown").

3. The Washoe County Registrar of Voters Office has dealt with extensive turnover since April 2022 after it was found that the then Registrar of Voters, Deanna Spikula was placed on indefinite leave. Around that time, Assistant Registrar, Heather Carmen, and Deputy Vogter Registrar Jamie Rodriguez were announced as overseeing the county's elections division after public outcry.

6

**AHMADLAW**
300 S. Arlington Avenue, Ste B
Reno, Nevada 85901
(775) 234-8760

4.      Despite the existence of an employment investigation against Deanna Spikula, she was given the opportunity to gracefully resign from the position on June 22, 2022. Jamie Rodriguez ("Ms. Rodriguez") was soon after appointed as Acting Registrar of Voters, effective August 1, 2022, and Registrar of Voters in December 2022.

5.      On or about September 2023, Plaintiff was hired by Defendants as a Deputy Registrar of Voters in and for the county of Washoe, State of Nevada after Defendant enacted a Strategic Restructuring of the division. Plaintiff was specifically applauded by Defendant in a September Press Statement stating:

> Cari-Ann Burgess is new to the Washoe County organization, coming most recently from our neighbor to the south, Douglas County where she served as Deputy Registrar. She will oversee the day-to-day staff for managing voter registration and ballot-processing operations of the ROV Office.

6.      At the time of Plaintiff's hire, Defendant conveyed that Plaintiff's offer for employment was as a due process employee with a liberty interest in her position of Deputy Registrar of Voters.

7.      On or about December 8, 2023, former Washoe County Registrar of Voters, Jamie Rodriguez ("Ms. Rodriguez") was placed on leave after an altercation with another staff member, witnessed by Plaintiff.

8.      Ms. Rodriguez was not given the opportunity to discuss the matter with the Washoe County Registrar of Voters' staff prior to being put on leave but was left with access to her employment issued devices. This resulted in confusion and uncertainty for staff. Ms. Rodriguez later resigned on January 2, 2024. It was unknown if an employee conduct was ever opened on Ms. Rodriguez' conduct in the office.

9.      On or about December 8, 2023, Defendants requested that Plaintiff perform all duties of the Registrar of Voters, as well as her duties as Deputy Registrar of Voters.

10.     Despite having two (2) openings in the office, Plaintiff happily took over the increased workload.

11.     Plaintiffs' dual role required working overtime, and in many cases working long hours that were not consistently recorded for pay.

12.     On or about January 16, 2024, the Board of County Commissioners affirmed Defendant's staff recommendation to have Plaintiff affirmed as Acting Registrar of Voters, pursuant to NRS 245.180, and Interim Registrar of Voters, effective March 16, 2024.

13.     Pending Plaintiff's formal appointment as Interim Registrar of Voters on March 16, 2024, the Board of County Commissioners vested Plaintiff with the same authority to carry out the powers and duties of a Registrar appointed on a non-interim basis as Acting Registrar of Voters.

14.     Plaintiff subsequently led and completed a successful Presidential Preference Primary on February 6, 2024.

15.     At the time Plaintiff was appointed to act as Acting and Interim Registrar of Voters, Mr. Brown, Ms. Hurley, and Ms. Paholke, confirmed that Plaintiff's position as Deputy Registrar of Voters would remain open should she not get the permanent Registrar of Voters position, or should Plaintiff wish to return to the Deputy position.

16.     During Plaintiff's tenure as Registrar of Voters she implemented, planned and paid for staff team building experiences, gifted staff homemade meals during elections, and even brought the entire staff gifts from her vacation, purchased at her own cost. To wit, Plaintiff gifted decorative chocolates with thank you cards for Christmas in December 2023; planned and paid the majority of the Registrar of Voters Office staff outing to Axe Throw on February 16, 2024; purchased and gifted staff memorabilia from her March 2024 Hawaii vacation; planned and executive rock painting team building events at her own cost; purchased and disbursed candy to all staff for Fourth of July; planned

**AHMADLAW**
300 S. Arlington Avenue, Ste B
Reno, Nevada 85901
(775) 234-8760

**AHMADLAW**
300 S. Arlington Avenue, Ste B
Reno, Nevada 85901
(775) 234-8760

and executed a Olympic Party attended by Mr. Brown on August 16, 2024; and even provided home-cooked meals made by her husband to staff during the Presidential Preference and Primary Elections.

17.    For all intents and purposes, Plaintiff was told she was a positive influence in the work environment.

18.    Plaintiff successfully led Washoe County Registrar of Voters' Office through the 2024 Presidential Preference Election; the 2024 Primary Election; a Recall Election and three candidates' Recounts in 2024.

19.    Plaintiff also oversaw the Washoe County Commission's 2024 refusal to certify the election, subjecting Plaintiff to Defendant's ongoing violation of her employment and privacy rights, and ongoing retaliation.

20.    During Plaintiff's tenure as Acting and Interim Registrar of Voters, she only received one Performance Review in July 2024, covering the time period January-June 2024. The Performance Review only contained positive attributes.

**Defendant Begins Making Demands**

21.    Mr. Brown was very happy with Plaintiff's initial term as Deputy Registrar of Voters and her ability to build rapport within the community. As such, Mr. Brown began requesting that Plaintiff further deepen the office's involvement in the community.

22.    On or about January 2024, Mr. Brown requested Plaintiff work with the local pastors to create a chain of custody for ballot collection in preparation of the 2024 General Election.

23.    Shortly thereafter, Mr. Brown connected Plaintiff to Pastor Maurice E. Washington ("Mr. Washington") to organize the election ballot collection sites at specific parishes.

24.    Plaintiff worked diligently with Mr. Washington and developed a chain of custody forms and processes for parish ballot collection and drop off to the of the Registrar of Voters.

AHMADLAW
300 S. Arlington Avenue, Ste B
Reno, Nevada 85901
(775) 234-8760

25.     Mr. Brown periodically checked on Plaintiff's communications with the pastors at the weekly Executive meetings held every Monday.

26.     Outside of this communication, Plaintiff directly reported to Mr. Brown and dealt extensively with the Nevada Secretary of State's Office, the state's elections officials from other counties, and elections officials from out-of-state jurisdictions.

27.     Plaintiff was responsible for negotiating, entering into, and maintaining all elections contracts.

28.     As a normal course of business, Plaintiff would consistently negotiate with the Washoe County District Attorney's Office regarding contract review, and would confirm permission for all things with Mr. Brown, Ms. Kandaras, and Ms. Hurley.

29.     As such, Plaintiff was granted permission by Mr. Brown, Ms. Kandaras, and Ms. Hurley to participate in the Associated Press' publication on Registrar of Voters in swing states, the interview took place over two weeks in August 2024. During this time reporters shadowed Plaintiff in her day-to-day life. However, the story would not be complete until the election.

30.     Plaintiff was not provided with separate training on the position once she stepped into the position of Acting then Interim Registrar of Voters and was subject to all deadlines previously anticipated and scheduled by the previous Registrar of Voters, and state leadership.

31.     Defendants demanded that Plaintiff with their hired management coach regularly, though the training was limited to management styles, not substantive training on the position of Registrar of Voters.

32.     Plaintiff did raise concern over multiple conflicting deadlines, the implementation of the new voting system, and the implementation of state and federal processes without adequate staff.

33.     In Spring 2024, Mr. Brown began taking extensive vacations and personal leave, resulting in his temporary appointment of an Assistant County Manager to fulfill his duties.

10

**AHMADLAW**
300 S. Arlington Avenue, Ste B
Reno, Nevada 85901
(775) 234-8760

34. Though Mr. Brown alleges he equally alternated his duties and responsibilities, he continuously left Ms. Thomas in charge of the Registrar of Voters Office.

35. In or about March 2024, while Plaintiff was on vacation, Ms. Thomas took the lead on hiring for Plaintiff's office.

36. Despite not being on the clock, Ms. Thomas repeatedly badgered Plaintiff to hire Mr. McDonald, a former Assistant Registrar of Voters in Clark County, Nevada. At the time of his hire, Mr. McDonald was no longer working in elections.

37. Through Ms. Thomas' badgering, she coerced Plaintiff to request Human Resources move forward with the hiring of Andrew McDonald at a higher rate than Plaintiff's dual position.

38. Prior to Defendant's hiring of Mr. McDonald, there were two vacant Deputy Registrar of Voters positions.

39. Due to Defendant's vacancies, Plaintiff performed duties for, in addition to the Interim Registrar of Voters position, resulting in incurred overtime without a substantial increase in pay.

40. It was not until Plaintiff returned from her vacation that she learned from Ms. Vetter that Mr. McDonald's exodus from Clark County was an issue of ethical concern raising questions of his moral turpitude and ability to separate work from his personal life.

41. During this time, Plaintiff was attending closed door Executive Committee meetings every Monday, and budget meetings as frequently as possible.

42. When issues arose, Plaintiff who had been reporting directly to Mr. Brown was encouraged to implement her team's thoughts by Ms. Thomas.

43. When Plaintiff began acting in her capacity as head of office, she would be chastised as being difficult if she didn't implement all of Mr. McDonald's ideas immediately, despite the ideas not being feasible to implement in the middle of an election year with multiple elections.

\\\

AHMADLAW
300 S. Arlington Avenue, Ste B
Reno, Nevada 85901
(775) 234-8760

### An Empowered Ms. Thomas

44.     After participating in multiple executive committee meetings in which Mr. Brown personally targeted select Board of County Commission members to make them look incompetent, Ms. Thomas began inserting herself in Plaintiff's direct report to Mr. Brown.

45.     Prior to the June 2024 Primary Election, Ms. Thomas began taking a keen interest in the Registrar of Voters' Office.

46.     In or about June 2024, Ms. Thomas began telling other department heads that the overtime budget of the Registrar of Voters' Office could be utilized by other departments.

47.     As Plaintiff was under the impression that state and federal funds for elections could not be redistributed, Plaintiff requested a line-item budget for the Registrar of Voters' Office from Ms. Thomas.

48.     Ms. Thomas denied Plaintiff's request and barred Plaintiff from attending future budget meetings. Instead, Ms. Thomas suggested that Mr. McDonald take over the budget meetings for the Registrar of Voters' Office.

49.     When Plaintiff requested information from Mr. McDonald on election's specific grants that were budgeted items, Ms. Thomas intervened and informed Plaintiff that she would take care of the grant.

50.     Ms. Thomas then began to engage in a pattern of bullying and harassment against Plaintiff and claimed that her new interest in the office was at the direction of Ms. Hill, Chair of the Washoe County Commission.

51.     In or about June 2024, Ms. Thomas continuously questioned Plaintiff's overtime and suggested that her overtime was "greedy" despite the office being understaffed during the Primary Election, and the fact that Plaintiff was acting in multiple capacities, while also traveling for a conference of Elections Personnel.

AHMADLAW
300 S. Arlington Avenue, Ste B
Reno, Nevada 85901
(775) 234-8760

52.    During this time, Ms. Thomas's frequent visits to the Registrar of Voters' office included fraternizing with lower-level staff like Ms. Vetter, in which she would reward staff who disclosed information about the office to her.

53.    Due to Ms. Thomas' speculation about her overtime during the election, Plaintiff stopped reporting her full overtime hours to complete the tasks of the two vacant Deputy Registrar of Voters positions and Interim Registrar of Voters position, in addition to extra hours to get Washoe County on the new voting system. Plaintiff was never reimbursed for this time.

54.    Ms. Thomas then took it upon herself to micromanage Plaintiff and demand that Plaintiff report to her instead of Mr. Brown.

55.    Ms. Thomas demanded that Plaintiff's team members report to different Department Heads. For instance, Ms. Thomas suggested the elections operations IT staff member, Mike to report to Washoe County IT Chief, Behzad Zamanian, a close friend and confidant of Mr. Brown and Mr. McDonald. Ms. Thomas ignored Plaintiff's concerns over Mike's lack of performance and aggression towards other team members. Ms. Thomas requested that Elections Media Specialist, George, report to Nancy Luenhagen, Director of the Communications Department. Ms. Thomas' suggestions were expected to be followed, despite Plaintiff's concern that changing the reporting structure during an election was not conducive to successfully completing the election cycle.

56.    Notably, Ms. Thomas's suggestions were not to have Plaintiff's staff report to her and other departments but were to fully reallocate key personnel and isolate Plaintiff from key information.

57.    Ms. Thomas did not take well to being told no.

58.    From August to September 2024, Ms. Thomas indicated to Plaintiff's staff that they did not need to report to Plaintiff but could go directly to her with issues, Ms. Thomas demanded Plaintiff's staff go directly to Ms. Thomas for overtime versus Plaintiff, and Ms. Thomas disparaged

and promoted other staff to disparage Plaintiff. Ms. Thomas went out of her way to alienate Plaintiff from her staff.

59.     On or about September 6, 2024, Plaintiff expressed her concern to her reporting supervisor, Mr. Brown, that Ms. Thomas was instigating her office to circumvent her authority and go directly to Ms. Thomas.

60.     On or about September 6, 2024, Plaintiff expressed her concern and frustrations to her reporting supervisor, Mr. Brown, regarding Ms. Thomas's interference in the office, inclusive of her disparagement of Plaintiff to Ms. Hill, Mr. Brown and other staff members.

61.     In or about early September 2024, Plaintiff requested accommodation for the increase in her stress and anxiety caused by the job, including decreased communication with Ms. Thomas. Mr. Brown confirmed that Plaintiff reported to him, not Ms. Thomas.

62.     Ms. Thomas made herself known as wanting to take credit for all positive attributes of the Registrar of Voters Office and disliked Plaintiff's leadership style of promoting the team.

63.     During this time, Ms. Thomas engaged in patterns of bullying with other leaders in the department and consented to the firing of temporary elections employees without notifying their leads or Plaintiff.

64.     Ms. Thomas continued to develop her relationship with Ms. Vetter and Mr. McDonald and favored discussing operations of the Registrar of Voters' Office with them, versus following the proper channels.

65.     Ms. Thomas also inserted herself in communications on behalf of the Washoe County Registrar of Voters' Office with the Nevada Secretary of State's Office and continuously failed to update Plaintiff outside of chastising her.

### Plaintiff's Relationship with Board of County Commissioners

66.     Plaintiff successfully completed the June 11, 2024, Primary Election.

AHMADLAW
300 S. Arlington Avenue, Ste B
Reno, Nevada 85901
(775) 234-8760

AHMADLAW
300 S. Arlington Avenue, Ste B
Reno, Nevada 85901
(775) 234-8760

67.     On or about June 21, 2024, the Board of County Commissioners failed to certify the June 11, 2024, Primary Election Results.

68.     On or about June 2024, following the failed certification of the June 11, 2024, Primary election, Ms. Andriola got a verbal altercation with Plaintiff regarding the election results. Ms. Andriola demanded "perfection" from the Office of Registrar of Voters.

69.     Shortly thereafter, Ms. Andriola apologized to Plaintiff for her outburst in front of staff and brought cake for the Registrar of Voters' Office.

70.     During the verbal altercation with Plaintiff, Ms. Andriola informed Plaintiff that "humility goes a long way" and that she didn't need to know everything. Ms. Andriola specifically requested that Plaintiff not answer questions and state that she didn't know the answers.

71.     Ms. Andriola was upset when Plaintiff informed her that she would be answering questions as it was job to know the answers. Ms. Andriola blamed Plaintiff for her vote to not certify the June Primary.

72.     Ms. Andriola expressed that she doesn't know the duties and responsibilities of the Registrar of Voters and could not tell if Plaintiff was doing a good job. Ms. Andriola also expressed that she was trying to force the Nevada Secretary of State's Office to step-up and make a decision regarding certification.

73.     On or about July 16, 2024, the Board of County Commissioners certified the July 9, 2024, recount.

74.     Outside of Ms. Andriola's visit during the primary, Plaintiff had limited contacted with the other county commissioners and was chastised when she would respond to their inquiries.

75.     To wit, Mr. Brown's personal animosity with Board of County Commissioners Mike Clark (hereinafter "Mr. Clark") influenced Mr. Brown and Ms. Thomas to chastise Plaintiff for answering questions during Board of County Commissioners meetings.

76.    Despite Mr. Brown's previous indication that he was more than satisfied with Plaintiff's communications with political operatives and party officials, Mr. Brown and Ms. Thomas grew uncomfortable if Plaintiff ever acknowledged their concerns.

77.    For instance, Plaintiff was informed by a Republican political operative that the transfer of voter's data was not accurate. As such, Plaintiff investigated and agreed that the data was not marked correctly in the new system. After Plaintiff followed all relevant protocols and informed Mr. Brown, she was chastised for publicly acknowledging the error by Defendants.

### The New Voting System

78.    The State of Nevada elected to align the voter registration system with the system utilized in Clark County, Nevada during the 2021 Legislative Session.

79.    It was not until on or about August 22, 2024, that Plaintiff and Defendants received access to the new voting system known as Voter Registration and Election Management Solution (VREMS), seventy-five (75) days before the general election.

80.    On or about August 2024, Ms. Hill personally requested Ms. Thomas oversee the Office of Registrar of Voter despite the position reporting directly to Mr. Brown and informed Mr. Brown of the same. Mr. Brown did not formally convey this message to Plaintiff at this time.

81.    At no point did Defendants change the employee organization chart of Washoe County.

82.    On or about August 2024, Ms. Thomas made repeated requests for unrelated departments to have access to the VREMS system.

83.    Plaintiff informed Ms. Thomas and Mr. Brown that such requests and authorized use were against state policy for the program and denied the requests.

84.    On or about September 17, 2024, a resident spoke at the Board of County Commissioners meeting about discrepancies found in the voter rolls. To wit, roughly 14,000 people

who should have been marked as inactive were not marked as inactive in the new Total Vote system. As such, Plaintiff reviewed the Total Vote System and found that the voters under Uniformed and Overseers Citizens Absentee Act ("UOCAVA") were not transferred to the new voting system correctly with their addresses and precincts not matching. The UOCAVA federal deadline was September 21, 2024.

85.     On or about September 17, 2024, Ms. Vetter informed Plaintiff that the new voting system listed some addresses twice, including Plaintiff's home address.

86.     Plaintiff and a key technology staff member also found that the Total Votes System demarcated many local apartment complexes as commercial, resulting in apartment dwellers not receiving mail-in ballots.

87.     On or about September 17, 2024, Plaintiff informed Mr. Brown of all issues via text message and phone call via her county phone.

88.     On or about September 17, 2024, Plaintiff informed Mark Wlaschin ("Mr. Wlaschin") of the Nevada Secretary of State's Office that the UOCAVA addresses and precincts were incorrectly matched, that the new voting system listed addresses twice, and that the state deadline to mark inactive voters "inactive" would be missed. Mr. Wlaschin indicated that Defendant was not the only county to miss the state deadline. A plan was created to address the missed deadline.

89.     Plaintiff then spent the remainder of the day on calls with vendors to address the technology and coding issues.

90.     On or about September 18, 2024, Gabe De Chara of the Nevada Secretary of State's Office called Ms. Thomas to inform that that the inactive voters in Washoe County were not marked as "inactive". Ms. Thomas demanded that Plaintiff call her immediately.

91.     After consultation with Mr. Wlaschin, and other technology staff at the Nevada Secretary of State's Office, Plaintiff prioritized the UOCAVA data for correction per the parties' discussion on September 17, 2025.

92.     On or about September 19, 2024, a meeting was scheduled with Plaintiff and Mr. Brown. Mr. Brown called out sick and rescheduled the meeting to address the outstanding issues in the voting system.

93.     On or about September 19, 2024, Plaintiff called Secretary of State Franscisco Aguilar ("Mr. Aguilar") while Ms. Vetter was in the room. During the conversation, Plaintiff expressed her concern that the VREMS was not prepared to be launched for a general election as a full front to band end mock election had not been completed and due to there being so many discrepancies in the data. Further, Plaintiff expressed concern over apartments being demarcated in the state's system as commercial and would not be receiving mail in ballots. Plaintiff promptly scheduled a day for all vendors to come into work out the issues in the voting system in early October.

94.     Ms. Thomas' repeated interference caused Plaintiff significant emotional distress as her authority in her office was consistently questioned and undermined.

95.     The October vendor visit was supposed to provide a full front to back end mock election, that Washoe County had not completed in one go. However, it was reported to Plaintiff that the complete mock election never occurred.

96.     Ms. Vetter promptly informed Ms. Thomas of the call and the contents of the call and to other staff members.

97.     On or about September 20, 2024, Plaintiff met with Mr. Brown and expressed all issues that occurred, and that the federal deadlines were being prioritized.

98.     Mr. Brown understood the issues and affirmed that Plaintiff was doing a good job given the circumstances.

99.    After being placed on leave, Plaintiff was informed by other Nevada jurisdictions that the Nevada Secretary of State's office sent out communications to all registered driver, including non-citizens, to vote.

### The Permanent Registrar of Voters Position

100.    On or about August 20, 2024, the Board of County Commissioners recruit for the Registrar of Voter's position in accordance with the Department Head Recruitment process for unclassified management employees approved by the Board of County Commissioners on February 28, 2023; and authorized the creation of a new classification and 1.0 FTE Registrar of Voters' Juris Doctorate.

101.    The required qualification for a Juris Doctorate was rescinded and the Registrar of Voters job listing was opened on August 21, 2024, with the closing date of October 2, 2024.

102.    Defendants published a tentative timeline for the Registrar of Voters hiring process, with the estimated hire date being set at December 16, 2024.

103.    Plaintiff applied for the open Registrar of Voters Position.

104.    Of the 41 applicants, Plaintiff made it to the first rounds of interviews and received a first interview date of November 22, 2024.

105.    The interview occurred as schedule via Zoom. At the onset, it felt the interview was merely a formality and that Plaintiff was not given a fair opportunity despite her qualifications.

106.    On the same day, Plaintiff was informed that she was not identified to move forward in the selection process of Defendant's permanent Registrar of Voters.

### Forced Leave and Ongoing Retaliation

107.    After multiple conversations regarding who Plaintiff reports to, Ms. Thomas' criticism and interference over the voter data and Ms. Thomas' harassment and isolation of Plaintiff created a toxic work environment.

108.    On or about September 20, 2024, Plaintiff informed Mr. Brown that her stress and anxiety have spiked resulting in very high blood pressure.

109.    On or about September 20, 2024, Mr. Brown expressed his support for Plaintiff and ask that they meet with Human Resources on Monday, September 23, 2204, to discuss internal personal issues. To wit, Mr. Brown informed Plaintiff that it was "[her] position to lose", that Plaintiff was being compared to the former Registrar of Voters and that those in the process of hiring for the position already had a prejudice against Plaintiff.

110.    On or about September 20, 2024, Mr. Brown expressed to Plaintiff that it was good that she and Ms. Thomas did not talk on September 19, 2024, as Ms. Thomas was "really upset" Plaintiff did not call her back over the inactive list.

111.    Mr. Brown's comment surprised and concerned Plaintiff as Ms. Thomas' behavior was already vindictive towards Plaintiff.

112.    On or about September 20, 2024, Mr. Brown said that Human Resources was upset that Plaintiff was out at conferences, that she did not get along with other departments, and that she did not take suggestions from others. Specific examples were not provided to Plaintiff.

113.    Mr. Brown approved all of Plaintiff's absences for elections related conferences where Plaintiff interacted directly with vendors and other elections officials to discuss best practices.

114.    On September 21, 2024, Plaintiff received text messages from Mr. Brown checking in on her from the previous days' conversation. Plaintiff requested accommodation for the increase in her stress and anxiety caused by the job, including returning to her former position of Deputy Registrar of Voters as Ms. Thomas' insinuations that she would do a better job were disheartening.

115.    On or about September 22, 2024, Plaintiff expressed to Mr. Brown that her stress levels have substantially increased due to internal personal issues and requested to return to the position of Deputy Voter Registrar.

**AHMADLAW**
300 S. Arlington Avenue, Ste B
Reno, Nevada 85901
(775) 234-8760

116.    On or about September 23, 2024, Mr. Brown informed Plaintiff that Ms. Thomas was now "officially" overseeing the Office of Voter Registrar at Ms. Hill's personal request.

117.    On or about September 23, 2024, Mr. Brown informed Plaintiff that if her overtime hours were leaked, it would look like Plaintiff was taking advantage of the county.

118.    On or about September 24, 2024, Mr. Brown texted Plaintiff indicating that Defendants were going to go on "a different route" in regard to Plaintiff's complaints. Plaintiff called Mr. Brown in which he expressed that the best option was for Plaintiff to go on leave.

119.    Mr. Brown did not elevate Plaintiff's concerns pursuant to county policy.

120.    On or about September 24, 2024, Plaintiff confirmed with Mr. Brown that leave was her only option. As such, Plaintiff informed her staff that Mr. Brown and she had spoken that that Plaintiff was being placed on leave.

121.    On or about September 24, 2024, Plaintiff received multiple text messages from Mr. Brown disparaging Plaintiff for informing her team. Mr. Brown indicated that Plaintiff would need to report to Human Resources on September 25, 2024, at 8:00 a.m. and was prohibited from talking to anyone inside or outside of the organization.

122.    On or about September 24, 2024, Mr. Brown sent the following text messages to the Board of County Commissioners:

> Commissioners, earlier this afternoon I had a conversation with ROV CariAnn Burgess during which I recommended she request a leave of absence to address self identified recent stress issues. Later this afternoon she convened the ROV office staff and as a result many left with the impression that I asked her to leave. This was not what was discussed but it is emblematic of recent behavior we have seen from her. As a result, tomorrow morning HR will meet with her to uh tv tv [sic] to discuss taking leave. We will also meet with the ROV team to clear the air and answer questions. I will be returning from ICMA in Pittsburgh tomorrow afternoon. Please feel free to text or call me directly if you would like to discuss further. Thanks.

AHMADLAW
300 S. Arlington Avenue, Ste B
Reno, Nevada 85901
(775) 234-8760

123.   Mr. Brown did not take due care to make sure his text message was not disbursed to the media.

124.   On or about September 25, 2024, Plaintiff attended the meeting with Human Resources in which Ms. Hurley and Ms. Kandaras were present as the senior Human Resources and District Attorney personnel. There was one other Deputy District Attorney present at the meeting.

125.   At the meeting on September 25, 2024, Ms. Hurley and Ms. Kandaras informed Plaintiff that she was required to send an email from her county email requesting to take personal leave. Plaintiff was not given the opportunity to apply for leave pursuant to the Family Medical Leave Act ("FMLA") and was directly put on unpaid leave as an adverse employment action.

126.   Plaintiff requested the ability to return to her role as Deputy Registrar of Voters to complete the 2024 General Election. Ms. Hurley informed Plaintiff that the position was no longer available, despite Defendant's refusal to hire for that position.

127.   Plaintiff's previous Deputy Registrar of Voters position remained open for the duration of her tenure with Washoe County.

128.   At the meeting on or about September 25, 2024, Plaintiff expressed that a recent altercation with a member of the public where she was threatened, then having to go back to the office to address CISA recommendations to put additional film on the windows made her feel the job was more dangerous and more stressful.

129.   At the meeting on or about September 25, 2024, Plaintiff requested that Plaintiff have one (1) day to decide if she would request being placed on personal leave. Ms. Hurley and Ms. Kandaras refused and informed Plaintiff that she was going to lose all access to county software that day.

130.   At the meeting on or about September 25, 2024, Plaintiff requested accommodation for the increase in her stress and anxiety caused by the job, including returning to the position of

Deputy Registrar of Voters, she was denied. Plaintiff requested the ability to give Defendants a list of all the items she was working on. Ms. Harley and Ms. Kandaras refused. Plaintiff requested the ability to inform her team of the personnel change. Ms. Hurley and Ms. Kandaras refused.

131.   At the meeting on or about September 25, 2024, after watching Plaintiff send the request to be placed on leave, Ms. Hurley demanded Plaintiff's work phone and factory reset the phone in front of Ms. Kandaras.

132.   On or about Wednesday, September 25, 2024, Defendant released the following statement:

> This week, interim Registrar of Voters, Cari-Ann Burgess, expressed to County Manager Brown that she was experiencing stress related health issues. At his recommendation, she has requested a leave of absence for self-care. We are committed to the health and well-being of Ms. Burgess and running a smooth and fair election is a top priority for the County. The Registrar of Voter's office is prepared and confident for the upcoming Election in November.

133.   On or about September 30, 2024, Plaintiff obtained medical clearance from Allison D Basta, A.P.R.N. indicating that Plaintiff was cleared to work without restrictions on October 7, 2024. Plaintiff provided her medical clearance to Defendant.

134.   On or about October 1, 2024, Ms. Hurley requested a Plaintiff meet with Human Resources on October 3, 2024, at 8:00 a.m. Plaintiff responded promptly asking who would be attending the meeting.

135.   On or about October 1, 2024, Ms. Hurley indicated that she, Mr. Brown, and "someone from legal" would be at the meeting on October 3, 2024.

136.   On or about October 1, 2024, Plaintiff informed Defendants that she would be bringing her own representation to the meeting.

137.   On or about October 2, 2024, Ms. Hurley indicated that the meeting would be "cancelled to due to a conflict" and that they would be in touch by the end of the week.

AHMADLAW
300 S. Arlington Avenue, Ste B
Reno, Nevada 85901
(775) 234-8760

AHMADLAW
300 S. Arlington Avenue, Ste B
Reno, Nevada 85901
(775) 234-8760

138.    On or about October 4, 2024, Defendant emailed a letter labeled "Re: Legal Status of Cari- Ann Burgess" in which multiple hearsay conversations were incorrectly summarized without sources. Plaintiff was additionally given a list of items from September 2024 that needed to be discussed prior to any consideration of her return to the office.

139.    In the letter labeled "Re: Legal Status of Cari- Ann Burgess" Ms. Burgess was told, "If you decide to remain on paid leave, you are to refrain from speaking to the media, outside parties, Washoe County staff or Commissioners."

140.    At no point had Plaintiff ever signed a nondisclosure agreement with Washoe County regarding her position pre-employment, nor during employment.

141.    Beginning September 2024, Plaintiff was placed on personal leave in which she was forced to utilize her sick time, vacation time, and compensatory time.

142.    Defendants decreased Plaintiff's pay to the Deputy position that was allegedly unavailable.

143.    It was not until Plaintiff's last paycheck that her stipend for Interim Registrar of Voters was restored. This happened after her counsel informed Defendants that they changed her pay unlawfully.

144.    In or about October 2024, after Defendant's statement on Plaintiff's leave, multiple media outlets reached out to Plaintiff for comment. Plaintiff did not respond to media inquiries.

145.    However, as the Associated Press was finishing their story, they requested comment as it was unusual for a top election official to be placed on leave less than two months before the election.

146.    On or about October 2024, Plaintiff's attorney sent a Letter of Representation and Preservation of Rights to Defendants and the Secretary of State to preserve all electronic communications.

AHMADLAW
300 S. Arlington Avenue, Ste B
Reno, Nevada 85901
(775) 234-8760

147.    On or about October 2024, Plaintiff and her attorney filed her EEOC Discrimination Complaints for the failure to accommodate her disability (high blood pressure), violation of her right to privacy as Defendants are restricted from sharing personal information of an employee, constructive discharge based upon Defendant forcing Plaintiff to take personal leave, and retaliation based upon Defendant's improper use of personal leave and refusal to follow administrative procedures after Plaintiff reported her concerns to the Secretary of State regarding the new voting system.

148.    On or about October 2024, Plaintiff expressed to the Associated Press that she did not willing take personal leave.

149.    In or about October 2024, Propublica did a follow-up piece on the Associated Press' piece and Defendant informed the media outlet that Plaintiff "was placed on admin leave while they investigate several issues regarding her job performance."

150.    No communication was provided by Defendant to Plaintiff regarding the changed status of Plaintiff's leave from personal leave to administrative leave.

151.    Plaintiff was not informed of any employment investigation pursuant to the Washoe County Employee Handbooks.

152.    On or about the last pay period October 2024, Plaintiff's pay indicated that she was put on administrative leave. She was not reimbursed for sick leave from September 25, 2024, to October 21, 2024.

153.    In or about November 2024, Plaintiff was told by multiple contacts in elections that she was unable to be hired due to Defendant's statements indicating Plaintiff acted without authority. To wit, Ms. Alvarado repeatedly emailed vendors claiming Plaintiff never had authority to sign contracts in an attempt to dissolve contracts early. Multiple vendors informed Plaintiff of these

communications and determined that they would no longer work with Washoe County based upon Defendant's clear and unambiguous retaliation against Plaintiff and blatant unprofessionalism.

154.    In or about November 2024, after months of Defendant disparaging Plaintiff and refusing to allow Plaintiff to return to work, Plaintiff's stress and anxiety increased based upon the continued retaliation by Defendant. Plaintiff received multiple work-induced anxiety and stress diagnoses, including complex post traumatic stress disorder.

155.    On December 6, 2024, Cayla J. Witty, Esq. ("Defendant's investigator") reached out to schedule an interview with Plaintiff.

156.    On or about December 19, 2024, Plaintiff and Plaintiff's attorney engaged with Defendant's investigator on behalf of Defendants for a Confidential Investigation Interview.

157.    The interview went over an hour over time, with the investigator informing Defendant that she would follow-up regarding her concerns. Plaintiff offered to provide additional information.

158.    On or about December 19, 2024, during the interview, Plaintiff's attorney requested information on the items being investigated. The parties were informed that specific allegations were not made and that a complaint was not on file against Plaintiff.

159.    On or about December 19, 2024, Plaintiff and Plaintiff's attorney provided supplemental materials and requested a copy of the recording and/or transcription of the interview. No response was given.

160.    Defendant's investigator offered to provide a copy of the recorded interview to Plaintiff but refused all future contact until February 18, 2025, when Defendant's investigator informed Plaintiff that:

> Thank you for your patience with my response regarding the request for a transcript of Ms. Burgess's interview. I have been informed that as this is a pending confidential personnel matter, any request for any materials associated with the investigation should be directed to Washoe County's Human Resources Department or the Washoe County District Attorney's Office.

AHMADLAW
300 S. Arlington Avenue, Ste B
Reno, Nevada 85901
(775) 234-8760

161.    However, prior to receiving a response from Defendant's investigator, Plaintiff's attorney contacted the Washoe County District Attorney's office.

162.    Mr. McDonald was appointed Registrar of Voters of Washoe County on February 11, 2025.

163.    Plaintiff's employment was terminated on February 12, 2025 after being unilaterally revered back to the position of Deputy Registrar of Voters, a position she was told no longer existed.

164.    On February 14, 2025, received the following email from Deputy District Attorney Lindsey Liddell ("Ms. Liddell"):

> Hi Hawah,
>
> I am the attorney representing the County in the *Burgess v. Washoe County* case. Nate forwarded your email requesting transcripts from the investigatory interviews regarding Ms. Burgess. Generally, the County's practice is to maintain the confidentiality of HR investigative reports and related records. But, because the report will likely be distributed to Ms. Burgess in the normal course of discovery I am providing you the attached copy as a courtesy. As the report shows, there were many validated concerns regarding Ms. Burgess's inability to carry out her Interim-ROV election duties in accordance with state and federal law.
>
> I am aware that Ms. Burgess was terminated from her employment with Washoe County this week. Let me know would like to discuss potential settlement and release of claims allowing her to resign rather than have a termination on her employment record, potentially preventing issues with future possible employment in elections work. I have not discussed this with the County, but it is possible my client would be amenable to that approach rather than litigating the case in full throttle.
>
> Otherwise, the County is prepared to defend itself in the litigation in due course. Feel free to reach out if any issues arise as the case progresses.
>
> Sincerely,
> Lindsay

AHMADLAW
300 S. Arlington Avenue, Ste B
Reno, Nevada 85901
(775) 234-8760

165.    Oddly, at this time, the Washoe County District Attorney's Office was not authorized to negotiate a settlement offer.

166.    In Ms. Liddell's email, she included the determination of the investigation, dated January 15, 2025, that was never provided to Plaintiff. In it, issues were investigated that were not include in the October letter. Notably, the Report looked at possible violations broadly of county code that Plaintiff was not given notice of.

167.    On February 5, 2025, Defendants substantiated violations of the County Code of Conduct pursuant to the January 15, 2025, Investigation Report.

168.    Nevertheless, Ms. Liddell clarified that there were no formal complaints on file and the percipient of the investigation was Mr. Brown's October 4, 2024, letter.

169.    Ms. Liddell then reiterated that Defendant's staff report shows, the interim ROV status was effective until either Plaintiff resigned or until the Board of County Commissioners appointed a full time Registrar of Voters and that the latter instance occurred. Ms. Liddell went on to express that Plaintiff was reverted to the Deputy Registrar of Voters position that was represented as no longer being available. Ms. Liddell noted that despite the representations made at the time of hire, that the Deputy Registrar of Voters' position is an at-will position, in an unclassified appointment that serves at the pleasure of the appointing authority, is not eligible for transfer or voluntary demotion privileges, not eligible for classified employee reinstatement privileges, are FLSA exempt, and may be terminated with or without an investigation, and has no entitlement to classified employees' progressive discipline or appeal procedures.

\\\

\\\

\\\

\\\

AHMADLAW
300 S. Arlington Avenue, Ste B
Reno, Nevada 85901
(775) 234-8760

AHMADLAW
300 S. Arlington Avenue, Ste B
Reno, Nevada 85901
(775) 234-8760

## V.
## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
Civil Action for Deprivation of Rights
*(Violation of 42 U.S.C. §§ 1981a, 1988)*

170.    Plaintiff incorporates by reference each of the foregoing allegations as if fully set forth herein.

171.    Plaintiff is a "qualified individual" as defined under 42 U.S.C. §§ 12111 et. seq. 69.

172.    Defendants are a governmental entity and political subdivision of the State of Nevada.

173.    Plaintiff has brought suit against Defendant for engaging in unlawful, intentional discrimination in violation of section 102 of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12112.

174.    Defendant, after being placed on notice of Plaintiff's disability, failed to engage in the interactive process and failed to provide Plaintiff with reasonable accommodation.

175.    Despite Plaintiff being medically cleared and remedying the need for accommodation, Defendant refused to engage with Plaintiff and allowed her back to work.

176.    Defendant, after being placed on notice of Plaintiff's disability, took adverse action against Plaintiff when Defendant forced Plaintiff to request leave to further force Plaintiff to utilize her incurred personal, sick and compensatory time, because of Plaintiff's disability. Specifically, after Defendant, through its agents and/or employees, learned of Plaintiff's disability and refused Plaintiff's request for accommodation Defendant forced Plaintiff on leave without pay resulting in Plaintiff being forced to utilize her incurred personal, sick and vacation time. Defendant refused to allow Plaintiff to return to work despite being medically cleared and ultimately retaliated against her for not complying with Ms. Thomas's demands. Defendants then placed Plaintiff on administrative leave without notice, refused Plaintiff a fair chance at the permanent position of Registrar of Voters, then subjected her to a lengthy investigation that did not follow county protocol. Further, Plaintiff

was not put on notice of the instigation of the investigation at the time of the interview. Defendant openly published information on Plaintiff's disability in an attempt to adversely impact Plaintiff's further job prospects and maligned her character to retaliate for her coming forward regarding specific voting issues. Defendant then constructively discharged Plaintiff by biasing Defendant's organization against Plaintiff preventing her from having a fair chance in the recruitment process for the permanent Registrar of Voters. Lastly, Defendant's further disparagement of Plaintiff's disability in the media and misrepresentation that there was an open investigation against Plaintiff for insubordination resulted in the development of new work-induced disabilities.

177. All such wrongful conduct was committed by supervisors, with the authority to hire, fire, and take adverse action against Plaintiff, or transpired with the full knowledge and awareness of Defendant.

178. Plaintiff suffered severe emotional, psychological, vocational and financial damages as a direct cause of Defendant's conduct and is entitled to compensatory damages up to three hundred thousand U.S. Dollars ($300,000).

179. Plaintiff is entitled to reasonable attorney fees.

180. In addition to reasonable attorney fees, Plaintiff is entitled to reasonable expert fees.

## SECOND CLAIM FOR RELIEF
Discrimination Against a Qualified Individual by Covered Entity
*(Violation of 42 U.S.C. §§ 12111 et. Seq.)*

181. Plaintiff incorporates by reference each of the foregoing allegations as if fully set forth herein.

182. Plaintiff is a "qualified individual" as defined under 42 U.S.C. §§ 12111.

183. Defendant is a "covered entity" as defined under 42 U.S.C. §§ 12111.

184. Defendant violated 42 U.S.C. §§ 12112 Defendant classified Plaintiff in a way that adversely affects the opportunities or status of such employee because of the disability of such

AHMADLAW
300 S. Arlington Avenue, Ste B
Reno, Nevada 85901
(775) 234-8760

employee. To wit, Defendant obtained Plaintiff's personal health information in regard to her disability. Defendant's public statements that Plaintiff voluntarily took personal leave due to self-reported stress related issues classified Plaintiff in a way that adversely affected her opportunity for future employment in Defendant's organization as the permanent Registrar of Voters, and future employment with other organizations. Defendant violated Plaintiff's privacy under the Americans with Disability Act by disclosing her personal health information from a disability-related inquiry that was required to treated as a confidential medical record.

185.    Defendant violated 42 U.S.C. §§ 12112 when after learning of Plaintiff's disability, Defendant failed to make reasonable accommodations for Plaintiff, which would have allowed Plaintiff to otherwise perform her job duties. Further, Defendant failed to provide the option of placing Plaintiff on FMLA and demanded that Plaintiff request personal leave and utilize her incurred sick, vacation and compensatory time.

186.    Defendant violated 42 U.S.C. §§ 12112 by refusing to allow Plaintiff the opportunity to return to work after Plaintiff's disability was medically cleared to return to work.

187.    Defendant violated 42 U.S.C. §§ 12112 when it discriminated against Plaintiff because of her disability. Specifically, Defendant violated 42 U.S.C. §§ 12112 when it denied Plaintiff continued benefits because of Plaintiff's known disability. To wit, Defendant denied Plaintiff her normal pay and forced Plaintiff to utilize her incurred personal, sick and compensatory pay. Defendant failed to reimburse Plaintiff her sick leave when she was put on administrative leave. Defendant's violations continue as Plaintiff has been placed on personal or administrative leave for over four (4) months without further action. When action was taken it was made by Defendant to specifically put Plaintiff at a disadvantage.

AHMADLAW
300 S. Arlington Avenue, Ste B
Reno, Nevada 85901
(775) 234-8760

188.    All such wrongful conduct was committed by supervisors, with the authority to hire, fire, and take adverse action against Plaintiff, or transpired with the full knowledge and awareness of Defendant.

189.    Plaintiff suffered severe emotional, psychological, vocational and financial damages as a direct cause of Defendant's conduct and is entitled to compensatory damages.

190.    Plaintiff is entitled to reasonable attorney fees.

191.    In addition to reasonable attorney fees, Plaintiff is entitled to reasonable expert fees.

### THIRD CLAIM FOR RELIEF
Prohibition Against Retaliation and Coercion
*(Violation of 42 U.S.C. § 12203)*

192.    Plaintiff incorporates by reference each of the foregoing allegations as if fully set forth herein.

193.    Defendant discriminated against Plaintiff because Plaintiff opposed Defendant's unlawful actions including voicing her concern with utilizing a voting system that was not prepared to go active and voicing concerns over Defendant not following county and state protocol or procedures relating to the employee organization chart, and access to voters' personal information. Specifically, after raising her concerns over Ms. Thomas' interference in her office by way of telling Plaintiff's staff to report to her instead of Plaintiff, Ms. Thomas' repeated her demands to give unauthorized persons access to the VREMS system against State policy and unilaterally began communicating with the Nevada Secretary of State's Office over elections. Further, Ms. Thomas engaged in a pattern of harassing behavior by being hypocritical of Plaintiff's overtime during the implementation of a new program, offering Plaintiff's department's overtime budget to others, and critiquing Plaintiff's decisions to prioritize federal deadlines. Ms. Thomas personally created a toxic work environment for Plaintiff, in which Plaintiff was forced to disclose her disability. As such, on

AHMADLAW
300 S. Arlington Avenue, Ste B
Reno, Nevada 85901
(775) 234-8760

September 25, 2024, Defendant utilized Plaintiff's disability to coerce her into taking personal leave, then made multiple unauthorized disclosures to the public about Plaintiff's disability.

194.    On September 27, 2024, Plaintiff hired an attorney to assist Plaintiff with enforcing Plaintiff's rights and privileges under the color of the law.

195.    Shortly thereafter, Plaintiff obtained medical clearance and attempted to return to work based upon the county's policies for personal leave.

196.    Shortly thereafter, Defendant interfered, intimidated, and threatened Plaintiff as a result of Plaintiff having exercised enjoyment of her rights as set forth under the Act, and demanded that Plaintiff remain on personal leave pending investigation. Specifically, Defendant placed Plaintiff on personal leave, forcing Plaintiff to utilize her incurred pay until October 21, 2024. Defendant has since placed Plaintiff on indefinite administrative leave, pending the findings of the County's investigation. A recommendation based upon the findings of the County's investigation has not occurred, though Defendant's actions subjected Plaintiff to public embarrassment.

197.    Defendant continues to retaliate against Plaintiff by misinforming vendors that Plaintiff did not have authority to sign contract in her role as active Interim Registrar of Voters.

198.    All such wrongful conduct was committed by supervisors, with the authority to hire, fire, and take adverse action against Plaintiff, or transpired with the full knowledge and awareness of Defendant.

199.    Plaintiff suffered severe emotional, psychological, vocational and financial damages as a direct cause of Defendant's conduct and is entitled to compensatory damages.

200.    Plaintiff is entitled to reasonable attorney fees.

201.    In addition to reasonable attorney fees, Plaintiff is entitled to reasonable expert fees.

\\\

\\\

AHMADLAW
300 S. Arlington Avenue, Ste B
Reno, Nevada 85901
(775) 234-8760

## FOURTH CLAIM FOR RELIEF
General Discrimination against Qualified Individual
*(Violation of 42 U.S.C. §12131 et. seq.)*

202.   Plaintiff incorporates by reference each of the foregoing allegations as if fully set forth herein.

203.   Defendant's actions violated Section 504 of the Rehabilitation Act, 29 U.S.C. §794a.

204.   Defendant is a governmental agency that receives federal funds and discriminated against Plaintiff because of Plaintiff's disability.

205.   Defendant is a "public entity" as defined under 42 U.S.C. §12131.

206.   Plaintiff is a "qualified individual with a disability" as defined under 42 U.S.C. §12131.

207.   Defendant denied Plaintiff the benefits of the services, programs, or activities offered by Defendant, including but not limited to employment as well as overtime pay commensurate with the position of the Registrar of Voters during a presidential election.

208.   Defendant subjected Plaintiff to discrimination when after learning of Plaintiff's disability, Defendant forced Plaintiff to take personal leave without pay and utilize her sick, vacation, and compensatory pay. After questions came from the media, Defendant placed Plaintiff on administrative leave pending investigation.

209.   Defendant subjected Plaintiff to discrimination when, after learning of Plaintiff's disability, Ms. Kandaras, Mr. Brown, and Ms. Hurley coerced Plaintiff to take personal leave, then threatened Plaintiff with insubordination and investigation with the likely recommendation of termination by the Board of County Commissioners. Defendant threatened retaliation in the form of insubordination and investigation should Plaintiff speak to the media, county commissioners or staff. After Plaintiff informed the media that she was forced to take personal leave, the county placed

Plaintiff on administrative leave and opened an investigation on Plaintiff. Defendant failed to offer Plaintiff any meaningful accommodation for her disability.

210.    Defendant subjected Plaintiff to discrimination when after learning of Plaintiff's disability, Defendant constructively discharged Plaintiff by withholding pay, changing Plaintiff's hours to prevent overtime, refusing accommodations and refusing Plaintiff the ability to return to work after her medical disability was resolved, publicly criticizing Plaintiff, retaliating against Plaintiff by opening an investigation when she attempted to come forward regarding the county's unlawful actions related to her employment, constructively discharging Plaintiff by reverting her to her previous position that was claimed to no longer exist, and by misrepresenting terms of her employment to terminate Plaintiff's position without due process.

211.    All such wrongful conduct was committed by supervisors, with the authority to hire, fire, and take adverse action against Plaintiff, or transpired with the full knowledge and awareness of Defendant.

212.    Plaintiff suffered severe emotional, psychological, vocational and financial damages as a direct cause of Defendant's conduct and is entitled to compensatory damages.

213.    Plaintiff is entitled to reasonable attorney fees.

214.    In addition to reasonable attorney fees, Plaintiff is entitled to reasonable expert fees.

### FIFTH CLAIM FOR RELIEF
Violation of Nevada Statutory Protection

215.    Plaintiff incorporates by reference each of the foregoing allegations as if fully set forth herein.

216.    Defendant is an "employer" within the meaning of NRS 613.310.

217.    NRS 613.330 makes it unlawful for an employer to discriminate against an employee with respect to the person's compensation, terms, conditions or privileges of employment, because of the employee's disability. Defendant's conduct as detailed herein, was in fact illegal. Plaintiff was

35

subjected to discriminatory practices, including without limitation, retaliatory and adverse actions affecting her compensation, terms, conditions and/or privileges of employment because of her disability.

218.    As a direct and proximate result of Defendant's violation of NRS 613.330, Plaintiff suffered lost wages, lost status, lost reputation, lost future earnings, lost employment opportunities, humiliation, embarrassment, loss of self-esteem, intentional emotional distress, and further work-induced disabilities from Defendant's ongoing retaliation in an amount to be determined at trial. Plaintiff seeks all legal and equitable remedies available at law.

219.    All such wrongful conduct was committed by supervisors, with the authority to hire, fire, and take adverse action against Plaintiff, or transpired with the full knowledge and awareness of Defendant.

### SIXTH CLAIM FOR RELIEF
Intentional Infliction of Emotion Distress

220.    Plaintiff incorporates by reference each of the foregoing allegations as if fully set forth herein.

221.    Defendant engaged in extreme and outrageous conduct with reckless disregard for causing Plaintiff emotional distress. To wit, Defendant's actions unilaterally change the change of command for the Defendant's organization and direct interference with Plaintiff's Office recklessly disregarded Plaintiff's ability to do her job. Ms. Thomas' demand that Plaintiff's staff report to her over Plaintiff significantly undermined Plaintiff to her staff, and Defendant's unauthorized disclosure of Plaintiff's disability, consistent disparagement of plaintiff, and defamation to vendors is the proximate cause of Plaintiff's severe or extreme emotional distress and new disability diagnoses.

222.    All such wrongful conduct was committed by supervisors, with the authority to hire, fire, and take adverse action against Plaintiff, or transpired with the full knowledge and awareness of Defendant.

**AHMADLAW**
300 S. Arlington Avenue, Ste B
Reno, Nevada 85901
(775) 234-8760

223.    As a result, Plaintiff suffered severe emotional, psychological, vocational and financial damages as a direct cause of Defendant's conduct and is entitled to compensatory damages.

224.    Plaintiff is entitled to reasonable attorney fees.

225.    In addition to reasonable attorney fees, Plaintiff is entitled to reasonable expert fees.

### SEVENTH CLAIM FOR RELIEF
Defamation

226.    Plaintiff incorporates by reference each of the foregoing allegations as if fully set forth herein.

227.    Defendant intentionally and maliciously made statements regarding Plaintiff's confidential health information with the intent of harming her reputation.

228.    Defendant was made aware of Plaintiff's disability and intentionally did not handle the information as confidential information. Defendant intentionally informed the media via public statement that Plaintiff took personal leave due to her disability with the intent to discredit Plaintiff and present her as being unable to handle the duties and responsibilities of her position.

229.    Defendant further falsely represented to vendors in writing that Plaintiff did not have authority to sign vendor contracts in her capacity as Interim Voter Registrar with the intent to harm Plaintiff's reputation in the elections industry.

230.    Defendant's actions exposed Plaintiff to public scrutiny, embarrassment, and ridicule and have significantly hindered her ability to seek further employment in her trained field.

231.    As a result, Plaintiff suffered severe emotional, psychological, vocational and financial damages as a direct cause of Defendant's conduct and is entitled to compensatory damages.

232.    Plaintiff is entitled to reasonable attorney fees.

233.    In addition to reasonable attorney fees, Plaintiff is entitled to reasonable expert fees

\\\

\\\

AHMADLAW
300 S. Arlington Avenue, Ste B
Reno, Nevada 85901
(775) 234-8760

AHMADLAW
300 S. Arlington Avenue, Ste B
Reno, Nevada 85901
(775) 234-8760

## EIGHTH CLAIM FOR RELIEF
### Defamation Per Se

234.    Plaintiff incorporates by reference each of the foregoing allegations as if fully set forth herein.

235.    Defendant made negative statements in writing and to the media about Plaintiff indicating she was on administrative leave pending investigation with malicious intent to harm Plaintiff's reputation. Defendant initiated an investigation in which specific claims were never made against Plaintiff in retaliation for Plaintiff speaking to the media. Defendant's published statements about Plaintiff's work ethic harmed Plaintiff's ability to find further employment.

236.    As a result, Plaintiff suffered vocational and financial damages as a direct cause of Defendant's conduct and is entitled to compensatory damages and punitive damages.

## NINTH CLAIM FOR RELIEF
### Fraudulent Misrepresentation

237.    Plaintiff incorporates by reference each of the foregoing allegations as if fully set forth herein.

238.    Defendant recklessly made the false representation that Plaintiff was being hired as a due process employee for the position of Deputy Registrar of Voters.

239.    Defendant knew their representation was false and misleading

240.    Plaintiff reasonably relied on Defendant's false representation and left her lucrative job in Douglas County for Washoe County and incurred significant moving costs and an increased cost of living. Had Plaintiff known that Defendant's representation was false, she would not have left her previous job.

241.    Defendant recklessly made the false representation that Plaintiff's former position as Deputy Registrar of Voters would remain open while she held the role of Interim Registrar of Voters. Defendant intentionally misrepresented that Plaintiff's position would be held for her.

242.    Defendant knew and had reason to believe that their representations were false as they intentionally did not fill the vacant Deputy Voter Registrar position but had no intention of returning the position to Plaintiff. Plaintiff only took the position and effectively filled the role of the Interim Registrar of Voters and the vacant Registrar of Voters position from January 2024 until September 2024 based upon Defendant's fraudulent representation.

243.    Defendant made their false representations regarding the vacant Deputy Registrar of Voters position to induce Plaintiff to take the Interim Registrar of Voters position. Plaintiff justifiably relied on Defendant's representations.

244.    As a result, Plaintiff has suffered financial damages as a direct cause of Defendant's conduct and is entitled to compensatory damages.

## TENTH CLAIM FOR RELIEF
Invasion of Privacy- False Light

245.    Plaintiff incorporates by reference each of the foregoing allegations as if fully set forth herein.

246.    Defendant recklessly published a false or misleading impression of Plaintiff when Defendant issued a statement on October 31, 2024 stating:

> Cari-Ann Burgess was initially on leave from her position as Interim Registrar of Voters for medical reasons. She is now on administrative leave as Washoe County continues to investigate several issues relating to Ms. Burgess job performance. The County will not comment further on a personnel matter and is focused on conducting the 2024 General Election.

247.    Defendant's publicity created a false and misleading impression that Plaintiff's job performance was being investigated, insinuating that she was not competent in her position.

AHMADLAW
300 S. Arlington Avenue, Ste B
Reno, Nevada 85901
(775) 234-8760

AHMADLAW
300 S. Arlington Avenue, Ste B
Reno, Nevada 85901
(775) 234-8760

248. Defendant's false portrayal is highly offensive to a reasonable person.

249. Defendant acted with reckless disregard for the falsity of the portrayal and disregard for Washoe County employment policies and procedures.

250. Defendant's actions have directly resulted in Plaintiff experiencing emotional distress.

251. As a result, Plaintiff has suffered financial damages as a direct cause of Defendant's conduct and is entitled to compensatory damages.

### ELEVENTH CLAIM FOR RELIEF
Civil Conspiracy

252. Plaintiff incorporates by reference each of the foregoing allegations as if fully set forth herein.

253. Defendants purposefully and maliciously acted in concert with each other, and with others, to portray Plaintiff in a false light and retaliate against Plaintiff to attempt to force constructive discharge. When constructive discharge did not work, Defendants acted in concert with each other to prevent Plaintiff from obtaining the permanent Registrar of Voters position, essentially ban Plaintiff from elections, and instigated an employee investigation without following the proper protocol to terminate Plaintiff's employment.

254. Defendants purposefully and maliciously intended to harm Plaintiff.

255. Through their concerted action, Defendants caused damages to Plaintiff as set forth by all the facts as stated herein.

256. Plaintiff has sustained and will continue to suffer damages in excess of $75,000.00 as a direct and proximate result of Defendants' conspiracy.

257. Plaintiff is entitled to exemplary and punitive damages as a result of Defendants' oppression, fraud, or malice.

\\\

\\\

40

**VI.**
**PRAYER FOR JUDGEMENT AND RELIEF**

**WHEREFORE**, Plaintiff prays for judgement as follows:

1.       For appropriate declaratory relief regarding the unconstitutional and unlawful acts of Defendant;

2.       Actual damages in the form of back pay and front pay;

3.       For appropriate compensatory damages in an amount to be determined at trial;

4.       For punitive damages in an amount to be determined at trial;

5.       For appropriate equitable relief against Defendant as allowed by law, including the enjoining and permanent restraining of these violations, and direction to Defendant to take such affirmative action necessary to ensure that the effects of the unconstitutional and unlawful employment practices are eliminated and do not continue to affect Plaintiff's or others' employment opportunities;

6.       For an award of reasonable attorney fess and costs as permitted under applicable state and federal statutory law.

7.       For an award of applicable expert fees and costs incurred herein;

8.       For such other and further relief as the Court deems just and proper in the circumstances.

Dated this 30th day of May 2025.

AHMADLAW

//s// Hawah S. Ahmad
HAWAH S. AHMAD, ESQ.
300 S. Arlington Avenue, Ste. B
Reno, NV 89501
(775) 234-8760
ahmad@alawnv.com
*Attorney for Plaintiff*

AHMADLAW
300 S. Arlington Avenue, Ste B
Reno, Nevada 85901
(775) 234-8760