LINDSAY L. LIDDELL
Deputy District Attorney
Nevada State Bar Number 14079
One South Sierra Street
Reno, NV 89501
lliddell@da.washoecounty.gov
(775) 337-5700
ATTORNEY FOR WASHOE COUNTY

## UNITED STATES DISTRICT COURT

### DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| CARI-ANN P. BURGESS,<br><br>　　　　Plaintiff,<br>vs.<br><br>WASHOE COUNTY,<br><br>　　　　Defendant. | Case No. 3:25-cv-00065-NJK<br><br>**REPLY IN SUPPORT OF RENEWED<br>MOTION TO DISMISS**<br><br>(ECF No. 44) |

Defendant Washoe County ("County") hereby files its Reply in Support of Renewed Motion to Dismiss (ECF No. 44).

### Memorandum of Points and Authorities

### I. INTRODUCTION

The County moved to dismiss former interim Registrar of Voters ("ROV") Burgess's complaint because the ADAAA claims lack a plausible disability, qualification, and causation, and the state tort claims are not viable. The Opposition fails to demonstrate that Burgess's claims are viable, or that they can be viably amended. For example, she continues to include non-discriminatory causal bases, negating any ability to plead but-for causation for the ADAAA. Moreover, the Opposition may be entirely disregarded as it exceeds page limits, lacks required tables, and was filed without a motion to exceed in violation of this Court's Local Rules. LR 7-3 (b); LR IC 7-1. Dismissal with prejudice remains appropriate.

### II. THE COUNTY'S EXHIBITS ARE PROPER ON A RULE 12 (B)(6) MOTION.

The Motion's exhibits may be considered on a motion to dismiss both under the incorporated-by-reference doctrine and judicial notice. Rule 201 requires judicial notice of facts generally known or accurately and readily determined from reliable sources when

requested and supplied with the necessary information, and can be used on a dismissal motion. F.R.E. 201 (b)–(c); *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018). "[I]ncorporation-by-reference" treats records as part of the complaint itself. *Id.* at 1002. It is appropriate where the complaint alleges a document's contents *or* the document forms the basis of a claim. *Id.* It prevents plaintiff from selectively alleging contents of a document, while omitting portions that weaken or thwart claims. *Id.*

Here, both judicial notice and incorporation-by-reference apply. The County's email exhibits, created and maintained by a government entity, can be judicially noticed and are incorporated by reference. *See id.*; (ECF Nos. 44-1, 44-2, 44-3, 44-4, 44-7). Exhibit 1 is an email verbatim alleged in the FAC, with an attached investigation report referenced in the FAC. (ECF No. 10 at ¶¶125, 130, 209). Exhibits 2 and 4 are emails referenced in the FAC. *Id.* at ¶¶125, 130, 209, ¶¶133, 138–39. Exhibits 3 and 7 are the County's media statements that form the basis of several claims. *Id.* at ¶¶132, 149,176, 208, 223, 228, 235, 246. Exhibits 8 and 9, the EEOC charges, are subject to judicial notice, and form the basis of the ADAAA claims. *Id.* at p. 6, lns. 1–11; *Kaiser v. Wells Fargo Clearing Servs., LLC*, 761 F. Supp. 3d 1336, 1341, n.2 (D. Nev. 2025) (taking judicial notice of EEOC Charges). The news articles, Exhibits 5 and 6, are likewise judicially noticeable as news articles, and form the basis of Burgess's state tort claims. (ECF No. 10 at ¶¶148–49, 228, 235, 246); *Miller v. Sawant*, 18 F.4th 328, 335, n.5 (9th Cir. 2021) (taking judicial notice of news articles); *Giarrusso v. Nev. State Bd. of Med. Exam.*, No. CV-S050640-RLH-PAL, 2006 WL 8441893, at *11 (D. Nev. Jan. 26, 2006) (taking judicial notice of article with alleged defamatory statements).

**III. LEGAL ANALYSIS**

   A. THE DISABILITY DISCRIMINATION CLAIMS SHOULD BE DISMISSED.

      1. **Burgess Does Not Plausibly Allege Disability.**

The Motion demonstrates that Burgess failed to plausibly allege a disability because she does not identify any substantial limitations on any major life activity. (ECF No. 44 at pp. 8–9). Burgess argues the inability to perform a single job can be a disability under the

ADAAA. (ECF No. 45 at pp. 12–14). The Opposition oddly cites *Woolf v. Strada*, 949 F.3d 89, 94 (2d Cir. 2020) to argue this, but includes a parenthetical that properly identifies its holding: under the ADAAA, inability to perform a particular job is not a substantial limitation on a major life activity. *See* (ECF No. 45 at p. 14 lns. 4–7). Neither the FAC nor the Opposition identify a limitation resulting from Burgess's alleged anxiety, stress, or high blood pressure other than inability to perform as ROV under ACM Thomas's supervision.

The EEOC's interpretive guidance, updated as recently as 2024, clearly explains that, "Demonstrating a substantial limitation in performing the unique aspects of a single specific job is not sufficient to establish that a person is substantially limited in the major life activity of working." 29 C.F.R. § Pt. 1630, App. (2024). Following this guidance, as well as the ADAAA's text and legislative history, the First, Second, Fifth, Sixth, Seventh, Tenth, and District of Columbia Circuit Courts found that even under the ADAAA, the inability to perform a specific job or work under a specific supervisor is not a "disability." *See Woolf*, 949 F.3d at 94; (ECF No. 45 at p. 9, n.4). This Court should find the same.

The Court should dismiss the disability discrimination claims because Burgess does not plausibly allege a disability. The FAC alleges only that Burgess experienced work-induced distress, anxiety, and high blood pressure without any substantial limitation of a major life activity under the ADAAA definition. *See* (ECF No. 10 at ¶61, ¶94, ¶108, ¶¶114–15, ¶128, ¶130, ¶147). She also alleges that she preferred avoiding ACM Thomas's supervision and ultimately took paid leave. *See id.* This fails to allege disability under the ADAAA because the inability to work as ROV or under ACM Thomas's supervision is not a substantial limitation in a major life activity. *Woolf*, 949 F.3d at 94. The Opposition does not provide any additional details that could establish disability through an amendment. *See* (ECF No. 45). The Court should dismiss the disability discrimination claims with prejudice for failure to allege a disability, as amendment would be futile.

### 2. Burgess Cannot Plausibly Allege She was Qualified.

The Motion shows that Burgess also failed to plausibly allege she was qualified, and

that the FAC, relevant case law, and judicially noticeable or incorporated records show she was not qualified. (ECF No. 44 at pp. 10–13). Burgess argues that she was qualified as she was appointed to the job, worked as Deputy ROV for about four months prior to that, allegedly received a July 2024 positive performance review, and the performance errors alleged are isolated incidents that do not show incompetence. (ECF No. 45 at pp. 18–22).

The Opposition asks the Court to find that Burgess was qualified despite Burgess violating or otherwise failing to uphold several *legal* duties ascribed to the ROV. She attributes her failure to deactivate voters required by law as "confusion." (ECF No. 45 at p. 18 lns. 9–10). Her "confusion" demonstrates inability to perform this essential job function, lacking the requisite knowledge of the ROV's statutory duties for voter rolls. She does not acknowledge that the FAC alleges the wrong date and statute for voter deactivation. *See id.*

Next, Burgess argues that distributing a sample ballot missing a Senate race in violation of law, was a "technical error" and not "evidence of fundamental incompetence." *Id.* at p. 18 lns. 10–11. She accuses the County of being misleading because the County's legal team defended an action stemming from the deficient sample ballot. *Id.* The County's attorneys had a legal duty to defend that action, which arose from Burgess's omission in her role as ROV.[1] *See* NRS 41.0339 (1). While Burgess remedied the issue for the primary *election ballot*, the *sample ballot* she distributed violated the law.

Additionally, Burgess argues the legality of her proposed unofficial ballot drop boxes is "debatable," while failing to acknowledge that ROV-sanctioned ballot collection must comply with numerous laws including for security, location legality, chain of custody, and ballot retrieval. *See* (ECF No. 45 at p. 18 lns. 12–15); NRS 293.269921(3)–(5), NRS

---

[1] Burgess also appears to argue that the County waived or is estopped from taking issue with Burgess's legally deficient sample ballot. (ECF No. 45 at p. 21). The County did not take any legal position, nor does Burgess now argue that the sample ballot complied with applicable law. *See id.* Moreover, the cases Burgess cites have no relevance here. *See id.*; *Kemelhor v. Penthouse Intern., Ltd.*, 689 F.Supp. 205 (1988) (addressing a contract dispute); *Walls v. MiraCorp, Inc.*, No. 09-2112-JAR, 2011 WL 1636930, at *3 (D. Kan. Apr. 29, 2011) (addressing employer liability for punitive damages where an employee committed a battery tort); *Garcia ex rel Marin v. Clovis Unified Sch. Dist.*, 627 F.Supp.2d 1187 (2009) (addressing respondent superior liability for employees' tortious acts). The County is not precluded from taking issue with the sample ballot in this case.

293.3561–3564, 293.3572(4); NAC 293.347–352. The Opposition expansively argues the Establishment Clause issue, claiming there was none because the ROV's *official* polling sites included two churches (notably, from different faiths: one Christian, and one Unitarian Universalist). (ECF No. 45 at pp. 21–22.) Again, the Motion points out Burgess's failure to even *consider* potential Establishment Clause issues with favoring one faith for any government action while not considering other faiths. (ECF No. 44 at p. 12). The more pertinent issue, however, is Burgess's belief that informal or unofficial ballot boxes were at all legitimate and would not cause Burgess to again breach the ROV's legal duties.[2]

Burgess's failure to uphold legal duties shows she cannot do so, and therefore that she is not qualified. ROV duties are not simply employer-ascribed functions; they are legal obligations to act. Not only are these legal duties, but they concern the cornerstone of democracy: fair elections. Burgess's FAC alone shows that she violated several legal duties, and was unable to perform those essential functions. (ECF No. 10 at ¶¶22–24, ¶84, ¶90). The judicially noticeable Nevada Supreme Court case noting the legally deficient sample ballot likewise demonstrates her inability perform ROV duties. *See* (ECF No. 44 at p. 12 ln. 1). Burgess's statements in the report coupled with applicable law further show her inability to understand and perform the ROV's legal duties regarding ballot drop boxes. (ECF No. 44-1 at p. 11). These instances are not the only circumstances where Burgess failed to perform the ROV's legal duties, but they are the instances alleged in the FAC, referenced in the FAC, or otherwise subject to judicial notice for this Motion. Each of these instances on their own would show that Burgess was unable to perform the ROV's essential functions, the legal duties, and therefore show Burgess does not and cannot allege she was qualified.

**3. Burgess Does Not Plausibly Allege But-For Causation.**

Like the FAC, the Opposition fails to connect the dots between Burgess's alleged

---

[2] In addition to her allegations (ECF No. 10 at ¶¶22–24), the investigation report has Burgess's statements that the "unofficial" ballot drop boxes were "completely legal. She did not register any concerns…," and the "boxes to be provided would not have any markings related to the County." (ECF No. 44-1 at p. 11). However, the County's election attorney "described the initiative as 'not even arguably legal.'" *Id.*

disability and any alleged adverse employment action. The Motion shows that Burgess cannot plausibly allege causation because some actions predated her "disability" disclosure, and the FAC and EEOC charges provide legitimate, nondiscriminatory bases for actions: her inability to get along with other departments or take suggestions, "issues regarding her job performance," "for not complying with [ACM] Thomas's demands," and voicing opposition to the voting system, and that she violated the County's instruction not to speak with media. (ECF No. 44 at pp. 14–15). The Opposition provides even more descriptions, such as "First Amendment claims," "whistleblowing activity," and "conflict" with other departments. (ECF No. 45 at p. 21 ln, 2, p. 24 lns. 14–15). Burgess hangs the causation element by a thread, relying on temporal proximity. *Id.* at pp. 22–24.

Burgess unpersuasively argues that Rule 8 allows her "alternative" nondiscriminatory alleged reasons for adverse actions. *See* (ECF No. 45 at p. 24 lns. 11–15). Rule 8(d)'s liberality for pleading alternate or inconsistent theories or claims "has its limits, and "[a] pleader may assert contradictory statements of fact only when legitimately in doubt about the facts in question." *Total Coverage, Inc. v. Cendant Settlement Servs. Grp., Inc.*, 252 F. App'x 123, 126 (9th Cir. 2007). Also, claims are not alternative when they expressly incorporate all allegations. *See, e.g., Maloney v. Scottsdale Ins. Co.*, 256 F. App'x 29, 31 (9th Cir. 2007) ("The inconsistent allegations…were not pleaded in the alternative; they were expressly incorporated into each cause of action."); *Bondit LLC v. Hallows Movie Inc.*, No. 2:19-cv-09832-SB-RAO, 2020 WL 7775619, at *2 (C.D. Cal. Nov. 23, 2020) (incorporating allegations "into all the complaint's causes of action" is "not alternative pleading"); *see also Burke v. Soto*, No. 2:16-CV-01311-KJM-AC, 2017 WL 4811832, at *5 (E.D. Cal. Oct. 24, 2017) (dismissing disability discrimination claim, taking into account liberal alternative pleading, because Plaintiff's conclusions were unsupported and contradictory). "But Rule 8(d) does not excuse a plaintiff from pleading facts to support each of the alternative legal theories she is pressing." *Hendon v. Kamtek, Inc.*, 117 F. Supp. 3d 1325, 1333 (N.D. Ala. 2015) (analyzing Title VII and ADEA). In *Hendon*, the court dismissed a discrimination

claim because, by alleging a "separate proscribed contributing motivation, [plaintiff] concedes that age was not the but-for reason for her termination." *Id.* at 1334.

Here, Burgess includes legitimate reasons that entirely contradict but-for causation, are not plead in the alternative, and are disconnected from her existing claims. Burgess incorporates all allegations into her ADAAA claims. (ECF No. 10 at ¶170, ¶181, ¶202, ¶215). More importantly, there are no "whistleblower" or "First Amendment" claims in the FAC. Even if there were, and alleged in the alternative, Burgess still provides other legitimate nondiscriminatory reasons for any adverse action. Adverse actions resulting from Burgess's refusal to report to ACM Thomas, alleged refusal to violate policies on system access, her job performance, poor relations with others, and not complying with ACM Thomas's demands would each negate but-for causation arising out of a disability disclosure.

Moreover, the Opposition includes argument and exhibits that further negate Burgess's temporal proximity theory. "An alleged adverse action which predates the alleged protected activity cannot serve as the basis for a retaliation claim." *Brown v. Jewell*, No. 16-cv-637, 2017 WL 772140, at *2 (E.D. Cal. Feb. 28, 2017). Burgess includes numerous examples of being alienated, questioned for overtime use, and micromanaged beginning Spring 2024. (ECF No. 45 at pp. 4–5). The Opposition contains a County Board meeting Staff Report dated August 15, 2024, proposing a Juris Doctor requirement for the ROV position. (ECF No. 45-4). It also contains August 20, 2024 meeting minutes for that proposal. (ECF No. 45-1 at p. 25, 27). Each preceded the September 2024 disclosure that Burgess experienced "stress and anxiety caused by the job," or September 20, 2024 disclosure of stress, anxiety, and high blood pressure. (ECF No. 10 at ¶61, ¶108).

Moreover, to the extent temporal proximity exists, the FAC and EEOC charges provide alternative legitimate nondiscriminatory reasons including failing to comply with ACM Thomas's demands, "for coming forward regarding specific voting issues," "several issues regarding her job performance," she "exercised her [F]irst [A]mendment right," and that she spoke to national media regarding the ROV despite the County's contrary

instruction. *Id.* at ¶¶138–39, ¶¶148–49, p. 30 lns. 1–5, p. 29 lns. 23–26; (ECF No. 10-1 at p. 6); (ECF No. 44-8 at p. 1); (ECF No. 44-9 at p. 1) The incorporated-by-reference email to Burgess further identifies issues such as the unofficial ballot box, failure with voter list deactivations, providing incorrect information, and excessive overtime as more non-discriminatory reasons. (ECF No. 10 at ¶¶138–39); (ECF No. 44-4 at pp. 3–4).

Dismissal with prejudice is appropriate as Burgess cannot plausibly allege causation where her FAC identifies nondiscriminatory reasons for adverse employment actions. *See Kelly v. Town of Abingdon, Virginia*, 90 F.4th 158 (4th Cir. 2024).

### B. THE FAILURE TO ACCOMMODATE THEORY FAILS AS A MATTER OF LAW.

The Motion demonstrates that the failure to accommodate theory for discrimination fails because even if Burgess was disabled and qualified, the County reasonably accommodated her with paid leave. (ECF No. 44 at pp. 16–17). She argues she plausibly alleged the theory because the County did not engage in dialogue and instead placed her on leave. (ECF No. 45 at pp. 14–17). She argues she was not presented with FMLA leave, but there is no FMLA claim.[3] *Id.*; (ECF No. 10). Burgess misconstrues a case holding, which dismissed a reasonable accommodation theory because plaintiff did not plausibly allege he was qualified, disabled, or otherwise allege a failure to accommodate. *Elias v. Wynn Las Vegas, LLC*, No. 2:23-CV-02111-ART-BNW, 2025 WL 2687066, at *6–7 (D. Nev. Sept. 18, 2025). *Elias* also noted, "a leave of absence for medical treatment may be a reasonable accommodation under the ADA." *Id.* at 7. The EEOC's Guidance further states, "[a]n employer does not have to provide an employee with a new supervisor as a reasonable accommodation." EEOC Compliance Manual, No. 915.002, 2002 WL 31994335, at *24. Moreover, dismissal with prejudice is warranted where plaintiff alleges the employer accommodated her, even if the accommodation was not of her choosing. *Koltys v. Berryhill*,

---

[3] The FAC alleges not providing an FMLA option and forcing Burgess to use accrued sick and vacation leave. (ECF No. 10 at ¶185). It is possible Burgess misunderstands the FMLA, which allows employees to take unpaid job-protected leave. 29 U.S. C. § 2612 (c)–(d). It is not its own paid leave, but employers may allow or *require* use of accrued paid vacation or sick leave during an employee's FMLA leave. 29 U.S. C. § 2612 (d)(2).

No. 2:17-CV07078-ABJ-PRX, 2019 WL 13254073, at *4 (C.D. Cal. Jan. 9, 2019).

Here, even if Burgess plausibly alleged disability and qualification, the Court should dismiss with prejudice her failure-to-accommodate discrimination theory. The FAC shows that the County interacted with her requests, informing her the County was "going a different route," her best option was leave, informing her the Deputy ROV position was not available, and provided paid leave. (ECF No. ¶118–19, ¶125–26). Notably, providing paid leave was a reasonable accommodation as a matter of law. *Koltys*, 2019 WL 13254073, at *4. Dismissal with prejudice is appropriate because Burgess was accommodated.

### C. THE RETALIATION CLAIM SHOULD BE DISMISSED WITH PREJUDICE.

#### 1. Partial Dismissal Based on Lack of Protected Activity.

The Motion shows that dismissal in part on the retaliation claim is warranted where it is based on *unprotected* activity of opposing various election matters, personnel management, and stating she was ready to return to work. (ECF No. 44 at p. 17). The Opposition does not specifically oppose this point, instead arguing the accommodation request was a protected activity. (ECF No. 45 at pp. 17–18). Burgess accuses the County of "misstat[ing] the law," but the County did not argue an accommodation request is not a protected activity. *Id.*; (ECF No. 44 at p. 17). The Court should dismiss the retaliation claim with prejudice where it arises out of the unprotected activities of opposing various election matters, personnel management, and Burgess's stated readiness to return to work. *See* LR 7-2(d).

#### 2. Burgess Cannot Plausibly Allege But-For Causation in Retaliation.

As with the discrimination claims, the FAC and Opposition fail to connect the dots between a protected activity and an adverse employment action. The Opposition combines its causation argument with the discrimination claims, which identify unrelated reasons for adverse actions including raising concerns regarding the voting system, whistleblowing, speaking to national media against the County's instruction, "First Amendment claims," and "conflict with other departments." (ECF No. 45 at p. 8 ln. 28, p. 9 ln. 1, p. 21 ln. 1, p. 24 lns. 14–15). She also argues the County's proposed ROV reclassification with Juris Doc-

tor requirement was retaliatory, even though the August 2024 proposal predated any September 2024 ADAAA protected activity. *See id.* at 9 ln. 3–7. The County incorporates its causation arguments, including Rule 8, set forth in the discrimination claim analysis above.

The Court should dismiss the Third Claim for Relief with prejudice. By alleging and arguing other bases for causation, Burgess does not and cannot plausibly allege but-for causation for ADAAA retaliation. *See Skinner v. Newmont Mining Corp.*, 2:18-CV-01787-KJD-VCF, 2019 WL 3554705, at *4 (D. Nev. Aug. 2, 2019). Amendment would be futile.

### 3. The Retaliation Claim Cannot Recover Damages.

The Motion argues the retaliation claim should be dismissed to the extent it seeks damages, because only equitable relief is permitted. (ECF No. 44 at p. 19). The Opposition is silent on this. *See* (ECF No. 45). Thus, if any portion of the retaliation is not dismissed with prejudice, the Court should dismiss it to the extent it seeks damages. *See* LR 7-2(d).

### D. THE FOURTH CLAIM UNDER ADA TITLE II SHOULD BE DISMISSED.

The Motion shows that the ADA Title II claim fails as it is inapplicable to employment. (ECF No. 44 at p. 19–20). The Opposition does not contend with this. *See* (ECF No. 45). Thus, the Fourth Claim should be dismissed with prejudice. *See* LR 7-2(d).

### E. THE IIED CLAIM SHOULD BE DISMISSED WITH PREJUDICE.

The Motion establishes that Burgess did not plausibly allege an IIED claim. (ECF No. 45 at pp. 20–21). The Opposition argues extreme and outrageous conduct but does not address pleading deficits with the County's lack of intent, extreme or severe distress, and causation. (ECF No. 44 at pp. 24–25). Workplace investigations and termination are not extreme or outrageous. A statement that Burgess was on leave for stress, or "disparaging her," likewise falls short of extreme and outrageous conduct. *See Gomez v. City of Doral*, No. 21-11093, 2022 WL 19201, at *7–8 (11th Cir. Jan. 3, 2022) (affirming dismissal of IIED claim where a mayor publicly disparaged officer, wrongly accused her of misconduct, and lodged a complaint causing a tracker placement on her police car). Moreover, Burgess fails to plausibly allege intent, extreme distress, or causation. *See* (ECF No. 10). Dismissal with

1 prejudice is warranted because she does not and cannot plausibly allege IIED.

### F. THE DEFAMATION AND FALSE LIGHT CLAIMS ARE NOT VIABLE.

The Motion shows that the Defamation and False Light claims should be dismissed with prejudice because they are based on truthful statements with no plausible allegation of malice, and the statements are otherwise subject to the Official and Reply privileges. (ECF No. 44 at pp. 21–23). Burgess does not dispute she was a public official or that actual malice is required. *See* (ECF No. 45 at pp. 25–26). However, she attempts to transmute the County's two narrow media statements into broader "implications" and "medical" disclosures. *See id.* The Opposition still does not identify any materially false statement. *See id.* Burgess does not contend with the FAC's admissions that would support implications of her incompetence such as failing to uphold ROV legal duties with voter deactivation, her conflict with ACM Thomas, and friction with other departments. *See id.* The Opposition further treats the Official and Reply privileges as automatically unavailable, but the FAC does not demonstrate their inapplicability. *See id.* Meanwhile, the FAC shows the media statements were official County statements *and* the second was in response to Burgess's own media statements. Ultimately, Burgess does not rescue her claim because she does not confront the truthfulness defect. False light requires a *false* portrayal, not merely an unfavorable one. The "implication" theory stretches reality and the FAC, falling far short of stating viable defamation or false light claims. The Opposition confirms that no amendment can cure the defects, and dismissal with prejudice is warranted for the media statement-based claims.

Lasty, the Motion shows that the County's statement to vendors that Burgess lacked authority to execute contracts cannot form a viable defamation claim because as a matter of law, that statement is true. (ECF No. 44 at p. 22). The Opposition does not address this portion of her claim, warranting dismissal with prejudice. *See* (ECF No. 45); LR 7-2(d).

### G. THE FRAUDULENT MISREPRESENTATION CLAIM FAILS.

The Fraudulent Misrepresentation fails because it was neither plausibly nor

-11-

particularly plead, and the County's representation cannot plausibly be considered false when it was made. (ECF No. 44 at pp. 23–24). The Opposition argues the pleading was sufficient, and the County's intent is a factual question not suitable for this Motion, despite the FAC omitting allegations of intent. *See* (ECF No. 45 at pp. 27–28). Nevertheless, there is no particularity here. To date, the nature of the "due process employee" representation (a term the County does not use) is unclear and unavailing of any relief sought. To add to the confusion, Burgess does not allege who made this representation or exactly when. Applicable law regarding the positions further show any reliance on a "due process position" is unjustifiable. The false nature of any right to return to ROV is also implausible: the FAC shows the County initially believed Burgess was qualified, logically showing the County's truthfulness at the time of any such representation. Dismissal with prejudice is appropriate.

### H. THE CIVIL CONSPIRACY CLAIM SHOULD BE DISMISSED WITH PREJUDICE.

The Motion shows the Civil Conspiracy claim should be dismissed because the County cannot conspire with itself. (ECF No. 44 at p. 24). Burgess argues the intracorporate conspiracy doctrine does not apply where employees act outside their scope, conspired with third parties, and can thus be individually liable. (ECF No. 45 at pp. 27–28). Yet, the County is the only Defendant here, and there are no allegations supporting individual liability of any potential defendant or third party. *See* (ECF No. 10). The claim only alleges actions by the County and is stated against the County. *Id.* at p. 40. The Court should dismiss the civil conspiracy claim with prejudice as amendment would be futile.

### IV.  CONCLUSION

The Court should dismiss the FAC entirely and with prejudice because the Opposition confirms that the claims are not viable and amendment would be futile.

Dated this 6th day of March 2026.

By /s/ Lindsay L. Liddell
LINDSAY L. LIDDELL
Deputy District Attorney
ATTORNEY FOR WASHOE COUNTY

**CERTIFICATE OF SERVICE**

Pursuant to FRCP 5(b), I certify that I am an employee of the Office of the District Attorney of Washoe County, over the age of 21 years and not a party to nor interested in the within action. I certify that on this date, the foregoing was electronically filed with the United States District Court. Electronic service of the foregoing document shall be made in accordance with the Master Service List as follows:

HAWAH SAFA AHMAD

Dated this 6th day of March, 2026.

/s/ S. Haldeman
S. Haldeman