LINDSAY L. LIDDELL
Deputy District Attorney
Nevada State Bar Number 14079
One South Sierra Street
Reno, NV  89501
lliddell@da.washoecounty.gov
(775) 337-5700
ATTORNEY FOR WASHOE COUNTY

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

\* \* \*

CARI-ANN P. BURGESS,

        Plaintiff,

vs.

WASHOE COUNTY,

        Defendant.

_____/

Case No. 3:25-cv-00065-MMD-CLB

**OPPOSITION TO PLAINTIFF'S MOTION TO STRIKE EXHIBITS TO DEFENDANT'S RENEWED MOTION TO DISMISS**

**(ECF No. 49)**

Defendant Washoe County (the "County") hereby files this Opposition to Plaintiff's Motion to Strike Exhibits to Defendant's Renewed Motion to Dismiss (ECF No. 49). This Opposition is based on Federal Rule of Civil Procedure Rule 12(f), the following Memorandum of Points and Authorities, and all pleadings and papers on file herein.

### MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Almost a month after filing her Opposition to the County's Renewed Motion to Dismiss ("MTD"), Plaintiff Cari Ann Burgess ("Burgess") moves to strike six exhibits attached to the County's MTD. *See* (ECF No. 49); (ECF No. 45). Through the instant Motion, Plaintiff attempts to use a procedurally improper vehicle to file an impermissible surreply to the MTD. She expands on or sets forth arguments that should have been raised in her Opposition. This Motion is solely brought under Federal Rule of Civil Procedure 12 (f) as the legal authority to strike MTD exhibits. However, Rule 12 (f) does not provide authority to strike motion exhibits. On these bases alone, the Court should deny the Motion.

-1-

To the extent that the Court considers the merits of the Motion to Strike, Burgess's incorporation arguments and evidentiary objections do not provide a basis to strike any exhibit. Additionally, as set forth below, each exhibit was incorporated by reference, with some having been verbatim alleged in the First Amended Complaint ("FAC"). Exhibits one through six also each form the basis of several claims alleged in the FAC, and are thus appropriately considered on a Rule 12(b)(6) MTD. Specifically for defamation claims, even if the FAC did not allege its contents, the exhibits demonstrating alleged defamatory content are properly incorporated. Notwithstanding, in the event the Court finds an exhibit is not incorporated, the proper response is to simply not consider it when ruling on the MTD. Even without the exhibits, the MTD demonstrates dismissal with prejudice is warranted for most, if not all claims. The Court should deny the instant Motion to Strike.

## II. LEGAL ANALYSIS

### A. The Motion Should be Denied as an Improper Surreply to the MTD.

"Surreplies are not permitted without leave of court; motions for leave to file a surreply are discouraged." LR 7-3(b). "[A]llowing Plaintiff to file her surreply risks constituting an 'improper attempt to have the last word on an issue' already briefed by the parties." *Evans v. Equifax Info. Servs., LLC*, No. 2:23-CV-00237-MMD-DJA, 2023 WL 4546429, at *3 (D. Nev. July 14, 2023), quoting *Smith v. United States*, Case No. 2:13-cv-00039-JAD-GWF, 2014 WL 1301357, at *5 (D. Nev. Mar. 28, 2014). Motions to strike other motions or portions of a motion after the party opposed that motion, may be construed as improper surreplies. *Perkins v. Panorama Towers Condo. Complex*, No. 2:23-CV-01690-CDS-DJA, 2024 WL 81403, at *2 (D. Nev. Jan. 5, 2024) (construing a motion to strike response to motion as an improper surreply where plaintiff previously filed a separate opposition to the motion); *see also Reynolds v. Nat'l Default Servicing Corp.*, No. 3:16-C-00047-MMD-VPC, 2016 WL 8735671, at *4 (D. Nev. Sept. 23, 2016) ("Plaintiffs' motions to strike are essentially responses to Defendants' Motions, and will be construed as such.").

//

Here, Burgess attempts to file an improper surreply labeled as a "Motion to Strike" exhibits to the MTD. *See* (ECF Nos. 45, 49). The instant Motion sets forth the Rule 12(b)(6) motion standard, confirming that it is attempt to continue litigating the merits of Defendants' MTD. (ECF No. 49 at p. 3, lns. 14–16). The Motion also expands on arguments to disregard MTD Exhibit 1, which Burgess already argued in her Opposition. *See* (ECF No. 45 at p. 10, lns. 1–8); (ECF No. 49 at pp. 4–7). The Motion to Strike is an inappropriate attempt for Burgess to have the last word on the MTD. The Court should decline to consider Plaintiff's procedural and evidentiary arguments regarding the MTD Exhibits because the arguments should have been raised in Burgess's Opposition to the MTD, and they do not serve as a basis to strike MTD Exhibits. Therefore, the Court should deny the Motion to Strike as an improper surreply. L.R. 7-3(b).

**B. The Motion Should be Denied Because Rule 12(f) is Inapplicable.**

"[A] motion to strike is not available to strike material contained in motions and other briefs." *Goodwin v. AT&T*, No. 2:23-cv-01950-GMN-DJA, 2024 WL 2866895, at *2 (D. Nev. June 6, 2024). Federal Rule of Civil Procedure 12(f) provides that "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." A motion to dismiss is not a pleading, and thus "a motion to dismiss may not be the subject of a Rule 12(f) motion." *Lopeti v. All. Bancorp*, No. 11-00200 ACK-RLP, 2011 WL 13233545, at *4 (D. Haw. Nov. 4, 2011); *Sidney-Vinstein v. A.H. Robins Co.*, 697 F.2d 880, 885 (9th Cir. 1983) (holding the trial court erred in striking plaintiff's motion to reconsider because it was not a pleading); *see also Edwards v. Juan Martinez, Inc.*, 2023 WL 7496800, at *2 (D. Nev. Nov. 9, 2023) ("Rule 12(f) motions only may be directed towards pleadings as defined by Rule 7(a); thus motions ... are not subject to Rule 12(f)."), citing *5C Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure* § 1380 (3d ed. 2023); *Thomas v. Bet Sound-Stage Rest./BrettCo, Inc.*, 61 F. Supp. 2d 448, 458 (D. Md. 1999) (denying motion to strike exhibits to motion to dismiss brought under Rule 12(f)).

//

Here, Burgess erroneously claims that "Courts in the Ninth Circuit have applied Rule 12(f) to strike exhibits to motions to dismiss…," citing *Quickie Tie-Down Enters., LLC v. USA Prods. Grp., Inc.*, No. 2:24-CV-00799-DAD-JDP, 2025 WL 83305, at \*9 (E.D. Cal. Jan. 13, 2025). (ECF No. 49 at p. 4 lns. 4–9). <u>This is false and unsupported by *Quickie Tie-Down*, 2025 WL 83305. While the case is a real case, it contains absolutely no analysis of striking exhibits to a motion to dismiss or Rule 12(f)</u>. *Id.* The words "strike," "exhibit," "12(f)," or "12 (f)" do not appear anywhere in the case. *Id.* Instead, case law is clear that Rule 12(f) is inapplicable to motion exhibits and Rule 12(f) motions to strike those exhibits are denied on that basis. *Godhart v. Tesla, Inc.*, No. 2:19-CV-01541-JAD-VCF, 2020 WL 2992414, at \*5 (D. Nev. June 4, 2020), *aff'd*, 855 F. App'x 399 (9th Cir. 2021); *Goodwin*, 2024 WL 2866895, at \*2.

The Court should deny the instant Motion. Burgess exclusively brought her Motion to Strike under Rule 12(f), asking the Court to strike MTD exhibits using Rule 12(f)'s authority to strike. (ECF No. 49 at p. 4). Because the MTD exhibits are not pleadings, Rule 12(f) does not apply. *See Goodwin*, 2024 WL 2866895, at \*2. The Court should deny the Motion because as a matter of law, Rule 12(f) cannot be used to strike an exhibit to a motion. *See id.* The Court should deny the Motion to Strike on this basis alone.

**C. In the Alternative, the Motion Should be Denied Because Exhibits 1–6 Can be Properly Considered on a Rule 12(b)(6) Motion.**

To the extent the Court wishes to consider Burgess's remaining arguments despite its status as an improper surreply and 12(f) providing no authority to strike motion exhibits, the Court should deny the instant Motion. Despite attaching several irrelevant public record exhibits to her own Opposition to the MTD and requesting judicial notice, Burgess now claims Defendant's exhibits are not judicially noticeable nor incorporated by reference. *See* (ECF No. 49); (ECF No. 49); (ECF No. 45 at pp. 10–11); (ECF Nos. 45-1, 45-2, 45-3, 45-4, 45-5, 45-6, 45-7, 45-8, 45-9, 45-10, 45-11). As set forth below, the MTD exhibits one through six can be properly considered as incorporated by referenced, judicially noticed, or both.

//

-4-

Rule 201 requires judicial notice of facts generally known or accurately and readily determined from reliable sources when requested and supplied with the necessary information. F.R.E. 201 (b)–(c). Public records may be judicially noticeable on a motion to dismiss. *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018).

Next, "[u]nlike rule-established judicial notice, incorporation-by-reference is a judicially created doctrine that treats certain documents as though they are part of the complaint itself." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018). This is appropriate where the complaint alleges the document's contents *or* the document forms the basis of a claim. *Id.* "The doctrine prevents plaintiffs from selecting only portions of documents that support their claims, while omitting portions of those very documents that weaken—or doom—their claims." *Id.*

### i. Exhibit 1, the Email Containing the Attached Investigation Report was Appropriately Attached as an Exhibit to the Motion to Dismiss.

Burgess asks the Court to strike MTD Exhibit 1, an email containing an attached investigation report, arguing that it is not incorporated by reference, it is unauthenticated, is inadmissible hearsay, and contains inadmissible legal conclusions. (ECF No. 49 at pp. 4–7). In the MTD, Defendant requested that this Court find that Exhibit 1, and others, were incorporated by reference into the First Amended Complaint ("FAC"). (ECF No. 44 at p. 7, fn. 2); (ECF No. 46 at p. 2).

In the FAC, Burgess chose to allege, verbatim, the contents an email from undersigned counsel to Burgess's counsel that both referenced and contained an attached investigative report. (ECF No. 10 at ¶164). While Burgess argues that she was terminated prior to receiving a copy of the Investigation Report, her FAC includes several allegations referencing the investigation. (ECF No. 10 at ¶¶155–60, ¶164, and ¶¶166–67). She also bases several of her claims in part on the investigation, and Plaintiff's employment termination that followed the investigation report. *Id.* at ¶176, ¶196, ¶210, ¶247, ¶253. She appears to allege a discrimination theory and civil conspiracy theory based on the County pursuing an

investigation without a formal complaint against Burgess and thus did not follow "County protocol." *Id.* at ¶¶166–67, ¶176, ¶253. She also specifically alleged contents of the Report, alleging the report substantiated findings of Burgess's code of conduct violations, and that it reviewed issues beyond the issues set forth in the October 4, 2024 correspondence to Burgess. *Id.* at ¶¶166–67. In doing so, she incorporated the Investigation Report by reference.

Next, Burgess's procedural authentication argument and objection to the underlying circumstances giving rise to the investigation do not warrant striking an exhibit. *See* (ECF No. 49 at pp. 5–6). Authenticity addresses "whether the documents are what the proponent claims." *Lorem Vascular, Pty. Ltd. v. Cytori Therapeutics, Inc.*, No. 18CV815 MMA (MDD), 2018 WL 3388096, at *3 (S.D. Cal. July 11, 2018). An opposing party's objection to redactions or that they did not have access to the documents is "unrelated to their authenticity." *Id.* General objections that an exhibit is not certified or that is contains redactions are not objections that raise "any specific issue regarding [the exhibit's] authenticity." *See U.S. ex rel. Calilung v. Ormat Indus., Ltd.*, No. 3:14-CV-00325-RCJ, 2015 WL 1321029, at *8 (D. Nev. Mar. 24, 2015). A procedural objection regarding lack of an authentication declaration alone does not present a good faith dispute as to an exhibit's authenticity, and thus the court may consider the exhibit in the Rule 12(b)(6) stage without converting the motion if it is incorporated by reference. *See Holak v. Kmart Corp.*, No. 1:12-CV-00304 AWI, 2012 WL 6202298, at *5 (E.D. Cal. Dec. 12, 2012). "An exception to the authentication requirement is warranted 'where the objecting party does not contest the authenticity of the evidence submitted but nevertheless makes an evidentiary objection based on purely procedural grounds.'" *Id.*, quoting *Burch v. Regents of Univ. of Calif.,* 433 F.Supp.2d 1110, 1120–21 (E.D. Cal. 2006).

Burgess does not actually contest the Report or email's authenticity but rather raises the argument that it was not properly authenticated under applicable evidentiary rules. The County is unaware of any good faith basis for disputing the authenticity thereof. It is unclear if Burgess is implying that the County somehow altered the report, or that it is otherwise not

what it purports to be. Burgess does not actually contest the email and Report's authenticity, but rather raises the argument that it was not properly authenticated under applicable evidentiary rules. *See* (ECF No. 49 at pp. 5–6). She also argues "questions remain" as to whether the County followed its internal policy for the investigation, which does not address the issue of whether the email and report themselves are authentic copies. *Id.* The County can certainly provide an authentication declaration for the email and the Report in MTD Exhibit 1 if needed.  Burgess's procedural objection is insufficient to create a genuine contest as to Exhibit 1's authenticity. *Holak*, 2012 WL 6202298, at *5. Thus, the Court may consider the email and Report identified in MTD Exhibit 1.

Lastly, Burgess's objections regarding hearsay and legal conclusions are irrelevant.[1] *See* (ECF No. 49 at pp. 6–7). At the motion to dismiss and/or strike stage, evidentiary objections are "premature." *See Lodi Mem'l Hosp. Ass'n, Inc. v. Am. Pac. Corp.*, 2014 WL 5473540, at *2 (E.D. Cal. Oct. 20, 2014). Burgess's arguments regarding evidentiary rules applicable to trial and jury presentation are not bases to strike the email and Investigation Report at the motion to dismiss stage. *See id.*  There is no potential for jury confusion, and the Report is not the subject of a pre-trial evidentiary motion in limine. For purposes of the MTD under Rule 12(b)(6), Burgess's evidentiary arguments do not establish any sufficient basis to either strike or ignore the email and Investigation Report exhibit.

As this Court is well-aware, if MTD Exhibit 1 is incorporated by reference into the FAC, it may consider it without converting the Motion to Dismiss to a Motion for Summary Judgment. If the Court does not find that the report is incorporated by reference, then the Court may simply decline to consider that exhibit when ruling on the MTD. If the Court

---

[1] Burgess asserts, without any evidence, that the County "does not dispute" that the Investigation Report "is now being used by prospective employers to deny her employment." (ECF No. 49 at p. 6 lns. 25–28). To be clear, the County is unaware of any specific instance where the MTD Exhibit 1 was used to deny Burgess's employment with an entity other than the County. Moreover, the County is unaware of any specific instance where it informed Burgess that it did not dispute that assertion. This is disputed.

-7-

finds Exhibit 1 is not incorporated by reference, it should simply decline to consider it rather than converting the motion or striking the exhibit. Regardless, Burgess's Motion to Strike should be denied as to Exhibit 1.

### ii. Email Correspondence between the Parties, Exhibits 2 and 4, are Proper.

MTD Exhibits 2 and 4 are copies of email correspondence between the County and Burgess. (ECF Nos. 44-2 and 44-4). Exhibit 2 is the September 25, 2024 email string between Burgess and the County's Human Resources ("HR") Director where Burgess requested leave, and the HR Director instructed Burgess not to discuss her leave or any work-related matter with anyone inside or outside the County to avoid disruptions to operations and avoid detrimental impact on employees. (ECF No. 44-2 at p. 1). Exhibit 4 contains a September 30, 2024 email from Burgess to the HR Director wherein Burgess stated she "received a clean bill of health to return to work," attached a nurse practitioner's letter, and inquired about picking up her badge and keys to return to work. (ECF No. 44-4 at p.p. 1–2). Exhibit 4 also contains the County's October 4, 2024 email response, wherein the HR Director attached a letter summarizing interactions with Burgess, informing Burgess that she was insubordinate in ignoring the instruction not to speak to staff, that Burgess was to remain on leave pending review of several issues including Burgess's plans for illegal "unofficial drop boxes at select churches, failing to complete voter registration deactivations, poor planning and incorrect statements regarding State voter signature cards, and excessive overtime use. *Id.* at pp. 1, 3–4. She was also informed that her "ability to carry out [her] duties is in question," and that if Burgess decided to remain on paid leave, she was "to refrain from speaking to the media outside parties, Washoe County staff, or Commissioners." *Id.* at p. 4. She was further "directed to not make disparaging remarks about Washoe County to avoid any disruption to operations and to avoid having a detrimental impact on [her] coworkers." *Id.* Burgess moved to strike these exhibits arguing they are not incorporated by reference and are not authenticated.

//

First, Burgess's procedural authentication objections are inadequate and do not provide a basis to strike an exhibit. As set forth above, a procedural objection to lack of formal authentication does not create a dispute as to authenticity. *See Lorem,* 2018 WL 3388096, at *3. Moreover, "[e]ven if a party fails to authenticate a document properly or to lay a proper foundation, the opposing party is not acting in good faith in raising such an objection if the party nevertheless knows that the document is authentic." *Fenje v. Feld,* 301 F.Supp.2d 781, 789 (N.D.Ill. 2003). The MTD Exhibits 2 and 4 are copies of email correspondence *between the County and Burgess*. (ECF Nos. 44-2, 44-4). Burgess has no good faith basis to dispute the authenticity, as she could also authenticate whether they are true and correct copies of the emails she sent and received. *See id.* The County could likewise easily produce authentication declarations if needed. Burgess's objection regarding authentication is deficient and does not otherwise present authority to strike an exhibit.

Next, Exhibits 2 and 4 are incorporated into the FAC by reference, both alleged in the FAC and forming the basis of several claims. As the Ninth Circuit explained, incorporation by reference prevents selectively alleging document contents while omitting portions that weaken or eliminate claims. *Khoja*, 899 F.3d at 1002. For example, in a disability case, a court found that email correspondence between defendant and plaintiff regarding plaintiff's disability accommodation was incorporated by reference into the complaint. *Walters v. Walden Univ., LLC*, No. 15-5651 RJB, 2015 WL 6550754, at *2 (W.D. Wash. Oct. 28, 2015).

Exhibit 2 is alleged in the FAC, referencing the September 25, 2025 email from Burgess to the HR Director, and that she was instructed not to speak to staff. (ECF No. 10 at ¶¶125, 130. It also forms the basis of several claims: Burgess alleges disability discrimination through forced paid leave, retaliation through paid leave, and retaliation through instructing Burgess not to speak to media or staff. *Id.* at ¶176, ¶187, ¶¶208–09. These claims necessarily depend on the contents of Exhibit 2, and thus it is incorporated by reference.

Exhibit 4 is similarly incorporated by reference. Burgess specifically alleged the contents of her September 30, 2024 email and attached medical clearance letter. (ECF No. 10 at ¶133). She then alleged a summary of the County's October 4, 2024 response, along with alleging a direct quote regarding the instruction not to speak to media. *Id.* ¶¶138–39. Taken together, the Exhibit 4 email string also forms the bases of several claims: one theory of disability discrimination includes refusing to allow her to return to work after being medically cleared "for not complying with Ms. Thomas's demands," alleging she did not have notice of an investigation, retaliation based on the same theory, discrimination in threatened retaliation if Burgess spoke to the media, commissioners, or staff, and defamation by initiating an investigation in response to Burgess speaking to media. *Id.* at ¶176, ¶¶195–96, ¶209, ¶235. Therefore, Exhibit 4 is incorporated by reference and properly considered on a Rule 12 (b)(6) Motion.

The Court should deny the Motion to Strike as to MTD Exhibits 2 and 4. These exhibits form the basis of several liability theories, and serve to provide a complete picture of the circumstances, rather than relying on Burgess's cherry-picked recitation of their contents.

### iii. The County's September 25, 2024 Media Statements, MTD Exhibit 3, Are Incorporated by Reference and Judicially Noticeable.

Exhibit 3 to the MTD are copies of the County's September 25, 2024 media statement following Burgess's leave. (ECF No. 44-3). The FAC alleges the statement verbatim. (ECF No. 10 at ¶132). Yet, Burgess moves to strike the exhibit, claiming it is not incorporated by reference and is not accompanied by an authentication declaration. (ECF No. 44 at p. 7).

Even if a document is not alleged or referenced in a complaint, it can be incorporated by reference where it forms the basis of a claim. *Khoja*, 899 F.3d at 1002. For a defamation claim, it is proper to incorporate-by-reference a copy of the alleged defamatory material. *Id.* For example, a screenshot of a social media "tweet" was properly considered on a Rule 12(b)(6) motion where the complaint described the "tweet," and it formed the basis of a defamation claim. *Clifford v. Trump*, 818 F.Appx. 746, 749, n. 4 (9th Cir. 2020).

Here, the MTD Exhibit 3 is incorporated by reference as both alleged in the FAC and forming the basis of several claims. The media statement includes information that Burgess "expressed to County Manager Brown that she was experiencing stress related health issues. At his recommendation, she has requested a leave of absence for self-care." (ECF No. 10 at ¶132). In continues on to say that the County is committed to Burgess's health and well-being, and "running a smooth and fair election is a top priority for the County. The [ROV] office is prepared and confident for the upcoming election in November." *Id.* Additionally, Burgess alleges one theory of disability discrimination in publishing "information on [Burgess's] disability… to retaliate for her coming forward regarding specific voting issues." *Id.* at ¶176. She bases her Second claim for discrimination in part specifically on the County's September 25, 2024 media statement. *Id.* at ¶184. She bases her retaliation claim in part on the statement, referring to it as an "unauthorized disclosure[] to the public about [Burgess's disability]." *Id.* at ¶193. Her Intentional Infliction of Emotional Distress ("IIED") and defamation claims are similarly based in part on the September media statement as an alleged "authorized disclosure of [Burgess's] disability." *Id.* at ¶221, ¶228.

Moreover, like the analysis set forth above, Burgess's procedural objection regarding lack of authentication declaration is insufficient to create a good faith dispute as to the document's authenticity. *Holak*, 2012 WL 6202298, at *5.

The Court should deny the Motion to Strike as to MTD Exhibit 3. The objections do not provide a basis to strike. Exhibit 3 shows that the County responded to several media inquiries with the statement that Burgess alleges in full in the FAC. (ECF No. 10 at ¶132); (ECF No. 44 at p. 7). These identical statements also form the basis of several claims. Thus, they are incorporated by reference and can be properly considered on the MTD.

**iv. The News Articles, Exhibits 5 and 6, are Incorporated by Reference and Judicially Noticeable**.

Burgess moves to strike MTD Exhibits five and six claiming the County's use exceeds permissible judicial notice. (ECF No. 49 at pp. 7–8). Exhibit 5 is an Associated Press ("AP")

-11-

article and Exhibit 6 is a ProPublica national news article, both related to the underlying circumstances of this case. *See* (ECF Nos. 44-5, 44-6). Burgess incorrectly claims the County cited the news articles for their truth. (ECF No. 49 at p. 8).

The AP article, MTD Exhibit 5, is dated October 23, 2024, and titled "The top election official in a politically crucial Nevada county says she was forced out." (ECF No. 44-5 at p. 1). The AP article contains Burgess's statements to AP that she disputed the County's statement that Burgess was on leave for stress issues. *Id.* It also contains Burgess's statements that she refused personnel changes involving assigning elections staffers to a different department while keeping them working inside the ROV, was previously receiving "high praises," that she tried to return to work with a doctor's note clearing her, and that she was told not to speak with reporters. *Id.* at pp. 2, 5–6. The AP article contains the County's September 25, 2024 media statement that Burgess requested leave and the County was "committed to running a smooth and fair election." *Id.* at pp. 3–4. The AP article also mentions that the County is a swing county in a swing state "where this year's presidential election contest is expected to be narrowly decided, and the County has been "roiled for four years by people pushing election conspiracy theories." *Id.* at p. 1.

The ProPublica article, MTD Exhibit 6, is dated November 2, 2024,[2] and is titled "Nevada Says It Worked Out the Kinks in Its New Voter System in Time for the Election, but Concerns Remain." (ECF No. 44-6 at p. 1). The article discusses the State's new voter registration system, and contains Burgess's statements that she believed shortcomings in the system "have not been fully addressed," that "she plans to file a whistleblower complaint soon asking for federal oversight of Nevada's future elections," that issues "were so daunting, they likely couldn't be fixed" before early voting, "incorrect voter data wound up in the system," "the state rushed implementation, potentially creating a litany of problems as

---

[2] The ProPublica article was published three days before the 2024 presidential election.

ballots are cast," "the new system lacked safeguards meant to keep noncitizens off the voter rolls," that Burgess is worried this would "hurt this election," and that Burgess is "worried that people who should not be voting are voting," that Burgess was forced out and foresees her "probable termination," and contains quotes from the County's email to Burgess regarding her leave identified in MTD Exhibit 2. *Id.* at pp. 1–2, 4. The article also summarizes the County's media statements that Burgess was on administrative leave "facing charges of insubordination and poor job performance." *Id.* at p. 1.

The "Court may take judicial notice of adjudicative facts appearing in newspapers." *Giarrusso v. Nevada State Bd. of Med. Examiners*, No. CV-S050640-RLH-PAL, 2006 WL 8441893, at *11 (D. Nev. Jan. 26, 2006) (taking judicial notice of article containing defendants' allegedly defamatory statements). In *Knievel v. ESPN*, the Ninth Circuit affirmed incorporation by reference of web pages providing context to an image and caption that the plaintiff alleged was defamatory. 393 F.3d 1068, 1076 (9th Cir. 2005). *See also Miller v. Sawant*, 18 F.4th 328, 335, n.5 (9th Cir. 2021) (taking judicial notice of news articles pursuant to F.R.E. 201).

In *Eliott v. Lions Gate Ent. Corp.*, video files of the NXIVM cult documentary series were incorporated by reference into a complaint and noticeable on a 12(b)(6) motion where plaintiff alleged defamation per se, defamation by implication, appropriation of likeness, false light, and intentional infliction of emotional distress. 639 F. Supp. 3d 1012, 1020–21 (C.D. Cal. 2022). The video files gave rise to plaintiff's allegations and were materials on which the complaint necessarily relied. *Id.* The court then reviewed and analyzed the video files and found that the statements regarding plaintiff were true and there were no reasonable defamatory implications. *Id.* at 1026–27. Based on the content of the video files, the court dismissed all causes of action with prejudice and without leave to amend. *Id.* at 1029.

Here, the news articles form the basis of several claims in this case. Burgess's IIED claim alleges that one extreme or outrageous act was the County's "unauthorized disclosure" of Burgess's "disability," and "disparagement" of Burgess. (ECF No. 1 at ¶221). The

defamation claim alleges two defamatory acts, one being that the County "intentionally informed the media via public statement that [Burgess] took personal leave due to her disability with the intent to discredit [Burgess] and present her as being unable to handle the duties and responsibilities of her [ROV] position." *Id.* at ¶228. The defamation per se claim alleges that the County "made negative statements in writing and to the media about [Burgess] indicating she was on administrative leave pending investigation," initiated an investigation into Burgess in retaliation for her speaking to the media (demonstrated in Exhibits 5 and 6), and that the County's published statements about her work ethic harmed her ability to find employment. *Id.* at ¶235.

Burgess further bases parts of her disability discrimination claim on allegations that the County "openly published information on [Burgess's] disability in an attempt to adversely impact [Burgess's] future job prospects and maligned her character for coming forward regarding specific voting issues," and that the County's disparagement Burgess's "disability in the media and misrepresentation that there was an open investigation against [Burgess] for insubordination resulted in the development of new work-induced disabilities." (ECF No. 10 at ¶176, p. 30 lns. 1–9).

Additionally, Burgess alleges the circumstances behind these articles, and the articles themselves. *See* (ECF No. 10 at ¶29, ¶145, ¶148, ¶149). The FAC explains that in August 2024, Burgess was working on an approved AP interview. *Id.* at ¶29. She alleges that on October 4, 2024, the County informed her that if she chose to remain on paid leave, she was to refrain from speaking to media, staff, and others. *Id.* at ¶139. Then, the AP requested comment from Burgess regarding her leave. *Id.* at ¶145. Despite Burgess still receiving paid leave, she provided comment to the AP claiming "she did not willingly take personal leave." *See id.* at ¶143, ¶148. After that, ProPublica published a "follow-up" piece to the AP article. *Id.* at ¶149.

//

//

-14-

The Court should deny the instant Motion as to the news articles, MTD Exhibits five and six. The news articles may be properly considered on the MTD without converting it to a summary judgment motion, as they are both subject to judicial notice and incorporated by reference into the FAC. The County did not offer MTD Exhibits 5 and 6 for their truth as to Burgess's statements, which the County disputes except to the extent Burgess acknowledges she was in fact on leave. The Court may review the County's statements contained in the articles to assess whether they could plausibly form the basis of the claims set forth above. Moreover, the Court should deny the Motion because Burgess's motion addresses whether the Court should consider the exhibits and does not provide a basis to wholly strike them.

### III.    CONCLUSION

The Court should deny Plaintiff's Motion to Strike because it is an improper surreply and Rule 12(f) is unavailable to strike exhibits to a motion. To the extent the Court considers the merits of the Motion to Strike, it should deny the Motion. Burgess's objections do not provide a basis to strike an exhibit. Additionally, as set forth above and in the MTD briefing, each exhibit is incorporated by reference into the FAC or otherwise judicially noticeable. The exhibits are alleged in the FAC, some alleged verbatim. The exhibits also form the bases of several claims in the FAC and are thus integral to it. Notwithstanding, in the event the Court determines any exhibit is not properly considered on the MTD, it should simply omit that exhibit from the Court's analysis in ruling on the MTD. Even without exhibits 1-6, the Renewed Motion to Dismiss shows that the claims are not viable and should be dismissed with prejudice. *See* (ECF No. 44).

Dated this 8th day of April 2026.

By    /s/ Lindsay L. Liddell
LINDSAY L. LIDDELL
Deputy District Attorney
One South Sierra Street
Reno, NV  89501
lliddell@da.washoecounty.gov
(775) 337-5700
ATTORNEY FOR WASHOE COUNTY

**CERTIFICATE OF SERVICE**

Pursuant to FRCP 5(b), I certify that I am an employee of the Office of the District Attorney of Washoe County, over the age of 21 years and not a party to nor interested in the within action. I certify that on this date, the foregoing was electronically filed with the United States District Court. Electronic service of the foregoing document shall be made in accordance with the Master Service List as follows:

HAWAH SAFA AHMAD

Dated this 8th day of April, 2026.

By /s/ S. Haldeman
S. Haldeman

-16-