LINDSAY L. LIDDELL
Deputy District Attorney
Nevada State Bar Number 14079
One South Sierra Street
Reno, NV 89501
lliddell@da.washoecounty.gov
(775) 337-5700
ATTORNEY FOR WASHOE COUNTY

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

CARI-ANN P. BURGESS,

       Plaintiff,

     vs.

WASHOE COUNTY,

       Defendant.

_____/

Case No. 3:25-cv-00065-MMD-CLB

**OPPOSITION TO PLAINTIFF'S MOTION TO DISQUALIFY THE WASHOE COUNTY DISTRICT ATTORNEY'S OFFICE FROM REPRESENTING DEFENDANT IN THIS ACTION**

**(ECF No. 51)**

Defendant Washoe County (the "County") hereby files this Opposition to Plaintiff's Motion to Disqualify the Washoe County District Attorney's Office from Representing Defendant in this Action (ECF No. 51). This Opposition is based on the following Memorandum of Points and Authorities, the attached exhibits, and all pleadings and papers on file herein.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

Burgess's Motion to Disqualify relies on objectively fabricated facts, misstates ethics Rule 3.7, and omits controlling and dispositive Nevada case law on the alleged conflicts-of-interest issue. Much of the Motion is based on Burgess's assertion that Deputy District Attorney Brandon Price ("DDA Price") is undersigned counsel Deputy District Attorney Lindsay Liddell's ("DDA Liddell") "supervisor." The statement is unsupported and false. Burgess goes on to accuse undersigned counsel of withholding this "key information." DDA

Price does not and has never supervised undersigned counsel. Burgess then attempts to expand Rule 3.7, which prohibits a lawyer from acting as both counsel and witness only *at trial*, into a rule prohibiting attorney representation at any stage of a case and a rule that is imputed to a firm. Those expansions do not exist in either the rule's text or related case law. Burgess's argument to disqualify the District Attorney's Office based on apparent Rule 3.7 witness conflicts lacks any good faith factual or legal basis.

Burgess's argument concerning a concurrent conflict of interest is likewise faulty. Any prior representation of Burgess was solely in her official capacity as Registrar of Voters ("ROV"). The Nevada Supreme Court, reviewing a disqualification issue similar to that raised here, opined that official capacity lawsuits are against the entity rather than the employee in their personal capacity. *State ex rel. Cannizzaro v. First Jud. Dist. Ct. in & for Cnty. of Carson City*, 466 P.3d 529, 532 (Nev. 2020). The Nevada Supreme Court reversed a disqualification order, and found that the government entity attorneys may represent the entity in a suit brought by plaintiff employees, and that the plaintiff employees lacked standing to assert a concurrent conflict of interest. *Id.* at 534. Burgess's Motion fails to disclose or reckon with this case, which is entirely fatal to her conflicts-of-interest argument.

Similarly, Burgess provides a speculative, inflammatory argument that the District Attorney and his entire office somehow have a personal interest creating a personal conflict warranting disqualification. Burgess was never employed by the District Attorney's Office, undersigned counsel has no personal interest in taking any specific position in this case, and the District Attorney has not shown any special interest in this case, nor has he been involved in any case strategy. Burgess's argument ignores Professional Conduct Rule 1.2 (b)'s directive that a lawyer's representation of a client does not constitute endorsement of the client's views or activities. Burgess's conjecture on a supposed personal conflict falls far short from demonstrating one.

The Court should deny the Motion to Disqualify. The Court should also consider exercising its inherent authority and authority under 28 U.S.C. Section 1927 to sanction

Burgess and her counsel for filing the Motion to Disqualify based on false statements and misstatements of applicable rule and law, which would have been easily verifiable prior to filing the Motion. The Motion to Disqualify appears to be a bad faith effort, filed with no factual or legal legitimate basis over a year after this case was initiated.

## II. BACKGROUND FACTS

### A. The Washoe County District Attorney's Office Structure.

The Washoe County District Attorney is Christopher Hicks ("DA Hicks"), who is the public prosecutor as a matter of law. NRS 252.080; Ex. 1 at ¶2.  Nevada law also ascribes civil in-house counsel duties to the District Attorney, including defending lawsuits against the County and providing legal opinions to the County and staff. NRS 252.110(2); NRS 252.160.  The District Attorney may appoint deputies who are authorized to perform the office's official duties. NRS 252.070 (1). As a matter of law, appointed deputy district attorneys do not have policymaking authority for the Office or for the County. *Id.*

DA Hicks appointed two Assistant District Attorneys ("ADA"), who are the second-in-command managing attorneys overseeing criminal prosecutions and civil operations, respectively. Ex. 1 at ¶2. The current Civil ADA Edwards oversees the Civil Division, Child Support Division, and Child Protective Services Division. Ex. 1 at ¶2. Each Division is then managed by a Chief Deputy District Attorney. Ex. 1 at ¶2; *see also* Ex. 2 at ¶2. In the Civil Division, there is an additional mid-level managerial position for Litigation Lead, which supervises and manages civil litigation. Ex. 1 at ¶2; Ex. 2 at ¶3.

In the Civil Division, DA Hicks appointed a team of ten attorneys and a Chief Deputy District Attorney Michael Large ("Chief DDA Large").[1] Ex. 1 at ¶3; Ex. 2 at ¶2. Undersigned counsel serves as the Litigation Lead supervising civil litigation operations. *Id.* Beneath those roles are nine other attorneys, including DDA Price and DDA Elizabeth Hickman ("DDA

---

[1] Chief DDA Large was promoted in April 2025. Ex. 2 at ¶3. The previous Civil Division Chief was DDA Mary Kandaras, who has since retired. Ex. 1 at ¶3; Ex. 2 at ¶3.

Hickman"). *See id.* DDA Price applies his extensive background in human resources and labor law to represent the County in those matters. Ex. 1 at ¶3; Ex. 3 at ¶3. Additionally, DDA Price is assigned to various civil litigation matters, at the discretion of the Litigation Lead. *Id.* ; *see also* Ex. 2 at ¶¶3–4. DDA Hickman's work assignments include advising the Registrar of Voter's ("ROV") office on election matters. Ex. 1 at ¶3.

DDA Price does not have any supervisory or managerial capacity in the District Attorney's Office. Ex. 1 at ¶4; Ex. 2 at ¶4; Ex. 3 at ¶2. He does not supervise any person, including undersigned counsel. *Id.* Similarly, DDA Hickman does not have supervisory capacity in the Office. Ex. 1 at ¶4. This information is easily verifiable. *See* Ex. 1 at ¶4. Burgess's repeated statements in the Motion that DDA Price is DDA Liddell's supervisor are objectively, entirely fabricated. *See* (ECF No. 51 at p. 2 lns. 10–11, 17; p. 6 lns. 17–19; p. 8 lns. 18–21; p. 9 ln. 14); Ex. 1 at ¶5; Ex. 2 at ¶4; Ex. 3 at ¶2.

**B. Prior Lawsuits Against Burgess in her Official Capacity as ROV.**

The Motion points to three cases where the District Attorney's Office represented Burgess: *RNC et al v. Burgess*, case no. 3:24-cv-00198-MMD (D. Nev.), *Kraus et al. v. Burgess*, and *Ribar v. Washoe County et al.*. (ECF No. 51 at p. 4, fn. 1, p. 5 lns. 13–15). In each of these cases, the District Attorney's Office represented Burgess in her official capacity as the interim ROV. Ex. 4; Ex. 5; Ex. 6. The *RNC* Complaint explicitly states, "Defendant Burgess is sued in her official capacity." Ex. 4 at p. 5, ¶21.[2]

The *Kraus* and *Ribar* state court cases were petitions for writs of mandamus. Ex. 5; Ex. 6. In Nevada, petitions for writs of mandamus are available to "compel the performance of an act which the law especially enjoins as a duty resulting from an office…" NRS 34.160. When brought against a government employee, these petitions are necessarily against the

---

[2] Further demonstrating the "official capacity" nature of the *RNC* suit, recent Ninth Circuit filings show that the current ROV, Andrew McDonald, was automatically substituted as the defendant in Burgess's place pursuant to Federal Rule of Appellate Procedure 43 (c)(2). *See* case no. 24-5071, DktEntry 87.1, p. 1 (9th Cir. Feb. 27, 2026).

employee in their official capacity. *See id.* Indeed, the *Kraus* Petition caption names Burgess "in her official capacity as Washoe County Interim [ROV]," and the petition alleges, "Respondent Burgess is named in her official capacity only." Ex. 5 at p. 1, p. 4 at ¶10. The *Ribar* Petition names "Registrar of Voters Cari-Ann Burgess," and sought "a writ of mandamus directing Respondent Washoe County Election Officials to place Petitioner's name on the sample ballot and conduct a new primary election." Ex. 6 at p. 1, p. 3. Both *Kraus* and *Ribar* were against Burgess only in her official, not personal, capacity. Exs. 5, 6.

Moreover, Burgess argues the County is required to take an inconsistent position in this case than in prior cases, which is false. *See* (ECF No. 51 at p. 4, lns. 18–21); Ex. 7. In the Renewed Motion to Dismiss, the County cited the Nevada Supreme Court's Order in *Ribar* as a public record to show Burgess's lack of qualification for ROV because as ROV, Burgess distributed a legally deficient sample ballot. *See* (ECF No. 44 at p. 2 lns. 23–27, p. 11 lns. 23–24, p. 12, lns. 1–3); *Ribar v. Washoe Cnty.*, 88901, 2024 WL 3665320, at *2 (Nev. Aug. 4, 2024) ("…the sample ballot provided to Republican voters was defective…"). Respondents in that case did not argue the sample ballot was permissible, because as a matter of law, the sample ballot was required to display all candidates for all races. *See* Ex. 7; NRS 293.565; Nev. Admin. C. 293.120–130. Instead, the County and Burgess in her official capacity argued the petition should be denied because writ relief was unavailable, the petitioner failed to join a necessary party, petitioner failed to demonstrate standing, and the request was barred by laches. Ex. 7 at p. 4. Consistent with the position in this case, in *Ribar,* Respondents acknowledged that the sample ballot contained an error omitting candidates in a sample ballot, but then were identified in the official election ballot. *Id.* pp. 6, 12. The County has not, and does not intend to, take positions in this case that are inconsistent with positions taken in prior cases involving Burgess in her official capacity. Ex. 1 at ¶17.

**C. The Present Case and Communications with Burgess's Counsel.**

Undersigned counsel has been the sole attorney representing the County in this case. *See* (ECF Nos. 13, 15, 22, 23, 24, 27, 31, 34, 36, 40, 42, 44, 46); Ex. 1 at ¶6; Ex. 3 at ¶¶6–7.

-5-

As Litigation Lead, undersigned counsel initially explored assigning a formal secondary attorney role to DDA Price. *Id.* Ultimately, due to excessive workloads, Undersigned Counsel determined that DDA Price did not have capacity for a formal role in this case. *Id.* As he is very experienced in employment law, DDA Price has assisted with case strategy discussions and provides valuable input in editing briefs in this case. *Id.* Additionally, undersigned counsel has consulted DDA Hickman regarding election law, because DDA Hickman has substantial expertise in Nevada and federal election law. Ex. 1 at ¶6. Nonetheless, there has been and is no plan for DDA Price or DDA Hickman to serve as the County's attorney at trial, should this case proceed to trial. *Id.* Ex. 1 at ¶6.

Additionally, DA Hicks has not been involved nor shown any special interest in this case. Ex. 1 at ¶8; Ex. 2 at ¶¶10–11. Burgess's Motion suggests that the June 2026 election somehow affects this case, a sensational speculation lacking any evidentiary support. *See* (ECF No. 51 at p. 5, lns. 11–27). DA Hicks has not been involved with case strategy, does not review or edit drafts of matters to be filed into this case, and has never sought or held a meeting with undersigned counsel or Chief DDA Large to discuss this case. Ex. 1 at ¶8; Ex. 2 at ¶¶10–11. He likewise has not engaged in any act, indirectly or directly, that would cause undersigned counsel to believe she is expected to alter litigation strategy in this case or other cases for purposes of his reelection campaign. Ex. 1 at ¶9; *see also* Ex. 2 at ¶¶10–11.

In the Motion, Burgess raises an apparent new discovery issue regarding initial disclosures, accusing undersigned counsel's office of misrepresenting that the County is self-insured. (ECF No. 51 at p. 7 lns. 1–3). Ms. Ahmad has not previously raised this issue with counsel. Ex. 1 at ¶16. The Federal Rules of Civil Procedure require disclosure of "any insurance agreement under which an [insurer] may be liable to satisfy all or part of a possible judgment in the action…" FRCP 26 (a)(1)(A)(iv). It does not require disclosure of any inapplicable insurance policy. *See id.* To undersigned counsel's knowledge, the County's initial disclosures are accurate. Ex. 1 at ¶16. Rather than slinging accusations maligning counsel's and the District Attorney's Office's character in a Motion, the appropriate method

to address any perceived issue with the County's discovery disclosures would have been to first follow the applicable discovery dispute procedures. *See* FRCP 37 (a)(1).

Next, Burgess falsely accuses undersigned counsel of misrepresenting and/or engaging in unethical *ex parte* communications, but provides no evidence supporting this accusation. (ECF No. 51 at p. 7 lns. 3–6). On information and belief, the accusation stems from a brief phone call with Judge Baldwin's Courtroom Administrator on November 20, 2025, regarding scheduling. Ex. 1 at ¶10; Ex. 8. p. 3. At 10:54 a.m., the Courtroom Administrator emailed undersigned counsel and Burgess's counsel, Hawah Ahmad, regarding their ability for a 1:00 p.m. hearing the same day. *Id.* The Courtroom Administrator then called undersigned counsel's office and explained that Judge Baldwin wished to hold a hearing on a potential conflicts issue and requested undersigned counsel's availability for 1 p.m. Ex. 1 at ¶10. Undersigned counsel confirmed availability, and that was the extent of the approximately one-minute call. *Id.* This Court's Local Rules unambiguously state that its rule regarding *ex parte* communication "does not prohibit communications with courtroom deputies or the clerk's office regarding scheduling or other non-substantive issues." LR IA (c).

Thereafter, while undersigned counsel was preparing for the hearing, Burgess's counsel, Ms. Ahmad called the Civil Division ADA Edwards, claiming undersigned counsel did not respond to the Court. Ex. 1 at ¶11; Ex. 8 at p. 2. Ms. Ahmad did not first directly call undersigned counsel, but instead contacted her supervisor's supervisor with her accusations. Upon learning this, undersigned counsel promptly emailed Ms. Ahmad to inform her that she confirmed the hearing scheduling via phone. *Id.* Ms. Ahmad responded that usually attorneys respond in an email chain, stated she was confused, and asked "Is there any thing about the ex parte communication I need to be aware of?" Ex. 1 at ¶11; Ex. 8 at pp. 1–2. Undersigned counsel explained she was "scrambling to get ready for the short-noticed hearing. No ex parte issues in my opinion. The Court Administrator simply called to confirm my availability for today at 1 p.m." Ex. 1 at ¶11; Ex. 8 at p. 7. Ms. Ahmad did

not respond to this email, yet now, four months later, reasserts this baseless accusation to support her Motion to Disqualify. (ECF No. 51 at p. 7 lns. 3–7). Pursuant to the Local Rules, a phone call with court staff to confirm scheduling availability is not prohibited ex parte communication. LR IA (c).

At the November 20, 2025 hearing, Judge Baldwin inquired about the identity of the attorney alleged to have attended a September 25, 2025 meeting with the Human Resources Director, former Chief DDA Mary Kandaras, and Burgess, because Judge Baldwin has a personal conflict as to Chief DDA Mike Large. *See* (ECF No. 38 at p. 3 lns. 20–25, p. 4 lns. 1–10); (ECF No. 10 at ¶124). Undersigned counsel explained that the attorney was DDA Price, that Chief DDA Large has not been involved in the case, and that counsel reviewed discovery emails and confirmed Chief DDA Large was not involved in those records. (ECF No. 38 at p. 4 lns. 16–25, p. 5 lns. 1–6). Ms. Ahmad then stated she represents Washoe County Commissioner Clark in his political capacity, and that "[Commissioner Clark] did inform [Ms. Ahmad] that Mike Large has met with him repeatedly with County Manager Thomas regarding this case specifically. And [Ms. Ahmad] did just confirm that prior to this meeting."[3] *Id.* at p. 5 lns. 23–25, p. 6 lns. 1–2. This statement came as a surprise. Ex. 1 at ¶13. Ms. Ahmad also expressed that DDA Hickman and former Chief DDA Kandaras are witnesses. (ECF No. 38 at p. 6 lns. 3–5). Ms. Ahmad stated she believed there were professional conduct issues, describing a "government" conflict with witness as advocate and "institutional conflict." *Id.* at lns. 8–12. Notwithstanding Judge Baldwin's decision to recuse out of an abundance of caution, undersigned counsel explained that the office was careful not to involve Chief DDA Large in the case. *Id.* at p. 10 lns. 3–10.

---

[3] Immediately after, undersigned counsel spoke to Chief DDA Large regarding Ms. Ahmad's new accusations of DDA Large's meetings regarding this case. Ex. 1 at ¶13; Ex. 2 at ¶8. Chief DDA Large was similarly confused, and confirmed the accusation was false. Ex. 2 at ¶9 ("… I routinely have attorney-client privileged communications with the County Manager and various County Commissioners. The substance of these conversations is privileged; however, I can confirm that Ms. Ahmad's statements are inaccurate and a pure fabrication.").

Following the hearing, undersigned counsel emailed Ms. Ahmad regarding her ethics accusations of a "government conflict of interest," explaining she was "caught off guard by [Ms. Ahmad's accusation of possible attorney ethics violations at the hearing." Ex. 1 at ¶14; Ex. 9. Believing Ms. Ahmad's hearing statements referred to Rule 1.11, undersigned counsel provided analysis explaining that the rule was inapplicable here. *Id.* Undersigned counsel ended her email to Ms. Ahmad stating, "I certainly do not wish in any way to circumvent Nevada's Rules of Professional Conduct, and they are obligations I do no take lightly… if you believe there are other specific ethical concerns, feel free to identify those with me directly so that I can review those as well." *Id.* Ms. Ahmad did not respond to this email, and did not otherwise contact undersigned counsel thereafter regarding any perceived ethics issues. Ex. 1 at ¶ 14.

## III.    LEGAL ANALYSIS

"A motion to disqualify [opposing] counsel is not an arrow normally in the quiver of a litigant." *Altheide v. Nevada ex rel. Dep't of Corr.*, No. 2:24-CV-01526-CDS-EJY, 2025 WL 2374370, at *1 (D. Nev. Aug. 14, 2025), quoting *In re Murray*, Case No. 11-10535, 2013 WL 4272280, at *1 (U.S. Bk. Court, N.D. Cal. 2013). "Because of this potential for abuse, disqualification motions should be subjected to particularly strict judicial scrutiny." *Optyl Eyewear Fashion Int'l Corp. v. Style Cos., Ltd.*, 760 F.2d 1045, 1050 (9th Cir. 1985) (internal quot. and cit. omitted). These motions are "disfavored and only granted when 'absolutely necessary.'" *Trade Show Servs., Ltd v. Integrated Sys. Improvement Servs., Inc.,* No. 2:17-CV-01685-JAD-NJK, 2018 WL 1321029, at *2 (D. Nev. Mar. 14, 2018) (cit. omitted), *aff'd sub nom*, 2019 WL 1386374 (D. Nev. Mar. 27, 2019). "Whether an attorney should be disqualified is an issue of state law." *Id.*

The moving party "bears the burden of establishing facts to justify disqualification" and must meet a high standard of proof. *Playup, Inc. v. Mintas*, No. 2:21-CV-02129-GMN-NJK, 2023 WL 349499, at *1 (D. Nev. Jan. 20, 2023). "A court may disqualify an attorney from representing a party when there is (1) a clear violation of the professional rules of

conduct (2) that affects the public view of the judicial system or the integrity of the Court and (3) is serious enough to outweigh the party's interest in having the counsel of its choice." *Id.* The concerns must not be merely anticipatory and speculative. *Id.* "A motion to disqualify should be accompanied by declarations and admissible evidence sufficient to establish the factual predicate upon which the motion depends." *Joshua v. Dzurenda*, No. 2:23-CV-01087-MMD-MDC, 2024 WL 4536961, at *1 (D. Nev. Oct. 18, 2024), quoting *Colyer v. Smith*, 50 F.Supp.2d 966, 967 (C.D. Cal. 1999)).

Here, Burgess failed to attach *any* evidence to her Motion. *See* (ECF No. 51). Instead, the Motion relies on false statements, misstated law, and scandalous speculative personal attacks against undersigned counsel and the District Attorney's Office. *See id.* The Motion should be denied on that basis, because Burgess fails to meet any burden of proof. Arguments of counsel are not evidence. *See Tchutima, Inc. v. BUA Grp., LLC*, No. 2:24-CV-01130-JCM-NJK, 2025 WL 1093808, at *1 (D. Nev. Apr. 10, 2025). As set forth below, the Court should deny the Motion and consider exercising its authority to sanction Burgess and her counsel.

**A. DDA Liddell's Representation is Permissible Under Rule 3.7.**

Under Nevada Rules of Professional Conduct Rule 3.7, unless exceptions apply, "[a] lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness." The Nevada Supreme Court adopted the majority approach, holding that under Rule 3.7 (formerly SCR 178), "a lawyer who is likely to be a necessary witness may still represent a client in the pretrial stage." *DiMartino v. Eighth Jud. Dist. Ct. ex rel. Cnty. of Clark*, 66 P.3d 945, 946–47 (Nev. 2003). Rule 3.7 "is meant to eliminate any confusion and prejudice that could result if an attorney appears before a jury as an advocate and as a witness." *Id.* at 947. Therefore, as a matter of law, Rue 3.7 does not prohibit representation during the pretrial phase. *Id.* at 946 ("the rule does not mandate complete disqualification of an attorney who may be called as a witness").

"Because this conflict is personal to an attorney, it generally "does not mandate the vicarious disqualification of the lawyer's firm." *Prac. Mgmt. Sols., LLC v. Eighth Jud. Dist. Ct.*

-10-

*of State, ex rel. Cnty. of Clark*, 132 Nev. 1019, 2016 WL 2757512, at \*4 (Nev. 2016) (unpublished disposition) (citing *F.D.I.C. v. U.S. Fire Ins. Co.*, 50 F.3d 1304, 1313 (5th Cir. 1995)). In *Prac. Mgmt. Sols., LLC*, the Nevada Supreme Court found that the attorney-witness could participate in pretrial matters and that Rule 3.7 did not warrant the entire firm's disqualification. *Id.* Rule 3.7 (b) also explicitly states, "A lawyer may act as advocate in a trial in which another lawyer in the lawyer's firm is likely to be called as a witness unless precluded from doing so by Rule 1.7 [Conflict of Interest] or Rule 1.9 [Duties to Former Clients]." RCP 3.7 (b). As one Judge in this District described, "it stands to reason that there would not be an imputed conflict simply because a member of the firm had been called as a witness in the proceeding in the past." *Walker v. Baker*, No. 2:15-CV-01240-RFB-GWF, 2016 WL 8735665, at \*1 (D. Nev. Jan. 22, 2016).

Here, the County is represented exclusively on record by undersigned counsel in this case. Ex. at 1 ¶6; Ex. 3 at ¶6. Undersigned counsel is not a witness in this case, and Burgess does not argue she is one. Ex. 1 at ¶18; *see* (ECF No. 51). It is clear from the plain text of Rule 3.7 that the Rule does not prohibit undersigned counsel from representing the County at any stage of the case, because she is not a witness in this case. *Id.*; RCP 3.7 (b).

Burgess erroneously claims that "Under Rule 3.7, a lawyer may not serve *as an advocate in a matter* in which the lawyer is likely to be a necessary witness," and that the rule extends to other lawyers in the office where "the witness occupies a supervisory position, and the conflict is not severable." (ECF No. 51 at p. 8 lns. 21–25) (emph. added). She also claims that the "Office cannot act as trial advocate and simultaneously represent a party whose essential witness is an employee of counsel's own office," arguing that DDA Liddell may not represent the County because her coworker, DDA Hickman is a trial witness. *Id.* at p. 8 lns. 3–9. Neither of these propositions are supported by Rule 3.7 or related case law. *See* RPC 3.7; *Walker*, 2016 WL 8735665, at \*1. As Rule 3.7(b) unambiguously allows, even if DDA Price and DDA Hickman are witnesses, DDA Liddell may act as attorney at trial.

//

In addition to including nonexistent rule language regarding supervising attorneys, Burgess included an entirely fabricated fact in arguing application of this nonexistent rule: that DDA Price is undersigned counsel's supervisor. *See* (ECF No. 51 at p. 2 lns. 10–11, 17; p. 6 lns. 17–19; p. 8 lns. 18–21; p. 9 ln. 14); Ex. 1 at ¶5; Ex. 2 at ¶4; Ex. 3 at ¶2. This is entirely false. Ex. 1 at ¶5; Ex. 2 at ¶4; Ex. 3 at ¶2. DDA Price has no supervisory role of anyone. *Id.*

Further, the County does not anticipate a need to call DDA Price as a witness at all. Ex. 1 at ¶6; Ex. 2 at ¶4. Burgess incorrectly claims that DDA Price was "in the room when Plaintiff was fired and therefore a key witness." (ECF No. 51 at p. 6 lns. 22). In fact, DDA Price was not "in the room" when Burgess was "fired." Ex. 2 at ¶¶4–5. DDA Price attended a September 25, 2024 meeting with the Human Resources Director, now-retired Chief DDA Mary Kandaras, and Burgess to discuss Burgess's recent issues, during which Burgess was placed on paid leave. *Id.* at ¶4; *see also* (ECF No. 10 at ¶124). Burgess was fired in February 2025 via a written letter. Ex. 2 at ¶5; (ECF No. 10 at ¶163). In the event this case proceeded to trial, any need for DDA Price's testimony is unclear, as the best evidence regarding the September 25, 2024 meeting could be elicited from the H.R. Director or retired Chief DDA Kandaras. *See* Ex. 2 at ¶4. Any further communications between DDA Price and the County advising on Burgess's human resources issues are attorney-client privileged. Thus, there is no reasonable basis to conclude that DDA Price will testify at trial, and if he does, he is not the trial attorney. DDA Price's testimony at trial would be permissible under Rule 3.7.

Moreover, as set forth below, there is no conflict between DDA Price or DDA Hickman and Burgess because there is no personal attorney-client relationship between them. There is no personal conflict from the attorneys' own interests involved in this case, which Burgess raises as only inflammatory conjecture.

The Court should deny the Motion to Disqualify under Rule 3.7. Undersigned counsel is not a witness at trial, but even if she was, she could represent the County at the pre-trial stage. Ex. 1 at ¶18; *DiMartino*, 66 P.3d at 946–47. There is no rule imputing Rule 3.7's prohibition to subordinate attorneys of an attorney who is both a witness and supervisor

of the trial attorney, but even if there was, DDA Price has no supervisory authority over anyone, much less undersigned counsel, who is the Litigation Lead. Ex. 1 at ¶5; Ex. 2 at ¶4; Ex. 3 at ¶2. Additionally, as set forth below, there is no conflict that would implicate Rule 3.7(b) in this case. Burgess failed to meet her burden to show any level of disqualification under Rule 3.7 is warranted.

**B. There is No Attorney-Client Relationship with Burgess, and No Other Conflict of Interest Prohibiting DDA Liddell's Representation.**

**i. Burgess Lacks Standing to Assert a Conflict Because She is Not a Current or Former Client in her Personal Capacity.**

"The party seeking to disqualify bears the burden of establishing that it has standing to do so." *Liapis v. Dist. Ct.*, 282 P.3d 733, 737 (Nev. 2012). Generally, only a current or former client has standing to raise disqualification based on a conflict of interest. *Id.* "The standing requirements ensure 'that non-clients will not abuse the state rules of professional responsibility by using them as tactical measures to harass the opposition or cause delay.'" *Russel Rd. Food & Beverage, LLC v. Galam*, No. 2:13-CV-0776-JCM-NJK, 2014 WL 3779078, at *2 (D. Nev. July 31, 2014) (cit. omitted). The party seeking disqualification must establish the following: (1) it had an attorney-client relationship with the lawyer; (2) t the former matter and the current matter are substantially related; and (3) the current representation is adverse to the party seeking disqualification. *Nevada Yellow Cab Corp. v. Eighth Jud. Dist. Ct. ex rel. Cnty. of Clark*, 152 P.3d 737, 741 (Nev. 2007).

As a matter of law, there is no personal attorney-client relationship between a government attorney and an employee of the governmental entity where the attorney's relationship arises out of the employee's official duties. *Cannizarro*, 466 P.3d at 531. In *Cannizarro*, the Nevada Supreme Court addressed whether the Legislative Counsel Bureau ("LCB") attorneys had an attorney-client relationship with individual State Senators. 466 P.3d at 530. In that case, eight plaintiff Senators sued the Senate Majority Leader and the Senate Secretary for actions defendants took on behalf of the Legislature. *Id.* The Nevada Supreme Court held that "LCB Legal's client is the Legislature, and it represents individual

-13-

legislators only in their official capacities as constituent members of the Legislature acting on the Legislature's behalf." *Id.* at 531. Similarly, the plaintiff senators were not acting "on the Legislature's behalf, and thus they are not considered LCB's client in this situation." *Id.* The court ultimately found that the plaintiff senators lacked standing to move for disqualification because they did "not have an attorney-client relationship with the LCB Legal other than in their roles as duly authorized members of the Legislature acting on the Legislature's behalf." *Id.*

The court in *Cannizarro* relied on a Tenth Circuit case in which the plaintiff, a former school principal suing the school district for employment discrimination, unsuccessfully attempted to disqualify the law firm regularly retained by the school district. 466 P.3d at 532; *Cole v. Ruidoso Mun. Schs.*, 43 F.3d 1373, 1384 (10th Cir. 1994). The Tenth Circuit found that even though the former employee believed the law firm represented her as an individual, and that while employed she consulted with the employer's attorneys for purposes of carrying out her duties as principal, the employee did not have a personal attorney-client relationship and was not considered a former client of the law firm. *Cole,* 43 F.3d at 1384–85. The court also noted that "there was no reasonable basis for [the employee's] belief that [the law firm] represented her individually," because the interactions were limited to her role acting on behalf of her employer. *Id.* Moreover, the information the employee communicated to the law firm on behalf of her employer "was not protectable confidential communications of [the employee's] to the firm. It is the [employer] which, as the client, holds the right to have those communications protected and which may decide whether and to whom that information may be disclosed." *Id.* at 1385.

The court in *Cannizarro* also relied a California Court of Appeal case in which a plaintiff county assessor unsuccessfully sought to disqualify county counsel in a case filed against county commissioner board members in their official capacities. 466 P.3d at 532; *Ward v. Superior Ct.*, 70 Cal. App. 3d 23, 28, 138 Cal. Rptr. 532, 534 (Ct. App. 1977). In *Ward,* the county assessor argued that he had an attorney-client relationship because the county's

-14-

attorneys advised his office, represented him in lawsuits where he was named in his individual capacity, and advised him in the course of those lawsuits. 70 Cal. App. 3d 23, 28–29, 138 Cal. Rptr. 532, 534–35. The *Ward* court found there was no attorney-client relationship as to the assessor individually because any relationship arose out of counsel's legal obligation to represent and advise county officers and represent the county and its officers in civil actions. *Id.* 70 Cal. App. 3d at 32–34, 138 Cal. Rptr. at 537–38. The county held the attorney-client privilege for communications between county counsel and the assessor, and the assessor could not claim privilege for his communications to county counsel in that role. *Id.* 70 Cal. App. 3d at 35, 138 Cal. Rptr. at 539.

Here, Burgess lacks standing to pursue disqualification based on conflict because she does not have a personal attorney-client relationship with the District Attorney's Office. Burgess argues there is a conflict because the DA's Office represented Burgess "multiple times in her capacity as Interim Washoe County Registrar of Voters." (ECF No. 51 at p. 4 lns. 1–2). Burgess vaguely and without evidentiary support asserts that she "disclosed confidential information and relied on the [DA's Office's] loyalty and independence." *Id.* at p. 4 lns. 2–4). The controlling case law in *Cannizarro* wholly disposes of the notion that Burgess had a personal attorney-client relationship with the DA's Office. 466 P.3d at 530.  As in *Cannizarro*, the DA's Office's representation of Burgess here extended only to her role as the interim ROV acting on behalf of Washoe County. Exs. 4–7; (ECF No. 51 at at p. 4 lns. 1–2). Therefore, Burgess lacks standing to raise a conflict of interest in this case.

The Motion does not argue, nor could it, that the DA's Office has ever represented Burgess in her personal capacity. *See* (ECF No. 51). In fact, under Nevada law, the Deputy DAs are prohibited from engaging in the private practice of law. NRS 252.070(3). Burgess fails to demonstrate that the District Attorney's Office provided her any legal advice in any personal capacity for any matter, including regarding this lawsuit. *See* (ECF No. 51). Burgess filed her lawsuit in this case in her personal capacity. *See* (ECF No. 1). The District Attorney's Office does not and has not represented Burgess in her personal, individual

capacity. *See* Exs. 3–6; (ECF No. 51 at p. 4 lns. 1–2). To the extent Burgess somehow believes she has a personal attorney-client relationship with any District Attorney's Office employee, that belief is unreasonable. *Cole,* 43 F.3d at 1384–85. Any information obtained from Burgess during her employment as interim ROV is exclusively related to her official duties. *See* Ex. 10. The District Attorney's Office represented Burgess in litigation only brought in her official capacity, in the scope of her role as interim ROV. *See* Exs. 3–6. Like in *Ward* where county counsel previously represented the employee, this relationship arose out of the District Attorney's Office's representation of Washoe County. 70 Cal. App. 3d at 32–34, 138 Cal. Rptr. at 537–38. Burgess does not and cannot establish that she had any personal attorney-client relationship with the District Attorney's Office.

The Court should deny the Motion to Disqualify because Burgess does not possess standing to assert a conflict of interest. Burgess does not have a personal attorney-client relationship with the District Attorney's Office. Moreover, any confidential information Burgess provided to the County as interim ROV is within the County's attorney-client privilege. As the holder of that privilege, the County, not Burgess, holds the authority to claim or waive that privilege for any confidential information. *Cole*, 43 F.3d at 1385. Burgess wholly fails to meet her burden to show that she had a personal attorney-client relationship that would afford her standing to raise this conflict of interest. The Motion should be denied.

### ii.  There is no Conflict of Interest in the DA's Office's Representation.

The Nevada Supreme Court recognized potential for non-client standing in raising conflict where there are exceptional circumstances that impact the "just and lawful" determination of the non-client's claims. *Liapis,* 282 P.3d 733, 737 (Nev. 2012). Speculative contentions of conflict *cannot* justify attorney disqualification. *Id.* Additionally, the mere appearance of impropriety does not support disqualification; instead there must be specific, identifiable impropriety. *Id.*

Here, in addition to claiming an attorney-client relationship conflict, Burgess claims there is a personal interest that creates a conflict for the entire District Attorney's Office. *See*

(ECF No. 51 at pp. 4–5). She cites *Matter of Discipline of Arabia*, 495 P.3d 1103 (Nev. 2021), which addressed Nye County District Attorney Arabia's personal interest in firing one of his own Assistant District Attorneys. *See* (ECF No. 51 at p. 5). In *Arabia*, the ADA appealed his termination to the County Commission, maintaining it was due to his attempts to unionize the Nye County D.A.'s Office. 495 P.3d at 1108. The Nye County D.A., using his role as the County's in-house counsel, issued a legal opinion to "cease and desist from conducting the proposed hearing." *Id.* The Nevada Supreme Court found that Arabia violated Rule 1.7 because he had a personal interest in quickly vacating the hearing. *Id.* at 1113. Knowing the County generally retained independent counsel for similar issues, "he knew it would be in his best interest to immediately send a strong worded email to the County" advising to vacate the hearing. *Id.* The record showed that Arabia did not want to be forced to re-hire the ADA, and that Arabia acknowledged his reputation would "take the hit" if the hearing found that the ADA's termination was wrongful. *Id.* Notably, however, the court opined that Arabia simply had a duty to disclose his personal conflict and obtain a written waiver from the County before advising the County on the issue. *Id.* at 1114.

Here, Burgess attempts to inject scandal into the case with unsupported accusations of personal conflict attributable to the entire District Attorney's Office. (ECF No. 51 at p. 5, lns. 11–26, p. 7 lns. 1–8). "A lawyer's representation of a client, including representation by appointment, does not constitute an endorsement of the client's political, economic, social or moral views or activities." Nev. R. Prof. Conduct 1.2 (b). She argues that the District Attorney's Office has some kind of interest in shifting blame to Burgess "rather than risk scrutiny of the District Attorney's own role in election decision-making." (ECF No. 51 at p. 5 lns. 23–24). She ignores both Professional Conduct Rule 1.2(b), and that as a matter of law, none of the DDAs involved any decision-making policy authority for County and its departments. NRS 252.070 (1). "Operational decisions are client decisions, and whether they choose to act on advice of counsel is left to their discretion." Ex. 2 at ¶12. Moreover, Burgess's argument is illogical because the County's attorney-client privilege waiver

inherently *opened* scrutiny for District Attorney's Office's confidential legal advice provided to the ROV. That the District Attorney's Office did not advise against or attempt to prevent its client from waiving this privilege in this case shows it has no personal interest in avoiding "scrutiny" that would impact attorney loyalty duties to the County.[4]

Burgess also includes unfounded accusations regarding the District Attorney election that are purely sensational and devoid of fact. (ECF No. 51 at pp. 5–6). She points to no evidence regarding DA Hicks or his campaign, other than the general assertion that he is up for reelection. *Id.* at p. 5 lns. 11–26. She cites a 2024 news article, attached here for convenience, that does not include any mention of DA Hicks, any quote from him, or anything regarding his election or Burgess. *See* Ex. 12. DA Hicks has never expressed to undersigned counsel or her supervisor that he has any special interest in this case. Ex. 1 at ¶¶8–9; Ex. 2 at ¶10. He does not micromanage this case, does not review drafts before filings, and has not sought any input on case strategy. *See id.* He does not engage in campaign activity in the Office, and has not directly or indirectly done anything that would suggest to undersigned counsel that she is expected to alter any strategy in this case for his campaign. Ex. 1 at ¶9. He has not held meetings with undersigned counsel or her supervisor about this case, nor has he asked for such a meeting. Ex. 1 at ¶8; Ex. 2 at ¶10. Burgess's inflammatory accusation concerning any 2026 District Attorney election influence into this case is entirely manufactured. *See* (ECF No. 51 at pp. 5–6). Ex. 1 at ¶¶8–9; Ex. 2 at ¶10.

//

---

[4] Conversely, if the District Attorney's Office advised and attempted to prevent the County from its limited privilege waiver in this case to avoid some kind of added scrutiny on itself, the circumstances would be more akin to the personal conflict in *Arabia*. The limited waiver benefits the County in this case, because the otherwise privileged communications demonstrate Burgess's lack of qualification for ROV. They will also rebut allegations, including that Burgess somehow confirmed permission from legal counsel to sign contracts in violation of County Code. *See* (ECF No. 10 at ¶28, ¶153). If there was a personal interest in avoiding scrutiny and the Office acted on it to thwart the waiver here, that could implicate Rule 1.7's personal interest conflict. That is not the case. The District Attorney's Office has nothing to hide and remains focused on representing the interests of the County.

Additionally, the County does not intend to take any positions in this case incompatible with its positions taken in other cases or positions taken in any waived attorney-client privileged communication. *See* Ex. 1 at ¶17; Exs. 4–7, Ex. 10, Ex. 11. For example, in *Ribar v. Washoe County*, the County did not assert that Burgess fulfilled her legal duties in the deficient sample ballot, but instead relied on procedural arguments to dismiss the petition. Ex. 7. The County is well within its rights to use the *Ribar* case in this case as a judicially noticeable fact that the sample ballot was legally deficient.  Likewise, the County does not intend to take any positions incompatible with the waived attorney-client privileged legal advice involved in this case. *See, e.g.,* Ex. 10 (containing a sample of waived attorney-client communications between DDA Hickman and ROV Burgess). The County's positions in this case are consistent with the advice DDA Hickman provided to Burgess: correcting Burgess's belief that ballot signature curing was just a courtesy rather than a statutory right; advising Burgess that her desire to delay a recall election for lack of payment would violate the Nevada Constitution; demonstrating Burgess's deficient knowledge with basic issues like whether the County Commission is a partisan office, or that she did not know how to craft a staff report for vote canvassing; and, that in July 2024, DDA Hickman confirmed with Burgess that Burgess had legal obligation to deactivate voters under federal law by early August (an obligation Burgess ultimately did not meet). *See* Ex. 10.

There is no personal conflict affecting undersigned counsel, or the entire DA's Office's duty of loyalty in this case. Burgess was not employed by the DA's Office, and the DA did not fire her. DDA Liddell has no personal interest in Burgess or this case. Ex. 1 at ¶18. DA Hicks likewise has no special personal interest in this case as set forth above. The positions taken in this case are reflective of the County, and not of undersigned counsel personally nor the DA's Office. *Id.*; RPC 1.2 (b). As set forth above, the County likewise does not intend to take any positions inconsistent with prior litigation involving Burgess or legal advice provided to Burgess as ROV. Nevertheless, even if there was any personal

//

conflict, *Arabia* only mandates that the attorney disclose it and obtain a written waiver to proceed with representation. 495 P.3d 1103.

The Court should deny the Motion as Burgess lacks standing to assert a conflict and failed to otherwise show there is a personal conflict warranting disqualification. The District Attorney's Office must be allowed to fulfill its statutory duty to defend lawsuits brought against the County. NRS 252.110(2).

**iii. Burgess Otherwise Waived the Conflict.**

The doctrine of waiver applies to conflicts of interest. *Nevada Yellow Cab*, 152 P.3d at 740–41. While delay alone in this context is insufficient, "the waiver of a right may be inferred when a party engages in conduct so inconsistent with an intent to enforce the right as to induce a reasonable belief that the right has been relinquished." *Id.* at 741. For example, there was no waiver where a party "almost immediately" identified a conflict with opposing counsel, but delayed bringing a disqualification motion while the parties attempt to mediate the underlying case. *Id.* On the other hand, delay without any expressed identification of the specific conflict or intent to file a motion can constitute a waiver and warrant denying the motion. *Trust Corp. of Montana v. Piper Aircraft Corp.,* 701 F.2d 85, 87–88 (9th Cir.1983) ("It is well settled that a former client who is entitled to object to an attorney representing an opposing party ... but who knowingly refrains from asserting it promptly is deemed to have waived that right."); *see also Openwave Sys. Inc. v. Myriad France S.A.S.,* No. C 10–02805 WHA, 2011 WL 1225978, at *6–7 (N.D. Cal. Mar.31, 2011) (finding four-month delay in moving to disqualify justified denial of motion); *Skyy Spirits, LLC v. Rubyy, LLC,* No. C 09–00646 WHA, 2009 WL 3762418, at *4 (N.D. Cal. Nov.9, 2009) (concluding that eight-month delay supported denial of motion).

Here, even if Burgess had an attorney-client relationship to create a concurrent conflict, she waived it by failing to assert it earlier in this case. Burgess claims that "it was not found that Deputy District Attorney Elizabeth Hickman previously represented Plaintiff until Plaintiff's Opposition to Defendant's Motion for Stay of Discovery." (ECF No. 51 at

p. 7, lns. 24–25). This notion is inconceivable. Burgess is well aware that DDA Hickman represents the ROV, regularly provided Burgess legal advice as the interim ROV, and represented her in ROV-related litigation throughout her employment as interim ROV. *See* Ex. 10 (reflecting attorney emails correspondence between January 2024 and July 2024); Ex. 11. The County's initial disclosures identify dated September 15, 2025 identify DDA Hickman as a witness in this case. (ECF No. 51-1 at p. 7, #18). Moreover, in the *Kraus v. Burgess* case Burgess's Motion mentions, a motion to dismiss filed in July 2024 included a declaration that Burgess signed for purposes of that motion. Ex. 11 at pp. 5–10. Additionally, regarding representing Burgess in litigation generally, Burgess's August 30, 2025 Opposition to Motion to Dismiss specifically states, "The County should be familiar with the Ribar case because they represented Ms. Burgess in her capacity as Registrar of Voters." (ECF No. 20 at p. 15, fn. 7). Burgess has been aware from the outset of this case of the DA's Office's role both in representing the County in this case, and in its prior representation of Burgess in her official capacity as ROV.

By failing to assert any alleged conflict of interest until nearly ten months after the DA's Office appeared in this case, Burgess waived any ability to raise it now. Even if the Motion was in any way meritorious, which it is not, it should be denied because Burgess waived the conflict.

**C. The Court Should Consider Sanctions Against Burgess and Ms. Ahmad.**

Federal courts have inherent authority to sanction conduct abusive to the judicial process. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 43–46 (1991). Recklessness, when combined with frivolity, harassment, or an improper purpose, may support sanctions. *See In re Girardi*, 611 F.3d 1027, 1061 (9th Cir. 2010). Improper purpose can be deduced where there is no legal or factual basis for a claim. *Paciulan v. George*, 38 F.Supp.2d 1128 (N.D. Cal. 1999). "[S]anctions are available if the court specifically finds bad faith or conduct tantamount to bad faith." *Fink v. Gomez*, 239 F.3d 989, 994 (9th Cir. 2001).

//

-21-

Additionally, the Court has authority to sanction attorneys to personally satisfy the other party's attorney's fees where the attorney "multiplies the proceedings in any case unreasonably and vexatiously." 28 U.S.C. § 1927  "An award of sanctions under 28 U.S.C. § 1927 requires a finding of recklessness." *Humphries v. Button*, No. 2:21-CV-01412-ART-EJY, 2024 WL 624240, at *2 (D. Nev. Feb. 13, 2024).

The Ninth Circuit upheld Section 1927 sanctions where a "disqualification motion was meritless, that it was brought solely for tactical reasons, and that it was brought in bad faith." *Optyl Eyewear Fashion Int'l Corp. v. Style Companies, Ltd.*, 760 F.2d 1045, 1048 (9th Cir. 1985). A California U.S. Bankruptcy Court likewise sanctioned an attorney under tis inherent authority for filing a meritless disqualification motion brought for two improper purposes, the attorneys dislike of the other, and the attorney's desire to make the other's work more difficult. *In re Marvel,* 251 B.R. 869, 872 (Bankr. N.D. Cal. 2000), *aff'd*, 265 B.R. 605 (N.D. Cal. 2001) ("The court concludes that sanctions against [the attorney] and her client are necessary in order to punish them for misuse of a disqualification motion and deter them from future improper conduct.").

Here, the Court should consider exercising its inherent authority and discretion to sanction Burgess and her counsel, Ms. Ahmad, for their conduct in filing the Motion to Disqualify. After specifically inviting Ms. Ahmad to directly contact undersigned counsel with any ethics issues Ms. Ahmad may have in November 2025, Ms. Ahmad instead chose to file the instant outlandish Motion. She likewise could have easily inquired about DDA Price's role in this case and role in the District Attorney's Office. Instead, she filed the instant outlandish Motion heavily premised on a fabricated assertion that DDA Price supervises undersigned counsel. *See* (ECF No. 51 at p. 2 lns. 10–11, 17; p. 6 lns. 17–19; p. 8 lns. 18–21; p. 9 ln. 14); Ex. 1 at ¶5; Ex. 2 at ¶4; Ex. 3 at ¶2. Additionally, she filed the Motion months after any basis, though illegitimate, would have been apparent. This suggests recklessness, frivolity, and bad faith in filing the Motion to Disqualify.

//

-22-

The lack of evidentiary support accompanying the Motion further evidences that the Motion was brought simply to inflame and needlessly expend legal defense resources. In addition, the Motion needlessly includes numerous personal attacks against undersigned counsel irrelevant to the disqualification issue: wrongfully accusing her of ex parte communication, implying she is not credible, raising a meritless discovery issue for the first time while accusing counsel's office of "misrepresent[ing]" its disclosures, (ECF No. 51 at p. 7 lns. 1–8); Ex. 1 at ¶10, ¶16. The Motion continues personal attacks, wrongfully accusing undersigned counsel of withholding "key information" where the "information" does not exist, and claiming undersigned counsel provided false information to the Judge Baldwin regarding Chief DDA Michael Large. (ECF No. 51 at p. 6 lns. 17–19). Ex. 1 at ¶10, ¶¶12–13; Ex. 2 at ¶4, ¶¶7–9, Ex. 3 at ¶2. The Motion to Disqualify, bursting with manufactured unsupported provocative accusations, appears designed to stir outrage rather than to resolve any legitimate issue.

Further, in waiting to raise her unsupported and scandalous accusations regarding the District Attorney election just two months before the June election, the timing suggests Burgess and her counsel's improper purposes included attempting to inflame or influence that election with the Motion, and to further their personal disdain for the District Attorney's Office. *See* Ex. 1 at ¶9. Burgess, and/or Ms. Ahmad, continues to attempt to make this case about the District Attorney's Office and hurl attacks toward the Office. *See* (ECF No. 20 at p. 9 lns. 9–15); (ECF No. 41 at p. 3 lns. 12–17); (ECF No. 51). The record suggests that Burgess and/or Ms. Ahmad possess some kind of personal animosity toward the District Attorney's Office and its employees. *See id.* These expressions of animosity, whyever they exist, have no place in court.

//

//

//

//

Monetary sanctions, including attorney's fees,[5] are warranted to deter further inappropriate behavior in this case. The Court previously reminded Burgess's counsel of her duty of civility, and noted that the "Court is unimpressed by personal attacks and overheated rhetoric." (ECF No. 43). Court's prior Minute Order was ineffective to deter Burgess's counsel's conduct, as weeks later she filed the instant motion offering unsupported assertions and baseless personal attacks against undersigned counsel and her office. As a result of this bad faith behavior, the County was forced to expend resources in substantial attorney time to defend the instant Motion. The Court should consider exercising its discretion to sanction by awarding the County its attorneys' fees expended in connection with the Motion and by ordering a fine so ensure that Burgess and Ms. Ahmad's improper behavior ceases.

## IV.    CONCLUSION

The Court should deny the Motion to Disqualify. Burgess failed to meet her high burden to show disqualification is appropriate, and instead relied on argument with fabricated facts and inflammatory language toward the District Attorney's Office. The Court should also consider exercising its inherent authority to sanction Burgess and her counsel, Ms. Ahmad, for their recklessness and apparent bad faith in filing the instant Motion. Ms. Ahmad ignored undersigned counsel's offer to discuss and address any potential ethics issues in November 2025, and instead chose to file a baseless Motion months later. In doing so, she needlessly expended both undersigned counsel's and the court's limited resources.

Dated this 9th day of April 2026.

By ___/s/ Lindsay L. Liddell___
LINDSAY L. LIDDELL
Deputy District Attorney
One South Sierra Street
Reno, NV  89501
lliddell@da.washoecounty.gov
(775) 337-5700

ATTORNEY FOR WASHOE COUNTY

---

[5] Should the Court exercise its discretion to preliminarily award attorney fees, the County will file the appropriate motion for attorney's fees pursuant to Local Rule 54-11.

-24-

## **CERTIFICATE OF SERVICE**

Pursuant to FRCP 5(b), I certify that I am an employee of the Office of the District Attorney of Washoe County, over the age of 21 years and not a party to nor interested in the within action. I certify that on this date, the foregoing was electronically filed with the United States District Court. Electronic service of the foregoing document shall be made in accordance with the Master Service List as follows:

HAWAH SAFA AHMAD

Dated this 9th day of April, 2026.

By /s/ S. Haldeman
S. Haldeman

**INDEX OF EXHIBITS**

Exhibit 1    Declaration of Lindsay L. Liddell ..................................................... 8 pages

Exhibit 2    Declaration of Michael Large........ ........................................ ............ 3 pages

Exhibit 3    Declaration of Brandon Price......................................................... 2 pages

Exhibit 4    *RNC v. Burgess*- Compliant Excerpts ..................................... 6 pages

Exhibit 5    *Krau v. Burgess*-Petition for Writ of Mandamus Excerpt….. ………... 4 pages

Exhibit 6    *Ribar v. Washoe County*- Petition for Writ of Mandamus Excerpt ....... 4 pages

Exhibit 7    *Ribar v. Washoe County*- Answering Brief.......................................... 22 pages

Exhibit 8    Email from DDA Liddell to Ahmad regarding Scheduling ............... 3 pages

Exhibit 9    Email from DDA Liddell to Ahmad regarding Ethics ........................ 2 pages

Exhibit 10   Email Correspondence between DDA Hickman and ROV Burgess... 8 pages

Exhibit 11   *Kraus v. Burgess*-Motion to Dismiss Excerpts................................... 10 pages

Exhibit 12   ABC News Article "*Protecting Your Vote*"........................................... 8 pages