HAWAH S. AHMAD Esq.
Nevada State Bar No. 16374
AHMADLAW
300 S. Arlington Avenue, Ste B
Reno, Nevada 89501
Telephone: (775) 234-8760
Ahmad@alawnv.com
*Attorney for Plaintiff*

**AHMADLAW**
300 S. Arlington Avenue, Ste B
Reno, Nevada 89501
(775) 234-8760

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

CARI-ANN P. BURGESS,

Plaintiff,

vs.

WASHOE COUNTY, a political Subdivision
of the State of Nevada, ROES I through X, and
Does 1 through 10, inclusive,

Defendant.                              /

Case No. 3:25-cv-00065-NJK

**PLAINTIFF'S REPLY IN SUPPORT OF
MOTION TO DISQUALIFY THE
WASHOE COUNTY DISTRICT
ATTORNEY'S OFFICE
(HEARING REQUESTED)**

Plaintiff, CARI-ANN BURGESS ("Plaintiff" or "Ms. Burgess"), by and through her counsel, Hawah S. Ahmad, Esq. of AhmadLaw, and hereby respectfully files this Reply in Support of the Motion to Disqualify the Washoe County District Attorney's Office from Representing Defendant in this Action (Hearing Requested) ("Motion to Disqualify") (ECF No. 51). This Motion is made and based upon the following Memorandum of Points and Authorities, Declaration of Hawah S. Ahmad[1], Esq., all papers and pleadings on file herein, all minutes on file in this case, Transcript from November 20, 2025, Emergency Virtual Hearing (ECF No. 38), and any and all arguments entertained by the Court in this matter.

## MEMORANDUM OF POINTS AND AUTHORITIES

---

[1] See Exhibit 4.

1

AHMADLAW
300 S. Arlington Avenue, Ste B
Reno, Nevada 89501
(775) 234-8760

## I.    INTRODUCTION/BACKGROUND

The Washoe County District Attorney's Office (the "DA's Office"), on behalf of Defendant, Washoe County, a political Subdivision, filed its Opposition to Plaintiff's Motion to Disqualify on April 9, 2026 ("Opposition"). (ECF No. 58.) The Opposition rests on three arguments: (1) Plaintiff lacks standing to seek disqualification under *Cannizzaro v. Eighth Judicial Dist. Court*, 466 P.3d 529 (Nev. 2020), because prior representation was solely in Ms. Burgess's official capacity as Registrar of Voters ("ROV"); (2) Nevada Rule of Professional Conduct 3.7 does not reach pretrial proceedings and therefore cannot support disqualification at this stage; and (3) the motion is untimely and therefore waived. The Opposition also seeks sanctions under 28 U.S.C. Section 1927 and the Court's inherent authority for filing the motion and alleging fabricated assertions.[2]

Not one of these arguments withstands scrutiny when measured against the documentary record that the County itself introduced. The Opposition is supported by declarations from Ms. Liddell (ECF 58, Ex. 1), Chief Deputy District Attorney Michael Large (ECF 58, Ex. 2), and Deputy District Attorney Brandon Price ("Mr. Price") (ECF 58, Ex. 3). As set forth below, those declarations confirm rather than dissolve the conflict.

The core problem is not merely that the DA's Office appeared as counsel of record in prior litigation, naming Ms. Burgess in her official capacity, discussing functions of her position that are now in question in this litigation. The problem is that Deputy District Attorney Kate Hickman ("Ms. Hickman"), identified by the County's own initial disclosures as a fact witness in this action, served as Ms. Burgess's ongoing, substantive legal advisor on the precise ROV operational matters that form the factual predicate of her termination. ECF 58-10 documents seven months of that advisory

---

[2] The DA's Office makes assertions of Plaintiff's counsel's "fabrications" six separate times in the Opposition alone, and twice in the Exhibits.

relationship in detail. The DA's Office cannot simultaneously serve as defense counsel and as the institutional home of a disclosed fact witness who provided confidential legal guidance to the current plaintiff on the very decisions the County now characterizes as grounds for her termination.

### A. Correction of Washoe County District Attorney's Office's Record.

On or about January 31 2025, Plaintiff filed her Complaint and Jury Demand but held service of the Complaint. (ECF No. 1). After repeated attempts to confer with Washoe County Chief Deputy of the Civil Division, Nathan Edwards regarding Defendant's Investigatory Interview of Plaintiff, Ms. Liddell provided a copy of the report to undersigned on February 14, 2026. Shortly thereafter, Deputy Mr. Price was added to all e-mail communications. See Exhibit 1. On or about May 30, 2025, Plaintiff filed her First Amended Complaint and Jury Demand. (ECF No. 10). On June 2nd, 2025, undersigned and Deputy District Attorney Lindsay L. Liddell ("Ms. Liddell") conferred after receipt of an email in which Mr. Price was referenced as being on the litigation team. Id at p. 8. Mr. Price continued to receive email communication despite not making an appearance in this matter through July 2025. Id.

On September 15, 2025, counsel submitted a Joint Case Conference Report in which the DA's Office stated:

> Pursuant to Fed. R. Ev. 502(d), the parties request the Court to enter an Order that production of a privileged or work-product-protected document, whether inadvertent or otherwise, is not a waiver of privilege or work-product protection in this case or in any other federal or state proceeding. Defendants intend to waive attorney-client privileged for certain limited communications.[3] Any such waiver for a specific record will be clearly identified on the Rule 26 disclosures and/or the actual record.
>
> ECF No. 23.

---

[3] For example, Defendant will waive attorney-client privilege for communications from the ROV's attorney in July 2024 reminding Plaintiff of the federal deadline to deactivate voters and inquiring as to whether Plaintiff was on track to complete that task.

**AHMADLAW**
300 S. Arlington Avenue, Ste B
Reno, Nevada 89501
(775) 234-8760

3

No such waiver has ever been provided.

Undersigned concedes that Mr. Price is not Ms. Liddell's supervisor. However, the absence of disclosure until November 20, 2025, in that Mr. Price was the Deputy District Attorney in the room on September 25, 2024 (ECF No. 10 at ⁋124), a fact not disclosed until November 20, 2025 (ECF No. 38, p. 4 ln. 17). Oddly, the DA's office was not visible on the February 12, 2025 termination email to Ms. Burgess. See Exhibit 2. Nevertheless, pursuant to the Opposition, it was disclosed for the first time that neither Mr. Price nor Ms. Hickman have been screened from this matter. Notably, Mr. Price has conferred regarding "case strategy discussion and provides valuable input in editing briefs in this case" and Ms. Hickman, a proposed noticed witness has consulted regarding election law. See ECF No 58, p. 6, lines 3-7, See also Exhibit ECF No. 58-3, ⁋4. While neither Mr. Price nor Ms. Hickman have "formal" roles, they are necessary witnesses with specific knowledge that have not been screened from the ongoing litigation in this matter.

On November 20, 2025, undersigned contacted Chief Deputy Nathan Edwards after Ms. Liddell failed to respond for hours to the Court regarding the emergency hearing. When she did respond, she stated, "…I am scrambling to get ready for the short-noticed hearing." (ECF No. 58, Ex. 8.) This was notable because neither party had been informed of the basis for the hearing. The hearing ultimately concerned Magistrate Baldwin's relationship with a Deputy District Attorney—an issue the Court indicated "Ms. Liddell will probably already be familiar with." (ECF No. 38 at 4:1–4.) This was the first time that relationship had been disclosed to undersigned.

Following the hearing, Ms. Liddell requested an ethical evaluation. After consulting with government attorneys and reviewing the Nevada Rules of Professional Conduct, undersigned determined the inquiry fell outside my purview, as it is governed by the District Attorney's Office, applicable professional rules, and the State Bar of Nevada.

4

**AHMADLAW**
300 S. Arlington Avenue, Ste B
Reno, Nevada 89501
(775) 234-8760

Shortly thereafter, and contrary to ECF No. 58-2, ¶¶ 6 and 9, Mr. Large engaged in multiple meetings with County Commissioners regarding this litigation, including on or about November 17, 2025. On December 4, 2025, Mr. Large sent an email titled "Attorney Client Privileged Communication" to my client, a sitting County Commissioner, asserting that undersigned "is stating that you are disseminating information from our conversations" and confirming the meetings in which they discussed the case. My client conferred with me over the tone of the email and whether it needed to be addressed through counsel. On April 9, 2026, a public records request was submitted for the complete email to protect my client's interests, along with a request for the Civil Division organizational chart. Thereafter, on April 13, 2026, Mr. Large again confronted my client regarding why undersigned knew the date of the email. The records requests were then assigned to Mr. Large. A follow-up request to his supervisor seeking prompt disclosure was deferred. See Exhibit 3. Accordingly, the Opposition's representations are contradicted by the DA's Office's conduct, which reflects an unwillingness to produce information it now characterizes as nonexistent or false.

Further, the assertion that undersigned's "personal disdain" for the District Attorney's Office and attempt to inflame or influence the election with a Motion is preposterous. The matter was mentioned at the Early Neutral Evaluation (October 27, 2025) and the November 20, 2025 Emergency Hearing, but was not acted on as the parties' pleading for Defendant's Motion to Dismiss was already underway. It was not until Defendant unilaterally attempted to stay further discovery without consultation that it was found that Ms. Hickman previously represented Plaintiff and that the alleged limited privilege waiver was never provided and is being utilized to strategically disclose information.

## II.    LEGAL STANDARD

Federal courts have inherent authority to disqualify counsel where continued representation would compromise the integrity of the proceedings or violate applicable Rules of Professional Conduct. *Wheat v. United States*, 486 U.S. 153, 160 (1988). The District of Nevada applies Nevada's

**AHMADLAW**
300 S. Arlington Avenue, Ste B
Reno, Nevada 89501
(775) 234-8760

Rules of Professional Conduct in federal proceedings. D. Nev. LR IA 11-7(a). Office-wide disqualification of a government law office requires a strong factual predicate and a showing that continued representation will result in an actual legal or ethical violation. *United States v. Williams*, 68 F.4th 564 (9th Cir. 2023). NRPC 3.7(a) provides that a lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness unless the testimony relates to an uncontested issue, relates to the nature and value of legal services rendered, or disqualification would work substantial hardship on the client. Nevada courts have interpreted the advocate-as-witness prohibition to extend to situations where the attorney would be required to argue the veracity of her own testimony or that of a colleague. *DiMartino v. Eighth Jud. Dist. Ct.*, 66 P.3d 945, 946-47 (Nev. 2003). NRPC 1.9(a) prohibits representing a party whose interests are materially adverse to a former client in the same or a substantially related matter.

Both matters are being pled at this initial pleading stage as the issues have recently become apparent.

## III.    LEGAL ARGUMENT

### A.  The Standing Argument Misreads Cannizzaro and Does Not Foreclose the Court's Inherent Authority to Act

The DA's Office invokes *Cannizzaro*, 466 P.3d 529, for the proposition that official-capacity representation creates no personal attorney-client relationship and therefore Plaintiff lacks standing to seek disqualification. That reliance is misplaced. *Cannizzaro* addressed whether a third-party non-client could invoke conflict rules against adverse counsel, a materially different posture than the one presented here, where Plaintiff is the individual from whom the DA's Office obtained confidential advisory communications on the very operational matters now at issue. Moreover, even if *Cannizzaro* applied as the County urges, it addresses those who may seek disqualification, not whether a conflict exists. Further, the attorney-client relationship in *Cannizzaro* specified that the legislators were not acting in their capacity as legislators.

**AHMADLAW**
300 S. Arlington Avenue, Ste B
Reno, Nevada 89501
(775) 234-8760

Federal courts have broad discretion to refuse continued representation where a conflict threatens the integrity of the proceedings, and trial courts must take an active role in policing such conflicts. *Wheat v. United States*, 486 U.S. 153, 163 (1988). The Nevada Supreme Court has further recognized that a nonclient may have standing to seek disqualification where the ethical breach so infects the litigation that it impacts the nonclient moving party's interest in a just and lawful determination of her claims. *Liapis v. Dist. Ct.*, 128 Nev. 414, 418, 282 P.3d 733, 736 (2012). That standard is met here. Ms. Hickman's seven-month advisory relationship with Plaintiff on the operational ROV matters that form the factual basis of this case is documented in the County's own Exhibit 58-10. The DA's Office is now affirmatively using those advisory communications to argue that Plaintiff performed her duties deficiently, while the same office that guided those decisions is now litigating against her based on them. That role reversal infects the proceeding in precisely the manner *Liapis* contemplates. Notably, DDA Liddell's own declaration cites *Cannizzaro* (*see* paragraph 14) while separately devoting substantial analysis to distinguishing the conflict rules on the merits, which itself acknowledges that the theory has sufficient legal viability to require substantive rebuttal and not dismissal on threshold grounds alone.

**B. The "Official Capacity" Label Does Not Neutralize the Confidential Advisory Relationship Documented in Exhibit 58-10**

Defendant frames every prior District Attorney involvement with Plaintiff as official-capacity representation in discrete litigation. That argument addresses only the form of prior representation and ignores its substance. Exhibit 58-10 is not a litigation caption. It is a produced series of Bates-stamped advisory communications (WC0683-WC2087)[4] from Ms. Hickman to ROV Burgess

---

[4] Plaintiff notes that ECF 58-10 is Bates stamped in the bottom right corner. The eight Bates-stamped pages in the exhibit are: WC0683, WC0684, WC1209, WC1494, WC1767, WC1872, WC2086, and WC2087. This means that Defendant provided only 8 pages out of a 1,405-page range (WC0683-WC2087).

**AHMADLAW**
300 S. Arlington Avenue, Ste B
Reno, Nevada 89501
(775) 234-8760

spanning January through July 2024, the period immediately before Plaintiff was placed on leave. In those communications, Ms. Hickman advised Plaintiff on mandatory signature-curing procedures under NAC 293.185 and NRS 293.1277; special election timing and cost allocation under NRS 293.443 and NRS 318.095; vote canvass staff report drafting; the statutory definition of a cast ballot; the partisan status of county commissioner offices; and the inactivation of more than 50,000 voters under the NVRA and NRS 293.530(c), including staffing timelines and procedural deadlines. This is not arms-length litigation support. It is the kind of ongoing, reliance-based advisory relationship through which confidential operational information flows. The official-capacity label on the *Kraus v. Burgess* motion to dismiss (ECF 58-11) was filed by Ms. Hickman in July 2024, two months before Ms. Burgess was placed on leave and does not erase what Ms. Hickman learned through that advisory relationship. The County's own Opposition states that the communications in Exhibit 58-10 "actually demonstrate Burgess's deficient knowledge and failure to meet legal obligations." That concession confirms that the DA's Office is not merely aware of the prior advisory communications, it is affirmatively deploying them against Ms. Burgess in this litigation. That is the legal or ethical violation the *Williams* standard requires. *Williams,* 68 F.4th at 564.

### C. Ms. Hickman Is a Disclosed Fact Witness and No Documented Screen Exists

The County's initial disclosures served September 15, 2025, identified Ms. Hickman as a fact witness. That disclosure confirms the County's own assessment that Ms. Hickman has information relevant to the facts at issue. This necessarily includes advice that was provided to Plaintiff about the ROV operational decisions Defendant now characterizes as grounds for termination. An attorney who possesses confidential advisory communications with a former client cannot transition to a fact-witness role while her office continues to represent the adverse party. NRPC 1.9 is not limited to formal representations; it encompasses the use of confidential information against a former client in a substantially related matter.

AHMADLAW
300 S. Arlington Avenue, Ste B
Reno, Nevada 89501
(775) 234-8760

Mr. Price's declaration expressly disclaims any supervisory authority over Ms. Liddell. The Opposition implicitly relies on internal office structure to suggest the conflict is contained: Ms. Liddell leads the litigation, Mr. Price merely assists, and Mr. Large is walled off due to the Baldwin conflict. But if Mr. Price has no supervisory authority over Ms. Liddell, then his acknowledged role in reviewing filings and advising case strategy is not the work of a supervised subordinate performing routine oversight. It is the work of a peer, specifically one who attended the September 25, 2024 meeting at which Plaintiff was placed on administrative leave and who possesses direct, firsthand knowledge of the events underlying this action. That is a more problematic posture. As for Ms. Hickman, whose seven-month advisory relationship with Plaintiff is the primary source of the conflict, no declaration identifies any written ethical screen, any taint procedure, or any directive restricting communication with Ms. Liddell about Burgess-related matters. The County had every incentive to document such controls in opposing this motion. It did not. The absence of any documented screen in three declarations submitted specifically to defeat this motion is itself an admission that no screen was put in place.

### D. NRPC 3.7 Supports Disqualification on This Pretrial Record

The County cites *DiMartino*, 66 P.3d at 946-47, for the proposition that Rule 3.7 bars only trial advocacy. The County's reading is incorrect. *DiMartino* is more nuanced than the County suggests. The Nevada Supreme Court held that Rule 3.7 generally does not require pretrial disqualification, but its analysis turns on whether the attorney is: (1) "likely to be a necessary witness" and (2) whether disqualification would place a substantial hardship on the client. Id. These are both fact-dependent inquiries. Here, Ms. Hickman has already been identified as a fact witness by the County's own disclosures, not by Plaintiff's speculation. The likely-necessary-witness element is satisfied by the County's own September 15, 2025, disclosure. The County has advanced no hardship argument. Allowing the DA's Office to continue through depositions, summary judgment briefing,

**AHMADLAW**
300 S. Arlington Avenue, Ste B
Reno, Nevada 89501
(775) 234-8760

and trial preparation while Hickman is simultaneously a fact witness and institutional colleague of defense counsel is precisely the scenario Rule 3.7 is designed to prevent. Plaintiff reserves the right to supplement this argument as pretrial disclosures develop and as we approach trial.

**E. The Washoe County District Attorney's Office Representation of Washoe County is an Unwaivable Conflict of Interest.**

Here, there is a concurrent conflict of interest as there is a "significant risk that the representation…will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer." NRPC 1.7(a)(2). Ms. Liddell contends that her representation and that of the District Attorney's Office are not impacted by the DA's Office's prior representation of Plaintiff, and states that the *Matter of Discipline of Arabia*, 137 Nev. 568, 495 P.3d 1103 (2021) only necessitates that the attorney disclose the conflict and obtain a written waiver to proceed with representation. To date, no such disclosure or written waiver has been provided. Much like the "limited waiver of privilege" that does not exist, the DA's Office must now determine who gets to sign off on such waiver, as they have already acknowledged their role is to advise. Notably, there has been an absence of institutional votes to demonstrate that such waivers exist.

While screening procedures to avoid disqualification if properly implemented can provide a safeguard to governments, Mr. Large's Declaration that he was "walled" at an unknown time in this litigation does not suffice to demonstrate such screening exists. As such, and based upon the Opposition, protective measures have not been considered or implemented.

**F. The Waiver Argument Fails Because the Scope of the Conflict Was Not Knowable Until Discovery**

The County argues that Ms. Burgess's August 30, 2025 opposition to the motion to dismiss acknowledged prior official-capacity representation, yet this motion was not filed until March 2026. Knowing that the DA's Office appeared as counsel in the *Ribar* matter is not the same as knowing the full scope of Ms. Hickman's advisory relationship documented in Exhibit 58-10. The Hickman

**AHMADLAW**
300 S. Arlington Avenue, Ste B
Reno, Nevada 89501
(775) 234-8760

advisory communications (WC0683-WC2087) were Bates-stamped County records in the County's exclusive possession and their existence was not discernible from any case caption. Courts evaluating timeliness consider the timeframe between actual discovery of the potential conflict and the filing of the motion, not the date on which a party had general awareness of prior involvement. *Flynn v. Love*, No. 3:19-cv-00477, slip op. at 4 (D. Nev. 2020). Moreover, delay alone is insufficient to establish waiver. *Rebel Commc'ns, LLC v. Virgin Valley Water Dist.*, No. 2:10-cv-01343, slip op. at *5 (D. Nev. 2011). Ms. Burgess could not have known the depth of the Hickman advisory relationship before those records were produced in discovery and before the Renewed Motion to Dismiss (ECF No. 44, filed February 13, 2026) required research into the full scope of the Office's prior involvement, nor anticipate that Defendant would proceed with a request for a Stay of Discovery without further consultation. This motion is timely as it followed within weeks of that research.

**G.  The Liddell Declaration Contains Improper Legal Conclusions and Should Be Given No Weight as to Those Paragraphs**

A declaration submitted in opposition to a motion must be limited to facts within the declarant's personal knowledge. Fed. R. Civ. P. 56(c)(4). Paragraphs 14, 16, 17, and 19 of Ms. Liddell's declaration assert legal conclusions rather than facts within her personal knowledge. Paragraph 14 characterizes the legal significance of prior official-capacity representation and cites *Cannizzaro* as controlling authority. Paragraph 16 offers a legal opinion that no prior representation creates a conflict under NRPC 1.9. Paragraph 17 asserts that prior litigation positions were not inconsistent, but this is a legal judgment, not a factual observation, and further it is offered without identifying which cases were reviewed or what positions were taken. Paragraph 19 denies personal interest in the outcome with no factual predicate, and which may not be accurate given that Ms. Liddell's boss is facing reelection. These paragraphs are improper and should be disregarded. The Court should evaluate the motion on the documentary record, including Exhibits 58-10 and 58-11, which the County itself introduced.

## H. Sanctions Are Not Warranted

Section 1927 sanctions require a finding that counsel unreasonably and vexatiously multiplied proceedings in bad faith. *Blixseth v. Yellowstone Mountain Club*, LLC, 796 F.3d 1004, 1007 (9th Cir. 2015). This motion is grounded in produced documentary evidence, and the County's own Exhibits 58-10 and 58-11. The Ninth Circuit has held that an attorney cannot be sanctioned for a well-founded motion solely on the basis of a failure to conduct a reasonable inquiry, and that sanctions under Section 1927 cannot be imposed absent a specific finding of subjective bad faith. *In re Keegan Mgmt. Co., Sec. Litig.*, 78 F.3d 431, 436 (9th Cir. 1996). Further, Plaintiff's ability for reasonable inquiry has been substantially reduced due to the stays of discovery. As there is no showing of bad faith, recklessness, or improper tactical motivation, this request should be denied.

## IV.    CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court grant the Motion to Disqualify the Washoe County District Attorney's Office and order substitution of independent counsel. In the alternative, Plaintiff requests an evidentiary hearing at which Ms. Hickman, Mr. Price, Mr. Large, and Ms. Liddell may be examined regarding the nature and scope of the advisory relationship and the adequacy of any claimed internal screen.

### <u>AFFIRMATION</u>

Affirmation pursuant to NRS 239B.030, the undersigned declares that this document does not contain the personal information of any person as defined by NRS 603A.040.

Dated this 16th day of April 2026.

AHMADLAW

 //s//Hawah S. Ahmad
HAWAH S. AHMAD, ESQ.
300 S. Arlington Avenue, Ste. B
Reno, NV 89501
(775) 234-8670
ahmad@alawnv.com
*Attorney for Plaintiff*

AHMADLAW
300 S. Arlington Avenue, Ste B
Reno, Nevada 89501
(775) 234-8760

12

**AHMADLAW**
300 S. Arlington Avenue, Ste B
Reno, Nevada 89501
(775) 234-8760

**CERTIFICATE OF SERVICE**

Pursuant to FRCP 5(b), I hereby certify that I am an employee of AhmadLaw, and am over

the age of eighteen (18), and that on the date set forth below, I served a true copy of:

**PLAINTIFF'S REPLY IN SUPPORT OF MOTION TO DISQUALIFY THE**

**WASHOE COUNTY DISTRICT ATTORNEY'S OFFICE**

on the party below by:

X      Electronic Service via e-filing to:
Chris Hicks, Washoe County District Attorney
Lindsay S. Liddell, Deputy District Attorney
One South Sierra Street
Reno, Nevada 89501
lliddell@da.washoecounty.gov
(775) 337-5700

__     E-Mail to

DATED 16th day of April 2026.

//s// *Aaron Palm*
Employee of AhmadLaw

13

AHMADLAW
300 S. Arlington Avenue, Ste B
Reno, Nevada 89501
(775) 234-8760

Exhibit Index

Exhibit 1  Emails Between Hawah S. Ahmad, Esq., with Deputy District Attorney Brandon Price cc'ed as an Attorney or acting in an Attorney Capacity  11

Exhibit 2  E-Mail to Ms. Burgess Re: Termination  1

Exhibit 3  Public Records Request and Email to Chief Deputy District Attorney Nathan Edwards  4

Exhibit 4  Declaration of Hawah S. Ahmad  4