HAWAH S. AHMAD Esq.
Nevada State Bar No. 16374
Ahmad Law PLLC
300 S. Arlington Avenue, Ste B
Reno, Nevada 89501
Telephone: (775) 234-8760
Email: ahmad@alawnv.com
*Attorney for Plaintiff*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

CARI-ANN P. BURGESS,

Plaintiff,

vs.

WASHOE COUNTY, a political subdivision of the State of Nevada, ROES I through X, and Does 1 through 10, inclusive,

Defendant. /

Case No. 3:25-cv-00065-NJK

**SECOND AMENDED COMPLAINT AND JURY DEMAND**

Plaintiff, CARI-ANN BURGESS ("Plaintiff" or "Ms. Burgess"), by and through her counsel, Hawah S. Ahmad, Esq. of AhmadLaw, and pursuant to this Court's Order of June 11, 2026 (ECF No. 63) granting leave to amend, the Stipulation and Order to Extend Deadline to File Second Amended Complaint and Setting Briefing Schedule (ECF No. 63), and Federal Rule of Civil Procedure ("FRCP") 6(a)(1)(C), files this Second Amended Complaint against Defendant Washoe County ("Defendant" or the "County") and alleges as follows:

**I. PARTIES**

1. Plaintiff Cari-Ann P. Burgess is a citizen of the United States and, at all material times, a resident of the State of Nevada. She was employed by Defendant as Deputy Registrar of Voters beginning in or about September 2023, as Acting Registrar of Voters beginning in or about



**AHMAD LAW PLLC**
300 S. Arlington Avenue, Ste B
Reno, Nevada 89501
(775) 234-8760

January 2024, and as Interim Registrar of Voters beginning March 16, 2024, until her termination on February 12, 2025.

2. Defendant Washoe County is a political subdivision of the State of Nevada.

3. Defendant is an "employer" and a "covered entity" within the meaning of 42 U.S.C. § 12111(2) and (5), and an "employer" within the meaning of NRS 613.310(2). Defendant employs more than 500 employees in each of 20 or more calendar weeks in the current and preceding calendar year.

4. The true names and capacities, whether individual, corporate, associate, or otherwise, of Defendants DOES I through XX, inclusive, are unknown to Plaintiff who therefore sue said Defendants by such fictitious names. Plaintiff is informed, believes, and thereon alleges that each of the Defendants designated herein as DOE is responsible in some manner for the events and happenings herein referred to and damages caused proximately thereby to Plaintiff as herein alleged; that Plaintiff will ask leave of this Court to amend this Complaint to insert the true names and capacities of said Defendants DOES I through XX when same have been ascertained by Plaintiff together with appropriate charging allegations, and to join such Defendants in this Action.

5. Defendant is a recipient of federal financial assistance and a "program or activity" within the meaning of 29 U.S.C. § 794(a) and (b)(1)(A). Defendant received federal financial assistance including, without limitation, funds distributed under the Help America Vote Act and federal election security grant funding administered through the Nevada Secretary of State's Office.

6. Plaintiff is a "qualified individual" within the meaning of 42 U.S.C. § 12111(8). With or without reasonable accommodation, Plaintiff could perform the essential functions of both the Deputy Registrar of Voters position and the Interim Registrar of Voters position. Plaintiff in fact performed the essential functions of the Interim Registrar of Voters position through the 2024

AHMAD LAW PLLC
300 S. Arlington Avenue, Ste B
Reno, Nevada 89501
(775) 234-8760

Presidential Preference Election, the 2024 Primary Election, a recall election, and three candidate recounts, and received a performance review in July 2024 containing only positive attributes.

7. The following individuals are not named as Defendants in this action. At all material times, each individual was an officer, agent, or employee of Defendant and was acting within the course and scope of his or her employment or agency. The acts and omissions of these individuals alleged herein were undertaken in connection with their respective duties and responsibilities for Defendant. Where applicable, Defendant is liable for such acts and omissions pursuant to applicable law.

a. Eric Brown, County Manager ("Mr. Brown");
b. Kate Thomas, Assistant County Manager ("Ms. Thomas");
c. Mary Kandaras, Chief Deputy District Attorney ("Ms. Kandaras");
d. Brandon R. Price, Deputy District Attorney ("Mr. Price");
e. Elizabeth Hickman, Deputy District Attorney ("Ms. Hickman");
f. Patricia Hurley, Director of Human Resources ("Ms. Hurley");
g. Julie Paholke, Human Resources Manager for Compensation and Recruitment ("Ms. Paholke");
h. Andrew McDonald, Deputy Registrar of Voters and later Registrar of Voters ("Mr. McDonald");
i. Addison Vetter, Elections Specialist ("Ms. Vetter");
j. Maria E. Alvarado, Administrative Assistant I ("Ms. Alvarado");
k. Cayla J. Witty, Esq., Third-Party Contracted Investigator ("Ms. Witty");
l. Jan Galassini, Washoe County Clerk;
m. Alexis Hill, Washoe County Commissioner ("Ms. Hill"); and,
n. Clara Andriola, Washoe County Commissioner ("Ms. Andriola").

AHMAD LAW PLLC
300 S. Arlington Avenue, Ste B
Reno, Nevada 89501
(775) 234-8760

8. At all material times, the acts and omissions alleged herein were committed by officers, agents, and employees of Defendant acting in their respective capacities and, where applicable, within the course and scope of their employment or agency with Defendant. Defendant is liable for those acts and omissions to the extent provided by applicable federal or state law.

## II. JURISDICTION, VENUE, AND JURY DEMAND

9. This action arises under the Constitution and laws of the United States, including Title I of the Americans with Disabilities Act of 1990, as amended by the ADA Amendments Act of 2008 ("ADA"), 42 U.S.C. §§ 12101 et seq., inclusive of 42 U.S.C. §§ 12111–12117; Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794; 42 U.S.C. §§ 1983 and 1988; and the First and Fourteenth Amendments to the United States Constitution. It arises as well under NRS Chapter 613 and the common law of the State of Nevada.

10. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 because Plaintiff's First through Sixth, Twelfth, and Thirteenth Claims for Relief arise under the Constitution and laws of the United States, and under 28 U.S.C. § 1343(a)(3).

11. This Court may exercise supplemental jurisdiction over Plaintiff's state law claims arising under the common law, statutes and regulations of the State of Nevada, and which arise from common nucleus of operative fact pursuant to 28 U.S.C. § 1367(a).

12. The declaratory and injunctive relief sought is authorized by 28 U.S.C. §§ 2201 and 2202, 42 U.S.C. § 1983, and Rule 57 of the Federal Rules of Civil Procedure.

13. Venue is proper in this District under 28 U.S.C. § 1391(b)(1) and (b)(2) because Defendant resides in this District, the events giving rise to Plaintiff's claims occurred in this District, and relevant employment records and evidence are maintained in this District.

14. This case is proceeding before the assigned United States Magistrate Judge on party consent. (See ECF No. 33; see also ECF No. 36; see also ECF No. 37.)

AHMAD LAW PLLC
300 S. Arlington Avenue, Ste B
Reno, Nevada 89501
(775) 234-8760

15. Plaintiff hereby requests a jury trial relative to all issues so triable.

## III. ADMINISTRATIVE PREREQUISITES

16. On October 17, 2024, Plaintiff filed a charge of discrimination and retaliation with the Nevada Equal Rights Commission ("NERC"). Plaintiff received a Notice of Right to Sue from NERC on December 16, 2024. A true and correct copy is attached as Exhibit 1.

17. On October 28, 2024, Plaintiff filed a charge of discrimination and retaliation with the Equal Employment Opportunity Commission ("EEOC"). Plaintiff received a Notice of Right to Sue from the EEOC's Los Angeles District Office on November 2, 2024. A true and correct copy is attached as Exhibit 2.

18. On February 20, 2025, following further discriminatory and retaliatory conduct including Plaintiff's reversion and termination, Plaintiff filed a further charge of discrimination and retaliation with the EEOC. Plaintiff received a Notice of Right to Sue from the EEOC's Los Angeles District Office on March 21, 2025. A true and correct copy is attached as Exhibit 3.

19. This action was commenced within ninety (90) days of Plaintiff's receipt of each Notice of Right to Sue. Each claim pleaded herein is within the scope of, or reasonably related to, the allegations of the foregoing charges and the investigation that could reasonably be expected to grow out of them. The Nevada Equal Rights Commission and the Equal Employment Opportunity Commission administer a work-sharing agreement under which a charge filed with either agency is deemed filed with the other as of the date of the original filing. Each charge identified above was accordingly dual-filed with both agencies, and NERC either adjudicated Plaintiff's charges or waived its right to do so in favor of the EEOC. Plaintiff has therefore exhausted her administrative remedies as to her claims under NRS Chapter 613, including as to her reversion to the Deputy Registrar of Voters position and her termination.

AHMAD LAW PLLC
300 S. Arlington Avenue, Ste B
Reno, Nevada 89501
(775) 234-8760

20. Plaintiff has satisfied all conditions precedent to suit under NRS Chapter 613 and, as to her state law tort claims, has complied with NRS 41.036.

## IV. GENERAL ALLEGATIONS

### A. Overview of the Action

21. Plaintiff alleges that she has physical and mental impairments, specifically hypertension, generalized anxiety, and complex post-traumatic stress disorder, that substantially limit major life activities and major bodily functions independent of any particular job, that she has a record of such impairments, and that the County regarded her as having such impairments. Plaintiff does not allege, and has never alleged, that her impairments limit her only in the single job of Registrar of Voters. The working conditions in the Registrar of Voters Office aggravated those impairments, but they did not create them and do not define their outer boundary.

22. Plaintiff requested reasonable accommodation on identified dates in September 2024. The County did not engage in the interactive process, did not offer leave under the Family and Medical Leave Act (FMLA), did not offer reassignment to the vacant Deputy Registrar of Voters position, and did not permit Plaintiff to return to work after her treating provider cleared her without restriction. Instead, the County placed Plaintiff on leave, compelled her to exhaust her accrued paid leave, reduced her pay, publicly disclosed her medical status, opened an investigation for which no complaint existed, denied her the permanent Registrar of Voters position, and terminated her employment.[1]

---

[1] The County investigator reported that a search of County records located no email from Mr. Brown concerning this subject. This establishes only that the direction was not provided by email. Plaintiff received the direction directly from Mr. Brown, and the work proceeded openly and was reported to him. Plaintiff anticipates that further discovery will establish additional facts concerning the direction, authorization, and Mr. Brown's knowledge of the work.

AHMAD LAW PLLC
300 S. Arlington Avenue, Ste B
Reno, Nevada 89501
(775) 234-8760

AHMAD LAW PLLC
300 S. Arlington Avenue, Ste B
Reno, Nevada 89501
(775) 234-8760

**B. <u>Plaintiff's Employment and Performance</u>**

23. Under the Washoe County organization chart, the Registrar of Voters reports directly to the County Manager. At all material times, the County did not amend that organization chart.

24. Plaintiff was hired as Deputy Registrar of Voters in or about September 2023, after leaving her position as Deputy Registrar in Douglas County. At the time of hire, the County represented to Plaintiff that the position carried due process protection and a liberty interest. Washoe County Human Resources issued Plaintiff a written notice of unclassified appointment for the Deputy Registrar of Voters position, dated September 5, 2023 (the date of her hire) under Section 5.093 of the County Personnel Handbook, stating that she served "at the pleasure of the appointing authority" and was ineligible for transfer, voluntary demotion, or reinstatement privileges; that notice was not delivered to Plaintiff until January 25, 2024. Ms. Hurley indicated confusion in emails dated September 19, 2024 at 7:40 p.m. regarding the status of the Plaintiff's employment classification.

25. On or about December 8, 2023, then-Registrar of Voters Jamie Rodriguez was placed on leave, and the County asked Plaintiff to perform all duties of the Registrar of Voters in addition to her own. Ms. Rodriguez resigned January 2, 2024.

26. On or about January 16, 2024, the Board of County Commissioners affirmed the County's recommendation that Plaintiff serve as Acting Registrar of Voters under NRS 245.180, and as Interim Registrar of Voters effective March 16, 2024, vesting her with the full powers and duties of a Registrar appointed on a non-interim basis.

27. At the time of that appointment, Mr. Brown, Ms. Hurley, and Ms. Paholke each confirmed to Plaintiff that her Deputy Registrar of Voters position would remain open should she not obtain the permanent Registrar position or should she wish to return to it. The Deputy Registrar of Voters position in fact remained vacant and unfilled for the duration of Plaintiff's tenure.

28. Plaintiff held the position of a department head appointed by the Board of County Commissioners. The County Manager's January 2, 2024 staff report to the Board, prepared for the Board's January 16, 2024 meeting, recommended Plaintiff's appointment under NRS 244.164 and NRS 245.180, stated that the appointment would remain effective until either resignation by the appointee or the Board's appointment of a Registrar on a non-interim basis, and stated that while serving in an interim capacity the appointee would be vested with the same authority to carry out the powers and duties of a Registrar appointed on a non-interim basis.

29. Plaintiff performed the essential functions of the position. She led the Office through the February 2024 Presidential Preference Primary, the June 11, 2024 Primary Election, a recall election, and three candidate recounts. Her sole performance review, issued in July 2024, contained only positive attributes. On or about September 20, 2024, Mr. Brown told Plaintiff she was doing a good job under the circumstances. Plaintiff never received a written notice of performance deficiency, a performance improvement plan, or any job-specific coaching or disciplinary action of any kind at any time before the County placed her on leave on September 25, 2024.

30. Plaintiff performed this work while performing the additional duties of two vacant Deputy Registrar of Voters positions, working substantial overtime, and implementing a new statewide voter registration system.

31. Plaintiff also carried out the community-outreach initiatives Mr. Brown assigned her. In or about January 2024, at Mr. Brown's direction, Plaintiff worked with a local pastor, Maurice Washington, whom Mr. Brown identified to organize ballot collection sites at parishes for the 2024 General Election, and Plaintiff developed the chain-of-custody forms and procedures governing that program. Mr. Brown monitored that work at the County's weekly executive meetings, and by telephonic updates. Every element of the program was undertaken at the direction, and with the contemporaneous knowledge, of the County Manager, contrary to NRS 293.269921(3).

AHMAD LAW PLLC
300 S. Arlington Avenue, Ste B
Reno, Nevada 89501
(775) 234-8760

### C. Plaintiff's Impairments and Effect on Major Life Activities

#### *i. Plaintiff's Impairments*

32. Plaintiff has hypertension. Hypertension is a physiological disorder affecting the cardiovascular and circulatory systems and is a physical impairment within the meaning of 29 C.F.R. § 1630.2(h)(1).

33. Plaintiff has been diagnosed with generalized anxiety and, in or about November 2024, with complex post-traumatic stress disorder. Each is a mental impairment within the meaning of 29 C.F.R. § 1630.2(h)(2).

34. Plaintiff's impairments substantially limit the operation of major bodily functions, including the functions of her circulatory and cardiovascular systems, her neurological and brain functions, and her endocrine function. 42 U.S.C. § 12102(2)(B).

35. Plaintiff's impairments also substantially limit major life activities other than working, including sleeping, concentrating, thinking, and interacting with others. 42 U.S.C. § 12102(2)(A); 29 C.F.R. § 1630.2(i)(1)(i).

36. Plaintiff's impairments substantially limit the major life activity of sleeping as compared to most people in the general population. 29 C.F.R. § 1630.2(j)(1)(ii). Plaintiff experiences difficulty initiating and maintaining sleep and a reduction in both the duration and the quality of her sleep. That limitation manifests at home and on days Plaintiff does not work; it is not confined to the hours Plaintiff worked or to the duties of the Registrar of Voters position. The demands of the Registrar of Voters Office aggravated the limitation, but they did not create it and do not define its boundaries. The duration, frequency, and severity of Plaintiff's sleep limitation, and the treatment prescribed for it, are documented in Plaintiff's medical records and in the records of her treating providers.



AHMAD LAW PLLC
300 S. Arlington Avenue, Ste B
Reno, Nevada 89501
(775) 234-8760

37. Plaintiff's impairments substantially limit the major life activities of concentrating and thinking, and substantially limit her neurological and brain function, as compared to most people in the general population. Plaintiff experiences persistent anxiety, intrusive worry, and difficulty sustaining attention and concentration. Those limitations manifest away from the workplace, including at home, and reduce Plaintiff's ability to manage her ordinary household and personal affairs. They are not confined to the duties of the Registrar of Voters position or to any other employment.

38. Plaintiff's hypertension substantially limits the operation of her circulatory and cardiovascular functions as compared to most people in the general population. 42 U.S.C. § 12102(2)(B). Plaintiff experienced elevated blood pressure readings in September 2024, which she reported to Mr. Brown on or about September 20, 2024. Plaintiff's prescribing provider, Allison D. Basta, A.P.R.N., thereafter increased the dosage of her antihypertensive medication. Plaintiff's hypertension requires ongoing medication and monitoring and is not resolved by the absence of any particular job duty.

39. The limitations described in the three preceding paragraphs are not limitations in the single job of Registrar of Voters, and they did not resolve when Plaintiff's employment ended. Plaintiff's employment with the County terminated on February 12, 2025. Plaintiff's hypertension, generalized anxiety, and complex post-traumatic stress disorder, and the limitations on sleeping, concentrating, thinking, circulatory function, and neurological and brain function described above, continued after that date. Following her termination, Plaintiff experienced increased stress and a further exacerbation of her hypertension.

40. That Plaintiff's working conditions caused or aggravated her impairments does not confine the impairments to that job. An impairment's cause does not define its scope. Plaintiff's

AHMAD LAW PLLC
300 S. Arlington Avenue, Ste B
Reno, Nevada 89501
(775) 234-8760

hypertension, anxiety, and complex post-traumatic stress disorder limit her bodily functions and daily activities wherever she is.

41. Plaintiff's impairments are episodic in character and vary in intensity. An impairment that is episodic or in remission is a disability if it would substantially limit a major life activity when active. 42 U.S.C. § 12102(4)(D). The medical clearance Plaintiff obtained on or about September 30, 2024 reflected that her acute symptoms had abated sufficiently to permit her return to work; it did not reflect that she had ceased to have an impairment.

42. The ameliorative effects of mitigating measures, including medication and medical treatment, are not considered in determining whether Plaintiff's impairments substantially limit a major life activity. 42 U.S.C. § 12102(4)(E)(i).

43. The definition of disability is construed in favor of broad coverage to the maximum extent permitted by the ADA, and "substantially limits" is not a demanding standard. 42 U.S.C. § 12102(4)(A)-(B); 29 C.F.R. § 1630.2(j)(1)(i).

***ii. Record of Impairment***

44. Plaintiff has a record of the foregoing impairments within the meaning of 42 U.S.C. § 12102(1)(B). The County itself created and relied upon that record: it required Plaintiff to request leave in writing from her County email account on September 25, 2024 on account of her reported stress and health condition; it received and retained Plaintiff's September 30, 2024, medical clearance from Allison D. Basta, A.P.R.N.; and it publicly announced that Plaintiff was "experiencing stress related health issues" and had taken leave "for self-care." The County also required Plaintiff to complete an EQ-i 2.0 Leadership Profile, and thereafter relied on that assessment in its investigation of Plaintiff and in its post-leave reports concerning her.

***iii. Regarded as Having an Impairment***

AHMAD LAW PLLC
300 S. Arlington Avenue, Ste B
Reno, Nevada 89501
(775) 234-8760

AHMAD LAW PLLC
300 S. Arlington Avenue, Ste B
Reno, Nevada 89501
(775) 234-8760

45. Independently, the County regarded Plaintiff as having a physical or mental impairment within the meaning of 42 U.S.C. § 12102(1)(C) and § 12102(3)(A). Plaintiff need not show that the impairment the County perceived limited or was perceived to limit a major life activity.

46. On or about September 24, 2024, Mr. Brown advised the Board of County Commissioners in writing that he had recommended Plaintiff "request a leave of absence to address self-identified recent stress issues," and characterized her conduct as "emblematic of recent behavior we have seen from her."

47. On or about September 24, 2024, Ms. Hurley advised Plaintiff in writing that her request for leave was approved and that "[w]e want you to focus on yourself while on leave."

48. On September 25, 2024, the County issued a public statement that Plaintiff "expressed to County Manager Brown that she was experiencing stress related health issues" and that "[a]t his recommendation, she has requested a leave of absence for self-care."

49. By September 27, 2024, Washoe County spokeswoman Bethany Drysdale issued a statement stating that Plaintiff had "experienced stress issues and requested medical leave."

50. On or about October 8, 2024, Mr. Brown told the Washoe County Commissioners during the October 8, 2024 meeting that Plaintiff was on leave and that she had not been fired and had not quit.

51. On October 31, 2024, the County issued a public statement that Plaintiff "was initially on leave from her position as Interim Registrar of Voters for medical reasons."

52. The impairments the County perceived were neither transitory nor minor. 42 U.S.C. § 12102(3)(B). The County treated the perceived condition as sufficiently serious to remove Plaintiff from her position shortly before a presidential general election, to bar her from the workplace for months, and to refuse her return after medical clearance.

53. The County subjected Plaintiff to the adverse actions described below because of the impairments it perceived her to have.

**D. <u>Ms. Thomas's Interference and Plaintiff's Reports</u>**

54. Beginning in or about June 2024, Ms. Thomas inserted herself into the Registrar of Voters Office, denied Plaintiff a line-item budget, barred Plaintiff from budget meetings, offered the Office's overtime budget to other departments, characterized Plaintiff's overtime as "greedy," directed Plaintiff's staff to report to her rather than to Plaintiff, and directed that Plaintiff's staff seek overtime approval from her rather than from Plaintiff.

55. On September 19, 2024, Ms. Thomas reported to Mr. Brown that she no longer felt effective in supporting Plaintiff and raised Plaintiff's use of overtime with him as recorded in the County's own January 15, 2025 investigation report. This preceded the County's decision to place Plaintiff on leave by six days.

56. Because of Ms. Thomas's scrutiny of her overtime, Plaintiff stopped recording her full overtime hours. She was never compensated for that time.

57. In or about August 2024, Ms. Thomas made repeated requests that unrelated departments be given access to the Voter Registration and Election Management Solution ("VREMS"). Plaintiff advised Ms. Thomas and Mr. Brown that such access was contrary to state policy and denied the requests.

58. On or about September 6, 2024, Plaintiff reported to Mr. Brown that Ms. Thomas was directing her staff to circumvent her authority and was disparaging her to Ms. Hill and others.

59. On September 17 through 20, 2024, Plaintiff identified and reported serious defects in VREMS, including UOCAVA records transferred with mismatched addresses and precincts ahead of the September 21, 2024 federal deadline, duplicate address entries, and apartment complexes miscoded as commercial such that residents would not receive mail ballots. Plaintiff reported these

AHMAD LAW PLLC
300 S. Arlington Avenue, Ste B
Reno, Nevada 89501
(775) 234-8760

AHMAD LAW PLLC
300 S. Arlington Avenue, Ste B
Reno, Nevada 89501
(775) 234-8760

defects to Mr. Brown, to Mark Wlaschin of the Nevada Secretary of State's Office, and to Secretary of State Francisco Aguilar.

**E. <u>Plaintiff's Requests for Reasonable Accommodation</u>**

60. In or about early September 2024, and specifically on or about September 6, 2024, Plaintiff notified Mr. Brown that her stress and anxiety had increased and requested an accommodation, namely a reduction in her required direct interaction with Ms. Thomas. Mr. Brown confirmed that Plaintiff reported to him and not to Ms. Thomas. The County took no further action on that request.

61. On or about September 20, 2024, Plaintiff notified Mr. Brown that her stress and anxiety had spiked and had resulted in very high blood pressure. This communication placed the County on notice of a physical impairment affecting Plaintiff's circulatory function.

62. On September 21, 2024, in a text exchange initiated by Mr. Brown, Plaintiff requested accommodation for the increase in her stress and anxiety, including reassignment to the vacant Deputy Registrar of Voters position.

63. On or about September 22, 2024, Plaintiff again advised Mr. Brown that her stress levels had substantially increased and again requested reassignment to the Deputy Registrar of Voters position, and reporting pursuant to the Organizational Chart.

64. On or about September 24, 2024, Plaintiff received multiple text messages from Mr. Brown disparaging Plaintiff for informing her team. Mr. Brown indicated that Plaintiff would need to report to Human Resources on September 25, 2024, at 8:00 a.m. and was prohibited from talking to anyone inside or outside of the organization.

65. Reassignment to a vacant position for which an employee is qualified is an enumerated form of reasonable accommodation. 42 U.S.C. § 12111(9)(B). The Deputy Registrar of Voters position was vacant. Plaintiff was qualified for it, having held it. Plaintiff proposed

reassignment as one of several possible accommodations; she did not propose it as the only accommodation that would permit her to work, and she remained able to perform the essential functions of the Interim Registrar of Voters position if the County abated Ms. Thomas's interference with the reporting structure. The restoration of the reporting structure Plaintiff sought was not a request that the County assign her a different supervisor. It was a request that the County adhere to the organization chart then in effect, under which the Registrar of Voters reported to the County Manager. The accommodation sought was enforcement of the existing structure, not a change to it.

66. On September 25, 2024, at a meeting with Ms. Hurley, Ms. Kandaras, and Mr. Price, Plaintiff again requested accommodation for her stress, anxiety, and blood pressure, including reassignment to the Deputy Registrar of Voters position. Ms. Hurley told Plaintiff the position was no longer available. It was in fact vacant and remained vacant.

67. At that same meeting, Plaintiff requested one day to decide whether to request personal leave. Ms. Hurley and Ms. Kandaras refused and told Plaintiff she would lose access to all County systems that day. Plaintiff requested the opportunity to provide the County a list of her pending work items. That request was refused. Plaintiff requested the opportunity to inform her team of the personnel change. That request was refused.

68. At that same meeting, Plaintiff described a recent incident in which a member of the public threatened her, and the resulting installation of protective window film pursuant to CISA recommendations, as contributing to her condition.

69. The County never engaged in the interactive process. The County never requested medical documentation for the purpose of evaluating an accommodation, never identified any accommodation as unreasonable or as an undue hardship, never offered any alternative accommodation, and never provided Plaintiff notice of her rights under the Family and Medical Leave Act. Instead, the County required Plaintiff to send an email from her County account



AHMAD LAW PLLC
300 S. Arlington Avenue, Ste B
Reno, Nevada 89501
(775) 234-8760

requesting personal leave, and placed her on leave that exhausted her accrued sick, vacation, and compensatory time.

70. The officials with authority to approve or arrange an accommodation for a Board-appointed department head were (1) the County Manager; (2) the Assistant County Manager to whom the County had assigned oversight of Plaintiff's Office; and (3) the Director of Human Resources. Each of these individuals had actual notice of Plaintiff's reported condition and of her requests.

71. On information and belief, an accommodation request made by a department head is evaluated and approved by that department head's supervising executive in consultation with the Human Resources Department. No such evaluation occurred here. Plaintiff's requests were never referred to the Human Resources Department for evaluation, no official ever met with Plaintiff for the purpose of identifying an accommodation, and the County has never identified who, if anyone, considered them.

72. On or about September 30, 2024, Allison D. Basta, A.P.R.N., cleared Plaintiff to return to work without restriction effective October 7, 2024. Plaintiff provided that clearance to the County and requested to return to work. The County refused to allow Plaintiff to return.

73. Instead, by letter dated October 4, 2024 captioned "Re: Leave Status of Cari-Ann Burgess," Mr. Brown directed Plaintiff: "If you decide to remain on paid leave, you are to refrain from speaking to the media, outside parties, Washoe County staff or Commissioners. You are directed not to make disparaging remarks about Washoe County to avoid any disruption to operations and to avoid having a detrimental impact on your coworkers." Plaintiff never signed any nondisclosure agreement with the County pre- or post-employment.

74. The same letter records the County's denial of Plaintiff's request for reassignment. It states that Plaintiff "indicated that you wanted to be demoted to your prior position of Deputy ROV,"



AHMAD LAW PLLC
300 S. Arlington Avenue, Ste B
Reno, Nevada 89501
(775) 234-8760

and that "[i]t was explained that wasn't going to happen during the pendency of the election because the team would look at you as lead. It would make operations confusing." The County thus denied the requested reassignment for reasons of potential awkwardness, and identified no undue hardship, no essential function Plaintiff could not perform, and no reason the vacant Deputy position could not be filled by her.

75. The same letter treated Plaintiff's submission of her medical clearance as a breach. It stated that her request to return to work "was contrary to the arrangement that had been made when you requested leave" and that the County "will not revisit your leave status at this time." The letter further stated that Plaintiff had "been insubordinate" and that her "ability to competently carry out [her] duties is in question." The only conduct that the letter identifies as "insubordinate" is Plaintiff's having told her own staff, on September 23, 2024, that Mr. Brown informed her that leave was her only option. At the time that the County made that accusation of insubordination, no complaint had been filed against Plaintiff, and no investigation had been conducted.

**F. <u>The County's Disclosure of Plaintiff's Medical Information</u>**

76. The information the County obtained about Plaintiff's stress, anxiety, and blood pressure was obtained in the course of a disability-related inquiry and in connection with Plaintiff's requests for accommodation and the County's decision to place her on leave. The County was required to treat that information as a confidential medical record and to maintain it on separate forms and in separate medical files. 42 U.S.C. § 12112(d)(3)(B), (d)(4)(C).

77. The County did not do so. On September 24, 2024, Mr. Brown transmitted Plaintiff's medical status to the entire Board of County Commissioners by text message, without taking any precaution against further dissemination.

78. On September 25, 2024 and again on October 31, 2024, the County publicly disclosed Plaintiff's medical status in written statements to the press, as quoted above.



AHMAD LAW PLLC
300 S. Arlington Avenue, Ste B
Reno, Nevada 89501
(775) 234-8760

79. The County made these disclosures without Plaintiff's consent. No exception under 42 U.S.C. § 12112(d)(3)(B)(i)-(iii) applies.

80. As a direct result of these disclosures, Plaintiff's medical condition became the subject of national reporting by the Associated Press and ProPublica, Plaintiff was exposed to public scrutiny, and Plaintiff's standing in the elections profession was impaired.

**G. <u>Adverse Actions Following Plaintiff's Accommodation Requests</u>**

81. On or about September 23, 2024, one day after Plaintiff's September 22 accommodation request, Mr. Brown informed Plaintiff that Ms. Thomas was now "officially" overseeing the Registrar of Voters Office at Ms. Hill's personal request, notwithstanding that the organization chart was never amended. Mr. Brown also warned Plaintiff that if her overtime hours were leaked, it would appear that she was taking advantage of the County.

82. Ms. Thomas therefore assumed formal oversight of the Registrar of Voters Office at a time when the County was in possession of Plaintiff's reports of stress, anxiety, and elevated blood pressure and of her pending requests for accommodation, and one day before Mr. Brown told Plaintiff that leave was her best option.

83. On September 24, 2024, two days after Plaintiff's September 22 accommodation request and three days after her September 21 request, Mr. Brown texted Plaintiff that the County was going to "go a different route" as to her complaints, and told her the best option was for her to go on leave. Mr. Brown did not elevate Plaintiff's concerns as County policy required.

84. On September 25, 2024, the County placed Plaintiff on leave, required her to exhaust her accrued paid leave, took her County-issued telephone, and factory reset it in her presence.

85. The County then reduced Plaintiff's pay to the Deputy Registrar of Voters rate, the position it had previously told her was unavailable. Plaintiff's Interim Registrar of Voters stipend

AHMAD LAW PLLC
300 S. Arlington Avenue, Ste B
Reno, Nevada 89501
(775) 234-8760

was not restored until her final paycheck, and then only after her counsel advised the County that the pay change was unlawful.

86. On or about October 2024, Plaintiff's counsel sent the County a Letter of Representation and Preservation of Rights. On or about October 2024, Plaintiff filed EEOC charges. The County was aware of both.

87. Without notice to Plaintiff, the County changed her status from personal leave to administrative leave and told ProPublica that Plaintiff "was placed on admin leave while they investigate several issues regarding her job performance." Plaintiff was never notified that any employment investigation concerning her had been opened, was never told its subject matter, and no complaint had been filed against her.

88. On December 6, 2024, the County's outside investigator, Ms. Witty, contacted Plaintiff. At the December 19, 2024 interview, Plaintiff and her counsel were told that no specific allegations had been made and that no complaint was on file against Plaintiff. The County refused Plaintiff's request for the recording or transcript of her own interview.

89. On November 22, 2024, Plaintiff interviewed for the permanent Registrar of Voters position and was informed the same day that she would not advance. Mr. Brown had previously told Plaintiff that the position was "[hers] to lose," that she was being compared to the former Registrar, and that those involved in the hiring process already held a prejudice against her.

90. On January 15, 2025, the County issued an investigation report that was never provided to Plaintiff and that addressed matters of which Plaintiff had never been given notice. On February 5, 2025, the County substantiated violations of the County Code of Conduct on the basis of that report.

91. The report was not completed in compliance with Washoe County's Complaints of Policy Violations Against Department Heads, Assistant County Managers and the County Manager,

AHMAD LAW PLLC
300 S. Arlington Avenue, Ste B
Reno, Nevada 89501
(775) 234-8760

AHMAD LAW PLLC
300 S. Arlington Avenue, Ste B
Reno, Nevada 89501
(775) 234-8760

attached as Exhibit 6, or with Section II.B of the Washoe County Code of Conduct, attached as Exhibit 4.

92. At the Board of County Commissioners' public meeting on February 11, 2025, Assistant District Attorney Nathan Edwards stated on the record that there was an ongoing personnel investigation and a pending lawsuit concerning Plaintiff and told the Board of County Commissioners that if a permanent Registrar of Voters were appointed there would no longer be an Interim Registrar of Voters. That statement was made in open session, was recorded, and was reported in the press. The County's District Attorney's Office had separately advised Commissioner Michael Clark in writing that the County could not comment on Plaintiff's continued compensation because of an ongoing workplace investigation, and Commissioner Clark read that response into the record at the same meeting.

93. The County made that disclosure while simultaneously refusing Plaintiff access to the materials of the same investigation on the grounds that it was a confidential personnel matter, and one day before it terminated her.

94. On February 11, 2025, the County appointed Mr. McDonald as Registrar of Voters. On February 12, 2025, the County reverted Plaintiff to the Deputy Registrar of Voters position it had told her no longer existed and terminated her employment.

**H. <u>The County's Statements to Vendors and to Plaintiff's Prospective Employers</u>**

95. The elections profession in which Plaintiff has built her career is small and closely connected. County and state election officials, election-services vendors, and professional associations communicate regularly with one another, and information concerning an official's

AHMAD LAW PLLC
300 S. Arlington Avenue, Ste B
Reno, Nevada 89501
(775) 234-8760

conduct and standing circulates rapidly among them. The County, which employs the Registrar of Voters and participates in that professional community, knew this.

96. Washoe County's Personnel Handbook governs the confidentiality of employee personnel records. Section 5.225 makes the official roster of county employees a public record open to inspection. Section 5.227 provides that employee personnel files are confidential, are not open to the public, and are not admissible as evidence in any action or proceeding in the absence of a court order. Under the County's own written rule, therefore, the fact and dates of a person's county employment are public, and the contents of that person's personnel file are not.

97. The County departed from that rule with respect to Plaintiff. County personnel outside the Human Resources Department volunteered adverse characterizations of Plaintiff's conduct, authority, and performance to third parties, without any request routed through Human Resources and without any legitimate business need to do so.

98. Beginning in or about November 2024, after the County had actual knowledge of Plaintiff's October 17, 2024 NERC charge and her October 28, 2024 EEOC charge, Ms. Alvarado repeatedly communicated in writing to the County's election-services vendors that Plaintiff never had authority to sign contracts on the County's behalf, in an effort to terminate early the contracts Plaintiff had executed.

99. Those statements were false, and the County knew they were false. The Board of County Commissioners vested Plaintiff with the full powers and duties of the Registrar of Voters on January 16, 2024, including the authority to negotiate and execute the Office's contracts, and Plaintiff routinely exercised that authority with the review of the Washoe County District Attorney's Office and Washoe County’s Office of Finance. On February 14, 2025, the County's own Deputy District Attorney confirmed in writing that Plaintiff's interim status remained effective until the Board appointed a permanent Registrar of Voters.

100. Multiple vendors reported Ms. Alvarado's communications to Plaintiff and advised that they would no longer do business with the County.

101. After her termination on February 12, 2025, Plaintiff sought employment in the elections field. Plaintiff's job-search records show that, since September 2024, she has applied to more than 150 positions, including at least 18 Registrar of Voters, Deputy Registrar, County Clerk, or comparable elections-administration positions in other jurisdictions, among them Nevada County, California; Santa Clara County, California; Yolo County, California; Washington County; Broomfield County; Lane County, Oregon; the City of Richmond, Virginia; Albemarle County, Virginia; the State of Wyoming; and the City of Nashville, Tennessee.

102. Plaintiff was not hired for any of those positions.

103. Plaintiff was informed by multiple contacts in elections offices and vendor representatives during interviews that she could not be hired because of what the County had said about her, namely that she had acted without authority and that she had been the subject of a substantiated performance investigation, and that they were "sorry" about her experiences at the County.

104. On information and belief, the County, acting through its officers, employees, and agents, communicated to one or more of Plaintiff's prospective employers that Plaintiff had acted without authority, that her job performance had been the subject of an investigation that substantiated violations of the County Code of Conduct, and that she had been removed from her position for cause. The identity of the County personnel who made those communications, the identity of the recipients, the dates, and the precise content of the communications are within the County's exclusive possession and control and are the proper subject of discovery.

105. Each of those communications was made after the County had actual knowledge of Plaintiff's October 17, 2024 NERC charge, her October 28, 2024 EEOC charge, her counsel's

AHMAD LAW PLLC
300 S. Arlington Avenue, Ste B
Reno, Nevada 89501
(775) 234-8760

AHMAD LAW PLLC
300 S. Arlington Avenue, Ste B
Reno, Nevada 89501
(775) 234-8760

October 2024 Letter of Representation and Preservation of Rights, her February 20, 2025 EEOC charge, and this lawsuit.

106. The County had no legitimate business reason to volunteer any of that information. The vendors did not need to be told that Plaintiff had lacked contracting authority, because she had not lacked it. Prospective employers did not need to be told the substance of a personnel investigation the County had elsewhere insisted was confidential. When Plaintiff and her counsel requested the recording, transcript, and materials of that same investigation, the County refused on the grounds that it was a confidential personnel matter. The County treated the investigation as confidential when disclosure would have helped Plaintiff and as freely disclosable when disclosure would harm her.

107. The County has continued to make adverse public statements about Plaintiff during this litigation. In or about June 2026, County officials told the press that Plaintiff had made threatening comments to other employees and was unfit for the job of overseeing elections.

108. Those statements were made after Plaintiff filed her charges of discrimination and after she commenced this action. They were false, misleading and misattributed to Plaintiff, and the County knew they were misattributed to Plaintiff. The only County record of any such remark is the County's own January 15, 2025 investigation report, which describes witnesses recalling a phrase Plaintiff “allegedly” used as a joke with employees who raised questions or issues, and which treats that phrase as a professionalism and workplace-environment matter under the County Code of Conduct. A County employee other than Plaintiff, who was not interviewed in the investigation, has identified herself as the person who made the remark. Neither that report nor any other County record states that Plaintiff threatened any person, and neither states that Plaintiff was unfit to oversee elections. In telling the press that Plaintiff had made threatening comments to other employees and was unfit for the job of overseeing elections, the County removed the qualification its own

AHMAD LAW PLLC
300 S. Arlington Avenue, Ste B
Reno, Nevada 89501
(775) 234-8760

investigator had applied and converted a Code of Conduct finding into a public accusation that the report does not support.

109. The natural and foreseeable consequence of the County's statements was to render Plaintiff unemployable in the only profession in which she has substantial experience.

**I. <u>The County Disregarded Its Own Written Complaint and Investigation Policies</u>**

110. Washoe County has adopted and published written policies governing workplace complaints and investigations. Two are directly applicable here: the Washoe County Policy Against Discrimination, Harassment and Retaliation, updated February 14, 2023 (the "DHR Policy"), attached as Exhibit 5; and Complaints of Policy Violations Against Department Heads, Assistant County Managers and the County Manager, effective January 1, 2019 and last updated February 28, 2023 (the "Department Head Complaint Policy"), attached as Exhibit 6. Both are maintained on the County's public website.

111. Both policies identify physical or mental disability, and opposing an unlawful employment practice, as protected categories.

112. The DHR Policy requires the County to provide training on harassment and discrimination to all employees every two years, and to all supervisors every two years. Each of the County personnel identified above was subject to that requirement. Mr. Brown, Ms. Thomas, and Ms. Hurley additionally held supervisory or executive authority over Plaintiff or her Office and were subject to the supervisor training requirement.

113. The County disregarded these policies in both directions: it did not process Plaintiff's complaints as the policies require, and it did not conduct the investigation of Plaintiff as the policies require.

***i. The County's Handling of Plaintiff's Complaints***

AHMAD LAW PLLC
300 S. Arlington Avenue, Ste B
Reno, Nevada 89501
(775) 234-8760

114. County DHR Policy provides that any time a complaint, whether verbal or written, is received, supervisory staff must contact the Human Resources Department, and that failure to do so may result in discipline up to and including termination.

115. Plaintiff complained to Mr. Brown, her direct supervisor, on or about September 6, 2024 regarding Ms. Thomas's interference and disparagement, and again on September 20, 21, 22, and 23, 2024 regarding her stress, anxiety, blood pressure, and need for accommodation. Mr. Brown did not contact the Human Resources Department regarding any of those complaints.

116. The Department Head Complaint Policy provides that any person who has or receives a complaint about a violation of County policy by an Assistant County Manager shall notify the Director of Human Resources and Labor Relations. Ms. Thomas was an Assistant County Manager. Mr. Brown did not notify the Director of Human Resources of Plaintiff's complaints about Ms. Thomas.

117. The DHR Policy provides that upon the filing of a complaint, Human Resources personnel or an outside consultant will immediately initiate an investigation, and that a complainant who has not received an acknowledgment within five days should contact the Director of Human Resources. The County never initiated any investigation into Plaintiff's complaints and never acknowledged them.

118. Both policies provide that no adverse or retaliatory action may be taken against an employee who makes a good-faith complaint or provides information related to a complaint, whether or not a violation is ultimately proven. Nineteen days after Plaintiff's September 6, 2024 complaint, the County placed her on leave.

***ii. The County's Investigation of Plaintiff***

119. Both policies are triggered by a complaint. No complaint against Plaintiff existed. At Plaintiff's December 19, 2024 interview, Plaintiff and her counsel were told that no specific

AHMAD LAW PLLC
300 S. Arlington Avenue, Ste B
Reno, Nevada 89501
(775) 234-8760

allegations had been made and that no complaint was on file. On February 14, 2025, the County's Deputy District Attorney confirmed that there were no formal complaints on file and that the origin of the investigation was Mr. Brown's own October 4, 2024 letter.

120. The Department Head Complaint Policy provides that a department head appointed by the Board of County Commissioners may be placed on leave without pay pending an investigation only when gross misconduct is alleged, when the safety of the public or employees is at risk, when the department head's presence impedes the continued functioning of the workplace, or when a related criminal charge is pending. None of those circumstances existed. The County alleged no gross misconduct, identified no safety risk, made no finding that Plaintiff's presence impeded the Office, and no criminal charge was pending. The County itself treated Plaintiff as a Board-appointed department head when it appointed her and again when it investigated her, and therefore may not disclaim that status when the protections attached to it are invoked.

121. The policy imposes a further requirement the County did not follow, specifically that placing a department head appointed by the Board on leave without pay may occur only upon the recommendation of the County Manager and after consultation with the Chair of the appointing authority. The County has never identified any such consultation.

122. That policy further requires the County Manager to notify the County Commissioners of a complaint against a Board-appointed department head, to obtain the consent of the Chair before adjusting working conditions, and to provide the department head written notice of the proposed action, which the department head may challenge by notifying the Chair in writing within five working days, with the matter heard in a noticed meeting at which the department head may appear with counsel and present evidence, testimony, and witnesses. Plaintiff received no written notice of proposed action and was afforded no opportunity to challenge it.

123. Compliance with these requirements is mandatory. The policy provides that the County Manager **shall** notify the County Commissioners of a complaint against a department head appointed by the Board, **shall** provide written notice of the proposed action, and, at the conclusion of the investigation, **shall** provide the subject a summary of the findings, the actions to be taken, and any recommendations. The County did not do this. It gave Plaintiff no written notice of any proposed action before placing her on leave, no summary of findings, actions, or recommendations before terminating her, and no occasion on which the protest procedure could be invoked. The County's failure to observe the mandatory steps, together with its withholding of any notice of the subject matter of the investigation, deprived Plaintiff of any meaningful opportunity to be heard before she was deprived of her position and of her professional reputation.

124. The DHR Policy provides that every attempt will be made to complete an investigation within thirty working days. The investigation of Plaintiff began no later than October 4, 2024. The investigator did not contact Plaintiff until December 6, 2024, did not interview her until December 19, 2024, did not issue a report until January 15, 2025, and the County did not act on that report until February 5, 2025, more than four months after the investigation began, and more than four months during which Plaintiff remained barred from the workplace and from communicating with staff, Commissioners, and outside parties.

125. The DHR Policy provides that the investigation will obtain specific details as to who, what, where, how often, who else, time, place, history, and contemporaneous events, and that the investigator will remain objective. The County did not identify to Plaintiff any allegation, any accuser, or any specific incident. Plaintiff could not answer allegations that the County declined to state.

126. Plaintiff was not invited to identify witnesses or documents, and no witness identified by Plaintiff was interviewed. The report states the investigator's scope: she was asked to conduct an



AHMAD LAW PLLC
300 S. Arlington Avenue, Ste B
Reno, Nevada 89501
(775) 234-8760

investigation and to provide findings of fact regarding any information discovered, in a written report to the Human Resources Department.

127. The report she delivered did not do this and did not confine itself to findings of fact. Instead it concluded, among other things, that the circumstances warranted the official actions the County had undertaken. That is a conclusion about the propriety of the County's own conduct, reached by an investigator the County retained, directed, and supervised, and it lies outside the fact-finding function she was engaged to perform.

128. An investigator asked to find facts who instead validates the employer's decisions is not conducting the objective inquiry the County's own policy requires. The report went further. It adjudicated Plaintiff's Charge of Discrimination, a matter raised in no complaint, identified nowhere in the October 4, 2024 letter, and pending before the Equal Employment Opportunity Commission, concluding that the evidence was insufficient to substantiate discrimination or retaliation and that Plaintiff's complaint was insufficient to establish pretext. This far exceeded the scope of the investigation.

129. The investigation was not independent of the County. The County retained the investigator in October 2024 and directed that findings be reported to the County's Human Resources Department. Every witness interview, including Plaintiff's, was observed by Cole McBride, a Washoe County Senior Human Resources Analyst, and the investigator addressed her report to him. The County selected and supplied the documents and policies the investigator reviewed, and the County supplied the timekeeping audit on which the overtime finding rests. The County has designated the resulting report as its own attorney-client privileged and attorney work product material. This designation cannot be reconciled with the County's representation that the investigation was a neutral third-party fact-finding.

AHMAD LAW PLLC
300 S. Arlington Avenue, Ste B
Reno, Nevada 89501
(775) 234-8760

AHMAD LAW PLLC
300 S. Arlington Avenue, Ste B
Reno, Nevada 89501
(775) 234-8760

130. The investigation captured Plaintiff's protected activity. The report of investigation states that Plaintiff filed a Charge of Discrimination while she remained on leave, that the Charge alleged disability discrimination and retaliation, and that the Charge related to the same instances raised in the October 4, 2024 letter. The report further states that the investigator inquired into the counter-allegations Plaintiff had raised, however the County did not independently investigate them. The County instead folded Plaintiff's allegations into the same investigation it later used to justify substantiating findings against her and terminating her.

131. The January 15, 2025 report addressed matters that were not identified in the October 4, 2024 letter and of which Plaintiff had never been given notice. The October 4, 2024 letter identified four subjects: (1) Plaintiff's public announcement concerning ballot collection at local churches; (2) the voter registration list maintenance numbers; (3) the signature verification cards mailed by the Secretary of State; and (4) and Plaintiff's use of overtime. The investigator was nevertheless asked to determine whether Plaintiff met the County's Core Competencies and to report on any other deficiency or concern arising from the Office of the Registrar of Voters. Two of the four Code of Conduct sections the report substantiated, Section C.2, governing Respect, and Section C.8, governing Promoting a Positive Work Environment, rest entirely on described conduct toward employees that appears nowhere in the October 4, 2024 letter. Plaintiff was given no notice of those matters and no opportunity to answer them before the County decided to substantiate the allegations against her. The conduct underlying those two findings is described in the County's own report as a phrase Plaintiff used as a joke with employees who raised questions or issues. The County nevertheless substantiated it as a Code of Conduct violation and later recast it publicly as a threat.

132. The DHR Policy provides that parties will be notified of the outcome of the investigative process, and the Department Head Complaint Policy provides that at the conclusion of an investigation the subject shall be provided a summary of the findings, the actions to be taken, and

any recommendations. The County substantiated findings against Plaintiff on February 5, 2025 and terminated her on February 12, 2025 without providing her the report, the findings, the actions, or the recommendations. Plaintiff first received the report on February 14, 2025, from opposing counsel, two days after her termination and as a stated courtesy.

133. Because the County terminated Plaintiff before disclosing the findings, Plaintiff was never able to exercise the protest right the Department Head Complaint Policy affords.

134. Both policies require that the investigation and its written summary be maintained as confidential. The County did not maintain confidentiality. It publicly announced on October 31, 2024 that Plaintiff was on administrative leave while it investigated issues relating to her job performance, and it told ProPublica the same. It then refused Plaintiff and her counsel the recording, transcript, and materials of Plaintiff's own interview on the ground that the matter was a confidential personnel matter.

135. The Department Head Complaint Policy is more specific and provides that an investigation shall remain confidential to the extent allowed by law, and that complaints involving the Equal Employment Opportunity Commission or the Nevada Equal Rights Commission are confidential by law, citing 42 U.S.C. § 2000e-5(b). The County's investigation of Plaintiff expressly took in her charge of discrimination, which the County's own report states related to the same instances raised in the October 4, 2024 letter. The County nevertheless announced the investigation publicly, described its subject matter to the press, and stated its existence on the record at the Board of County Commissioners' public meeting on February 11, 2025, while refusing Plaintiff the record of her own interview.

136. Plaintiff requested the recording or transcript of her own interview on December 19, 2024. She received no response until February 18, 2025, after her termination, when the County's investigator directed her to the Human Resources Department or the District Attorney's Office.

AHMAD LAW PLLC
300 S. Arlington Avenue, Ste B
Reno, Nevada 89501
(775) 234-8760

137. The County's departures from its own written policies were not isolated or inadvertent. They were numerous, they spanned every stage of the process, and every one of them operated to Plaintiff's disadvantage: her complaints were not routed, acknowledged, or investigated; the investigation of her proceeded without a complaint, without notice, without stated allegations, without a deadline, and without disclosure of its findings; and its existence was publicized while its contents were withheld from her.

## V. CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
**Disability Discrimination — Disparate Treatment**
**(42 U.S.C. § 12112(a); 42 U.S.C. § 12102(1)(A), (B), (C))**

138. Plaintiff incorporates paragraphs 1 through 137 as though fully set forth herein.

139. At all material times Plaintiff was an individual with a disability within the meaning of 42 U.S.C. § 12102(1)(A) because her hypertension, generalized anxiety, and complex post-traumatic stress disorder substantially limited one or more major life activities and major bodily functions, as alleged in paragraphs 32 through 43 above.

140. Independently, Plaintiff had a record of such impairments within the meaning of 42 U.S.C. § 12102(1)(B), as alleged in paragraph 44 above.

141. Independently, the County regarded Plaintiff as having such impairments within the meaning of 42 U.S.C. § 12102(1)(C), as alleged in paragraphs 45 through 53 above.

142. Plaintiff was a qualified individual within the meaning of 42 U.S.C. § 12111(8), as alleged in paragraphs 6 and 29 above.

143. The County subjected Plaintiff to adverse employment actions, including: placing her on involuntary leave on September 25, 2024; compelling her to exhaust accrued sick, vacation, and compensatory time; reducing her rate of pay; refusing to permit her to return to work after medical clearance; barring her from communicating with staff, Commissioners, and outside parties; changing

AHMAD LAW PLLC
300 S. Arlington Avenue, Ste B
Reno, Nevada 89501
(775) 234-8760

AHMAD LAW PLLC
300 S. Arlington Avenue, Ste B
Reno, Nevada 89501
(775) 234-8760

her status to administrative leave without notice; denying her the permanent Registrar of Voters position on November 22, 2024; subjecting her to an investigation commenced without any complaint and without notice; reverting her to the Deputy Registrar of Voters position; and terminating her employment on February 12, 2025; and, after her termination, communicating to vendors and to prospective employers in the elections field that Plaintiff had lacked authority to act and that her performance had been the subject of a substantiated investigation.

144. The County's stated reasons for its actions are pretextual. As alleged in paragraphs 110 through 137 above, the County departed from its own written complaint and investigation policies at every stage, and each departure operated to Plaintiff's disadvantage.

145. The investigation on which the County relied was not independent. Ms. Thomas, whose hostility toward Plaintiff is alleged above, was the source of the criticisms of Plaintiff that the County adopted; Mr. Brown's own October 4, 2024 letter defined the investigation's scope; and the County made no determination that its actions against Plaintiff were justified for reasons unrelated to the input of Ms. Thomas and Mr. Brown.

146. The County's asserted reasons for its actions have shifted over time. Neither the County's public statement of September 25, 2024, nor its public statement of October 31, 2024, nor Mr. Brown's October 4, 2024 letter defining the scope of the investigation, nor the investigator's January 15, 2025 report, nor the County's February 5, 2025 substantiation, nor its February 12, 2025 termination of Plaintiff identified any allegation that Plaintiff had threatened any County employee. The County first advanced that allegation publicly in or about June 2026, sixteen months after Plaintiff's termination, after Plaintiff had filed three administrative charges, and after this action was pending. The County's stated concerns also changed in kind. Mr. Brown's October 4, 2024 letter alleged only that "[t]here are reports that your use of overtime is excessive," and identified a single pay period and a single day as examples. By January 15, 2025 the County had converted that concern

AHMAD LAW PLLC
300 S. Arlington Avenue, Ste B
Reno, Nevada 89501
(775) 234-8760

into a finding that Plaintiff had been dishonest in reporting her time, resting on a timekeeping audit the County commissioned after the October 4 letter issued and of which Plaintiff was given no notice.

147. A justification first articulated long after the adverse action, and absent from every contemporaneous statement of the employer's reasons, is not the employer's true reason. The County's shifting and post hoc justifications, its reliance on an investigation that began without a complaint and whose scope its own County Manager defined, and its departures from its own written policies at every stage together permit the inference that the reasons the County has given are a pretext for discrimination on the basis of Plaintiff's disability, her record of disability, and the disability the County regarded her as having.

148. The County took each of these actions because of Plaintiff's disability, her record of disability, or the disability it regarded her as having. The temporal sequence alleged in paragraphs 54 through 119 above, the County's contemporaneous public attribution of Plaintiff's removal to her medical condition, and the County's departure from its own written policies support the inference of causation.

149. As a direct and proximate result of Defendant's unlawful discrimination, Plaintiff suffered lost wages and benefits, diminished future earning capacity, loss of professional reputation and career opportunities, including opportunities within the elections industry, and emotional and psychological harm, together with other economic and noneconomic damages to be established at trial.

**SECOND CLAIM FOR RELIEF**
**Failure to Provide Reasonable Accommodation**
**(42 U.S.C. § 12112(b)(5)(A); 29 C.F.R. § 1630.2(o)(3))**

150. Plaintiff incorporates paragraphs 1 through 137 as though fully set forth herein.

151. This claim is brought under 42 U.S.C. § 12102(1)(A) and (B) only. Plaintiff does not predicate this claim on the "regarded as" definition. See 42 U.S.C. § 12201(h).

152. Plaintiff was an individual with a disability and a qualified individual as alleged above.

153. The County had notice of Plaintiff's disability and of her need for accommodation. Plaintiff notified the County of her condition and requested accommodation on September 6, September 20, September 21, September 22, and September 25, 2024, as alleged in paragraphs 60 through 68 above, and again on or about September 30, 2024 when she submitted medical clearance and asked to return to work.

154. Plaintiff's requests triggered the County's obligation to engage in a good-faith interactive process to identify a reasonable accommodation. 29 C.F.R. § 1630.2(o)(3).

155. The County failed to engage in that process. It never met with Plaintiff for the purpose of identifying an accommodation, never requested medical documentation for that purpose, never proposed any accommodation, never identified any accommodation as unreasonable or as imposing an undue hardship, and never advised Plaintiff of leave available under the Family and Medical Leave Act.

156. Reasonable accommodations were available. They included reassignment to the vacant Deputy Registrar of Voters position, 42 U.S.C. § 12111(9)(B); restoring the reporting structure reflected on the County's own organization chart so that Plaintiff reported to the County Manager rather than to Ms. Thomas; a leave of absence of definite duration with reinstatement; and reinstatement upon medical clearance effective October 7, 2024. None of these accommodations required the County to create a new position, to displace another employee, to eliminate an essential function, or to promote Plaintiff. The reassignment Plaintiff sought was a return to the very position she had held, which the County had left vacant and unfilled.

AHMAD LAW PLLC
300 S. Arlington Avenue, Ste B
Reno, Nevada 89501
(775) 234-8760

157. The County refused each. It told Plaintiff the Deputy Registrar of Voters position was unavailable when it was in fact vacant and remained vacant. It refused to permit Plaintiff to return to work after clearance. It imposed an indefinite, involuntary leave instead. Plaintiff was not required to identify every accommodation that might have worked. The County alone held the information about which positions were vacant, funded, and available across County government, and about what adjustments to the reporting structure it could make. It never identified a single alternative, and it never asserted that any accommodation Plaintiff proposed would impose an undue hardship.

158. The discrimination alleged in this claim is the County's denial of the available and reasonable accommodations identified above. Plaintiff does not plead the County's failure to engage in the interactive process as a freestanding claim. She pleads that failure as evidence that the County denied accommodations that were available and reasonable, and as the reason no alternative accommodation was ever identified, offered, or shown to impose an undue hardship.

159. The County's own investigator could not identify any interactive process. The January 15, 2025 report states that it is unclear whether a separate accommodation was requested by or available to Plaintiff. By the date of that report the County had held Plaintiff's requests for more than three months, had received her treating provider's clearance, had refused to return her to work, and had required her to remain on leave. The County's own October 4, 2024 letter records the denial and the reason for it: that returning Plaintiff to the vacant Deputy position "wasn't going to happen during the pendency of the election because the team would look at you as lead" and "would make operations confusing." Hypothetical operational confusion is not undue hardship.

160. The same report records that County Manager Brown told the investigator that, at the time he directed Plaintiff to take leave, he believed the County would have a discussion after the General Election about her possibly returning to the Deputy Registrar of Voters position if she was not selected in the ongoing hiring process. That is the County's own account, in the County's own



AHMAD LAW PLLC
300 S. Arlington Avenue, Ste B
Reno, Nevada 89501
(775) 234-8760

investigation, of what its County Manager understood on September 24, 2024. It cannot be reconciled with the County's statement to Plaintiff the following day that the Deputy Registrar of Voters position was no longer available to her.

161. As a direct and proximate result of Defendant's failure to provide reasonable accommodation, Plaintiff suffered lost wages and benefits, diminished future earning capacity, loss of professional reputation and career opportunities, and emotional and psychological harm, together with other economic and noneconomic damages to be established at trial.

**THIRD CLAIM FOR RELIEF**
**Unlawful Disclosure of Confidential Medical Information**
**(42 U.S.C. § 12112(d)(3)(B), (d)(4)(C))**

162. Plaintiff incorporates paragraphs 1 through 137 as though fully set forth herein.

163. The County obtained information regarding Plaintiff's stress, anxiety, and blood pressure through inquiries into the extent of an impairment and its effect on her ability to perform job-related functions, within the meaning of 42 U.S.C. § 12112(d)(4)(A) and (B). Mr. Brown questioned Plaintiff about her condition on and after September 20, 2024. At the September 25, 2024 meeting, Ms. Hurley and Ms. Kandaras questioned Plaintiff about her condition and required her to reduce it to writing in an email sent from her County email account. The County thereafter received and retained the September 30, 2024 medical clearance issued by Allison D. Basta, A.P.R.N., and relied on it in deciding whether to permit Plaintiff to return to work.

164. Section 12112(d)(4)(C) makes the confidentiality requirements of § 12112(d)(3)(B) applicable to medical information an employer obtains about a current employee. To the extent the County contends that Plaintiff volunteered some of this information, that contention does not reach the September 30, 2024 medical clearance, which the County received as documentation of Plaintiff's fitness to return to work, retained, and acted upon. Nor does it reach the written statement

AHMAD LAW PLLC
300 S. Arlington Avenue, Ste B
Reno, Nevada 89501
(775) 234-8760

AHMAD LAW PLLC
300 S. Arlington Avenue, Ste B
Reno, Nevada 89501
(775) 234-8760

of her health condition that the County required Plaintiff to compose and send from her County email account as the condition of her remaining employed.

165. The ADA required the County to collect and maintain that information on separate forms, in separate medical files, and to treat it as a confidential medical record. 42 U.S.C. § 12112(d)(3)(B), (d)(4)(C).

166. The County disclosed that information to the entire Board of County Commissioners on September 24, 2024, and to the public in written media statements on September 25, 2024 and October 31, 2024, as alleged in paragraphs 77 and 78 above.

167. No statutory exception permitted these disclosures, and Plaintiff did not consent to them.

168. Defendant's unlawful disclosure of Plaintiff's confidential medical information was committed by supervisors with authority to hire, fire, discipline, and take other adverse employment action against Plaintiff, or occurred with Defendant's knowledge and awareness.

169. As a direct and proximate result of Defendant's conduct, Plaintiff suffered severe emotional and psychological harm, damage to her professional reputation and standing in the elections field, loss of employment and career opportunities, public humiliation, and resulting vocational and financial damages. Plaintiff is entitled to compensatory damages, reasonable attorney fees and expert fees, and all other relief available under applicable law.

**FOURTH CLAIM FOR RELIEF**
**Retaliation**
**(42 U.S.C. § 12203(a))**

170. Plaintiff incorporates paragraphs 1 through 137 as though fully set forth herein.

171. Plaintiff engaged in activity protected by the ADA. The protected activity on which this claim is predicated is the following, and only the following:

172. Plaintiff's request for reasonable accommodation made to Mr. Brown on or about September 6, 2024, seeking reduced required interaction with Ms. Thomas on account of her increased stress and anxiety;

173. Plaintiff's report to Mr. Brown on or about September 20, 2024 that her stress and anxiety had spiked and resulted in very high blood pressure, together with her implicit and explicit requests for relief;

174. Plaintiff's request for reasonable accommodation made to Mr. Brown on September 21, 2024, including reassignment to the vacant Deputy Registrar of Voters position;

175. Plaintiff's request for reasonable accommodation made to Mr. Brown on or about September 22, 2024, again including reassignment to the vacant Deputy Registrar of Voters position;

176. Plaintiff's requests for reasonable accommodation made to Ms. Hurley and Ms. Kandaras at the September 25, 2024 meeting, including reassignment to the vacant Deputy Registrar of Voters position;

177. Plaintiff's submission of medical clearance on or about September 30, 2024 and her request to return to work effective October 7, 2024;

178. Plaintiff's retention of counsel and her counsel's October 2024 Letter of Representation and Preservation of Rights asserting Plaintiff's rights under the ADA;

179. Plaintiff's filing of a charge of discrimination and retaliation with NERC on October 17, 2024;

180. Plaintiff's filing of a charge of discrimination and retaliation with the EEOC on October 28, 2024; and

181. Plaintiff's filing of a further charge of discrimination and retaliation with the EEOC on February 20, 2025.

AHMAD LAW PLLC
300 S. Arlington Avenue, Ste B
Reno, Nevada 89501
(775) 234-8760

AHMAD LAW PLLC
300 S. Arlington Avenue, Ste B
Reno, Nevada 89501
(775) 234-8760

182. Each of the foregoing constitutes opposition to an act or practice made unlawful by the ADA, or the making of a charge or participation in a proceeding under the ADA, within the meaning of 42 U.S.C. § 12203(a). A request for reasonable accommodation is protected activity under the ADA.

183. Plaintiff held a reasonable, good-faith belief that the conduct she opposed was unlawful under the ADA.

184. The County had actual knowledge of each item of protected activity. Mr. Brown received items in paragraph 172 through 175 and paragraph 177 directly. Ms. Hurley and Ms. Kandaras received the item identified in paragraph 176 directly. The County received items identified in paragraphs 178 through 181 through its Human Resources Department and its District Attorney's Office.

185. The County took materially adverse actions against Plaintiff after each item of protected activity, including those enumerated in paragraph 143 above.

186. A causal link exists between the protected activity and the adverse actions. Among other things: Mr. Brown told Plaintiff on September 23, 2024, one day after her September 22 request, that Ms. Thomas would now oversee her Office and warned her about her overtime; on September 24, 2024, two days after that request, Mr. Brown told Plaintiff the County was taking "a different route" and that leave was her best option; on September 25, 2024, the day Plaintiff renewed her accommodation request to Human Resources, the County placed her on leave, took her telephone, and cut off her system access; the County refused her return after her September 30, 2024 clearance; the County changed her leave status and opened an investigation without any complaint after her counsel's October 2024 letter and her October 2024 charges; and the County denied her the permanent position on November 22, 2024 and terminated her on February 12, 2025.

187. Independently of the foregoing, the County retaliated against Plaintiff after her employment ended by making the statements to vendors and to prospective employers alleged in paragraphs 95 through 106 above.

188. Section 12203(a) protects "any individual" from retaliation and is not limited to persons who remain employed. The County's post-termination statements concerning Plaintiff are therefore actionable notwithstanding that Plaintiff's employment ended on February 12, 2025.

189. The dissemination of an adverse employment reference is itself a materially adverse action. Plaintiff need not allege or prove that any particular prospective employer declined to hire her because of the County's statements; it is enough that the County disseminated them and that doing so would dissuade a reasonable worker from making or supporting a charge of discrimination.

190. The statements alleged in paragraphs 95 through 106 above were not workplace slights, coworker gossip, or ostracism by colleagues. They were made by the County itself, through its officers and employees acting within the scope of their employment, to third parties outside County government who controlled Plaintiff's access to employment and to continued professional relationships: the County's own election vendors and Plaintiff's prospective employers in the elections field. Statements of that character are materially adverse precisely because they operate outside the employment relationship and after it has ended, in a forum where the employee has no notice of them and no means to answer them.

191. The County's conduct in this respect was deliberate. The County is a sophisticated public employer with a Human Resources Department, written policies governing confidentiality of employee personnel records, and in-house counsel in the Washoe County District Attorney's Office, which was advising the County concerning Plaintiff at the time. The County knew its statements were false, knew that the elections profession is small and that such statements would circulate, knew that Plaintiff had charges of discrimination pending, and made the statements anyway.

**AHMAD LAW PLLC**
300 S. Arlington Avenue, Ste B
Reno, Nevada 89501
(775) 234-8760

192. The County's departures from its own written complaint and investigation policies, alleged in paragraphs 110 through 137 above, further support the inference of retaliatory motive. The County requires biennial harassment and discrimination training of all employees and all supervisors; it maintains a Human Resources Department charged with administering these policies; and it was advised throughout by the Washoe County District Attorney's Office. The County knew what its policies required and did not follow them.

193. The temporal relationship, the falsity of the statements, the County's departure from its own written rule governing the confidentiality of personnel records, and the County's inconsistent treatment of the confidentiality of the same investigation together support the inference that the County acted because of Plaintiff's protected activity.

194. For the avoidance of doubt, Plaintiff does not predicate this claim on her reports concerning the VREMS system, the County organization chart, or access to voter data. Those reports are pleaded as background and as support for the Nevada statutory and common law claims below, not as ADA-protected activity.

195. As a direct and proximate result, Plaintiff suffered the damages alleged herein.

196. Plaintiff seeks equitable relief on this claim, including reinstatement to the Deputy Registrar of Voters position or a substantially equivalent position; front pay in lieu of reinstatement should reinstatement be impracticable; back pay and lost benefits, including lost contributions and service credit under the Public Employees' Retirement System of Nevada and the accrued sick, vacation, and compensatory time the County required Plaintiff to exhaust; an injunction restraining the County from further retaliatory conduct, including any further disclosure to third parties of Plaintiff's confidential medical information or of the contents of the January 15, 2025 investigation report; an order directing the County to expunge or correct the January 15, 2025 report and the

AHMAD LAW PLLC
300 S. Arlington Avenue, Ste B
Reno, Nevada 89501
(775) 234-8760

February 5, 2025 substantiation in its personnel records concerning Plaintiff; and such further equitable relief as the Court deems just and proper.

**FIFTH CLAIM FOR RELIEF**
**Interference, Coercion, Intimidation, and Threats**
**(42 U.S.C. § 12203(b))**

197. Plaintiff incorporates paragraphs 1 through 137 as though fully set forth herein.

198. Section 12203(b) makes it unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of her having exercised or enjoyed, any right granted or protected by the ADA.

199. The County coerced, intimidated, threatened, and interfered with Plaintiff's exercise of her ADA rights by: conditioning her continued employment on submitting a written request for personal leave she did not want; refusing her request for one day to consider that demand and threatening immediate termination of her system access; directing her in the October 4, 2024 letter to refrain from speaking to the media, outside parties, County staff, or Commissioners, in the absence of any nondisclosure agreement; threatening her with findings of insubordination and an investigation if she communicated with those persons; and opening an investigation against her, without any complaint on file, after she spoke publicly about being placed on leave involuntarily.

200. As a direct and proximate result, Plaintiff suffered the damages alleged herein.

201. Plaintiff seeks on this claim the equitable relief identified in the Fourth Claim for Relief above, including reinstatement or front pay in lieu of reinstatement, back pay and lost benefits, injunctive relief, and expungement or correction of the County's personnel records concerning Plaintiff. To the extent compensatory damages are recoverable on a claim arising under 42 U.S.C. § 12203(b), Plaintiff seeks them in the alternative.

**SIXTH CLAIM FOR RELIEF**
**Discrimination and Retaliation Under Section 504 of the Rehabilitation Act**
**(29 U.S.C. § 794)**



AHMAD LAW PLLC
300 S. Arlington Avenue, Ste B
Reno, Nevada 89501
(775) 234-8760

202. Plaintiff incorporates paragraphs 1 through 137 as though fully set forth herein.

203. The County is a program or activity receiving federal financial assistance within the meaning of 29 U.S.C. § 794(a) and (b)(1)(A).

204. Plaintiff is an individual with a disability within the meaning of 29 U.S.C. § 705(20)(B), which incorporates the ADA definition of disability, and is otherwise qualified for the positions at issue.

205. The standards applied under Title I of the ADA govern this claim. 29 U.S.C. § 794(d).

206. The County excluded Plaintiff from participation in, denied her the benefits of, and subjected her to discrimination under its employment program solely by reason of her disability and, to the extent the standards applied under Title I of the Americans with Disabilities Act govern this claim pursuant to 29 U.S.C. § 794(d), because of her disability, by the acts alleged in paragraphs 54 through 109 above.

207. As a direct and proximate result of Defendant's violations of Section 504 of the Rehabilitation Act, Plaintiff suffered lost wages and benefits, diminished future earning capacity, loss of professional reputation and career opportunities, emotional and psychological harm, and other economic and noneconomic damages. Plaintiff is entitled to recover all damages and other relief available under 29 U.S.C. § 794a, including back pay, front pay, and other equitable relief; compensatory damages to the extent recoverable under that section; reasonable attorneys' fees and litigation expenses; and such further relief as the Court deems just and proper.

**SEVENTH CLAIM FOR RELIEF**
**Disability Discrimination and Retaliation Under Nevada Law**
**(NRS 613.330; NRS 613.340)**

208. Plaintiff incorporates paragraphs 1 through 137 as though fully set forth herein.

209. Defendant is an "employer" within the meaning of NRS 613.310(2).



AHMAD LAW PLLC
300 S. Arlington Avenue, Ste B
Reno, Nevada 89501
(775) 234-8760

210. NRS 613.330(1) makes it unlawful for an employer to discharge an individual, or otherwise to discriminate against an individual with respect to compensation, terms, conditions, or privileges of employment, because of the individual's disability.

211. NRS 613.340(1) makes it unlawful for an employer to discriminate against an employee because the employee has opposed a practice made unlawful by NRS 613.310 to 613.435, or because the employee has made a charge or participated in an investigation or proceeding thereunder.

212. The County discriminated against Plaintiff with respect to her compensation, terms, conditions, and privileges of employment, and discharged her, because of her disability, and retaliated against her because she opposed the County's unlawful practices and filed a charge with NERC on October 17, 2024.

213. As a direct and proximate result of Defendant’s violations of NRS 613.330, Plaintiff suffered lost wages and benefits, lost status and professional standing, damage to her professional reputation, lost future earnings and employment opportunities, humiliation, embarrassment, loss of self-esteem, emotional distress, and further work induced disabilities resulting from Defendant’s ongoing retaliation. Plaintiff seeks all legal and equitable remedies available under applicable law, in an amount to be determined at trial.

214. All such wrongful conduct was committed by supervisors with authority to hire, fire, discipline, and take adverse employment actions against Plaintiff, or occurred with the full knowledge and awareness of Defendant.

**EIGHTH CLAIM FOR RELIEF**
**Intentional Infliction of Emotional Distress**

215. Plaintiff incorporates paragraphs 1 through 137 as though fully set forth herein.

216. This claim is not premised on an unlawful employment practice and does not duplicate Plaintiff's statutory discrimination claims. It is premised on conduct independent of any

AHMAD LAW PLLC
300 S. Arlington Avenue, Ste B
Reno, Nevada 89501
(775) 234-8760

hiring, assignment, discipline, or discharge decision: the County's disclosure of Plaintiff's medical condition to the entire Board of County Commissioners and to the national press; its public announcement that Plaintiff was under investigation for her job performance when no complaint against her existed; the seizure and factory reset of Plaintiff's County telephone in her presence; its direction that Plaintiff not communicate with County staff, Commissioners, or outside parties, enforced by the threat of a finding of insubordination; its written statements to the County's election vendors that Plaintiff had lacked authority to execute contracts she had signed on the County's behalf; and its statements to the press in or about June 2026 that Plaintiff had made threatening comments to other employees and was unfit to oversee elections. Each of those acts would be tortious whether or not Plaintiff had ever been placed on leave, denied the permanent position, or discharged.

217. The conduct alleged in this claim and in the Ninth, Tenth, Eleventh, and Fourteenth Claims for Relief was undertaken in bad faith. It bears no relationship to any rightful prerogative of the County, and it completely transcends the circumference of the authority granted to the County and to the officers and employees who acted for it. The County opened an investigation for which no complaint existed, defined its scope by the letter of the official whose own conduct was at issue, followed none of the procedures its own written policies require, publicized the existence of the investigation while withholding its contents from its subject, refused Plaintiff the record of her own interview, and made statements about Plaintiff to third parties that it knew to be false. No consideration of social, economic, or political policy animated any of that conduct.

218. The County, through its officers and employees acting within the scope of their employment, engaged in extreme and outrageous conduct with the intention of causing, or with reckless disregard for causing, Plaintiff emotional distress.

219. That conduct included: disclosing Plaintiff's confidential medical information to the Board of County Commissioners and to the national press; publicly stating that Plaintiff was under



AHMAD LAW PLLC
300 S. Arlington Avenue, Ste B
Reno, Nevada 89501
(775) 234-8760

investigation for job performance when no complaint had been filed against her; compelling Plaintiff to request leave she did not want and to exhaust her accrued paid time; seizing and factory resetting Plaintiff's County telephone in her presence; forbidding Plaintiff from speaking to County staff, Commissioners, or outside parties; refusing Plaintiff's return to work after medical clearance; and advising the County's vendors that Plaintiff had lacked authority to sign the contracts she had executed on the County's behalf.

220. Plaintiff suffered severe emotional and psychological distress, including the onset of complex post-traumatic stress disorder, diagnosed in or about November 2024.

221. Defendant's conduct was the actual and proximate cause of Plaintiff's emotional and psychological distress.

222. As a direct and proximate result of Defendant's conduct, Plaintiff suffered severe emotional, psychological, vocational, and financial damages and is entitled to compensatory damages in an amount to be proven at trial.

223. Plaintiff is entitled to recover reasonable attorneys' fees and costs as permitted by law.

224. Plaintiff is also entitled to recover reasonable expert fees and expenses as permitted by law.

**NINTH CLAIM FOR RELIEF**
**Defamation and Defamation Per Se**

225. Plaintiff incorporates paragraphs 1 through 137 as though fully set forth herein.

226. The County made the following false and defamatory statements of fact concerning Plaintiff: (a) that Plaintiff had voluntarily requested a leave of absence for self-care, when in fact the County compelled the request; (b) that Plaintiff was on administrative leave while the County investigated several issues regarding her job performance, when no complaint had been filed and no

AHMAD LAW PLLC
300 S. Arlington Avenue, Ste B
Reno, Nevada 89501
(775) 234-8760

investigation had been opened at the time the statement was made; and (c) that Plaintiff had lacked authority to execute vendor contracts in her capacity as Interim Registrar of Voters.

227. In addition, the County made statements to Plaintiff's prospective employers alleged in paragraphs 95 through 106 above.

228. The County further made the following false and defamatory statements of fact concerning Plaintiff: (d) the statement made in open session at the February 11, 2025 Board of County Commissioners meeting, alleged in paragraph 92 above; and (e) the statements to the press in or about June 2026 that Plaintiff had made threatening comments to other employees and was unfit to oversee elections, alleged in paragraph 107 above.

229. The statements in subparagraphs (b), (c), (d), and (e) impute to Plaintiff a lack of fitness for the duties of her office and trade and are defamatory per se, so that damage is presumed.

230. The County published each statement to third persons: the statements in subparagraphs (a) and (b) to the press and thereby to the public, the statement in subparagraph (c) in writing to the County's election vendors, the statement in subparagraph (d) in open session at a public meeting of the Board of County Commissioners, and the statements in subparagraph (e) to the press and thereby to the public.

231. The County made each statement with knowledge of its falsity or with reckless disregard for its truth.

232. No privilege applies, or any privilege that might otherwise apply was abused and thereby lost.

233. To the extent any conditional or qualified privilege would otherwise attach to any of these statements, the County forfeited it. The County published statements to persons having no common interest with it in Plaintiff's employment: the national press, election-services vendors with whom Plaintiff had contracted on the County's behalf, and prospective employers outside County

AHMAD LAW PLLC
300 S. Arlington Avenue, Ste B
Reno, Nevada 89501
(775) 234-8760

AHMAD LAW PLLC
300 S. Arlington Avenue, Ste B
Reno, Nevada 89501
(775) 234-8760

government. That publication exceeded the scope of any privilege. The County made the statements knowing they were false or substantially misleading, or with reckless disregard for whether they were true, and for the purpose of injuring Plaintiff rather than to serve any legitimate County interest. The County's own written policy prohibits disclosing confidential employee information, and the County disregarded that policy. The County cannot claim the protection of confidentiality for statements about an investigation whose materials it simultaneously withheld from Plaintiff on the ground that they were confidential.

234. As a direct and proximate result of Defendant's defamatory statements and conduct, Plaintiff suffered damage to her reputation and professional standing, loss of employment and career opportunities in the elections field, severe emotional and psychological distress, humiliation, embarrassment, and vocational and financial damages, in an amount to be proven at trial.

235. Plaintiff is entitled to recover compensatory damages and, to the extent permitted by applicable law, punitive damages as a result of Defendant's conduct.

236. Plaintiff is entitled to recover reasonable attorneys' fees and costs and, where permitted by applicable law, reasonable expert fees and expenses.

**TENTH CLAIM FOR RELIEF**
**Invasion of Privacy — False Light**

237. Plaintiff incorporates paragraphs 1 through 137 as though fully set forth herein.

238. On October 31, 2024, the County publicly stated that Plaintiff "was initially on leave from her position as Interim Registrar of Voters for medical reasons" and that "[s]he is now on administrative leave as Washoe County continues to investigate several issues relating to [Plaintiff's] job performance."

239. That publicity placed Plaintiff before the public in a false light by creating the impression that Plaintiff had been removed from office because she was incompetent and was the subject of a bona fide performance investigation.

240. The false light in which Plaintiff was placed would be highly offensive to a reasonable person.

241. The County acted with knowledge of, or in reckless disregard as to, the falsity of the publicized matter and the false light in which Plaintiff would be placed.

242. As a direct and proximate result of being placed in a false light before the public, Plaintiff suffered severe emotional and psychological distress, humiliation, embarrassment, and harm to her personal and professional interests, including loss of professional standing, employment opportunities, and resulting vocational and economic damages, in an amount to be proven at trial.

**ELEVENTH CLAIM FOR RELIEF**
**Fraudulent Misrepresentation**

243. Plaintiff incorporates paragraphs 1 through 137 as though fully set forth herein.

244. In or about September 2023, in connection with Plaintiff's hire, the County represented to Plaintiff that the Deputy Registrar of Voters position carried due process protection and a liberty interest in continued employment.

245. In or about January and March 2024, in connection with Plaintiff's appointment as Acting and Interim Registrar of Voters, Mr. Brown, Ms. Hurley, and Ms. Paholke each represented to Plaintiff that the Deputy Registrar of Voters position would remain open and available to her should she not obtain the permanent Registrar position or should she wish to return to it.

246. Each representation was false when made. The County later took the position on February 14, 2025, that the Deputy Registrar of Voters position is an at-will, unclassified appointment serving at the pleasure of the appointing authority, not eligible for transfer or voluntary demotion privileges, not eligible for classified reinstatement privileges, and terminable with or without investigation and without progressive discipline or appeal rights. That characterization is consistent with Washoe County Human Resources' own contemporaneous personnel record: a written notice of unclassified appointment, dated September 5, 2023 and delivered to Plaintiff on



AHMAD LAW PLLC
300 S. Arlington Avenue, Ste B
Reno, Nevada 89501
(775) 234-8760

AHMAD LAW PLLC
300 S. Arlington Avenue, Ste B
Reno, Nevada 89501
(775) 234-8760

January 25, 2024, describing the same position in materially identical terms. Plaintiff pleads the County's February 14, 2025 characterization as the County's own litigation position and does not adopt it. Plaintiff's liberty-interest claim does not depend on the existence of a property interest in continued employment.

247. The County knew the representations were false or made them with reckless disregard for their truth, and made them with the intention that Plaintiff rely upon them.

248. Plaintiff justifiably relied on the representations. In reliance on the first, she resigned her position in Douglas County, relocated, and incurred moving costs and increased living expenses. In reliance on the second, she accepted the Acting and Interim Registrar appointment and performed the duties of that office together with two vacant Deputy positions from January 2024 through September 2024.

249. Had Plaintiff known that Defendant's representations were false, Plaintiff would not have left her prior position or accepted the Interim appointment. Plaintiff reasonably and justifiably relied upon Defendant's representations in making those decisions.

250. As a direct and proximate result of Defendant's fraudulent misrepresentations and Plaintiff's justifiable reliance thereon, Plaintiff suffered pecuniary and economic damages, including lost wages, benefits, employment opportunities, and future earning capacity, in an amount to be proven at trial.

**TWELFTH CLAIM FOR RELIEF**
**First Amendment Retaliation**
**(42 U.S.C. § 1983)**

251. Plaintiff incorporates paragraphs 1 through 137 as though fully set forth herein.

252. On September 25 and September 27, 2024, the County gave the public a written account of Plaintiff's absence, attributing it to her own request for a leave of absence for self-care. On October 8, 2024, the County Manager told the Board of County Commissioners in open session

that Plaintiff was on leave and had neither been fired nor quit. Plaintiff did not respond to the media inquiries that followed. On October 23, 2024, the Associated Press, which was completing a story on the removal of the chief election official of a swing county weeks before a presidential general election, sought comment from Plaintiff, and Plaintiff gave an interview. She said that she felt she had been forced out; that she had declined personnel changes sought by the County Manager's office; that she had offered to step down and return to her prior position as Deputy Registrar of Voters and had been told that was not possible; and that at the September 25, 2024 meeting she had been required to put a request for leave in writing notwithstanding her wish to remain. The Associated Press published her account the same day. Plaintiff spoke because the County had already given the public a different account, and hers was the correction

253. Plaintiff made those statements as a private citizen and not pursuant to her official duties. She had been stripped of her duties, denied access to County systems, and directed not to speak to County staff or Commissioners. The statements were not part of the work she was employed to perform.

254. Plaintiff's statements addressed a matter of public concern: the removal of the chief election official of Nevada's second-largest county weeks before a presidential general election, and the administration of that election.

255. Plaintiff's speech was not a private employment grievance. The County had already made her absence a matter of public record by issuing a written statement to the press on September 25, 2024 attributing her removal from office to her own request for leave for self-care. Plaintiff's statement corrected that public account. She sought no remedy from the press, asked for no reinstatement through it, and aired no internal personnel dispute. She said only that the account the County had given the public was not accurate.

AHMAD LAW PLLC
300 S. Arlington Avenue, Ste B
Reno, Nevada 89501
(775) 234-8760

256. The County knew before it removed Plaintiff that she intended to speak publicly. Its own investigation report records that on Monday, September 23, 2024, Plaintiff told at least one person that she would take her concerns to the media. The following day Mr. Brown told Plaintiff that leave was her only option. The day after that the County required her to request leave in writing from her County email account, took her County telephone from her, and escorted her out of the building. Nine days later the County directed her in writing to refrain from speaking to the media, to outside parties, to County staff, and to Commissioners.

257. The County's October 4, 2024 directive was itself a restraint on protected speech. It barred Plaintiff, a public employee, from speaking to the press, to members of the public, to her coworkers, and to the elected Commissioners who had appointed her. It further directed her not to make disparaging remarks about Washoe County. The directive was not limited to confidential information, to any identified operational need, or to any period. It was open-ended, it reached speech on matters of public concern, and it was enforced by the County's contemporaneous written statement that Plaintiff had already been insubordinate and that decisions about her continued employment remained open.

258. The County's own written Code of Conduct confirms that the October 4, 2024 directive was not an application of any policy the County had adopted. That policy contains a single provision addressed to employee speech: Section C.3.D, which provides that an employee will not speak on behalf of Washoe County, or give the perception of representing Washoe County, through any communication platform without authorization. Nothing in the Code of Conduct, and nothing in any other written County policy identified to Plaintiff, prohibits an employee from speaking to the media, to outside parties, to County staff, or to the elected Commissioners, or from making disparaging remarks about the County.

**AHMAD LAW PLLC**
300 S. Arlington Avenue, Ste B
Reno, Nevada 89501
(775) 234-8760

259. The subject matter was of substantial public interest independent of Plaintiff's employment. Whether the chief election official of Nevada's second-largest county had been removed by the County or had stepped away voluntarily, shortly before a presidential general election, bears directly on the administration and the integrity of that election. The national press pursued the matter for that reason. The public's interest in an accurate account of it was not diminished because the speaker was the official who had been removed.

260. The County's interest in the efficient provision of public services did not outweigh Plaintiff's and the public's interest in that speech. The County had made public statements about Plaintiff's leave; Plaintiff's statements corrected the record the County created.

261. The County retaliated against Plaintiff for that speech. Within days of Plaintiff's statements to the press, the County changed her status from personal leave to administrative leave without notice and announced publicly that it was investigating her job performance. The investigation itself had been opened earlier, without any complaint on file; what followed Plaintiff's speech was the County's decision to publicize it. The County thereafter denied her the permanent position, substantiated findings against her, and terminated her employment.

262. Plaintiff's protected speech was a substantial or motivating factor in each of those actions.

263. The County would not have taken the same actions absent Plaintiff's protected speech.

264. The actions complained of were taken by, or ratified by, officials with final policymaking authority for Washoe County in the area of personnel decisions concerning the Registrar of Voters, including the County Manager and the Board of County Commissioners. The Board appointed Plaintiff, and the Board appointed her successor. The Board was informed of and acquiesced in the actions taken against Plaintiff.

**AHMAD LAW PLLC**
300 S. Arlington Avenue, Ste B
Reno, Nevada 89501
(775) 234-8760

265. As a direct and proximate result of Defendant's violations of Plaintiff's constitutional rights, Plaintiff suffered lost wages and benefits, diminished future earning capacity, loss of professional reputation and employment opportunities, emotional and psychological distress, humiliation, embarrassment, and other economic and noneconomic damages, in an amount to be proven at trial. Plaintiff is entitled to recover compensatory damages, reasonable attorneys' fees and costs, and all other legal and equitable relief available under 42 U.S.C. §§ 1983 and 1988.

**THIRTEENTH CLAIM FOR RELIEF**
**Deprivation of Liberty Interest Without Due Process**
**(42 U.S.C. § 1983; U.S. Const. amend. XIV)**

266. Plaintiff incorporates paragraphs 1 through 137 as though fully set forth herein.

267. The County publicly accused Plaintiff of conduct that called into question her good name, reputation, honor, and integrity, and that foreclosed her freedom to take advantage of other employment opportunities in her profession. Those accusations included the County's public statements that it was investigating issues regarding her job performance, its statement in open session on February 11, 2025 that a personnel investigation concerning her was ongoing, and its written statements to vendors that she had lacked authority to execute contracts.

268. Those accusations were false.

269. The County made the accusations publicly and in connection with the termination of Plaintiff's employment on February 12, 2025.

270. The County's statements to the press in or about June 2026, including statements that Plaintiff made threatening comments to other employees and was unfit to oversee elections, further publicized and aggravated the stigma previously created by the County in connection with Plaintiff's termination. Plaintiff does not rely on the June 2026 statements to independently satisfy the requirement that the stigmatizing charge be made in connection with her termination. Rather, Plaintiff alleges the statements as evidence that the stigmatizing allegations made in connection with

AHMAD LAW PLLC
300 S. Arlington Avenue, Ste B
Reno, Nevada 89501
(775) 234-8760

AHMAD LAW PLLC
300 S. Arlington Avenue, Ste B
Reno, Nevada 89501
(775) 234-8760

her termination remain publicly asserted by the County, have never been retracted, and continue to impair Plaintiff's liberty interest and professional standing, thereby demonstrating the continuing need for a name clearing hearing.

271. The County afforded Plaintiff no opportunity to clear her name. It did not provide her the investigation report, the findings, the actions taken, or the recommendations before terminating her. It provided no written notice of proposed action. It afforded no hearing, and it terminated her before she could invoke the protest procedure its own written policy provides.

272. Plaintiff sought the means to answer the charges and was refused. On December 19, 2024, Plaintiff and her counsel asked the County's investigator to identify the allegations against Plaintiff and to provide the recording or transcript of Plaintiff's own interview. The County identified no allegation and produced nothing. Plaintiff's counsel then requested the investigation materials from the Washoe County District Attorney's Office. Plaintiff did not receive the report until February 14, 2025, two days after her termination and as a stated courtesy. The County has never offered Plaintiff a hearing, a retraction, a publication, or any other procedure by which to answer the charges it made about her. Plaintiff demands a name-clearing hearing in this action.

273. Plaintiff has been unable to obtain employment in the elections profession as a result.

274. The deprivation was caused by officials with final policymaking authority for Washoe County, as alleged above. The Board also ratified the conduct alleged. On June 17, 2025, on a 5-0 vote, the Board appointed Ms. Thomas Interim County Manager effective July 1, 2025 with a ten percent salary increase. At that meeting a member of the public expressly identified Plaintiff's lawsuit and asked the Board to reconsider the appointment, and the Vice Chair moved to table the item until the Board could examine the allegations against Ms. Thomas. The Board declined to table it and appointed her. The Board thereafter appointed Ms. Thomas as permanent County Manager.

AHMAD LAW PLLC
300 S. Arlington Avenue, Ste B
Reno, Nevada 89501
(775) 234-8760

275. As a direct and proximate result of Defendant's violation of Plaintiff's constitutional rights, Plaintiff suffered damage to her professional reputation and standing, loss of employment and career opportunities, emotional and psychological distress, and other economic and noneconomic damages. Plaintiff is entitled to compensatory damages in an amount to be proven at trial, reasonable attorneys' fees and costs under 42 U.S.C. §§ 1983 and 1988, and appropriate equitable relief, including a name clearing hearing and such other relief as the Court deems just and proper.

**FOURTEENTH CLAIM FOR RELIEF**
**Invasion of Privacy — Public Disclosure of Private Facts**

276. Plaintiff incorporates paragraphs 1 through 137 as though fully set forth herein.

277. Plaintiff's medical condition, her symptoms, the fact that she had sought medical treatment, and the fact that she had obtained a medical clearance were private facts. Plaintiff disclosed them to Mr. Brown and to the County's Human Resources Department in confidence and for the sole purpose of obtaining an accommodation and returning to work.

278. The County gave publicity to those private facts. On September 24, 2024, Mr. Brown disclosed them in writing to the entire Board of County Commissioners. On September 25, 2024, the County issued a written statement to the press that Plaintiff "expressed to County Manager Brown that she was experiencing stress related health issues" and that "[a]t his recommendation, she has requested a leave of absence for self-care." On October 31, 2024, the County issued a further written statement to the press that Plaintiff "was initially on leave from her position as Interim Registrar of Voters for medical reasons." Each statement was published to the press and thereby to the public at large, and each was republished in national reporting.

279. Plaintiff had an objective and reasonable expectation that the County would keep that information private. Federal law required the County to collect and maintain Plaintiff's medical information on separate forms, in separate medical files, and as a confidential medical record. The County's own written policies require that personnel investigations and their written summaries be

maintained as confidential. The County invoked that confidentiality to withhold from Plaintiff the recording and transcript of her own interview, while at the same time publicizing her medical status and the existence of the investigation.

280. The disclosure of a public employee's medical and psychological condition to the national press, without her consent, at a time when the County had barred her from communicating with staff, Commissioners, and outside parties, and therefore from answering, is highly offensive to a reasonable person of ordinary sensibilities.

281. The private facts the County disclosed were not of legitimate public concern. The public had an interest in knowing that the chief election official of Washoe County was absent from her post weeks before a presidential general election. It had no legitimate interest in her diagnosis, her symptoms, or her treatment, and the County could have disclosed the former without the latter. The County instead disclosed the precise category of information that federal law obliged it to keep confidential.

282. This claim is not premised on an unlawful employment practice. The tort was complete upon publication, and the publication would be actionable had Plaintiff never been placed on leave, never been denied the permanent position, and never been discharged.

283. As a direct and proximate result of Defendant's unauthorized disclosure of Plaintiff's confidential medical and psychological information to the Board of County Commissioners and the public press, including national media, Plaintiff suffered severe emotional and psychological distress, humiliation, embarrassment, invasion of privacy, harm to her personal and professional reputation, and resulting vocational and economic harm, including loss of employment opportunities in the elections field, in an amount to be proven at trial.

**DAMAGES**

284. Plaintiff incorporates paragraphs 1 through 137 as though fully set forth herein.



AHMAD LAW PLLC
300 S. Arlington Avenue, Ste B
Reno, Nevada 89501
(775) 234-8760

285. Plaintiff seeks damages in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00), exclusive of interest and costs.

286. Plaintiff's damages include, without limitation: (a) back pay and lost benefits from September 25, 2024 forward, including the difference between the compensation of the Interim Registrar of Voters and that of the Deputy Registrar of Voters to which the County unilaterally reduced her, the accrued sick, vacation, and compensatory time the County required her to exhaust, and the sick leave from September 25, 2024 through October 21, 2024 for which she was never reimbursed; (b) overtime worked and never compensated during the period in which Plaintiff performed the duties of the Interim Registrar of Voters together with two vacant Deputy Registrar of Voters positions; (c) lost contributions and service credit under the Public Employees' Retirement System of Nevada and other lost employment benefits; (d) front pay in lieu of reinstatement; (e) lost future earning capacity attributable to Plaintiff's exclusion from the elections profession; (f) compensatory damages for emotional pain, suffering, inconvenience, mental anguish, and loss of enjoyment of life; (g) harm to Plaintiff's professional and personal reputation; and (h) reasonable attorney's fees, expert fees, and costs.

287. The statutory limitation of 42 U.S.C. § 1981a(b)(3)(D) applies only to compensatory damages recoverable on Plaintiff's claims under Title I of the ADA. It does not limit back pay, front pay, or other equitable relief, and it does not apply to Plaintiff's claims under 42 U.S.C. § 1983 or under Nevada law.

288. The precise amount of Plaintiff's damages will be established at trial.

## VI. PRAYER FOR JUDGMENT AND RELIEF

**WHEREFORE**, Plaintiff prays for judgment against Defendant as follows:

AHMAD LAW PLLC
300 S. Arlington Avenue, Ste B
Reno, Nevada 89501
(775) 234-8760

1. For a declaration that Defendant's acts and practices violated the ADA, Section 504 of the Rehabilitation Act, NRS Chapter 613, and the First and Fourteenth Amendments to the United States Constitution;

2. For back pay, lost benefits, and prejudgment interest thereon;

3. For front pay in lieu of reinstatement, or in the alternative for reinstatement to a position comparable to Deputy Registrar of Voters;

4. For equitable relief on Plaintiff's Fourth and Fifth Claims for Relief, including reinstatement to the Deputy Registrar of Voters position or a substantially equivalent position or front pay in lieu of reinstatement, back pay and lost benefits, and an injunction restraining Defendant from further retaliation against Plaintiff and from further disclosure of Plaintiff's confidential medical information and of the contents of the January 15, 2025 investigation report;

5. For compensatory damages, including damages for emotional pain, suffering, inconvenience, mental anguish, and loss of enjoyment of life, in an amount to be proven at trial;

6. For damages on Plaintiff's state law claims in an amount to be proven at trial;

7. For equitable and injunctive relief, including an order directing Defendant to expunge from Plaintiff's personnel file the January 15, 2025 investigation report and the February 5, 2025 substantiation, to correct its statements to third parties concerning Plaintiff's contracting authority, and to adopt and implement lawful policies governing the confidentiality of employee medical information and the reasonable accommodation process;

8. For a name-clearing hearing and such other declaratory relief as is necessary to remedy the deprivation of Plaintiff's liberty interest;

9. For reasonable attorney's fees and costs under 42 U.S.C. § 12205, 29 U.S.C. § 794a(b), and 42 U.S.C. § 1988;

10. For expert fees and litigation expenses as allowed by law;

**AHMAD LAW PLLC**
300 S. Arlington Avenue, Ste B
Reno, Nevada 89501
(775) 234-8760

11. For post-judgment interest; and

\\\

\\\

\\\

12. For such other and further relief as the Court deems just and proper.

Dated this 17th day of August 2026.

AHMADLAW

//s//Hawah S. Ahmad

HAWAH S. AHMAD, ESQ.
300 S. Arlington Avenue, Ste. B
Reno, NV 89501
(775) 234-8760
ahmad@alawnv.com
*Attorney for Plaintiff*

**AHMAD LAW PLLC**
300 S. Arlington Avenue, Ste B
Reno, Nevada 89501
(775) 234-8760

**AHMAD LAW PLLC**
300 S. Arlington Avenue, Ste B
Reno, Nevada 89501
(775) 234-8760

## CERTIFICATE OF SERVICE

Pursuant to FRCP 5(b), I hereby certify that I am an employee of AhmadLaw, and am over the age of eighteen (18), and that on the date set forth below, I served a true copy of:

**SECOND AMENDED COMPLAINT AND JURY DEMAND**

on the party below by:

X Electronic Service via e-filing to:
Chris Hicks, Washoe County District Attorney
Lindsay S. Liddell, Deputy District Attorney
One South Sierra Street
Reno, Nevada 89501
lliddell@da.washoecounty.gov
(775) 337-5700

__ E-Mail to

DATED 17th day of August 2026.

//s// *Morgan Biaselli*
Employee of AhmadLaw

AHMAD LAW PLLC
300 S. Arlington Avenue, Ste B
Reno, Nevada 89501
(775) 234-8760

Exhibit Index

| Exhibit No. | Description | Page Numbers |
| --- | --- | --- |
| Exhibit1 | Notice of Right to Sue from NERC on December 16, 2024. | 9 |
| Exhibit 2 | Notice of Right to Sue from the EEOC's Los Angeles District Office on November 2, 2024 | 3 |
| Exhibit 3 | Notice of Right to Sue from the EEOC's Los Angeles District Office on March 21, 2025 | 1 |
| Exhibit 4 | Washoe County Code of Conduct | 4 |
| Exhibit 5 | Washoe County Policy Against Discrimination, Harassment and Retaliation, updated February 14, 2023 | 9 |
| Exhibit 6 | Complaints of Policy Violations Against Department Heads, Assistant County Managers and the County Manager, effective January 1, 2019 and last updated February 28, 2023 | 8 |