LINDSAY L. LIDDELL
Deputy District Attorney
Nevada State Bar Number 14079
One South Sierra Street
Reno, NV 89501
lliddell@da.washoecounty.gov
(775) 337-5700
ATTORNEY FOR WASHOE COUNTY

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

* * *

CARI-ANN P. BURGESS,

Plaintiff,

vs.

WASHOE COUNTY,

Defendant.
_______________________________/

Case No. 3:25-cv-00065-NJK

**MOTION TO DISMISS SECOND AMENDED COMPLAINT**

(ECF No. 66)

Defendant Washoe County ("County") hereby moves to dismiss Plaintiff Cari Ann Burgess's ("Burgess") Second Amended Complaint ("SAC") (ECF No. 66). This Motion is based on FRCP 12(b)(6), the following Memorandum of Points and Authorities, exhibits, and all pleadings and papers on file.

**TABLE OF CONTENTS**

I. INTRODUCTION .......... 1
II. STANDARD OF REVIEW .......... 1
III. LEGAL ANALYSIS .......... 2
A. Burgess Cannot Manufacture Plausibility By Reversing or Omitting Prior Unfavorable Allegations or Her Sworn EEOC Charges. .......... 2
B. The SAC Fails to allege Viable Disability discrimination Claims. .......... 4
1. Burgess Fails to Plausibly Allege Disability. .......... 4
2. Burgess Is Not Qualified For the ROV Position. .......... 6
3. Burgess Cannot Plausibly Allege Causation for Discrimination. .......... 9
C. Burgess Failed to Plausibly Allege Failure to Accommodate. .......... 12
D. Burgess Cannot Plausibly Allege an ADAAA Retaliation Claim. .......... 13
1. Burgess Cannot Plausibly Allege But-For Causation in Retaliation. .......... 14
E. The SAC Fails to Allege a Viable Interference Claim. .......... 17

F. Claim 3, Unlawful Medical Disclosure, Fails. ..... 19
G. The Section 1983 Claims 12 and 13 Fail to State Viable Claims. ..... 20
1. The SAC Fails to Plausibly Allege First Amendment Retaliation. ..... 21
2. The SAC Fails to Plausibly Allege a Due Process Claim. ..... 22
H. Burgess Cannot Plausibly Allege an IIED Claim. ..... 24
I. The Defamation, False Light, and Public Disclosure of Private Fact Claims Are Subject to Dismissal. ..... 25
1. The Defamation Claim Fails Because the Statements Were True ..... 25
2. The False Light Claim, Based on Truthful Statements, Fails. ..... 27
3. Public Disclosure of Private Fact ..... 27
J. Burgess Fails to State a Fraudulent Misrepresentation Claim. ..... 28
IV. CONCLUSION ..... 29

**<u>TABLE OF AUTHORTIES</u>**

**Cases**

*Airs Aromatics, LLC v. Victoria's Secret Stores Brand Mgmt., Inc.*, 744 F.3d 595, 600 (9th Cir. 2014) ..... 3
*Alam v. Reno Hilton Corp.*, 819 F. Supp. 905, 911 (D. Nev. 1993) ..... 24
*Alley v. Anduril Indus., Inc.*, 8:23-cv-01793-JWH-KES, 2024 WL 4552139, at *4–5 (C.D. Cal. Sept. 9, 2024) ..... 7
*Barone v. City of Springfield*, 902 F.3d 1091, 1099–1101 (9th Cir. 2018) ..... 22
*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) ..... 1
*Bollow v. Federal Reserve Bank*, 650 F.2d 1093, 1096 (9th Cir. 1981) ..... 23
*Brown v. City of Tucson*, 336 F.3d 1181, 1192–93 (9th Cir. 2003) ..... 18
*Brown v. Jewell*, No. 16-cv-637, 2017 WL 772140, at *2 (E.D. Cal. Feb. 28, 2017) ..... 15
*Bruce v. Becerra*, No. 3:23-CV-00214-JES-JLB, 2025 WL 1382867, at *3 (S.D. Cal. May 13, 2025) ..... 12
*Bulbman, Inc. v. Nev. Bell*, 825 P.2d 588, 592 (Nev. 1992) ..... 28

*Burke v. Soto*,
No. 2:16-CV-01311-KJM-AC, 2017 WL 4811832, at *5 (E.D. Cal. Oct. 24, 2017 ......... 13

*Cole v. Sunnyvale*,
No. C-08-05017 RMW, 2010 WL 532428, at *4 (N.D. Cal. Feb. 9, 2010) ........................ 3

*Coleman v. City of Los Angeles*,
No. CV16-2577 PSG(AJWX), 2016 WL 11266836, at *3 (C.D. Cal. Oct. 21, 2016) ..... 15

*Colombo v. Palo Alto Unified Sch. Dist.*,
24-cv-00909-NC, 2025 WL 929955, at *10–11 (N.D. Cal. Mar. 27, 2025) ........................ 2

*Cundiff v. Dollar Loan Ctr. LLC*,
726 F. Supp. 2d 1232, 1241 (D. Nev. 2010) ........................ 28

*Devos v. Music Tribe Com. NV, Inc.*,
No. 2:20-CV-1581-JCM-EJY, 2021 WL 3134248, at *4 (D. Nev. July 23, 2021) ......... 5, 15

*EEOC v. C.R. England, Inc.*,
644 F.3d 1028, 1047 (10th Cir. 2011) ........................ 19

*Eng v. Cooley*,
552 F.3d 1062, 1070–71 (9th Cir. 2009) ........................ 21

*Flowers v. Carville*,
310 F.3d 1118, 1132 (9th Cir. 2002) ........................ 27

*Gallo v. Board of Regents of Univ. of Cal.*,
916 F. Supp. 1005, 1007 (S.D. Cal. 1995) ........................ 4

*Gaul v. Lucent Technologies, Inc.*,
134 F.3d 576, 581 (3d Cir.1998) ........................ 15

*Giarrusso v. Nevada State Bd. of Med. Examiners*
No. CV-S050640-RLH-PAL, 2006 WL 8441893, at *11 (D. Nev. Jan. 26, 2006) ........... 27

*Gomez v. City of Doral*,
No. 21-11093, 2022 WL 19201, at *7–8 (11th Cir. Jan. 3, 2022) ........................ 25

*Gray v. Union Cnty. Intermediate Educ. Dist.*,
520 F.2d 803, 806 (9th Cir. 1975) ........................ 23

*Gustavson v. Wrigley Sales Co.*,
961 F. Supp. 2d 1100, 1113 n.1 (N.D. Cal. 2013) ........................ 24

*Iqbal v. Ashcroft*,
556 U.S. 662, 678 (2009) ........................ 2, 3

*JOHNNY MCMURRY, JR. v. NEIDERS COMPANY LLC*,
2:25-CV-00824-JNW, 2026 WL 252074, at *4 (W.D. Wash. Jan. 30, 2026) ........................ 8

*Kaiser v. Wells Fargo Clearing Servs., LLC*,
761 F. Supp. 3d 1336, 1341, n.2 (D. Nev. 2025) ........................ 3

*Kelly v. Town of Abingdon, Virginia*,
90 F.4th 158 (4th Cir. 2024). .......... 15, 19

*Khoja v. Orexigen Therapeutics, Inc.*,
899 F.3d 988, 999 (9th Cir. 2018) .......... 14, 24

*Knievel v. ESPN* .......... 27

*Koltys v. Berryhill*,
No. 2:17-CV07078-ABJ-PRX, 2019 WL 13254073, at *4 (C.D. Cal. Jan. 9, 2019) .......... 15

*Lau v. Mayorkas*,
No. 21-CV-4756-YGR, 2022 WL 22885366, at *8 (N.D. Cal. Apr. 27, 2022) .......... 11

*Lee v. Rising Phoenix Holdings Corp.*,
25-CV-00083-DKW-RT, 2025 WL 3012625, at *10 (D. Haw. Oct. 27, 2025). .......... 15

*Lytle v. Carl*,
382 F.3d 978, 982 (9th Cir. 2004) .......... 20, 21

*Maduike v. Agency Rent–A–Car*,
953 P.2d 24 (Nev. 1998) .......... 24

*Malcorvian v. Cnty. of Cook*,
23 C 3987, 2024 WL 1530473, at *4 (N.D. Ill. Apr. 9, 2024) .......... 18

*Mattioda v. Nelson*,
98 F.4th 1164, 1173 (9th Cir. 2024) .......... 5

*Miller v. Jones*,
970 P.2d 571 (Nev. 1998) .......... 24

*Morales v. City & Cnty. of San Francisco*,
603 F. Supp. 3d 841, 847 (N.D. Cal. 2022) .......... 2, 5

*Munroe v. Mount Airy #1, LLC*,
3:25-CV-990, 2026 WL 50024, at *4 (M.D. Pa. Jan. 7, 2026) .......... 6

*Newland v. Dalton*,
81 F.3d 904, 906 (9th Cir. 1996) .......... 13

*Nigam v. Ahmad*,
561 P.3d 597, 2024 WL 5181837 at *8 (Nev. App. 2024) .......... 27

*O'Brien v. Welty*,
818 F.3d 920, 932 (9th Cir. 2016). .......... 21

*Ooley v. Citrus Heights Police Dep't*,
603 F.App'x 628, 629 (9th Cir. 2015) .......... 23

*Pace v. Portland Cmty. Coll.*,
No. 3:19-cv-00745-YY, 2020 WL 7090130, at *2 (D. Or. Oct. 5, 2020) .......... 12, 15

*Paul v. Davis,*
424 U.S. 693, 701, 711 (1976) .......... 22

*Pegasus v. Reno Newspapers, Inc.*,
57 P.3d 82, 90 (Nev. 2002)....25

*Perez v. Denver Fire Dep't*,
724 Fed. Appx. 646, 648 (10th Cir. 2018)....19

*Perry v. City of Orofino*,
3:24-CV-00598-REP, 2025 WL 2223416, at *8 (D. Idaho Aug. 5, 2025)....23

*Powell v. Freedom Fin. Network*,
CV-17-02445-PHX-BSB, 2018 WL 3110053, at *9 (D. Ariz. June 25, 2018)....19

*Ravel v. Hewlett-Packard Enter., Inc.*,
228 F. Supp. 3d 1086, 1092 (E.D. Cal. 2017)....15

*Ribar v. Washoe Cnty.*,
Nevada Sup. Ct. case no. 88901, 2024 WL 3665320, at *2 (Nev. Aug. 4, 2024)..10, 15, 29

*Riley v. Harr*,
292 F.3d 282, 299 (1st Cir. 2002)....28

*Rodgers v. Ally Bank*,
CV 25-1351 PA (ADSx), 2025 WL 2019380, at *9 (C.D. Cal. July 3, 2025)....3

*Roley v. Pierce Cnty. Fire Protection Dist. No. 4*,
869 F.2d 491, 495 (9th Cir. 1989)....23

*Samia v. Hudson by Altova*,
2:25-CV-00983-JAD-BNW, 2025 WL 1745666, at *3 (D. Nev. June 24, 2025)..... 6, 12, 15

*Santos v. Cnty. of Humboldt*,
22-CV-07485-RMI, 2023 WL 2600449, at *4 (N.D. Cal. Mar. 21, 2023)....18

*Scott v. City of Phoenix*,
No. CV 07-0011-PHX-EHC, 2010 WL 11537777, at *6 (D. Ariz. June 17, 2010)....19

*Shwarz v. United States*,
234 F.3d 428, 435 (9th Cir. 2000)....2

*Skinner v. Newmont Mining Corp.*,
2:18-CV-01787-KJD-VCF, 2019 WL 3554705, at *4 (D. Nev. Aug. 2, 2019)....15

*State v. Eighth Judicial Dist. Court (Anzalone),*
42 P.3d 233, 239 (Nev. 2002).... 27, 28

*Sutter v. Shriners Hosps. for Child.,*
No. 3:21-CV-01874-HZ, 2023 WL 5275496, at *5 (D. Or. Aug. 15, 2023)....8

*Torres v. White*,
46 Fed. Appx. 738, 748–49 (6th Cir. 2002....26

*Walsh v. AMD Sacramento*,
2014 WL 4472752, at *15–16 (E.D. Cal. Sept. 11, 2014)....2

*West v. City of Charlottesville*,
3:24-CV-00027, 2025 WL 3143464, at *4 (W.D. Va. Nov. 10, 2025)....12

*Woolf v. Strada*,
949 F.3d 89, 94 (2d Cir. 2020) ....................6, 7

**Statutes**

§ 12203(a) ....................13
29 C.F.R. § Pt. 1630....................5, 6
293.269921(3)–(5) ....................7
293.3561–3564....................7
293.3572(4) ....................7
293.466–468....................7
293.530 ....................7
293.675(4)....................7
42 U.S.C. § 12102 (1) ....................5, 6
42 U.S.C. § 12112(d)(4)(C) .................... 19, 20
42 U.S.C. §12111 ....................4, 6
52 U.S.C § 20507(c)(2)(A) .................... 7, 14
52 U.S.C. § 20302(a)(8 ....................7
NAC 293.120–130....................7
NAC 293.347–352....................7
Nev. Admin. Code (“NAC”) 293.456–458 ....................7
NRS 244.146....................26
NRS 244.164(2)....................7
NRS 245.216....................29
NRS 293.042 ....................7
NRS 293.503.................... 7, 14
NRS 293.565....................7
NRS 613.330....................4
NRS. 244.143(2)(e)....................26
Washoe County Code (“WCC”) 5.451(2)....................20
WCC 15.490 ....................26

**Other Authorities**

EEOC Compliance Manual,
No. 915.002, 2002 WL 31994335, at *24....................13

FRCP 12(b)(6) ........ i, 1, 6
Rule 9 ........ 28
Rule 9(b) ........ 28
Section 12102(1)(B) ........ 5
Section 12203(b) ........ 17

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

The Court dismissed Burgess's First Amended Complaint ("FAC"), finding that Burgess failed to plausibly allege she was disabled and failed to plausibly allege causation in ADAAA retaliation. (ECF No. 63 at pp. 3–4). The SAC is lengthy, but the issues presented are considerably narrower than its volume suggests. At its core, Burgess, who was the interim Registrar of Voters ("ROV") and head of Washoe County's election administration, seeks to transform a contentious employment performance dispute arising on the eve of the 2024 General Election into fourteen federal and state causes of action.

The employment conflict did not begin with disability-related activity: Burgess previously alleged months of disputes over supervision, overtime, election administration, and management before the September events cast as ADA violations and other claims.

The investigation she now characterizes as retaliatory began no later than October 4, before her mid-October EEOC charges and Burgess's October 23 media interview on which her First Amendment claim depends. The SAC also repackages an accommodation dispute as ADA interference, alleges disclosure of medical information without plausibly connecting the disclosed information to an ADA medical inquiry, asserts constitutional claims without adequately pleading protected citizen speech, constitutionally cognizable stigma, or *Monell* liability, and attempts to convert substantially accurate employment-related statements and ordinary personnel actions into tort claims. The Court need not untangle every allegation to resolve the motion. Once the SAC's labels and repetition are stripped away, the required elements remain missing, and the claims should be dismissed with prejudice.

## II. STANDARD OF REVIEW

To withstand Rule 12(b)(6), a complaint must contain enough facts to "nudge[] their claims across the line from conceivable to plausible." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). It must comprise "more than labels and conclusions," and

"[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal v. Ashcroft*, 556 U.S. 662, 678 (2009). A court need not accept as true allegations contradicted by judicially noticeable facts. *Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000).

## III. LEGAL ANALYSIS

### A. Burgess Cannot Manufacture Plausibility By Reversing or Omitting Prior Unfavorable Allegations or Her Sworn EEOC Charges.

Although an amended complaint supersedes the prior pleading, the Court "need not disregard the fact that an inconsistent allegation was previously made," *Morales v. City & Cnty. of San Francisco*, 603 F. Supp. 3d 841, 847 (N.D. Cal. 2022), and need not accept new contradictory allegations unsupported by additional facts. *Id.* at 846. Courts likewise reject efforts to "omit, sanitize, or otherwise alter" unfavorable allegations to avoid dismissal. *Walsh v. AMD Sacramento*, 2014 WL 4472752, at *15–16 (E.D. Cal. Sept. 11, 2014); *see also Colombo v. Palo Alto Unified Sch. Dist.*, 24-cv-00909-NC, 2025 WL 929955, at *10–11 (N.D. Cal. Mar. 27, 2025); *Rodgers v. Ally Bank*, CV 25-1351 PA (ADSx), 2025 WL 2019380, at *9 (C.D. Cal. July 3, 2025) ("Plaintiff cannot simply omit unfavorable facts in an effort to bolster her claims."). A party may not amend a pleading to "directly contradic[t] an earlier assertion made in the same proceeding." *Airs Aromatics, LLC v. Victoria's Secret Stores Brand Mgmt., Inc.*, 744 F.3d 595, 600 (9th Cir. 2014) (quoting *Russell v. Rolfs*, 893 F.2d 1033, 1037 (9th Cir. 1990)). The "court may also consider the prior allegations as part of its 'context-specific' inquiry based on its judicial experience and common sense to assess whether the… Amended Complaint plausibly suggests an entitlement to relief, as required under *Iqbal. Cole v. Sunnyvale*, No. C-08-05017 RMW, 2010 WL 532428, at *4 (N.D. Cal. Feb. 9, 2010).

Here, rather than clarifying the First Amended Complaint ("FAC"), the SAC omits several claim-destroying allegations, includes contradictory allegations, and contradicts

//

portions of Burgess's sworn EEOC charges.[1] The SAC omits unfavorable FAC allegations set forth in the below analysis, which include that Burgess, as ROV, failed to deactivate 14,000 voters required by federal law (ECF No. 10 at ¶¶84, 88, 90); that on September 20, 2024, Human Resources was upset that Burgess was out at conferences, she did not get along with other departments or did not take suggestions from others (*Id.* at ¶112); and in August 2024, the County Commission Chair requested Assistant County Manager Kate Thomas ("Ms. Thomas") to oversee the ROV department. *Id.* at ¶¶50, 80.

The SAC affirmatively reverses other prior allegations. The FAC described Burgess's anxiety and stress as "caused by the job" and her diagnoses, including complex PTSD, as "work-induced," and that she was prohibited from returning to work when her "medical disability was resolved." (ECF No. 10 at ¶¶114, 154, 210). The SAC now alleges that the Burgess's working conditions merely "aggravated" preexisting impairments but "did not create them," and that Plaintiff's medical clearance did not mean the impairment had resolved. (ECF No. 66 at ¶¶21, 41). The SAC attempts to improperly reverse allegations that bore directly on the deficiency identified in the dismissal Order.

Plaintiff's sworn administrative charges show the same shifting causal narrative. Her first NERC/EEOC charge stated that she was retaliated against after raising election-procedure issues and refusing voter-system access, and expressly stated that she believed she was treated adversely because she would not report directly to Thomas and would not violate Secretary of State policies governing voting system access. (ECF No. 66-1 at p. 6) Yet the SAC now states "[f]or the avoidance of doubt" that this does not form the basis of her ADA retaliation claim. (ECF No. 66 at ¶194). Her February 2025 EEOC Charge attributed the administrative-leave action to her exercise of First Amendment rights. Ex. 2

---

[1] County requests that the Court take judicial notice of the two EEOC charges not attached to the SAC, Exhibits 1 and 2. *Kaiser v. Wells Fargo Clearing Servs., LLC*, 761 F. Supp. 3d 1336, 1341, n.2 (D. Nev. 2025) (taking judicial notice of EEOC Charges); *Gallo v. Board of Regents of Univ. of Cal.*, 916 F. Supp. 1005, 1007 (S.D. Cal. 1995) (holding that the court may consider EEOC charge and right-to-sue letter in deciding a motion to dismiss either as a matter attached to the complaint or as records subject to judicial notice).

at p. 1. The SAC nevertheless alleges that those same actions occurred solely because of disability. (ECF No. 66 at ¶¶143, 148, 206).

The Court need not evaluate the SAC in an artificial vacuum. Burgess changed material allegations, removed unfavorable facts, and reassigned the causes of the same employment decisions after those earlier theories proved legally problematic. Those prior allegations remain relevant to the "context-specific" inquiry into whether the SAC plausibly states the claims now asserted. *See Morales*, 603 F. Supp. 3d at 846–47. A pleading cannot cross the line from conceivable to plausible merely because the facts that previously stood in the way have been reversed or omitted. The SAC's conclusory allegations of disability discrimination, retaliation, and pretext should therefore receive no greater weight than the inconsistent factual allegations that preceded them.

### B. The SAC Fails to allege Viable Disability discrimination Claims.

The SAC's First, Second, Sixth, and Seventh Claims assert disability discrimination claims under the ADAAA, 42 U.S.C. §12111, et seq., Nevada law, NRS 613.330, and the Rehabilitation Act. (collectively, the "Discrimination Claims"). "A claim for disability discrimination under [NRS 613.330] is evaluated like a federal ADA claim." *Devos v. Music Tribe Com. NV, Inc.*, No. 2:20-CV-1581-JCM-EJY, 2021 WL 3134248, at *4 (D. Nev. July 23, 2021); *see also Mattioda v. Nelson*, 98 F.4th 1164, 1173 (9th Cir. 2024) (finding "no significant difference in analysis of the rights and obligations created by the…(ADA) and the Rehabilitation Act."). "To state a colorable claim for disability discrimination under the ADA, Plaintiff must allege that he: (1) is a disabled person under the ADA, (2) is a qualified individual with a disability, and (3) suffered an adverse employment action because of his disability." *Samia v. Hudson by Altova*, 2:25-CV-00983-JAD-BNW, 2025 WL 1745666, at *3 (D. Nev. June 24, 2025).

#### 1. Burgess Fails to Plausibly Allege Disability.

A plausible allegation of "disability," must include: "(A) a physical or mental impairment that substantially limits one or more major life activities; (B) a record of such an

impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102 (1). Claims under the first prong are "actual disability" claims. *Munroe v. Mount Airy #1, LLC*, 3:25-CV-990, 2026 WL 50024, at *4 (M.D. Pa. Jan. 7, 2026). "Demonstrating a substantial limitation in performing the unique aspects of a single specific job is not sufficient to establish that a person is substantially limited in the major life activity of working." 29 C.F.R. § Pt. 1630, App. (2024). "This longstanding, common-sense principle of law recognizes that employees who are precluded only from doing their specific job, or from working under a specific supervisor, do not have a 'disability.'" *Woolf v. Strada*, 949 F.3d 89, 94 (2d Cir. 2020). When a company CEO requested to step down to a former role due to stress and stress-related heart issues with no other accommodations, he was not "disabled." *Alley v. Anduril Indus., Inc.*, 8:23-cv-01793-JWH-KES, 2024 WL 4552139, at *4–5 (C.D. Cal. Sept. 9, 2024) (dismissing ADA claim with prejudice).

Here, the SAC still falls short of plausibly alleging a disability. While the SAC provides more detail, and now alleges all three disability theories, it still fails to plausibly allege a qualifying disability under the ADAAA. Specifically, the SAC alleges that "[S]he remained able to perform the essential functions of the interim Registrar of Voters position if the County abated Ms. Thomas's interference with the reporting structure." (ECF No. 66 at ¶65). This unequivocally demonstrates that any stress, anxiety, and blood pressure amounted to limitations in working under a specific supervisor or with a colleague, Ms. Thomas, rather than limitations in any major life activity, and thus falls short of alleging actual disability under the ADAAA. *Id.*; *Woolf*, 949 F.3d at 94.

Additionally, the SAC fails to plausibly allege a "record of" or being "regarded as" having a disability. Her "record of" theory rests on showing only that she reported stress and health concerns, she requested County-recommended leave, submitted a medical release clearing her to work (that was unsolicited from the County), and completed an EQ-i leadership profile. (ECF No. 66 at ¶44). Section 12102(1)(B) and 29 C.F.R. § 1630.2(k) require a record of an impairment that substantially limited a major life activity, not

merely a record of vague mentions of a medical condition.

Her "regarded as" allegations are similarly deficient. Holding a conversation about ways to manage work-related stress and anxiety and considering possible accommodations is not, on its own, enough to support the inference that Defendant viewed Plaintiff as disabled." *Sutter v. Shriners Hosps. for Child.,* No. 3:21-CV-01874-HZ, 2023 WL 5275496, at *5 (D. Or. Aug. 15, 2023). The County's acknowledgment that Burgess reported stress-related health issues or took leave due to those issues may establish awareness of her heightened stress and related issues, as set forth above, issues that prevented Burgess from working with a specific person would not have put the County on notice or plausibly lead it to conclude that Burgess had a substantially limiting disability under the ADAAA. Also, the statutory inquiry for being "regarded as" disabled is whether the County subjected her to a prohibited action because of an actual or perceived impairment. 42 U.S.C. § 12102(3)(A). The SAC supplies no factual bridge between those acknowledgments and the adverse actions. Instead, simply declares causation because of perceived impairments. (ECF No. 66 at ¶53). Such a conclusory assertion fails to state a claim. Also, Burgess's September 30 nurse practitioner "clearance" shows any condition was transitory. *Id.* at ¶72. Therefore, the SAC fails to plausibly allege disability on all three theories.

**2. Burgess Is Not Qualified For the ROV Position.**

A "qualified individual" is a disabled person "who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8); *see also* 29 C.F.R. § 1630.2 (m). If a disabled person "cannot perform a job's essential functions, even with a reasonable accommodation," then the ADA does not apply. *JOHNNY MCMURRY, JR. v. NEIDERS COMPANY LLC*, 2:25-CV-00824-JNW, 2026 WL 252074, at *4 (W.D. Wash. Jan. 30, 2026).

The instant case is unique in that most ROV "essential functions" are duties compelled by state and federal law, making the analysis fit for Rule 12(b)(6) review. Duties

relevant to this Motion are as follows: ROVs are required to maintain the County's voter list, collect and transmit accurate voter registration records and remove deceased, inactive, and duplicate voters (NRS 293.503, 293.530, 293.675(4); Nev. Admin. Code ("NAC") 293.456–458, 293.466–468); ROVs must prepare and distribute accurate sample ballots (NRS 293.565; NAC 293.120–130); and ROVs must establish permanent and temporary polling places, ensure any ballot drop boxes and their locations comply with applicable law, establish and maintain security, ballot retrieval, and chain of custody protocols for ballot drop boxes (293.269921(3)–(5), 293.3561–3564, 293.3572(4); NAC 293.347–352).[2]

The SAC substitutes the conclusion that she was qualified for facts that overcome her prior admissions and judicially noticeable omissions. (ECF No. 66 at ¶6). The FAC admitted that 14,000 voters who should have been deactivated were not, and that the Secretary of State contacted the County about that failure. (ECF No. 10 ¶¶84, 88, 90). The FAC also reflected a fundamental lack of understanding of election law, citing the incorrect deadline and applicable law regarding voter list deactivation *Id.* at ¶¶84, 88 (alleging that a UOCAVA deadline applied to voter deactivation); 52 U.S.C. § 20302(a)(8) (setting the UOCAVA deadline for overseas voter ballot distribution, which was September 21, 2024 for the 2024 General Election); 52 U.S.C § 20507(c)(2)(A) (setting the National Voter Registration Act mandated deadline to deactivate voters 90 days before an election, which was *August 7th* for the 2024 General Presidential Election); *see also* NRS 293.503(4). This alone shows she was unqualified, with or without reasonable accommodation.

For the June 2024 primary election, Burgess, as ROV, distributed a Republican sample ballot missing an entire state senate race. *See Ribar v. Washoe Cnty.*, Nevada Sup. Ct. case no. 88901, 2024 WL 3665320, at *2 (Nev. Aug. 4, 2024) ("…the sample ballot provided to Republican voters was defective…"). Nevada law requires that all candidates for all races be identified on the official sample ballot. NRS 293.565; NAC 293.120–130.

---

[2] Under Nevada law, "county clerk" means "registrar of voters" for counties with ROVs, and those legal duties are imposed on the ROV. NRS 244.164(2); NRS 293.042.

The SAC now admits that Burgess's efforts to facilitate unauthorized ad hoc ballot drop boxes at local churches was "contrary to NRS 293.269921(3)." (ECF No. 66 at ¶31). Such abdication of legal control over ballot drop boxes both violates the law and creates unacceptable risks of tampering, delay, or ballot rejection, reflects a failure to consider potential Constitutional issues with preferential treatment based on religion, and reflects a fundamental misunderstanding of the ROV's statutory obligations.

The SAC still includes no allegations regarding any degree Burgess possessed during her employment, or other certification demonstrating some qualification for the position. *See* (ECF No. 66). She alleges only prior employment as *Deputy* ROV in a nearby *rural* county. *Id.* at ¶24. She does not include any prior experience of election management roles in any similarly sized jurisdiction to Washoe County. *See* (ECF No. 66). She does not include any prior experience working in a similar top-level election department role. *See id.*

The SAC's employment application allegations reinforce that Burgess was not qualified. (ECF No. 66 at ¶¶101–02). Since September 2024, Burgess has allegedly applied for "more than 150 positions" comparable to the ROV and Deputy ROV across the nation, but was hired for none. *Id.* While Burgess seeks to blame the County for some unidentified statements to *some* prospective employers or vendors (which the County disputes), this does not plausibly explain *over 150 different prospective employers* failing to hire Burgess. *See id.* at ¶103. Instead, it merely suggests that Burgess fell short of the qualifications for at least a large number of applications. She further alleges vendors would not "do business" with the County after the County's alleged statements, making it unclear how those statements could have prevented her from obtaining any of the 150 positions. *See id.* at ¶100. Taken together with her election-administration deficiencies, the SAC does not plausibly allege that Burgess could perform the essential functions of the ROV or Deputy ROV positions.

Dismissal with prejudice for the Discrimination Claims is appropriate because Burgess cannot viably allege she was qualified for the position with or without an

accommodation. Even if she had a disability that could be reasonably accommodated, Burgess's significant errors and demonstrated lack of understanding of the applicable laws that occurred during her short-lived ROV appointment show that she is unqualified.

**3. Burgess Cannot Plausibly Allege Causation for Discrimination.**

For disability discrimination, "Plaintiff must also allege that the adverse employment action would not have occurred but for plaintiff's disability." *Lau v. Mayorkas*, No. 21-CV-4756-YGR, 2022 WL 22885366, at *8 (N.D. Cal. Apr. 27, 2022); *see also Bruce v. Becerra*, No. 3:23-CV-00214-JES-JLB, 2025 WL 1382867, at *3 (S.D. Cal. May 13, 2025) (dismissing Rehabilitation Act discrimination claim where plaintiff failed to sufficiently allege discriminatory acts were "connected to or imposed because of his disability"). "In layman's terms, Plaintiff would need to show that the adverse employment action would not have occurred if he had not been disabled." *Samia*, 2025 WL 1745666, at *3.

There must be plausible allegations showing that disability is the but-for cause of the adverse discriminatory action. *West v. City of Charlottesville*, 3:24-CV-00027, 2025 WL 3143464, at *4 (W.D. Va. Nov. 10, 2025) "[T]o sufficiently allege causation for a *discrimination* claim, a plaintiff alleging temporal proximity that could be "potentially consistent with disability discrimination," must still "connect the dots" between his disability and the adverse action." *Id.* at *6. Plaintiff can plead herself out of court by identifying a legitimate nondiscriminatory reason for his discharge. *Id.* at *4. For example, in *West* plaintiff failed to plausibly allege discriminatory discharge or reprimands, noting "although West's termination came after the disclosure of his disability, it also came after the City formally communicated their concerns about his job performance." *Id.* at *5.

Causation is not plausible where the complaint "describes a legitimate nondiscriminatory reason" for termination. *Pace v. Portland Cmty. Coll.*, No. 3:19-cv-00745-YY, 2020 WL 7090130, at *2 (D. Or. Oct. 5, 2020) (dismissing claim with prejudice); *see also Burke v. Soto*, No. 2:16-CV-01311-KJM-AC, 2017 WL 4811832, at *5 (E.D. Cal. Oct. 24, 2017) (dismissing discrimination claim, taking into account liberal alternative pleading,

because Plaintiff's conclusions were unsupported and contradictory). "[T]ermination based on misconduct rather than the disability itself [is] valid." *Newland v. Dalton*, 81 F.3d 904, 906 (9th Cir. 1996) (affirming dismissal of RA disability discrimination claim).

Here, Burgess cannot establish but-for causation by grouping eleven different employment decisions together and summarily declaring that each occurred "because of" disability. (ECF No. 66 at ¶¶143, 148). Ms. Thomas's alleged hostility, interference with ROV management, overtime disputes, and redirection of Burgess's staff began in June 2024, negating causal chronology. *Id.* at ¶¶54–55. The FAC, whose unfavorable facts may not simply be omitted, alleged more details of Ms. Thomas's role and her accelerating concerns of Burgess's performance, a June 2024 verbal altercation between Burgess and a County Commissioner, she was "chastised" when responding to commissioners' inquiries, in August 2024 the Commission Chair "personally requested" Ms. Thomas oversee the ROV, in August 2024 the Commission considered a new ROV classification as "Juris Doctorate," and that Ms. Thomas was "really upset" with Burgess's failure with the voter deactivation deadline. (ECF No. 10 at ¶43, ¶¶45–60, ¶68, ¶¶74–75, ¶80, ¶¶100–01, ¶110). This timeline renders it implausible that any adverse action occurred but-for the September 20, 2024 disability disclosure and following alleged disabled status. Alleged mistreatment and management concerns toward Burgess were unfolding months prior.

The October 4 restriction on communications, continued leave, and investigation was accompanied by expressly non-medical concerns about operational disruption, insubordination, and Burgess's ability to perform the ROV duties six weeks before the 2024 General Election. (ECF No. 66 at ¶¶73–75). The October 4 letter identified several issues in Burgess's job performance, including ROV-sanctioned unofficial [ballot] drop boxes at churches, failure to complete voter list maintenance, Burgess providing incorrect information and failing to prepare for Secretary of State public mailings, and reports of

excessive overtime use. *Id.* at ¶131; Ex. 3.[3] She alleges that the County instructed her not to speak with media and that she subsequently gave an interview to national media before the General Election, thereby providing another disability-discriminatory basis for any adverse action. (ECF No. 66 at ¶73, ¶252); *see also* (ECF No. 10 at ¶148). Burgess's placement on leave, restriction on communicating with staff, investigation, and prohibition on her return to office during the pendency of the investigation occurred against preexisting and escalating performance issues described above, rendering but-for causation implausible.

Additionally, the Court should not ignore Burgess's previously pleaded nondiscriminatory causal theories unrelated to disability, thereby foreclosing any ability to plausibly plead but-for causation: that County H.R. expressed concerns that she "did not get along with other departments" and "did not take suggestions from others." (ECF No. 10 at ¶112); that her placement on administrative leave was part of an investigation into "several issues regarding her job performance" (*Id.* at ¶¶138, 149); that County refused her return-to-work request "and ultimately retaliated against her *for not complying with Ms. Thomas's demands.*" (*Id.* at p. 29 lns. 23–26); and that the County published information on her disability and "maligned her character" "to retaliate for her coming forward regarding specific voting issues," not because she was disabled (*See id.* at p. 30 lns. 1–5). By supplying nondiscriminatory rationales for possible adverse actions, Burgess pleaded herself out of a disability discrimination claim. *Pace*, 2020 WL 7090130, at *2.

Likewise, the EEOC charges offer causation theories disconnected from disability. The Charge in the SAC exhibit states under penalty of perjury, "I believe I was treated this way because I would not report directly to [Ms. Thomas] as she was not my supervisor,

---

[3] The Court should find that Exhibit 3, the October 4th Letter, is incorporated into the SAC by reference. *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018). This is appropriate where the complaint alleges the document's contents *or* the document forms the basis of a claim. *Id.* "The doctrine prevents plaintiffs from selecting only portions of documents that support their claims, while omitting portions of those very documents that weaken—or doom—their claims." *Id.* The SAC extensively references the October 4th Letter while omitting unfavorable details therein, precisely the circumstance contemplated in *Khoja*. *See* Ex. 3; (ECF No. 66 at ¶¶73, 119, 130–31, 145–46, 159, 199, 257).

and because I refused to violate the Secretary of State's policies and procedures regarding who has access to the [voter management] system." (ECF No. 66-1 at p. 6) The October 28, 2024 Charge states she was "harassed by …County staff despite not reporting to her *after* a County Commissioner demanded she [the staff person] be involved with the Voter Registrar's Office." Ex. 1 at p. 1 (emph. added). The February 2025 Charge states that Burgess was placed on leave in October, "because she exercised her first amendment right." Ex. 2 at p. 1. Presumably this refers to Burgess's national media statements that called into question election integrity for the 2024 General Election. *See* (ECF No. 66 at ¶252).

The Court should dismiss the Discrimination Claims with prejudice because Burgess's nondiscriminatory reasons for any adverse action remove any but-for causation.

**C. BURGESS FAILED TO PLAUSIBLY ALLEGE FAILURE TO ACCOMMODATE.**

For discrimination for failure to accommodate, a plaintiff must allege (1) she is disabled within the meaning of the ADAAA; (2) she is qualified to perform the essential functions of her job with reasonable accommodation; (3) she requested an accommodation; (4) the employer knew of the requested accommodation; and (5) the employer failed to reasonably accommodate her disability. *Samia*, 2025 WL 1745666, at *2. Where a plaintiff alleges they were offered at least one reasonable accommodation, they fail to state an ADA claim for discrimination based on failure to accommodate. *Ravel v. Hewlett-Packard Enter., Inc.*, 228 F. Supp. 3d 1086, 1092 (E.D. Cal. 2017). An employer is not obligated to provide the accommodation that plaintiff requests and need only provide some reasonable accommodation. *Id.* at 1093. Leave may be a reasonable accommodation, and it "need not be paid to be reasonable under the ADA." *Id.* at 1094. In *Ravel*, plaintiff failed to state a discrimination claim where defendant offered paid leave, which was reasonable as a matter of law. *See id.* at 1093–94. dismissal with prejudice is warranted where plaintiff alleges the employer accommodated her, even if the accommodation was not of her choosing. *Koltys v. Berryhill*, No. 2:17-CV07078-ABJ-PRX, 2019 WL 13254073, at *4 (C.D. Cal. Jan. 9, 2019).

Transfer to a new supervisor is not a reasonable accommodation as a matter of law. *Gaul v. Lucent Technologies, Inc.*, 134 F.3d 576, 581 (3d Cir.1998) (holding that it is "wholly impractical" to require an employer to transfer an employee "whenever he becomes 'stressed out' by a coworker or supervisor"). EEOC Guidance states, "[a]n employer does not have to provide an employee with a new supervisor as a reasonable accommodation." EEOC Compliance Manual, No. 915.002, 2002 WL 31994335, at *24.

Here, even if the SAC plausibly alleged Burgess was a qualified person with a disability, the failure-to-accommodate theory fails. Even if she was actually disabled, the County provided her an accommodation of paid leave, which was reasonable as a matter of law. (ECF No. 66 at ¶¶73, 85); Ex. 3 at p. 2. Burgess's requests for less interaction with Ms. Thomas were unreasonable as a matter of law. *See id.* at ¶60; *Gaul*, 134 F.3d at 581. While Burgess requested reassignment to Deputy ROV, the SAC explains why the Deputy position was unavailable to Burgess: "that wasn't going to happen during the pendency of the election because the team would look as you as lead. It would make operations confusing." (ECF No. 66 at ¶74). The "operations" were the crucial and lawful administration of the 2024 General Election, including a Presidential Election. Whether the Deputy ROV position was available, however, not the issue. The SAC describes solely a disagreement on choice of accommodation, which does not translate into a claim. The County accommodated Burgess with paid leave based on her reported stress related issues. The failure-to-accommodate theory therefore fails and should be dismissed with prejudice.

### D. Burgess Cannot Plausibly Allege an ADAAA Retaliation Claim.

"[T]o state a plausible ADA retaliation claim, plaintiff must allege: (1) involvement in a protected activity, (2) an adverse employment action, and (3) a but-for causal link between the two." *Samia*, 2025 WL 1745666, at *3. Plaintiff informing supervisors that he was "ready and able to return to work…does not rise to the level of engaging in a protected activity for the purposes of § 12203(a)." *Coleman v. City of Los Angeles*, No. CV16-2577 PSG(AJWX), 2016 WL 11266836, at *3 (C.D. Cal. Oct. 21, 2016). Here, as an initial

matter, Burgess's communication that she wished to return to work was not a protected activity. *Id.* at *3; (ECF No. 66 at ¶177). As set forth below, the Fourth Claim for ADAAA retaliation wholly fails based on lack of but-for causation.

**1. Burgess Cannot Plausibly Allege But-For Causation in Retaliation.**

Plaintiff must plausibly allege but-for causation, i.e. "were it not for engaging in protected activity" she would not have suffered the adverse employment action. *See Samia*, 2025 WL 1745666, at *4. Conclusory allegations that defendant's adverse actions were due to plaintiff's disability are insufficient to plausibly allege the but-for causation standard. *Lee v. Rising Phoenix Holdings Corp.*, 25-CV-00083-DKW-RT, 2025 WL 3012625, at *10 (D. Haw. Oct. 27, 2025). An adverse employment action is any action reasonably likely to deter the employee from engaging in a protected activity or any treatment based on a retaliatory motive." *Devos*, 2021 WL 3134248, at *3. Dismissal with prejudice is warranted where plaintiff's allegations fail to show the adverse action occurred but-for their protected activity and instead include another basis for causation. *See Skinner v. Newmont Mining Corp.*, 2:18-CV-01787-KJD-VCF, 2019 WL 3554705, at *4 (D. Nev. Aug. 2, 2019); *Kelly v. Town of Abingdon, Virginia*, 90 F.4th 158 (4th Cir. 2024).

The SAC mistakes chronology for causation while obscuring the actual chronology. The relevant sequence did not begin with Burgess's accommodation requests, but rather in June 2024 with preexisting management and election-administration problems in the 2024 election cycle, and the later actions largely flowed from that preexisting course of events. Regarding Burgess's continued paid leave, investigation, investigation length, and firing, the Court must take into account the context for purposes of plausibility, i.e., against the backdrop of crucial ROV operations administering the 2024 Election, and Burgess's preceding failures to uphold ROV legal duties leading up to that point. This includes Burgess's violations of state and federal law: distributing a legally deficient sample ballot, failing to deactivate voters, and facilitating unauthorized ballot drop boxes. *Ribar,* 2024 WL 3665320, at *2; (ECF No. 10 at ¶84); 52 U.S.C § 20507(c)(2)(A) NRS 293.503(4);

(ECF No. 66 at ¶31). Ms. Thomas increasingly expressed concerns regarding Burgess's performance, and was increasingly involved in ROV operations to ensure they occurred in accordance with election law. *See* (ECF No. 10 at ¶43, ¶¶45–60, ¶68, ¶¶74–75, ¶80, ¶¶100–01).

Regarding Ms. Thomas's involvement in ROV operations, complaints of excessive overtime, and the County addressing concerns of Burgess's performance, the claim fails because those acts precede any protected activity. "An alleged adverse action which predates the alleged protected activity cannot serve as the basis for a retaliation claim." *Brown v. Jewell*, No. 16-cv-637, 2017 WL 772140, at *2 (E.D. Cal. Feb. 28, 2017). The SAC acknowledges Ms. Thomas's involvement with ROV operations and that Ms. Thomas expressed concerns with Burgess beginning in June 2024, months prior to any alleged protected activity in September 2024. (ECF No. 66 at ¶54). The SAC improperly attempts to rewrite the date that Commissioner Hill requested Ms. Thomas's oversight of the ROV. The FAC alleged this occurred in August 2024, prior to any protected activity. *See id.* at ¶55; (ECF No. 10 at ¶¶81–82). Burgess was notified of an investigation into her performance on October 4, 2024, which predates any of her EEOC charges. (ECF No. 66 at ¶124); (ECF No. 66-1 at p. 6); Ex. 1; Ex. 2. There is no but-for causation for these acts that predate any protected activity, and thus the claim fails on these theories.

Regarding the County informing vendors that Burgess lacked authority to execute contracts, the SAC offers a nondiscriminatory reason. (ECF No. 66 at ¶98). The SAC explains that the statements were made "in an effort to terminate early the contracts Plaintiff had executed." *Id.* ¶98. The SAC dispels that any communication to vendors regarding Burgess's unauthorized contracts was but-for her protected activity or disability.

The SAC also offers a non-retaliatory reason for the County's media statements, acknowledging that Burgess being on leave shortly before an election "bears directly on the administration and the integrity of that election." (ECF No. 66 at ¶259). The FAC alleged the September 2024 media statement: Burgess was on leave but the County was committed

to running a fair election. (ECF No. 10 at ¶132). The statement and context show that its purpose was to maintain public confidence in the election, avoiding fuel to conspiracy theories. The County's subsequent statement that Burgess was under investigation followed Burgess's national media statements days before the 2024 General Election, calling election integrity into question and failing to plausibly connect this act to any ADA protected activity. *Id.* at ¶149; (ECF No. 66 at ¶252). This negates "but for" causation.

Next, the February 12 termination followed the January 15 investigation report and February 5 substantiation. (ECF No. 66 at ¶¶90, 94). The SAC alleges no nonconclusory fact tying that decision to an ADA request or charge rather than the investigation already underway since October 4, 2024.

The SAC's accusations regarding the County's failure to follow its own policy are contradicted by its other allegations, and therefore do not plausibly suggest pretext or any retaliatory causation for any act. She claims that H.R. evaluation did not occur, simultaneously alleging that she indeed met with the H.R. Director at Manager Brown's direction after she claimed stress-related health issues. (ECF No. 6 at ¶¶7(f), 64, 66–67, 64, 71). The SAC falsely claims she was never told an investigation was open, nor its subject matter, which is contradicted by its allegations of the October 4th Letter. *Id.* at ¶¶87, 124, 131, 145. Nonetheless, the policy does not require any such notice, nor that the County provide the investigation evidence, recordings, entire investigation report, or create/distribute transcripts to the subject of an investigation. *See id.* at ¶125; (ECF No. 66-6 at p. 5). The SAC alleges the County failed to follow policy regarding placing a department head on leave *without pay*, but Burgess was only on leave *with* pay.[4] *See id.* at ¶120, ¶120–21. The SAC alleges violations regarding the policy's confidentiality provision,

[4] Burgess was on paid leave from September 25, 2024, until her February 2025 firing. *See* (ECF No. 66 at ¶73); Ex. 3. She alleges her pay was inadvertently reduced, but it was restored and she was retroactively compensated for the reduction. *Id.* at ¶85. While the SAC tries to imply an adverse act in going from "personal leave" to "administrative leave," it does not allege any tangible difference between to two, and there is none. *See id.* at ¶87.

but that policy includes an exception for open meetings. *Id.* at ¶135; ECF No. 66-6 at p. 3. The SAC also never alleges that the County's public statements included the substance of the investigation, its findings, or anything other than the existence of an investigation. The SAC falsely alleges that Burgess did not receive a summary of the investigation findings or the report, which is contradicted by its allegations regarding the February 5, 2025 substantiation, and an FAC allegation of an email providing the entire report to her counsel. (ECF No. 66 at ¶¶90, 124, 132, 196); (ECF No. 10 at ¶164). Lastly, the SAC incorrectly alleges that the County failed to follow the Department Head policy for employee action; however, Burgess was not a department head subject to that policy because was in the Deputy ROV position when terminated. (ECF No. 66 at ¶¶94, 122).

The SAC's reconstructed causal theory also cannot be divorced from Burgess's sworn EEOC charges. Under penalty of perjury, Burgess stated that she was prohibited from returning to work, accused of incompetency and insubordination, forced to go on leave in September 2024, prohibited from communicating with third parties, and her "health information" was disclosed "because [Burgess] would not report directly to [Ms. Thomas]…and because [Burgess] refused to violate the Secretary of State's policies and procedures regarding who has access to the VREMS [voter] system." (ECF No. 66-1 at p. 6); *see also* Ex. 2 at p. 1 (stating Burgess was placed on administrative leave "because she exercised her first amendment right.").

The Court should dismiss the Third Claim with prejudice because Burgess does not and cannot plausibly allege but-for causation. Likewise, the FAC and sworn EEOC charges offer other reasons for any adverse acts, precluding any possibility that Burgess could plausibly allege causation. Dismissal with prejudice is warranted for the retaliation claim.

### E. The SAC Fails to Allege a Viable Interference Claim.

Burgess's 5th Claim alleges "Interference, Coercion, Intimidation, and Threats" in violation of the ADA. (ECF No. 66 at ¶¶197–201). Section 12203(b) does not prohibit every employer action that disadvantages a disabled employee; the challenged coercion or

threat must interfere with the exercise or enjoyment of an ADA right, and plaintiff must allege a "distinct and palpable injury" resulting from that interference. *Brown v. City of Tucson*, 336 F.3d 1181, 1192–93 (9th Cir. 2003). Claim 5 does neither.

The SAC takes issue with requiring a written leave request, denying additional time to consider leave, and terminating system access, while the FAC itself characterized the same conduct as requiring Burgess to "remain on personal leave pending investigation." (ECF No. 66 at ¶199); (ECF No. 10 at ¶196). Allegations that an employer used a "take-it-or leave-it ultimatum" offering the employer's proposed accommodation or lose the job do not state an interference claim. *Malcorvian v. Cnty. of Cook*, 23 C 3987, 2024 WL 1530473, at *4 (N.D. Ill. Apr. 9, 2024). A disagreement over the accommodation provided does not, without more, become a separate interference claim. *Santos v. Cnty. of Humboldt*, 22-CV-07485-RMI, 2023 WL 2600449, at *4 (N.D. Cal. Mar. 21, 2023) (finding dissatisfaction with the interactive process does not state an interference claim). The portion of Claim 5 based on Burgess's leave therefore fails.

The SAC does not allege any threats connected to Burgess exercising any ADA rights. (ECF No. 66 at ¶199). The alleged threat of insubordination and investigation stems from an instruction for Burgess not to communicate with third parties, which is not a right protected by the ADAAA. *See id.* That "threat" was not made in conjunction with abandoning any accommodation request, filing a charge, or exercising any other ADA right. Additionally, the chronology of the investigation precludes causation with any EEOC charge. The investigation into Burgess's job performance, which began at the latest on October 4, 2024, predates any discrimination charge, which allegedly was first filed with NERC on October 17, 2024.[5] *Id.* at ¶¶16, 124; (ECF No. 66-1); Ex. 1; Ex. 2. Burgess

---

[5] This allegation is somewhat misleading. Plaintiff's Exhibit 66-1 reflects that Burgess filed an *Intake Inquiry Form* with NERC on October 17, but the charging document was submitted *December 6, 2024*. The earliest date of any *charge* filed was October 28, 2024 (Ex. 1; (ECF No. 66 at ¶17)), which Burgess signed on that date. At any rate, all EEOC filings occurred after commencement of the investigation, which began no later than October 4.

further fails to plausibly allege any discriminatory motive. *Kelly*, 90 F.4th at 171–72 (upholding dismissal of interference claim where employer did nothing to prevent exercise of ADA rights and threats occurred against the backdrop of alleged political turmoil and workplace personality conflicts). Because Burgess never plausibly connects the challenged conduct to coercion or interference with an ADA right, it should be dismissed with prejudice.

**F. CLAIM 3, UNLAWFUL MEDICAL DISCLOSURE, FAILS.**

Burgess's Third Claim for "unlawful disclosure of confidential medical information," fails because the County did not disclose information obtained through a medical inquiry, and because the County's public statements did not include anything other than generic references to "stress related health issues." The ADA extends confidentiality requirements to medical information "obtained under" a covered medical examination or inquiry. 42 U.S.C. § 12112(d)(4)(C). Alleged privacy violations based on disclosure of voluntarily produced information fails to state a claim. *Powell v. Freedom Fin. Network*, CV-17-02445-PHX-BSB, 2018 WL 3110053, at *9 (D. Ariz. June 25, 2018); *see also EEOC v. C.R. England, Inc.*, 644 F.3d 1028, 1047 (10th Cir. 2011) ("In sum, if an employer discloses medical information that was voluntarily offered by an employee … then the employer is not subject to liability[.]"); *Scott v. City of Phoenix*, No. CV 07-0011-PHX-EHC, 2010 WL 11537777, at *6 (D. Ariz. June 17, 2010), *aff'd*, 442 F. App'x 259 (9th Cir. 2011) ("The ADA does not protect voluntarily disclosed medical information"). For example, there was no violation where a firefighter voluntarily told his commander that he suffered from PTSD and wanted a fitness for duty exam, and the commander later relayed that to the firefighter's colleagues. *Perez v. Denver Fire Dep't*, 724 Fed. Appx. 646, 648 (10th Cir. 2018).

Burgess's status as experiencing stress-related health issues was voluntarily disclosed outside of employer inquiry. The County did not request medical documentation, nor ask Burgess about any medical condition. *See* (ECF No. 66 at ¶69).

One of her sworn EEOC charges states that *she* informed executive staff of her significant stress, anxiety, and increased blood pressure. Ex. 1 at p. 1; *see also* (ECF No. 66 at ¶60); (ECF No. 10 at ¶108). County officials later recommended leave. (ECF No. 66 at ¶69); (ECF No. 10 at ¶118). That Charge further describes the September 25 email as one she was required to send requesting personal leave, not as a County demand that she disclose medical details. Ex. 1.

The County's actual disclosures confirm that the SAC does not and cannot state a viable claim. The September 25 statement said only that Burgess reported "stress related health issues" and requested leave "for self-care," which is information that Burgess volunteered to staff. (ECF No. 66 at ¶48); (ECF No. 10 at ¶132). It disclosed no diagnosis, blood-pressure information, treatment, medical-clearance information, or other specific medical detail. *Id.* The October 31 statement was even more general, stating only that Burgess was initially been on leave "for medical reasons." (ECF No. 66 at ¶51).

Burgess's claim regarding any disclosure to County Commissioners fails because the law permits disclosures to supervisors and managers for necessary restrictions on the employee's work restrictions or accommodations. 42 U.S.C. § 12112(d)(3)(B)(i). Burgess served at the pleasure of the County Commissioners. Washoe County Code ("WCC") 5.451(2) (*available at* https://library.municode.com/nv/washoe_county/codes/code_of_ordinances). Even accepting that the County knew of Burgess's diagnoses, the SAC does not plausibly allege the necessary link between information obtained through a covered medical inquiry and information subsequently disclosed. Dismissal is appropriate.

### G. THE SECTION 1983 CLAIMS 12 AND 13 FAIL TO STATE VIABLE CLAIMS.

Section 1983 *Monell* liability may attach to a government entity when an employee acts pursuant to an "expressly adopted official policy," or where an employee committed a constitutional violation pursuant to a "longstanding practice or custom" that is so "persistent and widespread" that it effectively constitutes a "permanent and well settled" policy. *Lytle v. Carl*, 382 F.3d 978, 982 (9th Cir. 2004).

Here, the SAC's Section 1983 Claims 12 and 13 initially fail because they do not plausibly allege *Monell* liability. Claim 12 identifies no County policy or widespread custom; rather, it expressly alleges that the October 4 directive to avoid communication with third parties while on leave *was not* authorized by any County policy. (ECF No. 66 at ¶258). She conclusively alleges that any retaliatory acts were made by individuals with policy making authority or that the Board was aware of those decisions and acquiesced. However final policymaking authority is determined by governing law, not by pleading the label "final policymaker." Awareness or acquiescence does not convert a subordinate's conduct into County policy. *See id.* at ¶264; *Lytle*, 382 F.3d at 982–83, 987.

Claim 13 likewise alleges no viable ratification theory. (ECF No. 66 at ¶¶266–75). The SAC alleges that the Board "ratified" the conduct because, after Burgess was terminated, it appointed Ms. Thomas as Interim County Manager despite public comment on Burgess's lawsuit. *Id.* at ¶274. This is attenuated. There is no allegation that the Board reviewed and approved the challenged decisions and the grounds on which they were made, thus failing to plausibly allege a *Monell* ratification theory. *Lytle*, 382 F.3d at 987.

Because neither claim plausibly ties an alleged constitutional violation to County policy, custom, final-policymaker action, or actual ratification, Claims 12 and 13 should be dismissed. Notwithstanding, as set forth below, even if the SAC plausibly alleged *Monell* liability, the claims otherwise fail and therefore dismissal with prejudice is appropriate.

**1. The SAC Fails to Plausibly Allege First Amendment Retaliation.**

To state a First Amendment retaliation claim, the "plaintiff must show that (1) he was engaged in a constitutionally protected activity, (2) the defendant's actions would chill a person of ordinary firmness from continuing to engage in the protected activity, and (3) the protected activity was a substantial or motivating factor in the defendant's conduct." *O'Brien v. Welty*, 818 F.3d 920, 932 (9th Cir. 2016). A public employee must plausibly allege that she spoke as a private citizen rather than in her employment responsibilities. *Eng v. Cooley*, 552 F.3d 1062, 1070–71 (9th Cir. 2009). Speaking publicly or to the press

does not transform employee speech into citizen speech where public communication falls within the employee's role. *Barone v. City of Springfield*, 902 F.3d 1091, 1099–1101 (9th Cir. 2018).

Burgess's own prior allegations undermine the SAC's new assertion that her October 23 Associated Press ("A.P.") interview was purely private speech. (ECF No. 66 at ¶¶252–53); (ECF. No. 10 at ¶¶29, 145, 148). Burgess previously alleged that the County authorized her to speak to the press on ROV operations, that reporters shadowed her performing her day-to-day duties for two weeks, and that the story would not be completed until the General election. (ECF No. 10 at ¶29). She further alleged that, when the AP was "finishing their story," it again contacted Burgess and she supplied the statement now underlying the First Amendment Retaliation claim. *Id.* at ¶¶145, 148; (ECF No. 66 at ¶¶252, 259). The SAC cannot plausibly convert the continuation of that same County-authorized media engagement into private-citizen speech merely by labeling it so.

Causation is independently deficient. The SAC concedes that the investigation "had been opened earlier" than Burgess's October 23 interview. (ECF No. 66 at ¶261). As to the later hiring decision, substantiation, and termination, the SAC merely declares that the speech motivated those actions and that the County would not have taken them, without pleading facts connecting the decisions to the interview. *Id.* at ¶¶262–63. Lastly, while her claim references a "restraint on speech," there is no protected speech giving rise to that "restraint" to state any retaliation claim. *See id.* at ¶73. The investigation (already underway before Burgess spoke) substantially undermines the SAC's conclusory effort to recharacterize the ensuing personnel actions as First Amendment retaliation.

**2. The SAC Fails to Plausibly Allege a Due Process Claim.**

For a Due Process claim based on "stigma plus," a plaintiff must allege the public disclosure of a stigmatizing statement by the government, the accuracy of which is contested, *plus* the denial of "some more tangible interest…" *Paul v. Davis,* 424 U.S. 693, 701, 711 (1976). The Ninth Circuit looks to the nature of charges and not the

consequences of an act to determine whether a liberty interest is implicated. *Perry v. City of Orofino*, 3:24-CV-00598-REP, 2025 WL 2223416, at *8 (D. Idaho Aug. 5, 2025). Accusations of dishonesty or moral turpitude, for example, will give rise to a liberty interest. *Id.*

On the other hand, statements concerning incompetence, poor management, insubordination, hostility, or inability to work with others do not become constitutional merely because they damage employability. *See Roley v. Pierce Cnty. Fire Protection Dist. No. 4*, 869 F.2d 491, 495 (9th Cir. 1989) (allegations of poor management, engaging in conduct that resulted in a grievance filed, and antagonism toward employer did not give rise to a liberty interest); *Bollow v. Federal Reserve Bank*, 650 F.2d 1093, 1096 (9th Cir. 1981) (attorney fired for shouting profanities at and using abusive language towards secretary went to ability to get along with others, not morality); *Gray v. Union Cnty. Intermediate Educ. Dist.*, 520 F.2d 803, 806 (9th Cir. 1975) (public statements that teacher was insubordinate, incompetent, aggressive, and hostile toward authority did not violate a liberty interest as they did not concern dishonesty or immorality); *Ooley v. Citrus Heights Police Dep't*, 603 F.App'x 628, 629 (9th Cir. 2015) (unpublished) ("Nevertheless, the reactions of third parties to remarks made by the government do not constitute state action."). Allegations that an employer distributed a letter stating plaintiff was fired for "job performance and unprofessional conduct" were dismissed with prejudice. *Perry*, 2025 WL 2223416, at *8–9.

Here, the Due Process claim fails outright because the alleged statements do not implicate a protected liberty interest. The SAC identifies only statements that Burgess was under investigation for "job performance," that a personnel investigation remained pending, and to vendors that she lacked authority to execute certain contracts. (ECF No. 66 at ¶267). That is precisely the type of employment-related criticism Ninth Circuit authority holds insufficient. *See Perry*, 2025 WL 2223416, at *8–9; *Roley,* 869 F.2d at 495. Even with the contracts, there is no accusation of intentional fraud nor improper personal gain on Burgess's part in executing them, rather, that it arose from incompetence and the

County sought to resolve those unauthorized contracts directly with vendors. *See* (ECF No. 66 at ¶98); Ex. 4; Ex. 5.[6] The plain language of the staff report appointing Burgess to ROV *did not* grant her any authority to execute contracts and contractually bind the County. Ex. 5. Because each of these statements do not implicate a constitutional liberty interest, the County had no due-process obligation to provide a name-clearing hearing. Claim 13 should be dismissed with prejudice.

**H. BURGESS CANNOT PLAUSIBLY ALLEGE AN IIED CLAIM.**

An IIED claim must show "(1) extreme and outrageous conduct on the part of the defendant; (2) intent to cause emotional distress or reckless disregard for causing emotional distress; (3) that the plaintiff actually suffered extreme or severe emotional distress; and (4) causation." *Miller v. Jones*, 970 P.2d 571 (Nev. 1998). "[E]xtreme and outrageous conduct is that which is 'outside all possible bounds of decency' and is regarded as 'utterly intolerable in a civilized community.'" *Maduike v. Agency Rent–A–Car*, 953 P.2d 24 (Nev. 1998). To establish severe emotional distress, the plaintiff must demonstrate that "the stress [is] so severe and of such intensity that no reasonable person could be expected to endure it." *Alam v. Reno Hilton Corp.*, 819 F. Supp. 905, 911 (D. Nev. 1993) (cit. omitted).

Here, the SAC does not meet that rigorous standard. The IIED Claim relies on the County's generic disclosure that Burgess had "stress related health issues," an employment

---

[6] The Court should find that Exhibit 4, the emails regarding the vendor contract, and Exhibit 5, the staff report appointing Burgess as interim ROV are incorporated by reference because they form the basis of the claim, and Burgess omits relevant portions that weaken her claim as contemplated in *Khoja*, 899 F.3d at 999. *See* Ex. 4 (showing the County's Purchasing Department identified the issue, and the ROV staff copy/pasted those notes to the vendor to resolve them); (ECF No. 66 at ¶¶ 98, 106, 267, 270). Alternatively as to Exhibit 5, the requests that the Cout take judicial notice of the staff report in Exhibit 5, which is a public record on a government website. *See Gustavson v. Wrigley Sales Co.*, 961 F. Supp. 2d 1100, 1113 n.1 (N.D. Cal. 2013); Exhibit 5 available at: https://washoe-nv.legistar.com/LegislationDetail.aspx?ID=6469130&GUID=4C156A3A-4C11-4FCD-BCF0-7932043C7343&Options=ID%7cText%7c&Search=interim#docaccess-f062bea901a75826cd39254243e2c0e5aa1ab5216602abffe4a8a68fecebb65b

investigation, resetting a County-issued phone, restrictions on workplace communications, disputes over her authority to execute contracts, and allegedly false statements regarding her performance. (ECF No. 66 at ¶¶216–19). Even accepting Burgess's characterization as wrongful, they remain management and reputational disputes, not conduct plausibly approaching the extraordinarily high threshold for IIED. *See Gomez v. City of Doral*, No. 21-11093, 2022 WL 19201, at *7–8 (11th Cir. Jan. 3, 2022) (affirming dismissal of IIED claim where mayor publicly disparaged officer, wrongly accused her of misconduct, and lodged a complaint causing a tracker placement on her police car). Indeed, the FAC described essentially the same theory as changes to the chain of command, interference with her office, disclosure of disability information, and disparagement. (ECF No. 10 at ¶221). Repleading those allegations in more inflammatory terms does not transform them into "utterly intolerable in a civilized community." Despite amending, Burgess still fails to plausibly allege extreme and outrageous conduct. Dismissal with prejudice is appropriate.

## I. The Defamation, False Light, and Public Disclosure of Private Fact Claims Are Subject to Dismissal.

### 1. The Defamation Claim Fails Because the Statements Were True.

Defamation requires a false and defamatory statement, unprivileged publication, fault, and damages. *Pegasus v. Reno Newspapers, Inc.*, 57 P.3d 82, 90 (Nev. 2002). If it involves a public official, a plaintiff must allege "actual malice," "knowledge that [the statement] was false or with reckless disregard of whether it was false." *Id.* Truth or substantial truth defeats the claim. *Id.* at 88.

The SAC fails to identify any false statement. Claim 9 is based on the County's statements that Burgess was on leave for stress-related health issues, that Burgess was later on administrative leave pending investigation, and that Burgess lacked authority to execute

//

//

//

//

contracts.[7] (ECF No. 66 at ¶¶226–28). These statements are demonstrably true. The September 25 statement did *not* say Burgess "voluntarily" took leave; instead, as the FAC quoted, after reporting stress-related health issues, "at [Brown's] recommendation, she has requested a leave of absence." *Id.* at ¶278; (ECF No. 10 at ¶132). The October 31 statement that Burgess was on administrative leave during a job-performance investigation likewise cannot be false when the SAC admits that the investigation began no later than October 4. (ECF No. 66 at ¶¶124, 134, 261). The defamation claims should be dismissed with prejudice. *See Torres v. White*, 46 Fed. Appx. 738, 748–49 (6th Cir. 2002) (affirming dismissal of libel claim arising out of press release with true statements).

Next, any statements regarding Burgess's inability to enter contracts on behalf of the County are true or substantially true as a matter of law. *See* (ECF No. 66 at ¶98). The BCC has legal authority to enter the County into contracts, which was partially delegated to the "purchasing and contracts manager." NRS. 244.143(2)(e); NRS 244.146; WCC 15.490. Burgess was not the purchasing and contracts manager. She held positions of ROV and Deputy ROV. The SAC now falsely alleges that the Board of County Commissioners granted Burgess with authority to "negotiate and execute contracts" when it appointed her interim ROV. (ECF No. 66 at ¶99). The County Commission's staff report for her appointment does not contain any such authority. Ex. 5. This allegation only underscores her incompetence and lack of understanding of law applicable to her position. As a matter of law, if Burgess executed contracts as ROV without authorization from the purchasing manager or the BCC, she indeed lacked authority. The SAC further alleges that the County made these statements to terminate the unauthorized contracts early. (ECF No. 66 at ¶98);

---

[7] As to the remaining allegation that the County June 2026 issued media statements that Burgess made threatening comments and was unfit to oversee elections, there was no such statement. (ECF No. 66 at ¶¶107, 228). These allegations are false, are unsupported by any evidence, and are unlikely to be supported by any evidence. The County has discussed with Plaintiff a stipulation to voluntarily strike these allegations and otherwise intends to move forward with Rule 11 remedies if no stipulation can be reached.

Ex. 4 at p. 3.[8] Thus, even if the statement were false, it was not made with malice or to injure Burgess's reputation. *See id.* Dismissal with prejudice is warranted.

**2. The False Light Claim, Based on Truthful Statements, Fails.**

The tort of false light/invasion of privacy is "an odd hybrid of defamation and intentional infliction of emotional distress." *See Flowers v. Carville*, 310 F.3d 1118, 1132 (9th Cir. 2002). Like defamation, it "requires actual malice" for public figures. *Id.*

Here, the false light claim, Claim 10, is based exclusively on the substantially accurate October 31 description of Burgess's leave status and investigation. (ECF No. 66 at ¶¶238–41). As set forth above, the statement was true. (ECF No. 66 at ¶¶124, 134, 261, ¶278); (ECF No. 10 at ¶132). She was indeed placed on administrative leave and subject to an investigation into her performance. A false light claim requires that the claimant had a "high degree of awareness of the probable falsity" of the statement. *Nigam v. Ahmad*, 561 P.3d 597, 2024 WL 5181837 at *8 (Nev. App. 2024) (unpublished). Because the statement was true, this standard cannot be met. Claim 10 should be dismissed with prejudice.

**3. Public Disclosure of Private Fact**

For "public disclosure of private facts one must prove that a public disclosure of private facts has occurred which would be offensive and objectionable to a reasonable person of ordinary sensibilities." *State v. Eighth Judicial Dist. Court (Anzalone),* 42 P.3d 233, 239 (Nev. 2002). The Nevada Supreme Court found that an Attorney General's letter responding to a former employee's public accusations, and stating that the employee was disgruntled and given the choice to resign or be fired, she lost confidence in the employee, the employee engaged in misconduct, and was disciplined for misuse of state property,

---

[8] In addition to requests in footnote 6, the County requests that the Court take judicial notice of the alleged defamatory statements in Exhibit 4, and otherwise find it is incorporated by reference. *Giarrusso v. Nevada State Bd. of Med. Examiners*, No. CV-S050640-RLH-PAL, 2006 WL 8441893, at *11 (D. Nev. Jan. 26, 2006) (taking judicial notice of defendants' allegedly defamatory statements). In *Knievel v. ESPN*, the Ninth Circuit affirmed incorporation by reference of web pages providing context to an image and caption that the plaintiff alleged was defamatory. 393 F.3d 1068, 1076 (9th Cir. 2005).

failed to state a claim for public disclosure of private fact. *Id.*; *see also Riley v. Harr*, 292 F.3d 282, 299 (1st Cir. 2002) (finding that a statement regarding a high-profile matter that an individual had depression and mental failures failed to state a claim).

Here, Claim Fourteen is based on the above statements that Burgess was on medical leave, and then on administrative leave pending investigation. The statements revealed no medical diagnosis, blood-pressure reading, treatment, symptoms, or medical clearance, only generic "stress related health issues," "self-care," and "medical reasons." (ECF No. 66 at ¶¶277–81). While the contents of an investigation are generally confidential under County policy, the mere fact that an investigation exists is not necessarily confidential. The County's statement of a generalized investigation into Burgess's job performance was substantially less inflammatory than that in *State (Anzalone)*, which still did not state a claim. 42 P.3d at 239. Dismissal with prejudice is appropriate.

### J. Burgess Fails to State a Fraudulent Misrepresentation Claim.

A Nevada fraud claim requires a false representation, knowledge of falsity, intent to induce reliance, justifiable reliance, and resulting damages, and Rule 9(b) requires the circumstances of fraud to be pleaded with particularity. *Cundiff v. Dollar Loan Ctr. LLC*, 726 F. Supp. 2d 1232, 1241 (D. Nev. 2010). Where the alleged representation concerns future performance, the plaintiff must plead that the promisor had no intention of performing when the promise was made. *Bulbman, Inc. v. Nev. Bell*, 825 P.2d 588, 592 (Nev. 1992).

Here, Burgess's 11th Claim for fraudulent misrepresentation is not pleaded with particularity under Rule 9, and otherwise fails to state a claim. The claim is based on an alleged statement that Burgess's Deputy ROV was a "due process" position, and that the Deputy ROV position would remain available to Burgess if she accepted appointment to interim ROV. (ECF No. 66 at ¶¶244–45). She does not allege *who* made the "due process" employee statement. *See id.* However, the SAC now alleges that the County informed her in January 2024, before she was appointed interim ROV and over a year before her termination, that as Deputy ROV, she was an at-will, unclassified, employee. *Id.* at ¶24,

¶246. Burgess does not allege that she received any paperwork regarding any "due process" status at the time she was hired. She also does not allege that when she received the January 2024 notification that she did anything about it to address any misunderstanding, further suggesting there was no reliance on this representation. As a matter of law, the ROV and Deputy ROV positions are not subject to the "merit system" providing employees additional rights. *See* NRS 245.216. Regardless, it is unjustifiable for Burgess to have relied on some vague verbal reference by an unnamed source to a "due process employee," without any written confirmation, documentation, or addressing the issue when her at-will status was clearly communicated to her in January 2024. The claim is implausible and should be dismissed with prejudice.

Next, she does not allege the representation upon her appointment to interim ROV that the Deputy ROV would remain available was false when made. Implications otherwise are implausible. The County initially believed Burgess was qualified for ROV and Deputy ROV, and then her actions subsequently showed otherwise. The County would not have placed Burgess in the ROV position if it knew at the time she was unqualified for both that position and Deputy ROV. It was only her grossly deficient performance thereafter that removed her ability to return to Deputy ROV. *See* (ECF No. 66 ¶¶31, 75); (ECF No. 10 at ¶¶22–24, 80, 84–88, 149, 153, 175–76, 187, 207, 210); *Ribar,* 2024 WL 3665320, at *2; Ex. 3. This portion of the claim is implausible and should be dismissed with prejudice.

## IV. CONCLUSION

Washoe County respectfully requests that the SAC be dismissed with prejudice. Burgess failed to viably resurrect any dismissed claim, instead attempting to omit unfavorable FAC allegations and contradict its own allegations or Burgess's sworn EEOC charges. Dismissal with prejudice is appropriate because further amendment is futile.

Dated this 15th day of September 2026.

By /s/ Lindsay L. Liddell
LINDSAY L. LIDDELL
Deputy District Attorney
ATTORNEY FOR WASHOE COUNTY

**CERTIFICATE OF SERVICE**

Pursuant to FRCP 5(b), I certify that I am an employee of the Office of the District Attorney of Washoe County, over the age of 21 years and not a party to nor interested in the within action. I certify that on this date, the foregoing was electronically filed with the United States District Court. Electronic service of the foregoing document shall be made in accordance with the Master Service List as follows:

HAWAH SAFA AHMAD

Dated this 15th day of September, 2026.

By /s/ S. Haldeman
S. Haldeman

EXHIBIT INDEX

| | | |
|---|---|---|
| EXHIBIT 1 | October 2024 EEOC Charge | 3 pages |
| EXHIBIT 2 | February 2025 EEOC Charge | 4 pages |
| EXHIBIT 3 | Letter dated October 4, 2024 | 2 pages |
| EXHIBIT 4 | Email regarding Vendor Contract | 5 pages |
| EXHIBIT 5 | Board of County Commissioners Staff Report | 4 pages |

EXHIBIT INDEX