HAWAH S. AHMAD Esq.
Nevada State Bar No. 16374
Ahmad Law PLLC
300 S. Arlington Avenue, Ste B
Reno, Nevada 89501
Telephone: (775) 234-8760
Email: ahmad@alawnv.com
*Attorney for Plaintiff*

**AHMAD LAW PLLC**
300 S. Arlington Avenue, Ste B
Reno, Nevada 89501
(775) 234-8760

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

CARI-ANN P. BURGESS,

Plaintiff,

vs.

WASHOE COUNTY,

Defendant.

_______________________________________/

Case No. 3:25-cv-00065-NJK

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS SECOND AMENDED COMPLAINT (ECF NO. 70)**

**[ORAL ARGUMENT REQUESTED]**

Plaintiff, CARI-ANN BURGESS ("Plaintiff" or "Ms. Burgess"), by and through her counsel, Hawah S. Ahmad, Esq. of AhmadLaw, hereby files this Opposition to Defendant's Motion to Dismiss Second Amended Complaint (ECF No. 70).

This filing is made and based upon the following Memorandum of Points and Authorities, all papers and pleadings on file herein, and any argument the Court entertains at hearing.

**TABLE OF CONTENTS**

TABLE OF CONTENTS ........ i
TABLE OF AUTHORITIES........ ii
Cases........ ii
Statutes ........ iv
Rules and Regulations........v

AHMAD LAW PLLC
300 S. Arlington Avenue, Ste B
Reno, Nevada 89501
(775) 234-8760

Other Authorities ....................v

MEMORANDUM OF POINTS AND AUTHORITIES ....................1

I. INTRODUCTION/BACKGROUND ....................1

II. LEGAL STANDARD ....................2

III. LEGAL ARGUMENT ....................3

A. The SAC Is the Operative Pleading ....................3

B. The SAC Plausibly Alleges Disability....................7

C. The SAC Plausibly Alleges That Plaintiff Was Qualified....................10

D. The SAC Plausibly Alleges Causation ....................12

E. The SAC Plausibly Alleges Failure to Accommodate....................14

F. The SAC Plausibly Alleges Retaliation....................16

G. The SAC Plausibly Alleges Interference ....................20

H. The SAC Plausibly Alleges Unlawful Disclosure of Medical Information....................21

I. The Section 1983 Claims Are Adequately Pleaded....................22

J. The SAC Plausibly Alleges Intentional Infliction of Emotional Distress ....................25

K. The Defamation and Privacy Claims Are Adequately Pleaded....................26

L. The SAC Pleads Fraudulent Misrepresentation With Particularity ....................28

M. Leave to Amend Should Be Granted as to Any Deficient Claim....................29

IV. CONCLUSION ....................29

## TABLE OF AUTHORITIES

**Cases**

*Airs Aromatics, LLC v. Victoria's Secret Stores Brand Mgmt., Inc.*,
744 F.3d 595 (9th Cir. 2014) ....................3, 4

*Alley v. Anduril Indus., Inc.*,
No. 8:23-cv-01793-JWH-KES, 2024 WL 4552139 (C.D. Cal. Sept. 9, 2024)....................8

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....................2

*Barone v. City of Springfield*,
902 F.3d 109 (9th Cir. 2018) ....................21, 22, 23

**AHMAD LAW PLLC**
300 S. Arlington Avenue, Ste B
Reno, Nevada 89501
(775) 234-8760

*Bates v. United Parcel Serv., Inc.*,
511 F.3d 974 (9th Cir. 2007) (en banc) .......... 10
*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .......... 2
*Bostock v. Clayton Cnty.*,
590 U.S. 644 (2020) .......... 6, 12, 17
*Brown v. City of Tucson*,
336 F.3d 1181 (9th Cir. 2003) .......... 19, 20
*Bulbman, Inc. v. Nev. Bell*,
825 P.2d 588 (Nev. 1992) .......... 28
*Burlington N. & Santa Fe Ry. Co. v. White*,
548 U.S. 53 (2006) .......... 16
*Chehade Refai v. Lazaro*,
614 F. Supp. 2d 1103 (D. Nev. 2009) .......... 24, 25
*Cole v. Sunnyvale*,
No. C-08-05017 RMW, 2010 WL 532428 (N.D. Cal. Feb. 9, 2010) .......... 4
*Colombo v. Palo Alto Unified Sch. Dist.*,
No. 24-cv-00909-NC, 2025 WL 929955 (N.D. Cal. Mar. 27, 2025) .......... 4
*Cox v. Roskelley*,
359 F.3d 1105 (9th Cir. 2004) .......... 24
*Dahlia v. Rodriguez*,
735 F.3d 1060 (9th Cir. 2013) (en banc) .......... 22, 23
*Earl v. Nielsen Media Rsch., Inc.*,
658 F.3d 1108 (9th Cir. 2011) .......... 19
*EEOC v. C.R. England, Inc.*,
644 F.3d 1028 (10th Cir. 2011) .......... 20
*EEOC v. Wal-Mart Stores, Inc.*,
477 F.3d 561 (8th Cir. 2007) .......... 10
*Eminence Cap., LLC v. Aspeon, Inc.*,
316 F.3d 1048 (9th Cir. 2003) (per curiam) .......... 3, 29
*Eng v. Cooley*,
552 F.3d 1062 (9th Cir. 2009) .......... 23
*Fields v. Twitter, Inc.*,
881 F.3d 739 (9th Cir. 2018) .......... 2
*Galbraith v. Cnty. of Santa Clara*,
307 F.3d 1119 (9th Cir. 2002) .......... 3
*Humphrey v. Mem'l Hosps. Ass'n*,
239 F.3d 1128 (9th Cir. 2001) .......... 8, 14, 15
*Kelly v. Town of Abingdon*,
90 F.4th 158 (4th Cir. 2024) .......... 20
*Khoja v. Orexigen Therapeutics, Inc.*,
899 F.3d 988 (9th Cir. 2018) .......... 3, 6
*Lane v. Franks*,
573 U.S. 228 (2014) .......... 22
*Lee v. City of Los Angeles*,
250 F.3d 668 (9th Cir. 2001) .......... 3, 6, 11
*Lytle v. Carl*,
382 F.3d 978 (9th Cir. 2004) .......... 21

*Malcorvian v. Cnty. of Cook,*
No. 23 C 3987, 2024 WL 1530473 (N.D. Ill. Apr. 9, 2024)....20
*Masson v. New Yorker Mag., Inc.,*
501 U.S. 496 (1991)....27
*Morales v. City & Cnty. of San Francisco,*
603 F. Supp. 3d 841 (N.D. Cal. 2022)....4
*Murray v. Mayo Clinic,*
934 F.3d 1101 (9th Cir. 2019)....12
*Newland v. Dalton,*
81 F.3d 904 (9th Cir. 1996)....13, 14
*Nunies v. HIE Holdings, Inc.,*
908 F.3d 428 (9th Cir. 2018)....9, 13
*Olivero v. Lowe,*
995 P.2d 1023 (Nev. 2000)....24
*PAE Gov't Servs., Inc. v. MPRI, Inc.,*
514 F.3d 856 (9th Cir. 2007)....3
*Pardi v. Kaiser Found. Hosps.,*
389 F.3d 840 (9th Cir. 2004)....15, 16
*Pegasus v. Reno Newspapers, Inc.,*
57 P.3d 82 (Nev. 2002)....25
*Pembaur v. City of Cincinnati,*
475 U.S. 469 (1986)....21, 22
*Ravel v. Hewlett-Packard Enter., Inc.,*
228 F. Supp. 3d 1086 (E.D. Cal. 2017)....14, 15
*Ribar v. Washoe Cnty.,*
No. 88901, 2024 WL 3665320 (Nev. Aug. 5, 2024) (unpublished)....10, 11
*Riley v. Harr,*
292 F.3d 282 (1st Cir. 2002)....28
*Rodgers v. Ally Bank,*
No. CV 25-1351 PA (ADSx), 2025 WL 2019380 (C.D. Cal. July 3, 2025)....4
*S. Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Grp. Ltd.,*
181 F.3d 410 (3d Cir. 1999)....3
*Starr v. Baca,*
652 F.3d 1202 (9th Cir. 2011)....2, 12, 13
*State v. Eighth Jud. Dist. Ct. (Anzalone),*
42 P.3d 233 (Nev. 2002)....27
*Swierkiewicz v. Sorema N.A.,*
534 U.S. 506 (2002)....2
*Walsh v. AMD Sacramento,*
No. 2:13-cv-2077 MCE KJN, 2014 WL 4472752 (E.D. Cal. Sept. 11, 2014)....4
*Woolf v. Strada,*
949 F.3d 89 (2d Cir. 2020)....8

**Statutes**

28 U.S.C. § 1367(c)(3)....29
29 U.S.C. § 794(a)....12
42 U.S.C. § 12102....4, 7, 8, 9
42 U.S.C. § 12111....8, 10, 14
42 U.S.C. § 12112....14, 20, 21

AHMAD LAW PLLC
300 S. Arlington Avenue, Ste B
Reno, Nevada 89501
(775) 234-8760

42 U.S.C. § 12203(b) ....................19
Nev. Rev. Stat. § 245.216 ....................28
Nev. Rev. Stat. § 293.269921(3)....................11

**Rules and Regulations**

29 C.F.R. § 1630.2 ....................7, 8
Fed. R. Civ. P. 8(d)(3)....................6
Fed. R. Civ. P. 9(b) ....................27, 28
Fed. R. Civ. P. 12(b)(6)....................2
Nev. R. App. P. 36(c)....................11

**Other Authorities**

EEOC, *Enforcement Guidance: Reasonable Accommodation and Undue Hardship Under the Americans with Disabilities Act*, No. 915.002 (Oct. 17, 2002) ....................15
Restatement (Second) of Torts § 46 (Am. L. Inst. 1965) ....................24, 25

**AHMAD LAW PLLC**
300 S. Arlington Avenue, Ste B
Reno, Nevada 89501
(775) 234-8760

AHMAD LAW PLLC
300 S. Arlington Avenue, Ste B
Reno, Nevada 89501
(775) 234-8760

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION/BACKGROUND

On June 11, 2026, the Court dismissed the federal claims in the First Amended Complaint ("FAC"), ECF No. 10, and declined to reach the state-law claims. ECF No. 63 at 2–5. The Court identified two defects. First, it held that the FAC pleaded disability as an inability to perform the single job of Registrar of Voters. *Id.* at 3. Second, it held that the FAC's retaliation claim rested on activity the ADA does not protect, and any accommodation-based theory was not pleaded in the claim itself. *Id.* at 4–5.[1] The Court granted leave to amend. *Id.* at 5.

The Second Amended Complaint ("SAC") addresses both defects. It pleads hypertension, generalized anxiety, and complex post-traumatic stress disorder. ECF No. 66 ¶¶ 32–33. It pleads limitations in sleeping, concentrating, thinking, and circulatory, neurological, and brain function that manifest at home and continued after Plaintiff's employment ended. *Id.* ¶¶ 34–39. It does not rely on the major life activity of working. *Id.* ¶¶ 21, 35. The retaliation claim now lists each item of protected activity by date. *Id.* ¶¶ 171–181. Each is either an accommodation request, a request to return to work, a letter of representation, or a charge. *Id.* The SAC disclaims the election-system reports as ADA-protected activity. *Id.* ¶ 194. Her administrative charges identified her accommodation requests. ECF No. 66-1 at 5–6; ECF No. 70-1 at 2.[2] Defendant Washoe County (the "County") moves to dismiss all fourteen claims with prejudice. ECF No. 70 at 1, 8, 36. Its motion does not cite paragraphs 32 through 39, where the SAC pleads those impairments and limitations.

---

[1] Defendant's Introduction incorrectly characterizes the Court's prior retaliation ruling as a finding that Plaintiff "failed to plausibly allege causation." ECF No. 70 at 8. The Court instead held that the activity pleaded in the FAC's retaliation claim was not protected by the ADA, and that any accommodation-based theory was not pleaded in that claim as Rule 8 requires. ECF No. 63 at 4–5.

[2] The County calls the charges a "shifting causal narrative." ECF No. 70 at 10. The statement it relies on, that Plaintiff was treated adversely because she would not report to Ms. Thomas or violate Secretary of State access policies, ECF No. 66-1 at 6, concerns the organization-chart and voter-system matters that the SAC does not rely on for its ADA retaliation claim. ECF No. 66 ¶ 194. The County conflates the reasons it gave for its actions with the protected activity underlying Plaintiff's ADA retaliation claim.

AHMAD LAW PLLC
300 S. Arlington Avenue, Ste B
Reno, Nevada 89501
(775) 234-8760

*See id.* at 11–13. It relies instead on allegations from the superseded FAC, selected sentences from Plaintiff's administrative charges, five exhibits, and a Nevada Supreme Court order denying a writ petition. *Id.* at 9–11, 14–15, 17–19. It offers the County's account of Plaintiff's performance as the basis for the challenged adverse actions. *Id.* at 16–19, 21–24. Those competing factual characterizations cannot be resolved on a Rule 12(b)(6) motion. The Motion should therefore be denied. Because this is the County's third motion to dismiss and the Motion turns on disputed characterizations of the pleadings, Plaintiff respectfully requests oral argument. ECF Nos. 15, 44, 70. If the Court finds any claim deficient, Plaintiff respectfully requests leave to amend that specific claim.

## II. LEGAL STANDARD

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a plaintiff must plead sufficient facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible only if the complaint alleges facts that "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The Court accepts well-pleaded factual allegations as true and construes them in the light most favorable to Plaintiff. *Fields v. Twitter, Inc.*, 881 F.3d 739, 743 (9th Cir. 2018). "If there are two alternative explanations, one advanced by defendant and the other advanced by plaintiff, both of which are plausible, plaintiff's complaint survives a motion to dismiss under Rule 12(b)(6)." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). A complaint "may be dismissed only when defendant's plausible alternative explanation is so convincing that plaintiff's explanation is implausible." *Id.* An employment-discrimination complaint need not plead a prima facie case. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508 (2002). The prima facie case "is an evidentiary standard, not a pleading requirement." *Id.* at 510.

A court reviewing a pleading "may only review claims for legal sufficiency." *PAE Gov't*

AHMAD LAW PLLC
300 S. Arlington Avenue, Ste B
Reno, Nevada 89501
(775) 234-8760

*Servs., Inc. v. MPRI, Inc.*, 514 F.3d 856, 858 (9th Cir. 2007). "[T]here is nothing in the Federal Rules of Civil Procedure to prevent a party from filing successive pleadings that make inconsistent or even contradictory allegations." *Id.* at 860. A party may state claims "regardless of consistency." Fed. R. Civ. P. 8(d)(3).

A court may notice another court's opinion "not for the truth of the facts recited therein, but for the existence of the opinion." *Lee v. City of Los Angeles*, 250 F.3d 668, 690 (9th Cir. 2001) (quoting *S. Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Grp. Ltd.*, 181 F.3d 410, 426–27 (3d Cir. 1999)), *overruled on other grounds by Galbraith v. Cnty. of Santa Clara*, 307 F.3d 1119, 1125–26 (9th Cir. 2002). A court "cannot take judicial notice of disputed facts contained in such public records." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018). The incorporation-by-reference doctrine "is not a tool for defendants to short-circuit the resolution of a well-pleaded claim." *Id.* at 1003. It is also "improper to assume the truth of an incorporated document if such assumptions only serve to dispute facts stated in a well-pleaded complaint." *Id.* "Absent prejudice, or a strong showing of any of the remaining *Foman* factors, there exists a presumption under Rule 15(a) in favor of granting leave to amend." *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) (per curiam).

## III. LEGAL ARGUMENT

### A. The SAC Is the Operative Pleading

#### *1. Superseded Allegations Do Not Defeat the SAC*

The County asks the Court to test the SAC against the FAC. ECF No. 70 at 9–11. The Ninth Circuit has rejected that approach at the pleading stage. *PAE*, 514 F.3d at 858–60. Absent a finding of bad faith under Rule 11, "inconsistent allegations are simply not a basis for striking the pleading." *Id.* at 860. When a party reshapes its allegations as it learns more, "[w]e do not call this process sham pleading; we call it litigation." *Id.* at 859.

The County's authorities do not say otherwise. *Airs Aromatics* applied the rule it states to find that leave to amend would be futile, based on the party's own statements in its appellate briefing. *Airs Aromatics, LLC v. Victoria's Secret Stores Brand Mgmt., Inc.*, 744 F.3d 595, 600 (9th Cir. 2014). The *Walsh* passage the County quotes comes from a magistrate judge's order denying a sanctions motion in a pro se case. *Walsh v. AMD Sacramento*, No. 2:13-cv-2077 MCE KJN, 2014 WL 4472752, at *15–16 (E.D. Cal. Sept. 11, 2014). *Morales* and *Cole* allow a court to consider prior allegations as context. *Morales v. City & Cnty. of San Francisco*, 603 F. Supp. 3d 841, 846–47 (N.D. Cal. 2022); *Cole v. Sunnyvale*, No. C-08-05017 RMW, 2010 WL 532428, at *4 (N.D. Cal. Feb. 9, 2010). Neither case treated superseded allegations as true in place of the operative complaint. *Morales* declined to credit amended allegations that contradicted earlier ones without additional facts. 603 F. Supp. 3d at 846–47. *Colombo* applied that rule where the amended complaint replaced factual allegations with conclusions. *Colombo v. Palo Alto Unified Sch. Dist.*, No. 24-cv-00909-NC, 2025 WL 929955, at *10 (N.D. Cal. Mar. 27, 2025). *Rodgers* made the statement the County quotes in denying further leave to a pro-se plaintiff whose amended complaint offered almost no new factual allegations. *Rodgers v. Ally Bank*, No. CV 25-1351 PA (ADSx), 2025 WL 2019380, at *9 (C.D. Cal. July 3, 2025). The SAC is differentiated because it adds facts. ECF No. 66 ¶¶ 32–41.

The SAC also does not contradict the FAC on the points the County identifies. The FAC alleged that Plaintiff's anxiety was caused by the job. ECF No. 10 ¶¶ 114, 154; *see* ECF No. 70 at 10. The SAC alleges that working conditions aggravated her impairments but did not create them or define their scope. ECF No. 66 ¶¶ 21, 40. Both can be true. The ADA asks whether an impairment substantially limits a major life activity. 42 U.S.C. § 12102(1)(A). It does not ask what caused the impairment. The FAC alleged that Plaintiff's condition had resolved when she was cleared to return. ECF No. 10 ¶ 210. The SAC alleges that the clearance reflected abated acute symptoms. ECF No. 66 ¶ 41. "An impairment that is episodic or in remission is a disability if it would substantially limit

AHMAD LAW PLLC
300 S. Arlington Avenue, Ste B
Reno, Nevada 89501
(775) 234-8760

AHMAD LAW PLLC
300 S. Arlington Avenue, Ste B
Reno, Nevada 89501
(775) 234-8760

a major life activity when active." 42 U.S.C. § 12102(4)(D). The County also says the SAC rewrites the date of the Commission Chair's request that Ms. Thomas oversee the Office. ECF No. 70 at 22.[3] The FAC alleged that the request was made in August 2024 and that County Manager Eric Brown ("Mr. Brown") did not convey it to Plaintiff at that time. ECF No. 10 ¶ 80. The SAC alleges that Mr. Brown told Plaintiff on September 23, 2024. ECF No. 66 ¶ 81. Both can be true.

The FAC allegations the County says were omitted are the County's defenses. ECF No. 70 at 10. They concern a voter-list deficiency, Human Resources' reported views of Plaintiff's conference travel and working relationships, and the month of a Commissioner's request. *Id.* None is an element of any claim. The SAC need not plead them.

***2. The Administrative Charges Identify Disability and Accommodation***

The County says Plaintiff's charges attribute the adverse actions to causes unrelated to disability. ECF No. 70 at 10–11, 18–19, 24. The charges say otherwise. The NERC charge checks disability and retaliation. ECF No. 66-1 at 4. It states that Plaintiff "advised the Respondent of my disability, and I requested reasonable accommodation." *Id.* at 5. It states that she "was refused re-entry into my prior position after I provided evidence of medical clearance." *Id.* It states that the claims of insubordination and incompetence were not made until she sought to return to work. *Id.* at 6. The statement the County cites immediately follows Plaintiff's assertion that her request for accommodation resulted in "harassment" and "disparate treatment," and the charge expressly states that she believed she was discriminated against because of her disability and/or in retaliation. *Id*.

The October 28, 2024 EEOC charge states that the County "discriminated against Ms. Burgess' disability (stress and high blood pressure) and unjustifiably disclosed her protected medical information to county employees and commissioners." ECF No. 70-1 at 2. It describes the denial of

[3] The County's motion cites SAC paragraph 55 and FAC paragraphs 81 and 82 for the earlier date. ECF No. 70 at 22. None of those paragraphs concerns the request..

AHMAD LAW PLLC
300 S. Arlington Avenue, Ste B
Reno, Nevada 89501
(775) 234-8760

"my accommodation request to return to the Deputy Voter Registrar position." *Id.* The February 20, 2025 charge states that the County "started an investigation on Ms. Burgess for asking to return to work." ECF No. 70-2 at 1. It also states that she alone of four interviewees did not advance for the permanent position "due to the previously pending EEOC charge." *Id.*

Charges that name more than one reason do not defeat causation. "Often, events have multiple but-for causes." *Bostock v. Clayton Cnty.*, 590 U.S. 644, 656 (2020). The February 2025 charge also attributes her administrative leave to her speech. ECF No. 70-2 at 1. The SAC pleads that theory as a separate claim. ECF No. 66 ¶¶ 251–265; *see* Fed. R. Civ. P. 8(d)(3).

### *3. The Exhibits Cannot Be Used to Resolve Disputed Facts*

Plaintiff does not object to the Court reading the October 4, 2024 letter and the January 2, 2024 staff report. ECF Nos. 70-3, 70-5. The SAC relies on both. ECF No. 66 ¶¶ 28, 73–75. Plaintiff objects to their use to establish the truth of the County's accusations. *Khoja*, 899 F.3d at 1002–03.[4] The October 4 letter lists "items that must be discussed prior to any consideration of [Plaintiff's] return to the Registrar's office." ECF No. 70-3 at 2. The SAC disputes the letter's accusations. ECF No. 66 ¶¶ 29, 75, 146. The EEOC charges may be noticed as filed documents. They cannot be used to resolve disputed questions of causation. *Lee*, 250 F.3d at 689–90.

ECF No. 70-4 is different. The SAC alleges that Ms. Alvarado "repeatedly communicated in writing" with vendors beginning in November 2024. ECF No. 66 ¶ 98. ECF No. 70-4 contains only five pages of internal emails, part of one vendor email chain, and an account statement, with portions illegible. ECF No. 70-4 at 3–4. Its Bates numbers skip from WC02580 to WC02595, so it does not establish the truth of the vendor statements. *See Khoja*, 899 F.3d at 1002–03. It does establish that

[4] The County cites page 999 of *Khoja* for the incorporation-by-reference doctrine, including the passage it quotes. ECF No. 70 at 18 n.3; *see id.* at 31 n.6. That discussion is at page 1002. The same page states a limit the motion does not mention: "[I]f the document merely creates a defense to the well-pled allegations in the complaint, then that document did not necessarily form the basis of the complaint." *Khoja*, 899 F.3d at 1002.

AHMAD LAW PLLC
300 S. Arlington Avenue, Ste B
Reno, Nevada 89501
(775) 234-8760

Ms. Alvarado told a vendor on November 15, 2024, that "Cari-Ann does not have the authority to sign agreements on behalf of the county." ECF No. 70-4 at 3. Plaintiff does not dispute the statement was made, only that it was true. ECF No. 66 ¶ 99; ECF No. 70 at 34 n.8.

**B. The SAC Plausibly Alleges Disability**

***1. Actual Disability***

A disability includes "a physical or mental impairment that substantially limits one or more major life activities." 42 U.S.C. § 12102(1)(A). Major life activities include sleeping, concentrating, and thinking. *Id.* § 12102(2)(A). They include the operation of neurological, brain, and circulatory functions. *Id.* § 12102(2)(B). The definition "shall be construed in favor of broad coverage." *Id.* § 12102(4)(A). The ameliorative effects of medication are disregarded. *Id.* § 12102(4)(E)(i). The EEOC's regulations identify post-traumatic stress disorder as an impairment that will, in virtually all cases, be found to substantially limit brain function. 29 C.F.R. § 1630.2(j)(3)(ii)–(iii).

The SAC pleads each element. Plaintiff has hypertension, generalized anxiety, and complex post-traumatic stress disorder. ECF No. 66 ¶¶ 32–33. Her impairments limit her sleep at home and on days she does not work. *Id.* ¶ 36. They limit her concentration and thinking away from the workplace and reduce her ability to manage her household and personal affairs. *Id.* ¶ 37. Her provider increased her antihypertensive medication, and her hypertension requires ongoing medication and monitoring. *Id.* ¶ 38. The limitations continued after her employment ended. *Id.* ¶ 39. None of these allegations depends on the Registrar of Voters position. *Id.* ¶¶ 21, 39–40.

The County relies on one sentence of paragraph 65. ECF No. 70 at 12. Paragraph 65 does not describe the scope of Plaintiff's impairments. It describes an accommodation. It states that Plaintiff "proposed reassignment as one of several possible accommodations" and "remained able to perform the essential functions of the Interim Registrar of Voters position if the County abated Ms. Thomas's interference with the reporting structure." ECF No. 66 ¶ 65. It states that "[t]he

AHMAD LAW PLLC
300 S. Arlington Avenue, Ste B
Reno, Nevada 89501
(775) 234-8760

accommodation sought was enforcement of the existing structure, not a change to it." *Id.* That allegation goes to whether Plaintiff was qualified with a reasonable accommodation. 42 U.S.C. § 12111(8). *See Humphrey v. Mem'l Hosps. Ass'n*, 239 F.3d 1128, 1137 (9th Cir. 2001) (jury could find employee with obsessive-compulsive disorder qualified if relieved of the stress of having to leave the house). *Woolf* and the regulatory appendix the County quotes concern the major life activity of working. ECF No. 70 at 12 (citing *Woolf v. Strada*, 949 F.3d 89, 94 (2d Cir. 2020)). The Court applied that rule because the FAC pleaded a job-specific limitation. ECF No. 63 at 3. The SAC does not rely on working. ECF No. 66 ¶¶ 21, 34–35.[5]

### 2. *Record of Disability*

Whether an individual has a record of a substantially limiting impairment "shall be construed broadly to the maximum extent permitted by the ADA and should not demand extensive analysis." 29 C.F.R. § 1630.2(k)(2). The SAC alleges the County's own record. It includes the written leave request the County required, the provider's clearance the County received and retained, and the County's public statement that Plaintiff was "experiencing stress related health issues." ECF No. 66 ¶ 44. The record relates to the impairments pleaded in paragraphs 32 through 43. *Id.* ¶¶ 139–140. Thus, the SAC alleges that Plaintiff had a record of a substantially limiting impairment that was documented in the County's own records, including its records of her medical leave, medical clearance, and stress related health conditions.

### 3. *Regarded As Disabled*

A plaintiff is regarded as disabled if she was subjected to a prohibited action "because of an actual or perceived physical or mental impairment whether or not the impairment limits or is

---

[5] The County's description of *Alley* is inaccurate. The employer, not the employee, directed him to step down, and the court found no disability because he requested to continue working in his former role without accommodation. *Alley v. Anduril Indus., Inc.*, No. 8:23-cv-01793-JWH-KES, 2024 WL 4552139, at *2 (C.D. Cal. Sept. 9, 2024). Here, Plaintiff requested accommodation. ECF No. 66 ¶¶ 60–63.

AHMAD LAW PLLC
300 S. Arlington Avenue, Ste B
Reno, Nevada 89501
(775) 234-8760

perceived to limit a major life activity." 42 U.S.C. § 12102(3)(A). A plaintiff need not show the employer believed she was substantially limited in a major life activity. *Nunies v. HIE Holdings, Inc.*, 908 F.3d 428, 434 (9th Cir. 2018). The County says it would not have concluded that Plaintiff "had a substantially limiting disability." ECF No. 70 at 13. That is not the standard.

The SAC alleges that the County acted because of the impairments it perceived. Mr. Brown told the Board that he had recommended leave "to address self-identified recent stress issues." ECF No. 66 ¶ 46. His October 4 letter says he told Plaintiff she "could request, and would be given, paid leave so [she] could deal with these stressors." ECF No. 70-3 at 1. The County told the press that Plaintiff was "experiencing stress related health issues" and had requested leave "for self-care." ECF No. 66 ¶ 48. It later said she had been on leave "for medical reasons." *Id.* ¶ 51. The County refused to return Plaintiff to work after her medical clearance. *Id.* ¶ 72. Its October 4 letter called her request to return "contrary to the arrangement that had been made when you requested leave." *Id.* ¶ 75. Human Resources told her the Deputy position she asked for was no longer available. *Id.* ¶ 66. It was vacant and remained vacant. *Id. Nunies* found a triable regarded-as claim on similar facts. There, the employer withdrew an approved transfer two days after the employee reported shoulder pain, told him the position no longer existed, and advertised the same position days later. 908 F.3d at 434–35. The court held that a jury could infer the employer acted because of the injury. *Id.* at 435.

The "transitory and minor" exception applies only to the regarded-as prong. 42 U.S.C. § 12102(3)(B). It covers only impairments that are both transitory and minor. *Id.*; *Nunies*, 908 F.3d at 434. The County argues only that Plaintiff's condition was transitory. ECF No. 70 at 13. The exception is an affirmative defense, and the employer bears the burden of establishing it. *Nunies*, 908 F.3d at 435. The SAC pleads hypertension that requires ongoing medication and complex post-traumatic stress disorder. ECF No. 66 ¶¶ 33, 38. A clearance to return to work does not make those conditions transitory. *Id.* ¶ 41; 42 U.S.C. § 12102(4)(D). The SAC therefore plausibly pleads a

AHMAD LAW PLLC
300 S. Arlington Avenue, Ste B
Reno, Nevada 89501
(775) 234-8760

regarded-as disability claim, and the County has not established from the face of the SAC that the "transitory and minor" exception applies.

### C. The SAC Plausibly Alleges That Plaintiff Was Qualified

A qualified individual can perform the essential functions of the position she holds or desires, with or without reasonable accommodation. 42 U.S.C. § 12111(8). The SAC alleges that Plaintiff ran the February 2024 Presidential Preference Primary, the June 2024 Primary Election, a recall election, and three candidate recounts. ECF No. 66 ¶ 29. She did so while performing the duties of two vacant Deputy positions and implementing a new statewide voter registration system. *Id.* ¶ 30. Her only performance review, in July 2024, contained only positive attributes. *Id.* ¶ 29. On September 20, 2024, Mr. Brown told her she was doing a good job under the circumstances. *Id.* She received no written notice of deficiency, improvement plan, or discipline before September 25, 2024. *Id.* Plaintiff previously held the Deputy position to which she asked to be reassigned. *Id.* ¶¶ 24, 65.

The County answers with its own account of Plaintiff's performance. ECF No. 70 at 13–16. That account is drawn from the superseded FAC, a Nevada Supreme Court order, and the County's reading of election statutes. *Id.* The FAC paragraphs the County cites do not support its characterization. They allege that the Secretary of State's office told Plaintiff that Washoe County was not the only county to miss the deadline and that a plan was created to address it. ECF No. 10 ¶ 88. They further allege that, after a resident raised the discrepancy, Plaintiff reviewed the new system and discovered that records had not transferred correctly. *Id.* ¶ 84.[6] The County asks the Court to find that errors disqualified Plaintiff from the office she held. That is a factual dispute. "[A]n employer who disputes the plaintiff's claim that he can perform the essential functions must put

---

[6] The County says the FAC applied the UOCAVA deadline to voter deactivation. ECF No. 70 at 14. It did not. The FAC alleged that the September 21, 2024 UOCAVA deadline applied to UOCAVA voters whose records had not transferred correctly, while separately referring to the state deadline for marking voters "inactive." ECF No. 10 ¶¶ 84, 88.

AHMAD LAW PLLC
300 S. Arlington Avenue, Ste B
Reno, Nevada 89501
(775) 234-8760

forth evidence establishing those functions." *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 991 (9th Cir. 2007) (en banc) (quoting *EEOC v. Wal-Mart Stores, Inc.*, 477 F.3d 561, 568 (8th Cir. 2007)).

*Ribar* does not change this. t is an unpublished mandamus order concerning an omitted Assembly District 40 race from a Republican primary sample ballot. *Ribar v. Washoe Cnty.*, No. 88901, 2024 WL 3665320, at *1–2 (Nev. Aug. 5, 2024).[7] Plaintiff was a named respondent as Registrar. *Id.* at *1. The order does not address who caused the omission or Plaintiff's performance. *Id.* The County incorrectly characterizes it as an omitted "state senate race." ECF No. 70 at 14. At most, the Court may notice the order's existence, not the truth of facts recited in it. *Lee*, 250 F.3d at 690. One defective sample ballot does not establish that Plaintiff could not perform the essential functions of an office in which she ran three elections and three candidate recounts. ECF No. 66 ¶ 29.

The County reads paragraph 31 as an admission that Plaintiff's church ballot-collection program was unlawful. ECF No. 70 at 15. Paragraph 31 alleges that Mr. Brown assigned the program, identified the pastor, directed the work, and monitored it at weekly executive meetings. ECF No. 66 ¶ 31. It alleges that every element of the program was undertaken at the County Manager's direction, "contrary to NRS 293.269921(3)." *Id.* That subsection provides that "[n]o person other than a clerk may establish a drop box for mail ballots." Nev. Rev. Stat. § 293.269921(3). In Washoe County, the Registrar of Voters is the clerk for election purposes. ECF No. 70 at 14 n.2; ECF No. 70-5 at 2. The allegation is that the County Manager's direction contravened a statute reserving that decision to the Registrar. It is not an admission that Plaintiff acted unlawfully. At a minimum, the County's reading raises a factual dispute.

---

[7] The County cites *Ribar* by Westlaw number only and dates it August 4, 2024. ECF No. 70 at 14. The Westlaw copy of the order is dated August 5, 2024, and is a table decision at 553 P.3d 16. It is an unpublished disposition. *See* Nev. R. App. P. 36(c).

AHMAD LAW PLLC
300 S. Arlington Avenue, Ste B
Reno, Nevada 89501
(775) 234-8760

The County also points to Plaintiff's education and the size of her prior jurisdiction. ECF No. 70 at 15. It identifies no qualification standard requiring either. When the prior Registrar was placed on leave, the County asked Plaintiff to perform all the Registrar's duties. It then appointed her. ECF No. 66 ¶¶ 25–26, 28. The appointment vested her "with the same authority to carry out the powers and duties of a Registrar appointed on a non-interim basis." ECF No. 70-5 at 1.

The County infers from Plaintiff's unsuccessful job applications that she was not qualified. ECF No. 70 at 15. The County says she applied for "more than 150 positions" comparable to the Registrar and Deputy positions. *Id.* The SAC does not say that. It alleges more than 150 applications in all, including at least 18 elections-administration positions. ECF No. 66 ¶ 101. The SAC alleges that elections officials and vendor representatives told her she could not be hired because of what the County had said about her. *Id.* ¶ 103. The County's inference is an alternative explanation. It does not make Plaintiff's allegation implausible. *Starr*, 652 F.3d at 1216. The SAC plausibly alleges that Plaintiff was qualified to perform the essential functions of the Registrar position, and the County's contrary arguments improperly ask the Court to resolve disputed facts and draw inferences against Plaintiff at the pleading stage.

**D. The SAC Plausibly Alleges Causation**

ADA discrimination claims require but-for causation. *Murray v. Mayo Clinic*, 934 F.3d 1101, 1107 (9th Cir. 2019). But-for causation does not require that disability be the only cause. *Bostock*, 590 U.S. at 656. The County says the SAC alleges the adverse actions occurred "solely" because of disability. ECF No. 70 at 11 (citing ECF No. 66 ¶¶ 143, 148, 206). Paragraphs 143 and 148 do not use that word. Paragraph 206 uses it in the Rehabilitation Act claim, where it tracks the statute. ECF No. 66 ¶ 206; 29 U.S.C. § 794(a).

The SAC pleads a dated sequence. Plaintiff requested accommodation on September 6, 20, 21, and 22, 2024. ECF No. 66 ¶¶ 60–63. On September 23, Mr. Brown told her that Ms. Thomas

AHMAD LAW PLLC
300 S. Arlington Avenue, Ste B
Reno, Nevada 89501
(775) 234-8760

was now "officially" overseeing her office. *Id.* ¶ 81. On September 24, he told her the County would "go a different route" and that leave was her best option. *Id.* ¶ 83. On September 25, the County placed her on leave and factory reset her County phone in her presence. *Id.* ¶ 84. That day, Human Resources told her the vacant Deputy position was unavailable. *Id.* ¶ 66. On or about September 30, her provider cleared her to return without restriction effective October 7. *Id.* ¶ 72. The County refused to let her return. *Id.* Its October 4 letter called the clearance a breach. *Id.* ¶ 75.

The County attributed Plaintiff's absence to her health, in writing to the Board and in statements to the press. *Id.* ¶¶ 46, 48–49, 51. Its County Manager told the investigator that, when he directed Plaintiff to take leave, he believed the County would have a discussion after the election about her possibly returning to the Deputy position if she was not selected for the permanent position. *Id.* ¶ 160. The next day, the County told her the position was unavailable. *Id.* ¶¶ 66, 160. The County's stated reasons then changed. *Id.* ¶ 146. Its investigation departed from its own written policies. *Id.* ¶¶ 119–120, 124–131, 134. These facts support the inference that disability was a but-for cause. *See Nunies*, 908 F.3d at 435 (inferring causation from timing and the employer's misstatement that a position was unavailable).

The County's contrary chronology depends on facts outside the SAC. ECF No. 70 at 17–18. It relies on FAC allegations about Ms. Thomas, a Commissioner, and a proposed classification change. *Id.* at 17. The County reads paragraph 54 to allege that Ms. Thomas "expressed concerns with Burgess" beginning in June 2024. ECF No. 70 at 22. Paragraph 54 alleges that Ms. Thomas took over budget and staffing matters. ECF No. 66 ¶ 54. Those are not the adverse actions the SAC alleges. *Id.* ¶ 143. The adverse actions begin September 25, 2024, after the accommodation requests. *Id.* The SAC alleges no written notice of any performance deficiency before that date. *Id.* ¶ 29. The October 4 letter followed Plaintiff's request to return to work. *Id.* ¶¶ 72–75.

The County argues that Plaintiff pleaded herself out of court by reciting the County's stated

AHMAD LAW PLLC
300 S. Arlington Avenue, Ste B
Reno, Nevada 89501
(775) 234-8760

reasons. ECF No. 70 at 16–19. The SAC pleads those reasons and alleges that they are pretextual. ECF No. 66 ¶¶ 144–147. As both explanations are plausible, the complaint survives. *Starr*, 652 F.3d at 1216. In *Newland*, by contrast, the plaintiff conceded that he was fired for what he called a "drunken rampage" and argued only that alcoholism caused it. *Newland v. Dalton*, 81 F.3d 904, 905–06 (9th Cir. 1996); *see* ECF No. 70 at 17. The County also offers Plaintiff's October 23 interview as a nondiscriminatory reason. ECF No. 70 at 18. The leave, the refusal to let her return, and the October 4 letter all preceded the interview. ECF No. 66 ¶¶ 72–75, 84, 252. The SAC alleges a plausible causal connection between Plaintiff's protected disability related activity and the challenged adverse actions, while the County's competing chronology and asserted alternative explanations present factual disputes that cannot be resolved on a motion to dismiss.

### E. The SAC Plausibly Alleges Failure to Accommodate

Once an employer becomes aware of the need for accommodation, it "has a mandatory obligation under the ADA to engage in an interactive process with the employee to identify and implement appropriate reasonable accommodations." *Humphrey*, 239 F.3d at 1137. The obligation "continues when the employee asks for a different accommodation or where the employer is aware that the initial accommodation is failing and further accommodation is needed." *Id.* at 1138. Employers that fail to engage in good faith "face liability for the remedies imposed by the statute if a reasonable accommodation would have been possible." *Id.* at 1137–38.

The SAC alleges that the County never engaged in that process. ECF No. 66 ¶¶ 69–71, 155. It alleges that reasonable accommodations were available. *Id.* ¶ 156. Reassignment to a vacant position is a statutory form of reasonable accommodation. 42 U.S.C. § 12111(9)(B). The Deputy position was vacant. ECF No. 66 ¶¶ 27, 66. The County's stated reason for denying it was that "the team would look at you as lead" and "[i]t would make operations confusing." ECF No. 70-3 at 1; ECF No. 66 ¶ 74. Undue hardship is the employer's burden to demonstrate. 42 U.S.C. §

AHMAD LAW PLLC
300 S. Arlington Avenue, Ste B
Reno, Nevada 89501
(775) 234-8760

12112(b)(5)(A). The motion does not argue undue hardship. ECF No. 70 at 19–20. It argues that whether the Deputy position was available is not the issue. *Id.* at 20.

The County says it accommodated Plaintiff with paid leave. *Id.* at 19–20. Leave can be a reasonable accommodation when it will "permit him, upon his return, to perform the essential functions of the job." *Humphrey*, 239 F.3d at 1135–36. In *Ravel*, on which the County relies, the plaintiff's own allegations suggested that leave would let her recover and, after a few months, return to work. *Ravel v. Hewlett-Packard Enter., Inc.*, 228 F. Supp. 3d 1086, 1094 (E.D. Cal. 2017). Here, the SAC alleges that the County required her to request personal leave in writing as the condition of remaining employed. ECF No. 66 ¶¶ 69, 199. The County's letter states that she would use her paid sick leave while out and that comp time and annual leave could be used after that. ECF No. 70-3 at 1. Plaintiff's provider cleared her to return without restriction on October 7, 2024, but the County refused. ECF No. 66 ¶ 72. Leave that continued after she was cleared to return is not a reasonable accommodation. "An appropriate reasonable accommodation must be effective, in enabling the employee to perform the duties of the position." *Humphrey*, 239 F.3d at 1137 (internal quotation marks and citation omitted). Whether indefinite leave imposed over Plaintiff's objection and continued after her medical clearance was a reasonable accommodation cannot be resolved at the pleading stage.

The County also argues that less interaction with Ms. Thomas was an unreasonable request for a new supervisor. ECF No. 70 at 20. [8] Plaintiff did not request a new supervisor; she asked the County to follow its organization chart, under which she reported to the County Manager, a reporting

[8] The motion attributes the quoted sentence to the "EEOC Compliance Manual." ECF No. 70 at 20. That is not correct. The sentence comes from the EEOC's enforcement guidance on reasonable accommodation. The same answer continues: "[A]lthough an employer is not required to change supervisors, the ADA may require that supervisory methods be altered as a form of reasonable accommodation." EEOC, *Enforcement Guidance: Reasonable Accommodation and Undue Hardship Under the Americans with Disabilities Act*, No. 915.002, Question 33 (Oct. 17, 2002).

relationship Mr. Brown confirmed. ECF No. 66 ¶¶ 23, 60, 65. The reassignment request stands on its own in any event. *Id.* ¶¶ 62–63, 66. The SAC plausibly alleges failure to accommodate because the County did not engage in the interactive process, rejected reassignment without asserting undue hardship, and continued leave after Plaintiff's medical clearance.

### F. The SAC Plausibly Alleges Retaliation

The SAC identifies ten instances of protected activity: six accommodation or return to work requests and four additional protected acts consisting of Plaintiff's representation letter and three charges. ECF No. 66 ¶¶ 172–181"Pursuing one's rights under the ADA constitutes a protected activity." *Pardi v. Kaiser Found. Hosps.*, 389 F.3d 840, 850 (9th Cir. 2004). The County challenges only the request to return to work. ECF No. 70 at 20–21 (citing ECF No. 66 ¶ 177). That request accompanied her medical clearance and sought to end the leave the County had imposed. ECF No. 66 ¶¶ 72, 177. Nine items remain even without it.

A materially adverse action is one that "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (internal quotation marks omitted). "When adverse employment decisions closely follow complaints of discrimination, retaliatory intent may be inferred." *Pardi*, 389 F.3d at 850. The SAC alleges adverse actions one, two, and three days after Plaintiff's September 22 request. ECF No. 66 ¶¶ 81, 83–84, 186. The October 4 letter came nine days after the September 25 request and four days after her request to return. *Id.* ¶¶ 66, 72–75.

The County argues that the investigation predates Plaintiff's protected activity. ECF No. 70 at 22, 25. But the County identifies no support for that assertion. Its own chronology ties the

AHMAD LAW PLLC
300 S. Arlington Avenue, Ste B
Reno, Nevada 89501
(775) 234-8760

AHMAD LAW PLLC
300 S. Arlington Avenue, Ste B
Reno, Nevada 89501
(775) 234-8760

investigation to Plaintiff's EEOC charges. *Id.*[9] Plaintiff's protected activity began on September 6, 2024. ECF No. 66 ¶ 172. The investigation originated with Mr. Brown's October 4, 2024 letter, after Plaintiff had made five accommodation requests and requested to return to work. *Id.* ¶¶ 119, 172–177. The investigation also addressed Plaintiff's pending charge, adjudicated her charge of discrimination, and concluded that it did not establish pretext. *Id.* ¶ 128. The County substantiated the findings on February 5, 2025. *Id.* ¶ 90. Six days later, the County disclosed the ongoing investigation and pending lawsuit in open session, appointed Plaintiff's successor, and terminated Plaintiff the following day. *Id.* ¶¶ 92, 94.

The County reads two paragraphs as concessions, arguing that paragraph 98 supplies a nonretaliatory reason for the vendor statements. ECF No. 70 at 22. But paragraph 98 alleges that the statements were made after the County knew of Plaintiff's charges to terminate contracts she had executed, while paragraph 99 alleges the statements were false. ECF No. 66 ¶¶ 98–99. A motive to unwind her contracts does not exclude retaliation as a but-for cause. *Bostock*, 590 U.S. at 656. The County also says paragraph 259 concedes a legitimate reason for the media statements. ECF No. 70 at 22. But paragraph 259, part of the First Amendment claim, alleges why Plaintiff's speech addressed a matter of public concern. ECF No. 66 ¶ 259. The County characterizes the interview as "calling election integrity into question," ECF No. 70 at 23, while the SAC alleges that Plaintiff described her own removal. ECF No. 66 ¶ 252.

The County says Plaintiff was not a department head when terminated because she had been reverted to the Deputy position. ECF No. 70 at 24. But the SAC alleges that the County reverted and

[9] The County calls the SAC's allegation that Plaintiff first filed with NERC on October 17, 2024 "somewhat misleading" because she filed an intake inquiry that day and submitted the charge on December 6, 2024. ECF No. 70 at 25 n.5. The charge states that the October 17 inquiry was filed "with intent to file a Charge of Discrimination." ECF No. 66-1 at 4–5. The County concedes that Plaintiff filed her EEOC charge on October 28, 2024. ECF No. 70 at 25 n.5. That charge preceded the October 31 announcement, November 22 hiring decision, and statements to vendors. ECF No. 66 ¶¶ 87, 89, 98.

terminated her on the same day and had treated her as a Board appointed department head when it appointed and investigated her. ECF No. 66 ¶¶ 28, 94, 120; *see* ECF No. 70-5 at 2. The County also says the October 4 letter notified Plaintiff of the investigation. ECF No. 70 at 23. The letter does not use the word "investigation"; it states only that "these issues will be reviewed" after the election. ECF No. 70-3 at 2.

The County says the Department Head Complaint Policy does not require notice to the subject of an investigation. ECF No. 70 at 23. The provision it cites makes notice of a pending complaint discretionary. ECF No. 66-6 at 5. The SAC relies on mandatory provisions. ECF No. 66 ¶¶ 121–123. The County Manager must notify the Commissioners of a complaint against a Board-appointed department head, obtain the Board Chair's consent before changing her working conditions, and "provide written notice of the proposed action." ECF No. 66-6 at 4. At the end of the investigation, the subject "shall be provided" a summary of the findings. *Id.* at 6. The SAC alleges that the County gave Plaintiff no written notice of proposed action before placing her on leave, and no summary of the actions to be taken or recommendations before terminating her. ECF No. 66 ¶¶ 121–123. It also alleges that the County never identified any allegation, accuser, or incident, and never invited her to identify witnesses or documents. *Id.* ¶¶ 125–126. And a meeting at which the Human Resources Director told Plaintiff that the Deputy position was unavailable does not contradict the allegation that no one evaluated her request. *Id.* ¶¶ 66, 71; *see* ECF No. 70 at 23.[10]

The County says the policy's limits on leave without pay do not apply because Plaintiff was paid. ECF No. 70 at 23. The consent and notice requirements apply either way. ECF No. 66-6 at 4. In a footnote, the County adds that her pay was "inadvertently reduced" and later restored, and that personal and administrative leave do not differ. ECF No. 70 at 23 n.4. The SAC alleges that the

[10] The motion cites "ECF No. 6." ECF No. 70 at 23. Plaintiff assumes the County means ECF No. 66.



AHMAD LAW PLLC
300 S. Arlington Avenue, Ste B
Reno, Nevada 89501
(775) 234-8760

AHMAD LAW PLLC
300 S. Arlington Avenue, Ste B
Reno, Nevada 89501
(775) 234-8760

County restored her stipend only in her final paycheck, after her counsel objected. ECF No. 66 ¶ 85. Personal leave consumed her accrued leave. *Id.* ¶¶ 69, 84. Administrative leave came with a public announcement of an investigation. *Id.* ¶ 87. The SAC alleges that the County required Plaintiff to use accrued sick leave during her absence, as reflected in the October 4 Letter, and later characterized the absence as administrative leave after announcing an investigation. ECF No. 70-3 at 1; ECF No. 66 ¶¶ 69, 84, 87. Thus, accepting the SAC's allegations as true, the two forms of leave carried materially different consequences, and the County's assertion that they were indistinguishable presents a factual characterization that cannot be resolved on a motion to dismiss.

The County says the policy's confidentiality provision gives way to open meetings. ECF No. 70 at 23–24. But the policy states that a pending investigation must "remain confidential" until the Board addresses it in open meeting. ECF No. 66-6 at 5. The County announced the investigation and its subject to the press on October 31, 2024, more than three months before the Board's February meeting. ECF No. 66 ¶¶ 87, 92, 134. The County also says Plaintiff received the report, citing an FAC paragraph that describes the same February 14, 2025 email to her counsel, sent two days after her termination. ECF No. 70 at 24; ECF No. 10 ¶ 164; ECF No. 66 ¶ 132.[11]

These disputes cannot be resolved on the pleadings. An employer's "deviation from established policy or practice" that "worked to her disadvantage" can support an inference of pretext. *Earl v. Nielsen Media Rsch., Inc.*, 658 F.3d 1108, 1117 (9th Cir. 2011).[12] The SAC plausibly alleges a causal connection between Plaintiff's protected activity and the challenged adverse actions, while the County's contrary chronology and asserted explanations depend on factual disputes that cannot

[11] Plaintiff received the Summary and Findings on February 6, 2026, but no recommendations, remedial actions, or appeal process were provided; the full investigative report was disclosed only two days after her demotion and termination.

[12] The motion asks the Court to dismiss "the Third Claim" for lack of causation. ECF No. 70 at 24. The retaliation claim is the Fourth Claim. ECF No. 66 ¶¶ 170–196. The Third Claim is the medical-disclosure claim. *Id.* ¶¶ 162–169.

AHMAD LAW PLLC
300 S. Arlington Avenue, Ste B
Reno, Nevada 89501
(775) 234-8760

be resolved at the pleading stage.

**G. The SAC Plausibly Alleges Interference**

Section 12203(b) makes it unlawful to "coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of" rights protected by the ADA. 42 U.S.C. § 12203(b). The provision "clearly prohibits a supervisor from threatening an individual with transfer, demotion, or forced retirement unless the individual foregoes a statutorily protected accommodation." *Brown v. City of Tucson*, 336 F.3d 1181, 1193 (9th Cir. 2003). The required injury "could consist of either the giving up of her ADA rights, or some other injury which resulted from her refusal to give up her rights, or from the threat itself." *Id.*

The SAC alleges that type of conduct. Plaintiff asked to be reassigned to the vacant Deputy position. ECF No. 66 ¶¶ 62–63, 66. The County refused. *Id.* ¶ 66. It required her to request personal leave in writing from her County account as a condition of continued employment. *Id.* ¶¶ 69, 199. It denied her one day to decide and told her she would lose access to all County systems that day. *Id.* ¶ 67. When she submitted her clearance and asked to return, the County directed her not to speak to the media, outside parties, County staff, or Commissioners. *Id.* ¶ 73; ECF No. 70-3 at 2. The same letter told her she had been insubordinate and that her continued employment would be decided later. ECF No. 70-3 at 2. The directive to avoid "outside parties" contained no exception for the agencies with which she could file a charge. *Id.* The SAC alleges the first kind of injury *Brown* describes. Plaintiff submitted the written leave request the County demanded in place of the reassignment she had requested. ECF No. 66 ¶¶ 66, 69, 199. *See Brown*, 336 F.3d at 1193.

The County characterizes this claim as a disagreement over the choice of accommodation. ECF No. 70 at 24–25. The SAC alleges a condition imposed on continued employment and a written

AHMAD LAW PLLC
300 S. Arlington Avenue, Ste B
Reno, Nevada 89501
(775) 234-8760

threat that followed her request to return. ECF No. 66 ¶ 199.[13] The County's chronology argument concerns the EEOC charges. ECF No. 70 at 25. The interference alleged here began on September 25, 2024. ECF No. 66 ¶¶ 67, 69, 199. The SAC plausibly alleges that the County interfered with Plaintiff's exercise of ADA rights by conditioning her continued employment on surrendering a requested accommodation and imposing adverse directives after she sought to exercise those rights.

**H. The SAC Plausibly Alleges Unlawful Disclosure of Medical Information**

An employer "may make inquiries into the ability of an employee to perform job-related functions." 42 U.S.C. § 12112(d)(4)(B). Information obtained through those inquiries is subject to the confidentiality requirements of § 12112(d)(3)(B). *Id.* § 12112(d)(4)(C). The County's own authority states the rule this way: "if an employer discloses medical information that was voluntarily offered by an employee — outside of the context of an authorized employment-related medical examination or inquiry — then the employer is not subject to liability under § 102(d)." *EEOC v. C.R. England, Inc.*, 644 F.3d 1028, 1047 (10th Cir. 2011).[14] The same court stated that disclosure of confidential information obtained through an authorized inquiry "would constitute a violation of § 102(d)." *Id.* at 1046–47.

The SAC alleges that County officials questioned Plaintiff about her condition, required her to document it, and relied on her medical clearance in deciding whether she could return. ECF No.

---

[13] *Malcorvian* applied a Seventh Circuit test that requires a pattern of harassment and an intent to discriminate. *Malcorvian v. Cnty. of Cook*, No. 23 C 3987, 2024 WL 1530473, at *4 (N.D. Ill. Apr. 9, 2024); *see* ECF No. 70 at 25. In this Circuit, threatening adverse action "unless the individual foregoes a statutorily protected accommodation" is interference. *Brown*, 336 F.3d at 1193. *Kelly*, which the County cites on motive, assumed without deciding that the Seventh Circuit's test applied and found no allegation that the employer acted to keep the plaintiff from exercising ADA rights. *Kelly v. Town of Abingdon*, 90 F.4th 158, 171–72 (4th Cir. 2024).

[14] The motion quotes this sentence as "In sum, if an employer discloses medical information that was voluntarily offered by an employee ... then the employer is not subject to liability[.]" ECF No. 70 at 26. The ellipsis stands in place of the words "outside of the context of an authorized employment-related medical examination or inquiry." The bracketed period stands in place of the words "under § 102(d)." *C.R. England*, 644 F.3d at 1047.

AHMAD LAW PLLC
300 S. Arlington Avenue, Ste B
Reno, Nevada 89501
(775) 234-8760

66 ¶¶ 163–164. The County's assertion that she volunteered the information conflicts with those allegations. The disclosures likewise fall outside the statutory exceptions: the Board received statements about Plaintiff's "stress issues" and "recent behavior," not work restrictions or accommodations, and the County disclosed her medical information to the press. *Id.* ¶ 46, 48, 51, 78; 42 U.S.C. § 12112(d)(3)(B). Mr. Brown's text to the Board disclosed "self-identified recent stress issues" and called her conduct "emblematic of recent behavior." ECF No. 66 ¶ 46. It did not describe work restrictions or accommodations. *Id.* No exception permits disclosure to the press. 42 U.S.C. § 12112(d)(3)(B)(i)–(iii). The statute contains no exception for disclosures the employer considers general. The SAC plausibly alleges that the County obtained Plaintiff's medical information through employment related inquiries and disclosed it beyond the statutory exceptions, including to County officials and the press.

## I. The Section 1983 Claims Are Adequately Pleaded

### *1. The SAC Pleads Municipal Liability*

A municipality is liable where the official who committed the violation "functioned as a final policymaker." *Barone v. City of Springfield*, 902 F.3d 1091, 1107 (9th Cir. 2018) (citing *Lytle v. Carl*, 382 F.3d 978, 982 (9th Cir. 2004)). "[I]t is plain that municipal liability may be imposed for a single decision by municipal policymakers under appropriate circumstances." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986). "It does not matter that the final policymaker may have subjected only one person to only one unconstitutional action." *Lytle*, 382 F.3d at 983. Whether an official has final policymaking authority is a question of state law. *Id.* at 982.

The SAC alleges that the County Manager and Board were final policymakers for personnel decisions concerning the Registrar. ECF No. 66 ¶ 264. The Board appointed Plaintiff and her successor, while the County Manager selects and recommends interim department heads and personally issued the October 4 directive. *Id.* ¶¶ 26, 28, 73, 94; ECF No. 70-3 at 2; ECF No. 70-5 at

2. *Barone* supports this theory, holding that a city manager possessed final policymaking authority over employee discipline. 902 F.3d at 1107–09. The County identifies no Nevada law or ordinance placing that authority elsewhere. ECF No. 70 at 27–28. Nor does paragraph 258 concede otherwise; it alleges only that the directive was not an application of the Code of Conduct. ECF No. 66 ¶ 258. A final policymaker's decision constitutes municipal policy. *Pembaur*, 475 U.S. at 480–81. The ratification allegation is likewise alternative, not necessary to the claim. ECF No. 66 ¶ 274.

### ***2. The SAC Pleads First Amendment Retaliation and a Prior Restraint***

"The critical question under *Garcetti* is whether the speech at issue is itself ordinarily within the scope of an employee's duties, not whether it merely concerns those duties." *Lane v. Franks*, 573 U.S. 228, 240 (2014). The scope and content of an employee's job responsibilities is a question of fact. *Dahlia v. Rodriguez*, 735 F.3d 1060, 1072–73 (9th Cir. 2013) (en banc). "When a public employee communicates with individuals or entities outside of his chain of command, it is unlikely that he is speaking pursuant to his duties." *Id.* at 1074. When a public employee "speaks in direct contravention to his supervisor's orders, that speech may often fall outside of the speaker's professional duties." *Id.* at 1075.

Plaintiff gave the October 23, 2024 interview after the County removed her from her office and duties, cut off her County access, and directed her in writing not to speak to the media. ECF No. 66 ¶¶ 73, 84, 252–253. The interview concerned her own removal and was given to the Associated Press outside her chain of command. *Id.* ¶ 252. The County relies on the FAC's description of an earlier, approved profile of her work. ECF No. 70 at 29 (citing ECF No. 10 ¶ 29). The FAC alleged that, as the Associated Press was finishing its story, it requested comment because it was unusual for a top election official to be placed on leave less than two months before the election. ECF No. 10 ¶ 145. By then, the story concerned her removal. ECF No. 66 ¶ 252. Any approval the County gave in August ended with the October 4 letter. ECF No. 70-3 at 2. At a minimum, whether that

AHMAD LAW PLLC
300 S. Arlington Avenue, Ste B
Reno, Nevada 89501
(775) 234-8760

AHMAD LAW PLLC
300 S. Arlington Avenue, Ste B
Reno, Nevada 89501
(775) 234-8760

speech was part of her job is a factual question. *Dahlia*, 735 F.3d at 1072–73. *Barone* is not to the contrary. There, the employee spoke at a community event as part of her liaison duties, a supervisor attended, and there was no evidence she had been told not to speak. 902 F.3d at 1099–1101. Here, Plaintiff's statement to the press falls within her protected right to respond to public statements concerning her removal from office, rather than speech made pursuant to her official duties.

Causation is plausibly alleged. Within days of the interview, the County publicly announced that Plaintiff was on administrative leave pending an investigation, then denied her the permanent position on November 22, 2024. ECF No. 66 ¶¶ 87, 89, 238, 261. Although the SAC acknowledges that the investigation began earlier, it alleges that these subsequent actions followed her protected speech. *Id.* ¶¶ 261–263. Whether protected speech was a substantial or motivating factor "is purely a question of fact." *Eng v. Cooley*, 552 F.3d 1062, 1071 (9th Cir. 2009).

The October 4 directive is also an independent violation. *Id.* ¶ 257. It barred Plaintiff from speaking to the media, outside parties, County staff, or Commissioners, and prohibited disparaging remarks about the County. ECF No. 70-3 at 2. *Barone* held that a similar prohibition was an unconstitutional prior restraint. 902 F.3d at 1101–06. Because a prior restraint concerns future speech, it does not depend on protected speech preceding the restraint. The County's argument that there was "no protected speech giving rise to that 'restraint'" therefore misses the claim. ECF No. 70 at 29. The SAC thus plausibly alleges both retaliation for protected speech and an independent prior restraint on Plaintiff's future speech**.**

### ***3. The SAC Pleads a Liberty-Interest Claim***

A terminated employee "has a constitutionally based liberty interest in clearing his name when stigmatizing information regarding the reasons for the termination is publicly disclosed." *Cox v. Roskelley*, 359 F.3d 1105, 1110 (9th Cir. 2004). The County acknowledges that "[a]ccusations of dishonesty or moral turpitude" give rise to a liberty interest. ECF No. 70 at 30. It argues that the

AHMAD LAW PLLC
300 S. Arlington Avenue, Ste B
Reno, Nevada 89501
(775) 234-8760

SAC alleges only criticism of Plaintiff's job performance. *Id.* at 30–31.

The SAC alleges more than that. The County told vendors that Plaintiff never had authority to sign the contracts she executed on the County's behalf. ECF No. 66 ¶ 98; ECF No. 70-4 at 3. The SAC alleges, on information and belief, that the County told prospective employers that Plaintiff had acted without authority, that an investigation had substantiated violations of the County Code of Conduct, and that she had been removed for cause. ECF No. 66 ¶ 104. Elections officials and vendor representatives told Plaintiff she could not be hired because of what the County had said. *Id.* ¶ 103. The claim rests on the County's own statements, not on third parties' reactions to them. ECF No. 66 ¶¶ 98, 104, 267; *see* ECF No. 70 at 30. The investigation the County publicized substantiated Code of Conduct violations. ECF No. 66 ¶¶ 87, 90. The report on which it relied found that Plaintiff had been dishonest in reporting her time. *Id.* ¶¶ 90, 146. A charge that the Registrar bound the County to contracts she had no authority to sign, followed by a finding of dishonesty and a removal for cause, is not a charge of mere incompetence. Plaintiff has been unable to obtain employment in the elections profession. *Id.* ¶ 273. The County never offered her a hearing. *Id.* ¶ 272. The SAC plausibly alleges that the County publicly disclosed stigmatizing accusations that harmed Plaintiff's employment prospects without providing an opportunity to clear her name.

### J. The SAC Plausibly Alleges Intentional Infliction of Emotional Distress

Nevada courts look to the Restatement (Second) of Torts § 46 in evaluating these claims. *Chehade Refai v. Lazaro*, 614 F. Supp. 2d 1103, 1122 (D. Nev. 2009) (citing *Olivero v. Lowe*, 995 P.2d 1023, 1027 (Nev. 2000)). Extreme and outrageous character "may arise from an abuse by the actor of a position, or a relation with the other, which gives him actual or apparent authority over the other, or power to affect his interests." *Id.* (quoting Restatement (Second) of Torts § 46 cmt. e (Am. L. Inst. 1965)). It may also arise "from the actor's knowledge that the other is peculiarly susceptible to emotional distress, by reason of some physical or mental condition or peculiarity." *Id.*

AHMAD LAW PLLC
300 S. Arlington Avenue, Ste B
Reno, Nevada 89501
(775) 234-8760

(quoting Restatement (Second) of Torts § 46 cmt. f). Where reasonable minds could differ, the question is for the fact finder. *Id.* at 1123.

The County characterizes the conduct as management and reputational disputes. ECF No. 70 at 31–32. The SAC alleges that the County, despite knowing of Plaintiff's reported stress, anxiety, and high blood pressure, disclosed her medical condition to the Board and national press, factory reset her County phone in her presence, barred her from communicating with staff, Commissioners, and outside parties, and told vendors she lacked authority to execute contracts, outside of ordinary personnel decisions. ECF No. 66 ¶¶ 60–61, 73, 75, 77–78, 84, 216. Plaintiff alleges she subsequently developed complex post-traumatic stress disorder in or about November 2024. *Id.* ¶ 220. Reasonable minds could differ on whether this conduct was extreme and outrageous. *See Chehade Refai*, 614 F. Supp. 2d at 1123. The SAC plausibly alleges conduct that a reasonable factfinder could find extreme and outrageous given the County's authority over Plaintiff and knowledge of her condition.

### K. The Defamation and Privacy Claims Are Adequately Pleaded

#### ***1. Defamation***

A statement is not defamatory if it is true or substantially true. *Pegasus v. Reno Newspapers, Inc.*, 57 P.3d 82, 88 (Nev. 2002). "If the published statements could be construed as defamatory statements of fact, and therefore actionable, then the jury should resolve the matter." *Id.* The SAC alleges that each statement was false. ECF No. 66 ¶¶ 226, 228, 231.

The County told the press that Plaintiff requested leave for self care and was on administrative leave while it investigated her job performance. ECF No. 66 ¶¶ 48, 87, 226. The SAC alleges that the County compelled the leave, announced the investigation without notice, and had identified no specific allegations when Plaintiff was interviewed. *Id.* ¶¶ 67, 69, 72–75, 87–88, 119, 199. Whether those statements were substantially true is disputed.

The County also argues that its statements to vendors were true as a matter of law. ECF No.

70 at 33–34. The SAC alleges that Plaintiff was vested with the Registrar's full powers, including authority to negotiate and execute contracts, and routinely exercised that authority with review by the District Attorney's Office and Office of Finance. ECF No. 66 ¶ 99. The County's staff report similarly states that she received the same authority as a non interim Registrar. ECF No. 70-5 at 1, 3. Whether that authority covered the contracts at issue is a factual question. The County's argument assumes the disputed fact that Plaintiff lacked authorization. ECF No. 70 at 33.

The County also argues that the vendor statements were not made "with malice or to injure Burgess's reputation." *Id.* at 34. "Actual malice under the *New York Times* standard should not be confused with the concept of malice as an evil intent or a motive arising from spite or ill will." *Masson v. New Yorker Mag., Inc.*, 501 U.S. 496, 510 (1991). The SAC alleges knowledge of falsity, which may be alleged generally. ECF No. 66 ¶¶ 99, 231; Fed. R. Civ. P. 9(b). The motion does not address the February 11, 2025 statement or statements to prospective employers. ECF No. 70 at 32–34; ECF No. 66 ¶¶ 227–228. Its denial of the alleged June 2026 statements is likewise a factual dispute. ECF No. 70 at 33 n.7; ECF No. 66 ¶¶ 107–108. The SAC therefore plausibly alleges false and potentially defamatory statements, and the County's truth, falsity, and malice defenses cannot be resolved on a motion to dismiss.

***2. False Light***

The County's only argument against the false-light claim is truth. ECF No. 70 at 34. The response above applies. The County has clarified that the "high degree of awareness of the probable falsity" standard refers to the state of mind of the person making the statement. ECF No. 72 at 2. The SAC alleges that the County acted with knowledge of, or reckless disregard for, the falsity of the publicized matter. ECF No. 66 ¶ 241. The SAC plausibly alleges the requisite state of mind for false light, and the County's truth defense presents the same factual disputes that cannot be resolved on a motion to dismiss.

AHMAD LAW PLLC
300 S. Arlington Avenue, Ste B
Reno, Nevada 89501
(775) 234-8760

AHMAD LAW PLLC
300 S. Arlington Avenue, Ste B
Reno, Nevada 89501
(775) 234-8760

***3. Public Disclosure of Private Facts***

The County relies on *Anzalone*. ECF No. 70 at 34–35. There, the court assumed the plaintiff had stated an invasion of privacy claim and held that the Attorney General's letter was conditionally privileged because it rebutted public charges the plaintiff had made. *State v. Eighth Jud. Dist. Ct. (Anzalone)*, 42 P.3d 233, 239–40 (Nev. 2002). Plaintiff made no such public charge here. The SAC alleges she did not respond to media inquiries until October 23, 2024. ECF No. 66 ¶ 252. Before then, the County publicly disclosed that she had "stress related health issues" and was on leave "for medical reasons." *Id.* ¶ 278. Although the public had an interest in her absence, it had no legitimate interest in her medical information. *Id.* ¶ 281. The SAC therefore plausibly alleges each element, and *Anzalone* does not support dismissal.[15]

**L. The SAC Pleads Fraudulent Misrepresentation With Particularity**

Rule 9(b) requires particularity as to the circumstances of fraud. Fed. R. Civ. P. 9(b). Paragraph 245 identifies the speakers, timing, content, and context. In January and March 2024, Mr. Brown, Ms. Hurley, and Ms. Paholke represented that the Deputy position would remain open and available to Plaintiff. ECF No. 66 ¶ 245. The SAC alleges that representation was false when made. Id. ¶ 246. Human Resources had already prepared a September 5, 2023 notice stating that the position carried no transfer, voluntary demotion, or reinstatement privileges. Id. ¶¶ 24, 246. When Plaintiff later sought to return, Ms. Hurley said the position was unavailable. Id. ¶ 66. These allegations support an inference that the promise was made without intent to perform. See *Bulbman, Inc. v. Nev. Bell*, 825 P.2d 588, 592 (Nev. 1992).

The County argues that the September 2023 notice defeated reliance. ECF No. 70 at 35–36. The SAC alleges Plaintiff did not receive it until January 25, 2024, while the contrary assurances

[15] The County's other case, *Riley*, was decided on summary judgment, not on the pleadings. *Riley v. Harr*, 292 F.3d 282, 298 (1st Cir. 2002). The court held that the plaintiff's depression was relevant to the litigation the book described. *Id.* at 299.

AHMAD LAW PLLC
300 S. Arlington Avenue, Ste B
Reno, Nevada 89501
(775) 234-8760

came from the County Manager, Human Resources Director, and an HR manager in connection with her appointment. ECF No. 66 ¶¶ 24, 245. Resolving that conflict requires weighing competing facts. Paragraph 244 also alleges that the County represented at hire that the Deputy position carried due process protection but does not identify the speaker. *Id.* ¶¶ 24, 244. If necessary, Plaintiff requests leave to add that detail.[16] The SAC satisfies Rule 9(b), and the County's remaining arguments present factual issues not resolvable on a motion to dismiss.

**M. Leave to Amend Should Be Granted as to Any Deficient Claim**

The County identifies no prejudice. ECF No. 70 at 36; *see Eminence*, 316 F.3d at 1052. Because the SAC is Plaintiff's first amendment following the Court's ruling, Plaintiff requests leave to amend any specific claim the Court finds deficient. ECF Nos. 63, 66. If the federal claims are dismissed, the Court should decline supplemental jurisdiction over the state law claims. 28 U.S.C. § 1367(c)(3).

**IV. CONCLUSION**

For the foregoing reasons, the Court should deny the Motion to Dismiss (ECF No. 70). Because this is the third motion to dismiss, Plaintiff respectfully requests oral argument before any claim is dismissed. If the Court finds any claim deficient, Plaintiff requests leave to amend that specific claim to cure the identified deficiency.

DATED this 29th day of September 2026.

//s// Hawah S. Ahmad______
Hawah S. Ahmad, Esq.
AHMAD LAW PLLC dba AhmadLaw
Nevada State Bar No. 16374
300 S. Arlington Avenue, Ste. B
Reno, NV 89501
(775) 234-8760
Ahmad@ALawNV.com
*Attorney for Plaintiff*

[16] The County also cites Nev. Rev. Stat. § 245.216. ECF No. 70 at 36. The statute exempts department heads from a county merit system. Nev. Rev. Stat. § 245.216(1). It exempts other employees only if the department head designates them. *Id.* § 245.216(2). The motion identifies no such designation of the Deputy position.

AHMAD LAW PLLC
300 S. Arlington Avenue, Ste B
Reno, Nevada 89501
(775) 234-8760

**CERTIFICATE OF SERVICE**

Pursuant to FRCP 5(b), I hereby certify that I am an employee of AhmadLaw, and am over the age of eighteen (18), and that on the date set forth below, I served a true copy of:

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS SECOND AMENDED COMPLAINT [ORAL ARGUMENT REQUESTED]**

on the party below by:

X Electronic Service via e-filing to:
Chris Hicks, Washoe County District Attorney
Lindsay L. Liddell, Deputy District Attorney
One South Sierra Street
Reno, Nevada 89501
lliddell@da.washoecounty.gov
(775) 337-5700

DATED this 29th day of September 2026.

//s// ____Aaron Palm______
Employee of AhmadLaw