LINDSAY L. LIDDELL
Deputy District Attorney
Nevada State Bar Number 14079
One South Sierra Street
Reno, NV 89501
lliddell@da.washoecounty.gov
(775) 337-5700
ATTORNEY FOR WASHOE COUNTY

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

* * *

CARI-ANN P. BURGESS,

Plaintiff,

vs.

WASHOE COUNTY,

Defendant.

________________________________/

Case No. 3:25-cv-00065-NJK

**REPLY IN SUPPORT OF MOTION TO STRIKE**

**(ECF No. 67)**

Defendant Washoe County hereby files its Reply in Support of the Motion to Strike Claims 3, 12, 13, and 14 from the Second Amended Complaint ("SAC") (ECF No. 67).

## Memorandum of Points and Authorities

## I. INTRODUCTION

The Opposition argues that because the Court did not expressly forbid new claims, Plaintiff was free to add them, and, because the new claims arise from the same underlying alleged facts, the Court should retroactively allow them. The Court should reject both arguments. Most importantly, the Court certainly knows its intent behind the scope of leave to amend that it granted. Unless the Court contemplated permitting Plaintiff to substantially expand this case adding four new claims, the Court should strike those claims as set forth below. The Opposition's own authority notes that plaintiff "should have sought leave first."

Notwithstanding, if the Court treats the Opposition as a request for retroactive leave, the Rule 15 factors support denying leave. Plaintiff emphasizes that the new claims rely on facts already alleged in the case, which was first filed in January 2025. She provides no explanation for the near 18-month delay in seeking to add those claims, and decision to seek

leave only after the Dismissal Order, which demonstrates undue delay and suggests bad faith. The amendment adds four distinct legal claims, materially expanding the issues the County must defend and thus prejudicing the County. Importantly, all new claims are futile as set forth both in the Motion to Dismiss (ECF No. 70), and on additional bases set forth below. Rule 15's liberal standard does not require the Court to excuse an unauthorized amendment where delay, prejudice, and futility weigh against it. The new claims should be stricken and retroactive leave should otherwise be denied.

## II. LEGAL ANALYSIS

### A. Plaintiff Cannot Convert this Court's Silence in the Dismissal Order Regarding Uncontemplated New Claims into Leave to Add Those Claims.

The Opposition argues that the Court's Dismissal Order, without express prohibition to add new claims, is essentially an order authorizing new claims. *See* (ECF No. 73 at pp. 4–6). The County does not interpret the Court's dismissal Order (ECF No. 63) as granting blanket leave to add any new claim Plaintiff could possibly muster. Plaintiff's leave request in the Opposition did not seek to add new claims. *See* (ECF No. 45 at p. 28, lns. 7–8). Instead, it simply stated, "In the alternative, Plaintiff respectfully requests leave to amend her First Amended Complaint." *Id.* The Dismissal Order appears to grant leave to cure the deficiencies identified therein for the existing claims. *See* (ECF No. 63 at p. 5). The Court noted the County's argument that amendment would be futile and that Plaintiff pleaded herself out of a claim. *Id.* However, "Given the liberal policies in favor of amendment, the Court will allow an opportunity to amend." *Id.* It appears as though the Court was providing Plaintiff opportunity to make one more attempt at stating viable versions of existing claims before dismissing with prejudice, as is common practice in this District.

A Rule 15 Motion to amend is the proper vehicle to pursue new claims on amendment. *Vannozzi v. Clark Cnty.*, 2:25-CV-00344-JAD-NJK, 2026 WL 1328416, at *2 (D. Nev. May 12, 2026). In the Middle District of Florida, on a motion for leave to amend adding new claims, the court noted that Plaintiffs' interpretation of its order granting "leave to

amend to disallow the addition of new claims was reasonable under the circumstances presented." *Wyndham Vacation Ownership, Inc. v. Square One Dev. Group, Inc.*, 620-CV-643-ORL-37EJK, 2020 WL 6079181, at *2 (M.D. Fla. July 22, 2020). Likewise, as cited in the instant Motion, where a dismissal order granted leave to replead the dismissed claims, that order could not be construed as granting leave to add new claims that were never plead in the first place. *Yau v. Duetsche Bank Nat. Trust Co. Americas*, No. SACV 11-00006-JVS, 2011 WL 8326579, at *2 (C.D. Cal. Aug. 31, 2011). In *Lizza,* the district court's dismissal order dismissed one claim without prejudice, but was silent on expressly prohibiting every potential new theory of liability for that claim. *See Lizza v. Deutsche Bank Nat. Tr. Co.*, 1 F. Supp. 3d 1106, 1123–24 (D. Haw. 2014), *aff'd sub nom. Lizza v. Deutsche Bank Nat'l Tr. Co.*, 714 Fed. Appx. 620 (9th Cir. 2017) (stating that any amendment must comply with Rule 9 and could not be based on two specific theories, while not expressly prohibiting any other new theory). Plaintiffs nonetheless amended the complaint to add a new theory for that claim that was "not contemplated by any of the previous complaints or filings in this case." *Lizza v. Deutsche Bank Nat. Tr. Co.*, CIV. 13-00190 HG-BMK, 2014 WL 3101322, at *3 (D. Haw. July 3, 2014), *aff'd sub nom. Lizza*, 714 Fed. Appx. 620. Despite the dismissal order's lack of express prohibition, Ninth Circuit found that "[f]airly read," the order was limited to amending in compliance with Rule 9 only, and did not permit "a wholly new theory of liability." *Lizza v. Deutsche Bank Nat'l Tr. Co.*, 714 Fed. Appx. at 623.

While Plaintiff relies[1] on *Arnell v. Mayflower Transit, Inc.*, 968 F. Supp. 521, 523 (D. Nev. 1997), that case involved a circumstance where a plaintiff specifically requested leave to add four new claims. The court thus logically found that the amended complaint with three of those new claims was consistent with its order allowing plaintiffs to include them. *Id.* Here, Plaintiff never told the Court that she intended to add her new Medical Disclosure, Section 1983, or Public Disclosure of Private Fact claims. *See* (ECF No. 45 at p. 28, lns. 7–

[1] *See* (ECF No. 73 at pp. 4–5).

8). Another case on which Plaintiff relies likewise states that Plaintiff "should have sought leave before adding these claims." *Vannozzi*, 2026 WL 1328416 at *2. The Court only declined to strike the claims after proceeding through Rule 15 analysis, and because the defendant did show prejudice, bad faith, or develop its futility argument. *Id.* at *3.

The Court was never asked to grant leave to add Plaintiff's four new causes of action. Plaintiff could have sought leave to add them but instead pleaded them first and sought forgiveness later. Unless the Court had different intentions behind the leave granted in its Dismissal Order, it afforded Plaintiff an opportunity to correct her existing claims after dismissal. It did not silently dispense with the need for Rule 15 analysis on any new claims Plaintiff later desired to include in her amended pleading. Thus, the SAC's Claims 3, 12, 13, and 14 therefore exceeded the leave granted and could properly be added only through consent or further leave of Court. The Court should strike these claims on that basis.

**B. To the Extent the Court Treats the Opposition as a Motion For Leave to Amend, It Should be Denied.**

The Opposition alternatively asks the Court to grant Plaintiff retroactive leave to add the four new claims under Rule 15. (ECF No. 73 at pp. 6–9). Courts look to the "presence of any of four factors: bad faith, undue delay, prejudice to the opposing party, and/or futility." *Griggs v. Pace Am. Grp.,* 170 F.3d 877, 880 (9th Cir. 1999) (citation omitted). "[T]he Court's discretion to deny leave to amend is particularly broad in cases such as this one, where a plaintiff has previously filed an amended complaint." *Davis v. Westgate Planet Hollywood Las Vegas, LLC*, 208CV00722-RCJ-PAL, 2010 WL 11578755, at *3 (D. Nev. Jan. 27, 2010). A court in this District denied leave to amend where plaintiff attempted to being new claims premised on the same initial facts, and provided no "explanation for why these claims were not asserted in the initial Complaint." *Stegmaier v. City of Reno*, 3:13-CV-00461-MMD, 2015 WL 4773711, at *6 (D. Nev. Aug. 13, 2015).

Here, retroactive leave to amend is inappropriate because the timing suggests bad faith, Plaintiff unduly delayed adding the new claims, the County will be prejudiced by

substantially expanded litigation, and the claims are futile.

**i. The Timing and Nature of the New Claims Suggests Bad Faith.**

The Ninth Circuit has recognized that asserting "new but baseless legal theories" may support an inference of bad faith. *Griggs,* 170 F.3d at 881. The bad faith factor weighed in favor of denying leave where plaintiff sought to add new claims eleven months after the initial complaint based on the same underlying facts, and failed to "provide a legitimate reason" for the delay in seeking leave. *Eisenacher v. BMW of N. Am., LLC*, 2:17-00984-ODW JCX, 2018 WL 8131219, at *3 (C.D. Cal. Feb. 2, 2018).

Here, Plaintiff affirmatively argues that Claims 3, 12, 13, and 14 arise from facts already pleaded in the FAC. (ECF No. 73 at p. 7, lns. 5–16). Plaintiff likewise offers no explanation for her withholding these new liability theories until after the Court dismissed the FAC. *See id.* at pp. 6–8. Plaintiff filed her initial Complaint on January 31, 2025. (ECF No. 1). In May 2025, Plaintiff exercised her ability to amend as a matter of course but chose not to include these new theories despite having knowledge of the same facts. *See* (ECF No. 10). Plaintiff brought forth Claims 3, 12, 13, and 14 for the first time on August 17, 2026, nearly eighteen months after her initial Complaint. (ECF No. 66). The combination of Plaintiff's reliance on known alleged facts, having already amended her pleading, an intervening adverse ruling on the FAC, subsequently alleging four new causes of action, and providing no explanation for her earlier failure to allege those claims support an inference of tactical amendment, i.e. bad faith. *See Eisenacher*, 2018 WL 8131219, at *3. At minimum, Plaintiff's unexplained post-dismissal repackaging of theories available long before the SAC weighs strongly against granting retroactive leave.

**ii. Plaintiff Unduly Delayed Seeking Leave to Add New Claims Based on Facts and Theories Long Known to Her.**

"Late amendments to assert new theories are not reviewed favorably when the facts and the theory have been known to the party seeking amendment since the inception of the cause of action." *Acri v. Int'l Ass'n of Machinists & Aerospace Workers*, 781 F.2d 1393, 1398 (9th

Cir. 1986). In assessing delay, courts review the time between plaintiff's discovery of the underlying facts and plaintiff's attempt to amend her complaint. *Eisenacher*, 2018 WL 8131219, at *2. "[T]he Ninth Circuit has held both a six-month and eight-month delay to be unreasonable." *Id.* A court found there was undue delay weighing against granting leave where new proposed claims were based on the same underlying facts and plaintiff waited eleven months to seek leave to amend. *Id.* at *3.

Here, Plaintiff attempts to reset the clock to June 11, 2026 Dismissal Order, emphasizing that no scheduling order imposed an amendment deadline. (ECF 73 at p. 8, lns. 8–17). Rejecting a similar argument, one court noted that plaintiff "misunderstands the relevant amendment standard," which looks at when the party knew or should have known the underlying facts. *Hutchinson v. Lausell*, 672 F. Supp. 43, 46 (D.P.R. 1987) (finding undue delay where plaintiff waited eight months after filing the initial complaint and after dismissal motions were pending to seek leave to amend); *see also Eisenacher*, 2018 WL 8131219, at *2. Plaintiff admits that the new claims are based on the same underlying facts. (ECF No. 73 at p. 7, lns. 5–16). Yet, she waited almost eighteen months from the initial Complaint to assert them. *See* (ECF No. 1); (ECF No. 66). The Court should find that Plaintiff's unexplained near eighteen-month delay weighs against granting retroactive leave.

**iii. The New Claims Expand the Litigation and Thus Prejudice the County.**

Prejudice can exist where an amendment materially alters the litigation or requires the defendant to undertake a new course of defense. *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990); *see also Wehlage v. EmpRes Healthcare Inc.*, 2012 WL 380364, at *2 (N.D. Cal. Feb. 6, 2012) (prejudice commonly arises from new allegations requiring additional discovery or delaying resolution). "[T]he mere fact that the parties are still conducting discovery is not a dispositive issue when considering a motion for leave to file an amended complaint." *Eisenacher*, 2018 WL 8131219, at *3.

Here, Plaintiff narrowly defines prejudice, arguing the County cannot be prejudiced because the new claims are based on the same alleged facts, add no new party, and the County

already moved to dismiss them. (ECF No. 73 at p. 7). However, notice of the underlying alleged facts is not the same as notice of distinct causes of action requiring different elements, defenses, and discovery. Claim 12, Section 1983 First Amendment Retaliation, places at issue whether Burgess spoke as a private citizen rather than pursuant to her duties and whether County officials possessing final policymaking authority caused or ratified the challenged conduct. (ECF No. 66 at ¶¶251–64). Claim 13, Section 1983 Due Process, separately requires litigation concerning alleged stigma, entitlement to a name-clearing hearing, final policymaking authority, and Board of County Commissioner ratification. *Id.* at ¶¶266–74. Claim 3, ADA Medical Disclosure, requires additional litigation burdens into what constitutes "medical information" and unlawful disclosure under that statute. *Id.* at ¶¶163–64. Claim 14 adds yet another privacy theory. *Id.* at ¶¶276–83. That the County has already expended substantial litigation resources researching case law and drafting its dismissal arguments on the new claims shows that there has and will continue to be prejudice. Availability of discovery does not eliminate this prejudice. *See Eisenacher*, 2018 WL 8131219, at *3. Requiring County Defendants to undertake substantially expanded defense burden for claims Plaintiff could have asserted much earlier goes against granting retroactive leave.

**iv. The Four New Claims are Futile**.

"Futility of amendment can, by itself, justify the denial of a motion for leave to amend." *Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995), *superseded by statute on other grounds*. As set forth below, the new claims are futile. (ECF No. 70 at pp. 26–31, 34–35). The Court should find that futility warrants denying retroactive leave to amend Claims 3, 12–14.

**a. Claim 3, the Medical Disclosure Claim, Is Futile.**

In addition to the existing dismissal arguments for the medical disclosure claim (ECF No. 70 at pp. 26–27), the claim is futile because vague references to "medical leave" and "stress-related health issues" are not medical disclosures, the disclosures arose from voluntary information rather than a medical inquiry, and it does not plausibly allege injury.

First, the County's statements: September 25, 2024 (Plaintiff experienced "stress

related health issues" and was on leave for "self-care") and October 31, 2024 (that Plaintiff was initially on leave for "medical reasons"), do not contain specific "medical information" protected under the ADA. (ECF No. 66 at ¶48, ¶51). The Fourth Circuit, analyzing 42 U.S.C. § 12112(d), found that an EAP psychologist disclosed only *nonmedical* information when she disclosed to plaintiff's supervisors that plaintiff's difficulties getting to work were "the result of lack of motivation, not related to depression." *Hannah P. v. Coats*, 916 F.3d 327, 341–42 (4th Cir. 2019). Disclosures that stated a claim include an employee's diagnosis or medications. *See Pollard v. City of Northwood,* 161 F.Supp.2d 782, 793 (D. Ohio 2001) (City Administrator's press statement that he "did not want an officer on Prozac walking around with a gun" could constitute "a disclosure of the results of [a medical] evaluation"); *Pouliot v. Town of Fairfield*, 184 F. Supp. 2d 38, 45–46, 54 (D. Me. 2002) (finding statement "that medication [plaintiff] had been taking to control his diabetes had clouded his judgment" and contributed to mismanage of funds stated a claim). Claim 3 is futile because it does not allege any specific medical information such as a diagnosis or prescription medication.

Next, the vague information above arose from voluntary disclosures. The SAC alleges that the County "never requested medical documentation for the purpose of evaluating an accommodation." (ECF No. 66 ¶69). It also alleges that on September 23rd, Plaintiff told the ROV staff that the County Manager informed Plaintiff that leave was her only option. *Id.* at ¶75. As set forth in the dismissal motion, this does not plausibly allege a claim.

Lastly, Claim 3 is independently futile because Plaintiff fails to plausibly allege a tangible injury caused by the alleged disclosure. For an ADA medical-confidentiality claim, the disclosure must have caused "some kind of tangible injury." *McCarthy v. Brennan*, 230 F. Supp. 3d 1049, 1065–66 (N.D. Cal. 2017) (quoting *McPherson v. O'Reilly Auto., Inc.*, 491 F.3d 726, 732 (8th Cir. 2007)). Here, Plaintiff's claim contains only conclusory allegations that the disclosures caused "emotional and psychological harm," damage to her professional standing, "loss of employment and career opportunities," humiliation, and vocational and financial damages. (ECF No. 66 at ¶169). Plaintiff does not identify a job she lost because of

the disclosure, an employer or other person who acted against her because of it, or any financial loss attributable to the disclosure rather than the other employment actions challenged throughout the SAC. This falls short of plausibly alleging injury.

**b. The First Amendment Retaliation, Claim 12, is Futile.**

In addition to the Motion to Dismiss arguments (ECF No. 70 at pp. 27–29), the claim is futile because it fails to allege *protected* speech even if it were private speech. The First Amendment protects a public employee from retaliation only for speech on a matter of public concern. *Greisen v. Hanken*, 925 F.3d 1097, 1109 (9th Cir. 2019). Whether speech substantially involves a matter of public concern is a question of law for the court. *Id.* "[S]peech that deals with 'individual personnel disputes and grievances' and that would be of 'no relevance to the public's evaluation of the performance of governmental agencies' is generally not of 'public concern.'" *Coszalter v. City of Salem*, 320 F.3d 968, 973 (9th Cir. 2003) (cit. omitted).

The SAC alleges that Plaintiff expressed the following to the Associated Press: she felt she was forced out, she declined personnel changes as interim ROV, she offered to step down to Deputy ROV but was told it was not possible and was required to request leave in September 2024 contrary to her wishes. (ECF No. 66 at ¶252). These statements address Plaintiff's treatment by her employer. They do not expose any governmental wrongdoing such as misuse of public funds, nor inform the public of the County's election operations for the 2024 General Election. *See id.* Plaintiff likewise could not have provided information of public concern because she spoke to the Associated Press nearly month after she was on leave. *See id.* At the time Plaintiff spoke, *she did not have any firsthand knowledge of the status of any County elections operations* such as the elections procedures and voting-system integrity operations being employed by ROV staff. While the simple fact that the Plaintiff was on leave but the County was committed to running a fair election is of public concern, Plaintiff's statements beyond that reflect her individual personnel grievances "and an attempt to turn that displeasure into a cause celèbre." *See id.*; *Connick v. Myers*, 461 U.S. 138, 148 (1983). Retroactive leave to add Claim 12 is thus futile.

**c. The Due Process Name-Clearing, Claim 13, is Futile.**

In addition to the defects identified in the Motion to Dismiss that the Due Process claim fails for lack of plausible *Monell* allegations or sufficiently stigmatizing statements (ECF No. 70 at pp. 27–31), the claim is further futile as set forth herein. First, it is futile because the Plaintiff cannot plausibly contest the accuracy of the statements: that Plaintiff was under performance investigation, it was ongoing in early February 2025, and that she lacked authority to execute contracts. *See* (ECF No. 66 at ¶267); *Perry v. City of Orofino*, 2025 WL 2223416, at *8 (D. Idaho Aug. 5, 2025) (identifying "the accuracy of the charge is contested" as a basic element of the claim). The SAC includes a heading titled "The County's Investigation of Plaintiff," alleges she was terminated on February 12, 2025, and acknowledges that "The investigation into Plaintiff began no later than October 4, 2024." (ECF No. 66 at p. 25, ln. 25; ¶1; ¶124). Nevada law, County Code, and the staff report appointing Plaintiff to interim ROV also show that Plaintiff was never delegated blanket authority to execute contracts. NRS. 244.143(2)(e); NRS 244.146; WCC 15.490; (ECF No. 70-5). The Due Process claim is futile because Plaintiff cannot plausibly contest the accuracy.

Additionally, Claim 13 is futile because Plaintiff does not allege that she requested opportunity to clear her name that the County denied. To state a Due Process liberty claim, plaintiff must plausibly allege that "the employer has denied the employee's request for a name-clearing hearing." *Perry*, 2025 WL 2223416, at *8 (citing *Tibbetts v. Kulongoski*, 567 F.3d 529, 536 (9th Cir. 2009)); *Quinn v. City of Vancouver*, C17-5969 BHS, 2021 WL 4190949, at *4 (W.D. Wash. Sept. 15, 2021) ("[Plaintiff's] failure to request a name-clearing hearing is fatal to her Fourteenth Amendment claim…"). "[A] plaintiff who fails to allege that he has requested a hearing and was denied the same has no cause of action, whether or not he had been informed of a right to a hearing before filing suit." *Quinn v. Shirey*, 293 F.3d 315, 324 (6th Cir. 2002) (affirming dismissal). The Eighth Circuit explained as follows:

> Nothing in our jurisprudence suggests that a government employee can legitimately sue for deprivation of the right to a post-termination hearing where he never asserted the right before suing for damages. Allowing an employee to claim damages for

> being deprived of a hearing never requested would greatly expand government employers' potential liability and force such employers prophylactically to offer name-clearings when it is not at all clear that the employee is entitled to—or even desires—one. It would also reward employees for lying in wait and later asserting a right that the employer had no reason to suspect the employee wanted to exercise in the first place.

*Winskowski v. City of Stephen*, 442 F.3d 1107, 1111 (8th Cir. 2006).

Here, the SAC does not allege that Plaintiff ever made such a request, or that the County denied one. *See* (ECF No. 66 at ¶¶266–74). It alleges that Plaintiff asked for the allegations underlying the internal performance investigation, requested a recording or transcript of her investigation interview, and later requested investigation materials. *Id.* ¶272. It then alleges that the County never "offered" a hearing and, for the first time, "demands a name-clearing hearing in this action." *Id.* Requests for documents and information are not requests for an opportunity to clear Plaintiff's name or that the County denied that request. The claim is thus futile because it does not plausibly allege that Plaintiff asked the County for an opportunity to clear her name and was refused.

**d. Invasion of Privacy-Public Disclosure of Private Fact**

In addition to the existing dismissal arguments, (ECF No. 70 at pp. 34–35), this claim is futile. Nevada looks to the Restatement to analyze an Invasion of Privacy claim, which requires public disclosure of private facts "which would be offensive and objectionable to a reasonable person of ordinary sensibilities." *Montesano v. Donrey Media Group*, 99 Nev. 644, 649, 668 P.2d 1081, 1084–85 (1983). There is no liability for public disclosure of private facts when the defendant merely gives further publicity to information about the plaintiff that is already public." *Dinkins v. Schinzel*, 362 F. Supp. 3d 916, 929 (D. Nev. 2019).

First, the claim based on the County Manager's September 24th communication with County Commissioners fails because it was not publicized. *See* (ECF No. 66 at ¶278). There is no "public" disclosure when facts are shared to a small group of people rather than the public at large. *Kuhn v. Account Control Tech., Inc.*, 865 F. Supp. 1443, 1448 (D. Nev. 1994). The elected County Commissioners is a small group of people, thus publication is absent.

Next, the claim based on the County's September 2024 press release (stress related health issues and requested self-care leave at County Manager's recommendation), is futile. *See* (ECF No. 66 at ¶278). To be actionable, the statement must not be "of legitimate concern to the public." Restatement (Second) of Torts § 652D (1977). The SAC acknowledges that Plaintiff's leave, as the chief election official on leave shortly before the presidential election, "was of substantial public interest." (ECF No. 66 at ¶259). Moreover, the statement is not highly offensive to a reasonable person. *See Mark v. City of Hattiesburg*, 362 So. 3d 1099, 1109 (Miss. Ct. App. 2019), *aff'd*, 2016-CT-01638-SCT, 2020 WL 581910 (Miss. 2020) (affirming directed verdict on claim based on disclosure of employee's breast cancer diagnosis and surgery, which was not highly offensive to a reasonable person); *Walters v. Young Women's Christian Ass'n,* 172 Wash. App. 1032 (2012) (finding media statement that board president resigned citing medical reasons was not highly offensive to a reasonable person).

The claim arising out of the October 31, 2024 statement is futile because even if it was a "private fact," Plaintiff herself already publicized its content. *See* (ECF No. 66 at ¶278). By then, Burgess publicly disputed the circumstances of that leave in her October 23 A.P. interview. *See id.* at ¶252; (ECF No. 15-5 at pp. 2, 7). The AP reported Plaintiff's contention that she had been "forced out," had been required to request leave despite wanting to remain, had obtained a doctor's note clearing her to return, and was using sick and vacation time. *Id.* The October 31st statement did not newly expose a private fact merely by describing her initial leave as being for "medical reasons" and is futile. *Id.*; *Dinkins*, 362 F. Supp. 3d at 929.

**III. CONCLUSION**

The Court should strike Claims 3, 12, 13, and 14, which Plaintiff added without explicit leave. Alternatively, the Court should deny Plaintiff's belated request for leave to add them under Rule 15 based on undue delay, apparent bad faith, prejudice, and futility.

Dated this 1st day of October 2026.

By /s/ Lindsay L. Liddell
LINDSAY L. LIDDELL
Deputy District Attorney
ATTORNEY FOR WASHOE COUNTY

**CERTIFICATE OF SERVICE**

Pursuant to FRCP 5(b), I certify that I am an employee of the Office of the District Attorney of Washoe County, over the age of 21 years and not a party to nor interested in the within action. I certify that on this date, the foregoing was electronically filed with the United States District Court. Electronic service of the foregoing document shall be made in accordance with the Master Service List as follows:

HAWAH SAFA AHMAD

Dated this 1st day of October, 2026.

By /s/ S. Haldeman
S. Haldeman