LINDSAY L. LIDDELL
Deputy District Attorney
Nevada State Bar Number 14079
One South Sierra Street
Reno, NV 89501
lliddell@da.washoecounty.gov
(775) 337-5700
ATTORNEY FOR WASHOE COUNTY

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

* * *

| | |
|---|---|
| CARI-ANN P. BURGESS,<br><br>Plaintiff,<br>vs.<br><br>WASHOE COUNTY,<br><br>Defendant. / | Case No. 3:25-cv-00065-NJK<br><br>**REPLY IN SUPPORT OF MOTION TO DISMISS SAC**<br><br>(ECF No. 70) |

Defendant Washoe County ("County") hereby files its Reply in Support of Motion to Dismiss Second Amended Complaint (ECF No. 70).

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

For a chief elections administrator, there is little room for error and no room to fall short of their statutory duties. Burgess brushes off her failures or asks the Court to ignore them. The ADAAA claims are not viable because Burgess was not qualified, nor can she plausibly allege causation for any discrimination, interference, or retaliation claim given the several performance errors alleged in the SAC, previously alleged, and judicially noticeable. The Opposition also shows that the center of the failure to accommodate claim is a dispute over Burgess's preferred accommodation, which does not state a claim even if she was disabled and qualified. The Opposition also fails to show that there is any plausible medical disclosure claim. Dismissal for those claims is appropriate for the disability claims.

The Section 1983 claims fail to allege *Monell* liability, plausible First Amendment Retaliation, or a plausible liberty interest. Also, as Burgess requests, the Court should decline supplemental jurisdiction over the state law claims. (ECF No. 76 at p. 29 ln. 12).

## II. LEGAL ANALYSIS

### A. THE FAC IS RELEVANT IN THE SAC'S PLAUSIBILITY ANALYSIS.

The Court may consider Burgess's prior allegations for its *Twombly/Iqbal* plausibility analysis. The Opposition relies on *PAE Gov't Serv., Inc. v. MPRI, Inc.*, 514 F.3d 856, 858 (9th Cir. 2007), but it addressed whether a court can *strike* allegations absent Rule 11 findings. *See* (ECF No. 76 at p. 8). Courts can consider the prior allegations in the "context-specific" Rule 12(b)(6) plausibility inquiry. *See Pac. Recovery Sols. v. United Behavioral Health*, 508 F. Supp. 3d 606, 614–15 (N.D. Cal. 2020) (dismissing claim, refusing to consider new conclusory and contradictory allegations that replaced deleted allegations); *McKenna v. WhisperText*, 5:14-cv-00424-PSG, 2015 WL 5264750, at *3 (N.D. Cal. Sept. 9, 2015) (dismissing amended claim where it "neither denies nor contradicts earlier allegations that defeated the claim); *Morales v. City & Cnty. of San Francisco*, 603 F. Supp. 3d 841, 846–47 (N.D. Cal. 2022); *Gomez v. Unite US Inc.*, CV-25-03778-PHX-SHD, 2026 WL 2686759, at *4 (D. Ariz. Sept. 14, 2026) (dismissing claim, finding that "a court need not ignore prior allegations when assessing the plausibility… and thus need not accept a later, contradictory allegation as true, especially when the plaintiff supplies no additional facts reconciling the inconsistency.").

Here, the Court should consider Burgess's FAC allegations for plausibility. The FAC alleged that starting June 2024, she was bullied, harassed, and her overtime was questioned; a June 2024 County Commissioner "verbal altercation" demanding her perfection; the August 2024 Commission Chair's personal request that Ms. Thomas "oversee" the ROV; Ms. Thomas was upset over voter deactivations; stress and anxiety were "caused by the job," in August 2024, the Commission considered a juris doctorate ROV qualification; on September 24, 2024, her disability was "resolved" when she received a "medical clearance" from a nurse practitioner, the County's media statements were to "retaliate for her coming forward regarding specific voting issues;" and the County discriminated against Burgess because she voiced concerns over the voting system. (ECF No. 10 at ¶¶46–51, 61, 68-69, 80, 100–01, 110, 130, 133, 175–76, 193, 210). While the SAC replaces the FAC, these allegations are relevant.

### B. The Disability discrimination Claims Should be Dismissed.

#### 1. Disability.

Burgess argues she plausibly alleged actual disability; that she plausibly alleged record of disability because of its broad definition, her leave request, and her return-to-work medical clearance; and regarded as disabled because she received stress leave and her disability was not minor. (ECF No. 76 at pp. 12–15). Even if Burgess had an actual disability despite contradicting the FAC, the SAC fails to plausibly allege "record of" disability or "regarded as" disabled. Burgess effectively equates record of any impairment with record of a *substantially limiting* impairment, which is improper. *See* (ECF No. 76 at p. 13). The Court can exercise common sense: stress, anxiety, and high blood pressure in a high-level job do not automatically mean substantial limitation in a major life activity. The SAC fails to plausibly allege "record of" disability. With "regarded as" disabled, Burgess argues that though the health issues were transitory, they were not minor. However, "minor" is not defined, and common sense suggests they were minor. They were not major surgeries, cancer remissions, or substantial issues. The Court should dismiss with prejudice the "record of" and "regarded as" theories.

#### 2. Burgess's Lack of Qualification is Dispositive.

Burgess argues she was qualified because she ran several elections, the County Manager told her she was "doing a good job," and her performance deficits are factual disputes. (ECF No. 76 at pp. 15–17). Her errors in administering elections are properly considered here, and show that she was not qualified. Her violations of law are not as minuscule, for example, as a park maintenance employee failing to clean up excess foliage or garbage that amounted to violation of a local nuisance ordinance. Apart from failing to allege certifications or comparable experience running elections for County with roughly 500,000 residents, the errors Burgess demonstrated during her brief tenure as ROV shows she is unqualified.

Burgess violated the National Voting Rights Act ("NVRA") and Nevada law regarding voter deactivation. The SAC deleted FAC allegations that defeated the qualification element: 14,000 inactive voters were not deactivated by the statutory deadline, August 7, 2024. (ECF

No. 10 at ¶¶84, 88, 90); 52 U.S.C. § 20507(c)(2)(A). As ROV, she had failed to comply with her legal duty to designate voters as inactive who fail to return ROV-distributed postcards within 90 days before an election. *Id.*; NRS 293.530 (1)(f); NRS 293.503 (4). The NVRA reflects the view of Congress that the right to vote 'is a fundamental right,' that government has a duty to 'promote the exercise of that right,'... *Project Vote/Voting for Am., Inc. v. Long*, 682 F.3d 331, 334 (4th Cir. 2012). That Burgess later learned of her error, or that another county ROV may have missed it, does not excuse her error to plausibly allege qualification. This error is substantial and can affect election integrity in distributing ballots to inactive voters, and public confidence in elections as reflected by the alleged public commenter. *See* (ECF No. 10 at ¶84).

Additionally, *Ribar* is properly subject to required Rule 201 judicial notice, including the uncontested fact therein that the June 2024 primary sample ballot was defective, omitting an entire race. *Ribar v. Washoe Cnty.*, Nevada Sup. Ct. case no. 88901, 2024 WL 3665320, at *1-2 (Nev. Aug. 5, 2024). Burgess was a defendant in that case, and cannot reasonably dispute that the sample ballot omitted an entire race. *Id.* Nevada law requires the ROV to distribute sample ballots to voters, and that all candidates appear on the ballot. NRS 293.257(1), (5); NRS 293.097; NRS 293.2546(7) (declaring that voters have a right to accurate sample ballots). In distributing a deficient sample ballot, Burgess failed to uphold the law.

Third, Burgess's attempts to arrange for illegal unofficial ballot drop boxes shows she is unqualified in failing to follow ROV legal duties and understand election law. While Burgess attempts to shift responsibility for the unlawful ballot box initiative as a County Manager directive, Burgess as ROV held legal responsibility to ensure any ballot boxes complied with the law. *See* NRS 293.269921(3)–(5), NRS 293.3561–3564, NRS 293.3572(4); Nev. Admin. C. 293.347–352. As the FAC alleges, the unofficial boxes were for "parish ballot collection," not for ROV staff's initial collection, contrary to the law restricting drop boxes to ROVs, requiring county seals/numbers on them, ROV security measures, and specific retrieval rather than ad-hoc parish members. *See* (ECF No. 10 at ¶24); NRS 293.269921(3); Nev. Admin. C. 293.347(1)(a), 293.349, 293.352 (2). Even if the County Manager instructed Burgess to assist in

this scheme, it was Burgess's duty to tell him no and not blindly comply.

Burgess cannot escape the legal duties imposed on her as interim ROV. She violated those duties, three instances of which can be considered here and which independently show she was not plausibly qualified. Dismissal with prejudice is warranted on that basis.

**3. Burgess Does Not Plausibly Allege Causation for Discrimination.**

The Opposition relies on chronology to argue plausible but-for causation. (ECF No. 76 at pp. 17–19). It also argues that multiple explanations are plausible and thus the claim is viable, relying on a case that addressed Section 1983's proximate cause standard rather than but-for or sole cause applicable to ADAAA and the R.A. *See id.* at p. 19 ln. 2; *Starr v. Baca,* 652 F.3d 1202, 1216 (9th Cir. 2011). Even so, *Starr* noted that "Plaintiff's complaint may be dismissed only when defendant's plausible alternative explanation is so convincing that plaintiff's explanation is *im* plausible." *Id.* at 1216. "But-for causation means that a particular cause was 'outcome determinative.'" *Akridge v. Alfa Ins. Co.*, 93 F.4th 1181, 1200 (11th Cir. 2024).

The Opposition ignores that the SAC and FAC alleged management concerns of Burgess's performance beginning months prior to any disability disclosure and adverse act. *See* (ECF No. 70 at p. 17 lns. 4-18). As the ROV, Burgess was tasked with administering the County's elections fairly, accurately, and in accordance with law. *See* NRS 244.164(2); NRS Ch. 293. The concerns here involve Burgess's violation of election law, a matter so severe that it renders Burgess's explanations implausible. For example, when an elections supervisor made an error affecting election administration, failing to screen out 100 untimely ballots, with Title VII's lesser standard, a court found no reasonable jury could find discriminatory causation. *Bowen v. Bd. of Election Comm'r of City of Chicago*, 16 C 217, 2017 WL 3334854, at *5 (N.D. Ill. Aug. 4, 2017). The Board was "entitled to adopt more stringent disciplinary policies for workplace violations involving election administration than those involving garden variety misconduct like insubordination." *Id.* at *7. Here, Burgess's abdication of her legal duties is clearly alleged in the SAC (ballot boxes), the FAC (voter deactivations), and the judicially noticeable *Ribar* case (legally deficient sample ballot). As such, the Court can consider them at the Rule 12 stage.

These errors affect election administration and reflect Burgess's failure to uphold election law. They render any discriminatory explanation implausible, particularly where the County's discovery of Burgess's voter deactivation failure occurred in days *prior* to Burgess's disability disclosure to anyone other than Manager Brown and her leave. (ECF No. 66 at ¶59).

The October 4th letter is properly incorporated by reference, Burgess does not object, she acknowledges that the SAC relies on it. (ECF No. 76 at p. 11 lns. 11–16). Burgess may dispute those accusations contained in that letter, but it nonetheless shows that the County believed there were substantial non-discriminatory performance issues, including the unofficial drop boxes and voter deactivation issues. (ECF No. 70-3 at p. 2). The sworn EEOC charges, one of which is an SAC exhibit, identify additional nondiscriminatory bases, which Burgess asks the Court to ignore. *See* (ECF No. 76 at pp. 10–11). In Burgess's own words, her treatment occurred for not reporting to Ms. Thomas, refusal to violate state policies on the voter system, and placed on leave because she exercised her First Amendment right (ECF No. 66-1 at p. 6); (ECF Nos. 70-1 at p. 1; 70-2 at p. 1). Merely identifying disability as one of several possible motives does not plausibly allege outcome determinative but-for causation. The SAC does not plausibly allege that any adverse action would have occurred in the absence of Burgess's "disability." The Court should dismiss the discrimination claims with prejudice.

### C. THE FAILURE TO ACCOMMODATE THEORY FAILS AS A MATTER OF LAW.

Burgess relies on the SAC's conclusory allegation to argue failure to accommodate. *See* (ECF No. 76 at p. 19 ln. 22). Burgess misunderstands the accommodation timeframe, to the extent it exists. Once cleared to work without restriction as of October 7th, there is no logical need for accommodation. *See id.* at p. 20, lns. 12-20; *see also Ulloa v. Nevada Gold Mines*, 3:21-CV-00495-RCJ-CSD, 2024 WL 728696, at *11 (D. Nev. Feb. 22, 2024), *aff'd sub nom.*, 2025 WL 2028307 (9th Cir. July 21, 2025) (finding no claim where plaintiff was placed on paid leave, and leave was extended during a misconduct investigation, even though it may not have been plaintiff's preferred accommodation). After Burgess's "medical clearance," she was on paid administrative leave pending investigation. (ECF No. 6 at ¶¶124, 134). Burgess's paid leave

was a reasonable accommodation as a matter of law, and Burgess cannot state a claim based on her preferred accommodations. Dismissal with prejudice is appropriate.

### D. The Retaliation Claim Should be Dismissed with Prejudice.

First, Burgess appears to acknowledge her return-to-work request was not protected activity. (ECF No. 76 at p. 21 at lns. 11-13); (ECF No. 70 at p. 13 lns. 24-27). Next, she relies on temporal proximity, but the question is outcome-determinative but-for causation. *See* (ECF No. 76 at pp. 21-25). Burgess's paid leave is not an adverse act. *Richards v. City of Citrus Heights*, 2:20-cv-02159, 2022 WL 866164, at *5 (E.D. Cal. Mar. 22, 2022) (analyzing ADEA). Close timing does not plausibly establish but-for causation where the allegedly retaliatory course of conduct was already underway. *See Kelly v. Town of Abingdon*, 90 F.4th 158, 169 (4th Cir. 2024).

As set forth in the above causation section, initiating an investigation arose and the resulting consequences followed Burgess's significant legal errors. Any close-in-time accommodation requests for her stress do not plausibly establish but-for causation for the act of initiating an investigation. Ms. Thomas's concerns, particularly with the September 17th discovery of the voter deactivations failure, began *before* Thomas's knowledge of protected activity. Burgess's legal errors, the investigation, and firing provide the only plausible but-for causation. Taking away each protected activity, none are plausibly outcome determinative.

The communications regarding Burgess's inability to execute contracts lack plausible causation, even if they were adverse acts. Burgess is not relieved of pleading facts showing that a protected activity independently caused County staff to contact a vendor regarding contract terms and Burgess's lack of authority to execute them. Nevada law prohibits county officers from executing contracts unless ordered by County Commissioners, and County Code orders the Purchasing Manager to execute contracts under $300,000. NRS 245.070; WCC 15.490; (ECF No. 70-5[1]). She does not allege that the County's Buyer, who is tasked with contracts

[1] While Burgess "objects" to considering the BCC staff report contents, she does not provide any reasonable dispute so as to prevent judicial notice. *See* (ECF No. 76 at p. 11 lns. 11–14). More importantly, the SAC uses the staff report appointing Burgess to form the basis of her

(WCC 15.490), had knowledge of Burgess's alleged protective activity or retaliatory motive in addressing contract issues.[2] *See* (ECF No. 66). The only non-conclusory motive alleged is that the communication was to terminate the contract early. *Id.* at ¶98.

Burgess's pretext arguments are disjointed, and do not show plausible causation. *See* (ECF No. 76 at pp. 23–24). The County Manager informed the County Commission of the issues with Burgess's performance (ECF No. 66 at ¶¶46, 50); Burgess was only on paid leave, for which no Commission consent is required (*Id.* at ¶73); the H.R. Director was involved in any accommodation and workplace issue conversation directly with Burgess (*Id.* at ¶¶66-67); she was not subject to the policy at the time she was fired (*Id.* at ¶¶94, 122); and Burgess now acknowledges she received a summary of findings before her firing (ECF No. 77 at ¶5). The later October press statement that she was on leave pending investigation does not plausibly allege pretext given that it followed Burgess's Associated Press statement (*see* ECF No. 10 at ¶¶148–49) wherein Burgess stated she was forced out (ECF No. 66 at ¶252) and its context being a few weeks leading up to the 2024 General Election.

Additionally, as with the discrimination claims, the Court should consider the EEOC charges. In the SAC's charge exhibit from December 2024, Burgess swears that she was retaliated after she addressed "procedural issues" with staffing and she refused access to voter systems that were outside of staff's scope. (ECF No. 66-1 at p. 5).

Overall, Burgess does not and cannot plausibly allege outcome-determinative but-for causation for her retaliation claims. By including non-protected activity bases, as well as Burgess's alleged and judicially noticeable failures to uphold legal duties, any amendment is futile. The retaliation portions of the disability claims should be dismissed with prejudice.

---

claims, including retaliation, Section 1983 Due Process, and state tort claims. (ECF No. 66 at ¶¶98, 106, 267, 270). It is thus incorporated by reference into the SAC.

[2] Burgess argues that the Motion's vendor statement exhibit skips bates numbers and thus "cannot establish the truth of the vendor statements." (ECF No. 76 at p. 11, lns. 23-24). Though Burgess has the skipped bates numbers, to the extent she attempts to dispute the emails based on this: the missing bates numbers include only the email's attached contract, and correspondence with the ROV attorney, irrelevant pages. *See* Ex. 1. The full emails show that Burgess provides no basis to dispute the prior exhibit. *See id.*; (ECF No. 70-4).

### E. The interference Claim Should Be Dismissed with Prejudice.

The Opposition stretches *Brown v. City of Tucson*, 336 F.3d 1181, 1193 (9th Cir. 2003), which involved threats to not exercise rights (medication and night-time work) otherwise face consequences, and is inapplicable. *See* (ECF No. 76 at p. 25). Here, Burgess requested reassignment, the County declined that request, and gave her paid leave. (ECF No. 6 at ¶¶60,63, 66, 83, 85). Requiring a written leave request does not plausibly allege that Burgess was forced to surrender an ADA right, particularly where she is not entitled to her preferred accommodation. A dispute over which accommodation should be provided does not become a separate interference claim merely by labeling the employer's decision "coercion." *Santos v. Cnty. of Humboldt*, 22-CV-07485-RMI, 2023 WL 2600449, at *4 (N.D. Cal. Mar. 21, 2023). Likewise, the October 4th letter prohibited Burgess from speaking with County staff, media, and others, which does not address an ADA right. (ECF No. 6 at ¶73). Burgess nevertheless continued to seek accommodation and later filed EEOC/NERC charges, which the County neither interfered with nor coerced her to do anything related to that.

### F. The Medical Disclosure is Subject to Dismissal With Prejudice.

The Opposition does not cure the central defect in Claim 3. Section 12112(d)(4)(C) protects medical information obtained through a covered examination or inquiry. The September 24 communication to County Commissioners, her supervisors, nonetheless preceded the September 25th H.R. meeting. (ECF No. 66 at ¶¶46, 66). The September 25th press statement included voluntary information: that Burgess was experiencing stress-related health issues, and that she requested leave at the County Manager's recommendation. *Id.* at ¶48, 75 ln. 12; *see also* (ECF No. 10 at ¶¶108, 118, 120, 122). The October 31st press statement included only the general statement that Burgess was initially on medical leave, and did not include any information from her "medical clearance" letter, or the fact that she was cleared, any diagnosis, or specific treatment information. (ECF No. 66 at ¶51, 78). The SAC does not plausibly allege that the County's "disclosures" included any information from a covered inquiry. Claim 3 should therefore be dismissed with prejudice.

### G. The Section 1983 Claims Should be Dismissed with Prejudice.

The two claims at issue are a Due Process liberty interest name-clearing hearing and a First Amendment Retaliation claim (not a restraint claim). *See* (ECF No. 66 at ¶¶251–75). The claims initially fail because they do not plausibly allege *Monell* liability, relying on conclusory policymaking and ratification allegations. Burgess argues that *Barone v. City of Springfield, Oregon*, 902 F.3d 1091, 1107 (9th Cir. 2018), supports her *Monell* argument, but that case only analyzed a specific city's charter. The test instead looks to whether an official as policymaking authority in a particular issue or area. *Lytle v. Carl*, 382 F.3d 978, 983 (9th Cir. 2004). To ratify a subordinate's actions, the policymaking official must both have notice of the actions *and the basis for it*. *Id.* at 987. Merely failing to overrule a subordinate is insufficient. *Id.* Here, neither the SAC nor the Opposition identify any policymaking authority for the County Manager on its press statements or specifically ratified them. It likewise does not allege authority on whether to substantiate investigation findings, or ratifying any decision knowing it was based on Burgess's alleged speech. Notwithstanding, the Section 1983 claims otherwise fail as set forth below. The Court should dismiss these claims with prejudice as amendment is futile.

#### 1. First Amendment Retaliation

The Opposition focuses on Burgess's status as a speaker, but does not meaningfully address the protected speech and causation elements. *See* (ECF No. 76 at pp, 28-29). The SAC and FAC allege Burgess was a department head whose connection to the Associated Press article arose from a County-approved arrangement. *See* (ECF No. 70 at p. 29). Though it is a question of fact, it is one that Burgess alleged. She was not speaking in her private capacity. *See id.* Nevertheless, the speech was not protected, nor is causation plausibly alleged. The speech involved details of Burgess's personnel dispute and is not protected. *Greisen v. Hanken*, 925 F.3d 1097, 1109 (9th Cir. 2019); (ECF No. 66 at ¶252). As for causation, the SAC applies only conclusory labels of substantial motivating factor for publicly announcing the existing investigation and administrative leave, not hiring her for permanent ROV, substantiating investigation findings, and terminating her. *See* (ECF No. 66 at ¶262). Causation for the hiring decision, in-

vestigation findings, and termination is further implausible given the gravity of Burgess's admitted omissions in carrying out the ROV duties, which centered the investigation as set forth in the prior causation sections. The SAC fails to allege a plausible claim and dismissal with prejudice is appropriate.

**2. Due Process Liberty Interest Name-Clearing Claim.**

The Opposition confirms that there were no public accusations of dishonesty or moral turpitude to give rise to a name-clearing due process claim. *See* (ECF No. 76 at pp. 30–31). While the County publicly disclosed an investigation, it did not publicize the findings of that investigation. *Id.* In communicating with vendors on the contract, the County made no accusation that Burgess fraudulently signed them as opposed to acting with a pure heart but empty head. *Id.* The Opposition improperly attempts to use internal investigation findings to supply the necessary public stigmatizing content, which is insufficient. *See id.* The County's public statements that Burgess was under an investigation, and private statement directly to vendors regarding contract authority, do not implicate a liberty interest. *See* (ECF No. 70 at p. 30). Dismissal with prejudice is warranted as amendment is futile.

**H. The IIED Claim Should be Dismissed with Prejudice.**

The Opposition does not bridge the gap between allegedly wrongful conduct and conduct "outside all possible bounds of decency" and "utterly intolerable in a civilized community." The SAC alleges personnel actions, a workplace investigation, a reset of County property, communication restrictions, vendor communications, and generalized disclosures concerning Burgess's health and leave. *See* (ECF No. 76 at p. 26 ln. 9). Even accepting her characterization of those acts as improper, they do not plausibly approach Nevada's exceptionally high standard for outrageousness. Her allegation of PTSD has no bearing on outrageous conduct, which is a separate requirement. There was no extreme and outrageous conduct, and thus the IIED claim should be dismissed with prejudice.

**I. The Defamation, False Light, and Public Disclosure Claims Fail.**

The Opposition cannot avoid dismissal by converting context into falsity. The County

never said Burgess took leave at her own accord, but instead that she took leave on Manager Brown recommendation after she reported stress-related health issues. (ECF No. 6 at ¶48). The SAC admits that an investigation was underway when the County later declared so publicly. *Id.* at ¶124. The interim ROV appointment did not expressly grant contracting authority. (ECF No. 70-5). Moreover, NRS 245.070 expressly bars county officers from contracting for expenditure of County funds absent Board authorization, and the SAC identifies no such explicit authorization. The vendor statement therefore cannot support defamation or false light simply because Burgess alleges it implied incompetence.

The private-facts claim rests on vague generalized reference of medical leave and an investigation, which falls far short of stating a claim. The County disclosed no diagnosis, treatment, or clearance, but only generalized medical leave. Burgess first spoke of her leave to the A.P., and concedes public interest in the County's chief election official absence shortly before the election. Claims 9, 10, and 14 should be dismissed with prejudice.

### J. THE FRAUDULENT MISREPRESENTATION CLAIM SHOULD BE DISMISSED.

The Opposition does not cure either defect in Claim 11. The alleged promise that the Deputy position would remain available concerns future performance, lacks plausible facts showing a present intent not to perform when the promise was made. Subsequent refusal alone is insufficient, particularly where the SAC alleges the position actually remained vacant throughout her tenure as interim ROV. The September 2023 "due process" theory separately fails Rule 9(b) because the SAC identifies no speaker, and Plaintiff's request for leave to supply one confirms the present pleading is deficient.

## III. CONCLUSION

The Court should dismiss the SAC with prejudice. Amendment is futile.

Dated this 6th day of October 2026.

By <u>/s/ Lindsay L. Liddell</u>
LINDSAY L. LIDDELL
Deputy District Attorney
ATTORNEY FOR WASHOE COUNTY

**CERTIFICATE OF SERVICE**

Pursuant to FRCP 5(b), I certify that I am an employee of the Office of the District Attorney of Washoe County, over the age of 21 years and not a party to nor interested in the within action. I certify that on this date, the foregoing was electronically filed with the United States District Court. Electronic service of the foregoing document shall be made in accordance with the Master Service List as follows:

HAWAH SAFA AHMAD

Dated this 6th day of October, 2026.

By /s/ S. Haldeman
S. Haldeman

EXHIBIT INDEX

| | | |
|---|---|---|
| EXHIBIT 1 | Contract Emails WC02579 to WC02597 | 19 pages |