LINDSAY L. LIDDELL
Deputy District Attorney
Nevada State Bar Number 14079
One South Sierra Street
Reno, NV 89501
lliddell@da.washoecounty.gov
(775) 337-5700
ATTORNEY FOR WASHOE COUNTY

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

* * *

CARI-ANN P. BURGESS,

Plaintiff,

vs.

WASHOE COUNTY,

Defendant.
_______________________________________/

Case No. 3:25-cv-00065-NJK

**MOTION FOR SANCTIONS**

(ECF No. 66)

Defendant Washoe County ("County") hereby moves for sanctions pursuant to FRCP 11 and 28 U.S.C. § 1927 in the form of striking the violative allegations from the Second Amended Complaint (ECF No. 66), a monetary sanction and attorney fees and costs. This Motion is based on the following Memorandum of Points and Authorities, FRCP 11, 28 U.S.C. § 1927, the Court's inherent authority, attached exhibits, and all pleadings and papers on file.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

The County reluctantly brings the instant Motion to address the most egregious allegations in the SAC filed without evidentiary support or an objectively reasonable inquiry. The County began to address these issues with Cari Ann Burgess's ("Burgess") legal counsel in August 2026 shortly after the SAC's filing. The County sought to resolve this amicably and outside of court, making repeated requests for a stipulation to strike throughout the six weeks prior to even serving the instant Motion. To date, Burgess remains unwilling to meaningfully repair the Rule 11 violations presented herein. Thus,

the County now preserves the issues in this Motion and asks this Court to strike the offending allegations, sanction Burgess and her counsel, and issue a monetary sanction.

The first issue is a false allegation that the County made June 2026 media statements regarding Burgess's character, which genuinely did not happen. When provided with evidence to the contrary, Burgess refused to withdraw the allegations. Burgess's legal counsel, Hawah Ahmad ("Ms. Ahmad") identified a "source," who instead provided defense counsel with evidence refuting the SAC allegations. Second, Burgess falsely alleged she did not receive a summary of the County's investigation prior to her firing, which was indeed emailed to both Burgess and Ms. Ahmad on February 6, 2025, prior to the February 12, 2025 firing. The SAC also includes false allegations that the County violated its policy regarding leave without pay, when Burgess was on *paid* leave. Lastly, the SAC falsely alleges Burgess was required to exhaust her leave balances, when in reality no vacation or compensatory leave was used and instead was paid out to Burgess in her final paycheck. Despite being presented with these issues and evidence showing that they are not factual, Burgess continues to pursue claims based on these allegations.

As Judge Silva put it, "Sometimes in litigation, you've got to know when to hold 'em, know when to fold 'em, know when to walk away, and know when to run." *Lall v. Corner Inv. Co.*, 2:20-CV-01287-CDS-NJK, 2023 WL 6197334, at *1 (D. Nev. Sept. 21, 2023), *aff'd*, 23-15489, 2025 WL 1219010 (9th Cir. Apr. 28, 2025). Here, Burgess should have held back these false allegations when filing the SAC. Then, when the County requested to voluntarily strike them, Burgess should have simply walked away. When presented with substantial evidence, both in informal emails and when later served with the instant Motion, she should have run from the allegations. Burgess and Ms. Ahmad's failure to do so is its own Rule 11 violation, and an unreasonable multiplication of proceedings under 28 U.S.C. § 1927.

Respectfully, the Court should find that Burgess and her counsel violated Rule 11 by including false allegations in the SAC, and alleging claims based on those false

allegations. These allegations were filed without a reasonable inquiry, and some were filed while both Burgess and her legal counsel possessed evidence demonstrating their falsity. The Court should further find that Burgess and her legal counsel violated Rule 11 in continuing to advocate for these allegations even after credible evidence was brought to their attention showing that the allegations are false. In doing so, the Court should further find that Ms. Ahmad unreasonably multiplied proceedings pursuant to 28 U.S.C. § 1927. The Court should sanction Burgess and her counsel by striking the false allegations from the SAC, awarding the County its reasonable attorney fees incurred in addressing these issues, and imposing any other such fine or sanction that the Court deems appropriate.

**II. SERVICE AND NOTICE OF THE MOTION.**

A Rule 11 Motion should be served promptly after the offending filing. *Westerkamp v. Mueller*, CV-21-02088-PHX-DWL, 2023 WL 3792739, at *3 (D. Ariz. June 2, 2023); *see also Islamic Shura Council of S. California v. F.B.I.*, 757 F.3d 870, 873 (9th Cir. 2014) ("Motions for Rule 11 attorney's fees cannot be served after the district court has decided the merits of the underlying dispute giving rise to the questionable filing. This is because once the court has decided the underlying dispute, the motion for fees cannot serve Rule 11's purpose of judicial economy.").

The instant Motion was served to Burgess on October 9, 2026, with a courtesy email copy that same day, which is at least twenty-one days prior to its filing in compliance with Rule 11's safe harbor provision. FRCP 11 (c)(2). Ex. 1 at ¶2. It was also served as soon as practicable following the discovery of the issues, and prior to the Court deciding the merits of the underlying SAC. Additionally, prior to serving the instant Motion undersigned counsel also engaged in extensive email correspondence with Burgess's counsel, Ms. Ahmad, in attempts to informally resolve the issues identified herein. *See* Ex. 2 at ¶¶2–4; Ex. 3; Ex. 4; Ex. 5. These attempts were unsuccessful.

//

//

## III. LEGAL ANALYSIS

### A. The SAC Contains Multiple Objectively False Allegations that form the basis of several claims, in Violation of Rule 11.

When filing a Complaint, the party and attorney certify that to the best of their knowledge, information, and belief, formed after reasonable inquiry:

> (1) it is **not being presented for any improper purpose**, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
>
> (3) the **factual contentions have evidentiary support** or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and
>
> (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a belief or lack of information.

FRCP 11(b) (emphases added).

"Rule 11 is aimed at curbing abuses of the judicial system." *Bus. Guides, Inc. v. Chromatic Communs. Enters.,* 498 U.S. 533, 542 (1991) (quotation and citation omitted). "Rule 11 is intended to deter baseless filings in district court and imposes a duty of reasonable inquiry so that anything filed with the district court is well grounded in fact, legally tenable, and not interposed for any improper purpose." *Walker v. City of N. Las Vegas*, 394 F. Supp. 3d 1251, 1260 (D. Nev. 2019), *appeal dismissed*, 19-16305, 2020 WL 3620207 (9th Cir. Jan. 21, 2020) (quot. omitted). "Rule 11 is to be applied vigorously to 'curb widely acknowledged abuse from the filing of frivolous pleadings…'" *In Re Grantham Bros.*, 922 F.2d 1438, 1441 (9th Cir. 1991) (citation omitted). "An attorney's signature on a complaint is tantamount to a warranty that the complaint is well grounded in fact and existing law (or proposes a good faith extension of existing law) and that it is not filed for an improper purpose." *Christian v. Mattel, Inc.*, 286 F.3d 1118, 1127 (9th Cir. 2002).

"Rule 11 imposes an objective standard of reasonable inquiry on represented parties who sign papers or pleadings." *Bus. Guides, Inc.*, 498 U.S. at 554. "When a complaint is the main focus of a Rule 11 motion, 'a district court must conduct a two-prong inquiry to determine (1) whether the complaint is legally or factually 'baseless' from an objective perspective, and (2) if the attorney has conducted 'a reasonable and competent inquiry' before signing and filing it." *Meza-Perez v. Sbarro LLC*, 2:19-CV-00373-APG-NJK, 2020 WL 5848091, at *2 (D. Nev. Sept. 30, 2020) (quoting *Christian*, 286 F.3d at 1127).

An attorney may not delegate this duty to another person. *See Sec. Farms v. Int'l Bhd. of Teamsters*, 124 F.3d 999, 1016–17, n.23 (9th Cir. 1997) (affirming Rule 11 sanctions for failure to "conduct a reasonable inquiry" where counsel accepted statements by its investigator and submitted them to the court, despite receiving prior notice of serious credibility and authenticity issues). Attorneys likewise may not blindly accept the word of her client and must conduct their own independent investigation. *ThermoLife Int'l, LLC v. Myogenix Corp.*, 13CV651 JLS (MDD), 2017 WL 1235766, at *2 (S.D. Cal. Apr. 4, 2017); *In re Kunstler*, 914 F.2d 505, 514 (4th Cir. 1990) ("Blind reliance on the client is seldom a sufficient inquiry.") (cit. omitted). The Ninth Circuit upheld a district court's finding that attorneys did not conduct a reasonable inquiry where "the FAC contained misleading and false statements" regarding a voting system, facts about the Arizona system and were "widely available." *Lake v. Gates*, 130 F.4th 1064, 1069–70 (9th Cir. 2025).

"[A]lleging facts sufficient under Rule 8 does not shield the pleading from Rule 11 scrutiny when the allegations are objectively frivolous." *Estrada v. FTS USA, LLC,* 810 Fed. Appx. 743, 744–45 (11th Cir. 2020). "[I]t is no defense to a Rule 11 motion that Plaintiff's TAC plausibly alleged claims. Instead, what matters is whether the factual contentions in the TAC had evidentiary support." *Cash v. Credit Control, LLC*, 2:24-CV-08447-AH-(EX), 2025 WL 2946972, at *4 (C.D. Cal. Oct. 16, 2025). "[T]he mere existence of one non-frivolous claim is not dispositive." *Townsend v. Holman Consulting Corp.*, 929 F.2d 1358, 1364 (9th Cir. 1990).

A plaintiff's use of the phrase "on information and belief" does not relieve them from the obligation to "conduct an appropriate investigation into the facts that is reasonable under the circumstances." 1993 Comments to Fed. R. Civ. P. 11, Subdivisions (b) and (c); *see also McGuire v. Recontrust Co., N.A.*, 2:11-CV-2787 KJM-CKD, 2013 WL 3863903, at *6 (E.D. Cal. July 24, 2013); *In re Connetics Corp. Sec. Litig.*, 542 F. Supp. 2d 996, 1005–06 (N.D. Cal. 2008). The Ninth Circuit found no abuse of discretion in imposing a Rule 11 attorney fee award where the allegations were made "on information and belief" and "carefully crafted," but were nonetheless "demonstrably false allegations." *Abbas v. Vertical Entm't, LLC*, 854 Fed. Appx. 816, 818 (9th Cir. 2021).

An attorney violated Rule 11 where he ignored sworn affidavits from defendants stating certain allegations were false, plaintiff did not offer evidence to rebut the affidavits, there was no indication that the attorney investigated the veracity of the affidavits, and plaintiffs refused to withdraw the allegations. *Martinez v. City of W. Sacramento*, 216-CV-02566-TLN-JDP, 2021 WL 2227830, at *8–9 (E.D. Cal. June 2, 2021). "Based on the evidence and on the face of the pleadings, it is clear that Plaintiffs, at best, ignored the substantial amount of evidence in their possession." *Id.* at *15. Plaintiff's counsel thus failed to perform his duty under Rule 11 to validate truth and conduct an inquiry. *Id.*

Here, Burgess and her counsel violated Rule 11 with respect to several allegations that form the basis of SAC claims, and in failing to correct them after receiving evidence demonstrating the allegations' falsity. As set forth below, these false allegations include: (1) June 2026 County media statements regarding Burgess's character, (2) that Burgess did not receive a summary of investigation findings prior to her termination, (3) that the County failed to follow policy regarding leave without pay, and (4) that Burgess was required to exhaust her sick, vacation, and compensatory leave balances while on leave. The Court should find that Burgess and her counsel violated Rule 11 and sanction them by striking the offending allegations from the SAC, awarding the County its attorney fees in addressing these issues, and impose any other sanction the Court deems appropriate.

**1. Allegations of June 2026 Media Statements Regarding Burgess's Character.**

The SAC, filed on August 17, 2026, alleges that, "In or about June 2026, County officials told the press that Plaintiff had made threatening comments to other employees and was unfit for the job of overseeing elections." (ECF No. 66 at ¶107).[1] This is demonstrably false. *See* Ex. 6, Ex. 7, Ex. 8.

The SAC repeats the allegation to support several claims: the Disability Discrimination claim, as a partial basis for her Intentional Infliction of Emotional Distress ("IIED") and Defamation claims, and to support her Section 1983 Due Process claim. (ECF No. 66 at ¶¶146, 216, 228, 270). In alleging pretext for Disability Discrimination, Burgess alleges that "The County's asserted reasons for its actions have shifted over time. Neither…[the 2024 statements nor investigation documents]…*identified any allegation that Plaintiff had threatened any County employee. The County first advanced that allegation publicly in or about June 2026…*" *Id.* at ¶146 (emph. added). In the IIED claim, one of the alleged extreme and outrageous conduct alleged is the County's "…statements to the press in or about June 2026 that Plaintiff had made threatening comments to other employees and was unfit to oversee elections." *Id.* at ¶216. In the Defamation and Defamation Per Se claims, Burgess alleges that "The County further made the following false and defamatory statements of fact concerning Plaintiff: …(e) the statements to the press in or about June 2026 that Plaintiff had made threatening comments to other employees and was unfit to oversee elections…" *Id.* at ¶228. In her Section 1983 Due Process claim, the SAC alleges:

> The County's statements to the press in or about June 2026, including statements that Plaintiff made threatening comments

---

[1] The County did not issue any media statements with this content. However, this content is publicly available through the documents filed in this case. The First Amendment Complaint alleged that undersigned counsel informed Burgess's counsel that "there were many validated concerns regarding Ms. Burgess's inability to carry out her Interim-ROV election duties in accordance with state and federal law." (ECF No. 10 at ¶164). The County's original Motion to Dismiss also outlined the reasons Burgess was unqualified to oversee election administrations, and her subordinates' reports that Burgess made threatening (in her opinion, joking) comments to staff such as, "I'm going to punch you in the throat." (ECF No. 15 at pp. 1, 2, 10–13); (ECF No. 15-1 at p. 7, 14).

> to other employees and was unfit to oversee elections, further publicized and aggravated the stigma previously created by the County in connection with Plaintiff's termination. Plaintiff does not rely on the June 2026 statements to independently satisfy the requirement that the stigmatizing charge be made in connection with her termination. Rather, Plaintiff alleges the statements as evidence that the stigmatizing allegations made in connection with her termination remain publicly asserted by the County, have never been retracted, and continue to impair Plaintiff's liberty interest and professional standing, thereby demonstrating the continuing need for a name clearing hearing.

*Id.* at ¶270.

Simply put, the County made no such statements. Ex. 6 ¶2; Ex. 7; Ex. 8. The only statements from the County to press in June 2026 were the following: that the County was awaiting a decision on the dismissal motion, the case was in federal court, that the Court issued orders granting the dismissal motion and denying the disqualification motion with copies of those orders, and that, "In the event Ms. Burgess proceeds with an amended complaint, the County will continue to vigorously defend the claims." Ex. 7 at p. 5; Ex. 6.

On August 26, 2026, undersigned counsel contacted Burgess's legal counsel regarding the allegation, requesting clarification. Ex. 3 at pp. 12–13. Burgess's legal counsel stated that her "notes indicate it came from Bethany Drysdale to local media," and when asked for a link to the alleged statement/article, she stated "Joe Hart." *Id.* at pp. 10–11. Joe Hart is a local journalist employed at KRNV News 4. Ex. 6 at ¶3. On August 27, 2027, undersigned counsel provided Burgess's legal counsel with a copy of the Drysdale-Joe Hart email (Ex. 3 at p. 9), informed her that no statement as alleged occurred, and requested that Burgess stipulate to strike those allegations pursuant to Rule 11. Ex. 3 at p. 9. Burgess's legal counsel then claimed that she was "informed that there were multiple phone conversations" prior to the Joe Hart email undersigned counsel provided to her. *Id.* On August 28, 2026, undersigned counsel informed Burgess's legal counsel that Ms. Drysdale confirmed she did not have phone calls with Joe Hart, and renewed the request to strike the allegations. *Id.* at p. 8. In her August 31, 2026 response, Burgess's legal counsel stated, "our source is Joe Hart." *Id.* at pp. 6–7.

On September 10, 2026, undersigned counsel emailed Joe Hart requesting clarification regarding the source of Mr. Hart's June 2026 article regarding the instant case, and specifically whether he received any statement that provided information for the article. Ex. 8 at pp. 3–4. On September 11, 2026, Joe Hart provided clarification, stating "I believe that information came from the court documents. I reviewed a Facebook post I had written and it does say the information was from court records." *Id.* at p. 3. It is unclear why Ms. Ahmad, Burgess's legal counsel, stated that Mr. Hart was their source for the SAC allegations of specific 2026 County statements.

Meanwhile, on September 10, 2026, Burgess's legal counsel submitted to the County pursuant to the Nevada Public Records Act, seeking copies of all correspondence to or from Ms. Drysdale and Joe Hart or any comparable news outlet from May 2026 to June 2026. Ex. 9; Ex. 6 at ¶4. These records could have been requested prior to filing the SAC. *See* NRS 239.0107. Nevertheless, on September 16, 2026, the County provided Ms. Ahmad with all responsive emails, which included the Drysdale-Hart email thread that undersigned counsel previously provided to Ms. Ahmad. Ex. 9 at p. 3; Ex. 6 at ¶4. On September 18, 2026, the County provided Ms. Ahmad additional responsive records that were unrelated to Burgess and then closed the public records request. *Id.* The fact that Burgess and her counsel waited until after filing the allegations to submit the relevant public records request shows that it was filed without a reasonable inquiry.

On September 24, 2026, the County provided Ms. Ahmad with Ms. Drysdale's sworn declaration attached to this Motion and copies of Ms. Drysdale's correspondence with Mr. Hart. Ex. 5 at p. 2. The County inquired as to whether Burgess was willing to voluntarily strike the allegations, and expressed a desire to avoid "formal Rule 11 motion practice unless absolutely necessary." *Id.* Yet, on September 29, 2026, Burgess filed her Opposition to the Motion to Dismiss arguing that the alleged June 2026 media statements are factual disputes preventing dismissal. *See* (ECF No. 76 at p. 32, ln. 15).

//

These circumstances give rise to at least three Rule 11 violations: (1) failure to conduct a reasonable inquiry and filing allegations without evidentiary support; (2) misrepresenting evidence that there was evidentiary support for the allegations through Mr. Hart as a "source;" and (3) refusing to withdraw the allegations and continuing to pursue claims based thereon.

First, it is clear that Burgess and her counsel did not conduct a reasonable inquiry prior to filing this allegation. The allegations are objectively baseless, and a reasonable inquiry would have revealed the problem before they were affirmatively pleaded. *See* Ex. 6; Ex. 7; Ex. 8; Ex. 9. *See Christian*, 286 F.3d at 1127. Burgess's counsel could have tested the allegation and the assertion could have been tested by contacting that reporter she claimed is her source, or by submitting a public records request *prior* to making such an assertion. *See* Ex. 8; Ex. 9. Like in *Lake*, if evidentiary support existed, it would have been easily available. *See* 130 F.4th at 1069–70 (affirming Rule 11 sanctions). Even if the allegations were alleged "on information and belief," which they were not, this still would have fallen short of Rule 11 because they are demonstrably false. *Abbas*, 854 Fed. Appx. at 818.

Next, Burgess's legal counsel and/or Burgess misrepresented that there was a "source" providing evidentiary support for the allegations when there was none. Ex. 3 at pp. 6–7. Rule 11 imposes an implied duty of candor, "which attorneys violate whenever they misrepresent the evidence supporting their claims." *King v. Whitmer*, 71 F.4th 511, 521 (6th Cir. 2023) ("Thus, a court may sanction attorneys under Rule 11(b)(3) for factual assertions they know—or after reasonable investigation should have known—are false or wholly unsupported."). In stating, "our source is Joe Hart" and claiming she was aware of "phone calls," Burgess's counsel implied to have specific evidence to support the allegations that simply does not exist, and which she has not shared. Ex. 3 at pp. 6–7; Ex. 6 at ¶3; Ex. 8. This needlessly caused the County's counsel and staff to explore whether there was anything remotely supporting the allegations that they were unaware of. *See id.* That exploration only confirmed that the June 2026 media allegations are fictitious. *Id.*

Third, Burgess's continued reliance on the allegations after both Ms. Drysdale's sworn declaration, email records, and Mr. Hart's statement disproved their factual premise separately violates Rule 11's requirement that factual contentions have evidentiary support. *See* (ECF No. 76 at p. 32, ln. 15); *Martinez*, 2021 WL 2227830, at *8–9. Even if there was any pre-filing investigation, counsel cannot "just cling tenaciously" to it "and bury [her] head in the sand." *Childs v. State Farm Mut. Auto. Ins. Co.*, 29 F.3d 1018, 1025–26 (5th Cir. 1994) (affirming sanctions against attorney who continued to pursue claim despite "impressive evidence" that it was baseless); *Nguyen v. Simpson Strong-Tie Co., Inc.*, 19-CV-07901-TSH, 2020 WL 5232564, at *5 (N.D. Cal. Sept. 2, 2020), *aff'd sub nom.*, 24-7349, 2026 WL 910204 (9th Cir. Mar. 31, 2026) ("Plaintiffs' refusal to withdraw or meaningfully amend these allegations, which were core to its FAC, was a violation of Rule 11."). Here, the County repeatedly invited Burgess and her counsel to withdraw the allegations, ultimately providing Burgess's counsel with Ms. Drysdale's sworn declaration and copies of all correspondence between Ms. Drysdale and Mr. Hart during the relevant timeframe in attempts to avoid this motion. Ex. 2 at ¶¶2, 4; Ex. 3; Ex. 5; Ex. 6; Ex. 7. Burgess and her counsel's refusal to withdraw the allegations and continued pursuit of claims based on the allegations is its own Rule 11 violation.

The Court should find that Burgess and her counsel violated Rule 11, and issue sanctions. These allegations should be stricken, and a monetary sanction should be imposed. Absent filing the instant Motion, the County would be forced to expend even more resources defending against these allegations that have no cognizable basis in fact.

**2. The SAC Falsely Alleges that Burgess Did Not Receive a Summary of Investigation Findings Prior to her Firing.**

The SAC alleges that County Policy on Complaints Against Department Heads requires that the subject of the complaint receive a summary of any investigation findings and notice of any proposed action. (ECF No. 66 at ¶123). Burgess further alleges that County failed to provide her with a "summary of findings, actions, or recommendations

before terminating her…" *Id.* [2] In alleging pretext for adverse actions, the SAC appears to acknowledge substantiated findings on "February 5, 2025," yet still alleges that Burgess was fired without the County providing her the investigation finding summary. *Id.* at ¶132. The SAC further alleges that, "Because the County terminated Plaintiff before disclosing the findings, Plaintiff was never able to exercise the protest right the Department Head Complaint Policy affords." *Id.* at ¶133.

The SAC uses this allegation to support the premise that the County failed to follow its own policy, thus implying pretext for adverse actions. (ECF No. 66 at ¶137 ("…the investigation of her proceeded…without disclosure of its findings), ¶144 ("…the County departed from its own written complaint and investigation policies at every stage, and each departure operated to Plaintiff's disadvantage."), ¶147 ("…departures from its own written policies at every stage together permit the inference that the reasons that County has given are pretext for discrimination…;" *see also id.* at ¶148. Burgess also uses the false allegation to support her allegation of "retaliatory motive" in her ADA Retaliation claim. *Id.* at ¶192. Lastly, the SAC uses this false allegation to support her IIED claim, alleging that the County "…followed none of the procedures its own written policies require…" *Id.* at ¶21.

These allegations are false. Ex. 10; Ex. 11 at ¶2. On February 6, 2025, a County HR Analyst emailed *both Burgess and her legal counsel*, explaining that a "close out letter…following the recent investigation" was attached. Ex. 10. The attached letter heading includes "RE: Summary of Findings and Conclusion of Investigation." *Id.* at p. 3. The letter explains that the investigator found evidence to substantiate various code of conduct violations, including "there were significant inaccuracies you provided both publicly and within the County and ROV office that constituted misrepresentations;" that her reported overtime "was excessive and there was no reasonable explanation…;" that

---

[2] This paragraph (¶119) and others (at ¶137) also include a false allegation that the County did not provide notice of the investigation, which the SAC itself contradicts in alleging that the County informed Burgess that the "origin of the investigation was Mr. Brown's own October 4, 2024 letter." *See* (ECF No. 66 at ¶119).

evidence showed unprofessional behavior that violated the Respect and Promoting a Positive Work Environment sections of the policy; and that Burgess "lacked competency to serve in [her] position… You demonstrated a lack of knowledge concerning the application of laws, regulations and procedures governing elections," and lack of knowledge for departmental budgeting." *Id.* at pp. 3–4. It also informed Burgess that the investigation was closed and with the status of any potential action, stating Human Resources "will work with management on appropriate ways to address the findings and conclusions made by the investigator." *Id.* at p. 4. This February 6, 2025 email was provided to both Burgess and her legal counsel while Burgess was still on paid administrative leave, about one week before Burgess was fired. *Id.* at p. 2.

On September 10, 2026, undersigned counsel informed Ms. Ahmad that, "In going through the SAC in more detail, [she] located several other objectively false allegations: that Burgess did not receive a summary of the investigation findings," and that Ms. Ahmad and Burgess both received that document in an email. Ex. 3 at p. 2. Ms. Ahmad's September 15, 2026 response continued to claim that Burgess did not receive a summary before her termination. Ex. 4 at p. 3. In undersigned counsel's September 24, 2026 email to Ms. Ahmad, she provided Ms. Ahmad with a copy of the February 5, 2025 email which contains the investigation summary and was sent to both Burgess and Ms. Ahmad. Ex. 5. Burgess acknowledged as much in her Opposition to Motion to Dismiss, (ECF No. 76 at p. 24, fn. 11; ECF No. 77 at ¶3), and yet, she has not withdrawn the allegation.

Including these allegations in the SAC violated Rule 11. The February 5, 2025 email unequivocally demonstrates the allegation is false. Also, Burgess's legal counsel could not have conducted an objectively reasonable inquiry into this allegation because she had personal knowledge that it is false. A court imposed Rule 11 sanctions on an attorney where the attorney personally participated in the underlying event and thus had actual knowledge that the factual contentions regarding that event were false. *Regents of Univ. of California on behalf of UC Davis Health Sys. v. Stidham Trucking Inc.*, 16-CV-02835-MCE-

CKD, 2017 WL 3840259, at *9 (E.D. Cal. Sept. 1, 2017). The same is appropriate here.

**3. Allegations Implying Leave *Without Pay* Are False.**

As set forth above, the SAC alleges the County violated multiple provisions of its own policies to support the SAC's claims of ADA discrimination, ADA retaliation, and IIED. In addition to false allegations that Burgess did not receive notice of the investigation or a written summary of its findings, the SAC also falsely alleges that the County violated policy regarding leave without pay. (ECF No. 66 at ¶¶120, 121). The SAC alleges that leave without pay may only be imposed under certain circumstances, such as gross misconduct, safety risks, interfering with workplace functioning, or pending criminal charges. *Id.* at ¶120. The SAC alleges that those circumstances did not exist, the County made no finding regarding those circumstances for Burgess, and thus the County violated its own policy concerning leave without pay. *Id.*

The SAC also alleges, "*The policy imposes a further requirement the County did not follow,* specifically that placing a department head appointed by the Board on *leave without pay* may occur only upon the recommendation of the County Manager and after consultation with the Chair of the appointing authority. The County has never identified any such consultation." (ECF No. 66 at ¶121) (emph. added).

However, Burgess was never placed on leave *without pay*. Ex. 12 at ¶6; Ex. 13 at pp. 4–8, 10–11, 14, 16, 19–27, 29, 31. Burgess was paid her full salary, plus the additional "special pay" for acting as interim ROV, from the time she went on leave in September 2024 until she was fired on February 12, 2025. *Id.* Burgess is certainly aware of this, as she received those funds. *See* Ex. 12 at ¶5; Ex. 13 at pp. 4–8, 10–11, 14, 16, 19–27, 29. She also periodically requested pay stubs, which were provided to her and showed that she was paid in due course. Ex. 13 at p. 31. In at least one email providing Burgess with paystubs, her legal counsel was directly copied. *Id.* at pp. 9–11. The SAC's allegations that the County failed to follow policy regarding leave without pay are objectively false. (ECF No. 66 at ¶¶120, 121). Ex. 12 at ¶6; Ex. 13 at pp. 4–8, 10–11, 14, 16, 19–27, 29, 31.

Additionally, in undersigned counsel's September 10, 2026 email to Burgess's legal counsel identified this as one of the objectively false allegations in the SAC: "that the County did not follow policy with respect to involving the BCC chair (this only applies to unpaid leave, and those SAC allegations appear to imply Burgess was on unpaid leave when she was not)…" Ex. 3 at p. 2. In response, Burgess's counsel stated, "The SAC does not allege that Plaintiff was on unpaid leave. Paragraphs 122 and 123 allege that consultation with the Board Chair was required regardless of Plaintiff's pay status." *Id.* at p. 2. However, this does not address SAC paragraphs 120 and 121, which allege the County violated policy with respect to unpaid leave. (ECF No. 66 at ¶¶120, 121). Ms. Ahmad's September 15, 2026 response essentially claims that the allegations do not mean what they say, and instead that the allegations require Commission consultation regardless of pay status and not only unpaid leave.

The Court should find the Burgess and her legal counsel violated Rule 11 with respect to alleging the County failed to follow its policy concerning unpaid leave for Department Heads, because the allegation is objectively false.

**4. False Allegations that Burgess Was Required to Exhaust Leave Balances.**

The SAC alleges that Burgess was required to "exhaust her accrued paid leave" (ECF No. 66 at ¶22); the County "placed her on leave that exhausted her accrued sick, vacation, and compensatory time" *Id.* at ¶69; *see also id.* at ¶¶84, 143, 196, 219, 286. She alleges this was an adverse act to support her ADA discrimination claim. *Id.* ¶143. In her damages prayer, she seeks compensation for the "accrued sick, vacation, and compensatory time the County required her to exhaust." *Id.* ¶286. However, Burgess was not required to *exhaust* any leave balance, and no vacation nor compensatory time balance was used during her leave. Ex. 12 at ¶¶3–4; Ex. 13 at pp. 4–8, 10–11, 14, 16, 19–27, 29, 31. Burgess's final paycheck included a large sum payout for her vacation and compensatory balances pursuant to County policy. Ex. 12 at ¶5; Ex. 13 at p. 31.

//

Burgess was aware of her leave balances and she received email copies of her pay statements showing the balances through her leave period and after she was fired. *See* Ex. 13. She also received a payout for her leave balances when she was fired. *Id.* at p. 31. Moreover, Burgess's counsel in this case was copied on at least one of those emails in January 2025, which included Burgess's pay statements from December 2025 showing her leave balances as of those dates. *Id.* at pp. 9–11.

On September 24, 2026, the County provided Burgess's counsel with copies of the emails that were sent in 2024 to February 2025 to Burgess with pay statements, identifying the above allegations as false, and attempting resolution prior to serving this Motion. Ex. 5. It also explained that sick leave was not paid out because it is uniformly ineligible for payout unless employed for at least ten years according to the County's Employee Handbook, which Burgess attached as an exhibit to a prior filing in this case. *Id.*; *see also* (ECF No. 45-7, pp. 47–48). Burgess's Opposition to the Motion to Dismiss continued to argue that Burgess's leave "consumed her accrued leave." (ECF No. 76 at p. 24 ln. 2).

Burgess and her counsel violated Rule 11 by including these allegations in the SAC and by continued presentation of those allegations to the Court. Burgess was provided with all her pay statements from her leave period prior to filing the SAC and thus knew or should have known the "exhaust leave balances" allegation was false. Burgess's legal counsel was directly provided with at least some, showing she should have known the allegations were false and she otherwise did not conduct a reasonable inquiry.

The Court should find that Burgess and Ms. Ahmad violated Rule 11 with respect to alleging that Burgess was required to exhaust leave balances, basing claims on that false allegations, and continuing to present these allegations to the Court in the Opposition to Motion to Dismiss, ignoring evidence in their possession that the allegations are false.

//

//

//

**5. The Circumstances Suggest Improper Purpose in Filing the SAC.**

Rule 11 also addresses "the problem of misusing judicial procedures as a weapon for personal or economic harassment." *Aetna Life Ins. Co. v. Alla Medical Services, Inc.*, 855 F.2d 1470, 1475 (9th Cir. 1988) (quoting *Zaldiver v. City of Los Angeles*, 780 F.2d 823, 830 (9th Cir. 1986). A finding of "improper purpose" is determined upon a review of facts and law; an "improper purpose" can be deduced where there is no legal or factual basis for a claim. *Paciulan v. George*, 38 F.Supp.2d 1128, 1144 (N.D. Cal. 1999).

Here, multiple unsupported factual assertions were repeated across the 62-page SAC, used to enlarge the County's alleged wrongdoing, and maintained after the County produced contrary evidence. The combination of multiple demonstrably incorrect factual allegations, repetition of them across claims, facts being readily verifiable before filing, Ms. Ahmad's actual knowledge of at least some contrary evidence, and Burgess's continued refusal to correct the allegations after the supporting records were provided, all lead the County to deduce an improper purpose of personal and/or economic harassment.

**B. Sanctions are Warranted, Including Monetary Sanctions and Striking the Offending Allegations from the SAC.**

Sanctions under Rule 11 are governed by a standard of objective reasonableness. *See, e.g., Coon. v. CSO Borjorquez*, 967 F.2d 1418, 1421 (9th Cir. 1992). A party may not avoid Rule 11 sanctions "by operating under the guise of pure heart and empty head." *Zuniga v. United Can Co.*, 812 F.2d 443, 452 (9th Cir. 1987).

For example, monetary sanctions were justified where attorneys conducted no factual investigation, signed a complaint "asserting serious, yet factually impossible allegations," one of the attorneys was involved in the underlying NERC investigation to which the false allegations were related, and the attorneys failed to correct the false allegations following the Rule 11 safe harbor letter. *Meza-Perez*, 2020 WL 5848091, at *3. Those attorneys were required to pay attorney fees after filing a complaint "asserting serious, yet factually impossible, allegations." *Id.* at *2–3 ("Not only were the allegations

against [defendant] objectively false, but a reasonable inquiry would have revealed that.”). Sanctions are also appropriate for continuing to pursue violative conduct during the sanction proceedings. *Blixseth v. Yellowstone Mountain Club, LLC*, 854 F.3d 626, 630, n.4 (9th Cir. 2017) (noting also that a court may award attorneys' fees and costs “associated with sanctions proceedings” under Rule 11).

“[S]triking without prejudice does not entirely fulfill the deterrent purpose of Rule 11 sanctions, as a ‘do-over’ may provide little disincentive to the filing of dishonest pleadings.” *Hunt v. Sunny Delight Beverages Co.*, 818CV-00557JLSDFM, 2018 WL 6786265, at *5 (C.D. Cal. Dec. 18, 2018) (imposing sanctions including an award of attorney fees). Additionally, ample authority supports awarding a reasonable market rate for in-house government attorney fees. *See e.g. Napier v. Thirty or More Unidentified Fed. Agents*, 855 F.2d 1080, 1092–93 (3rd Cir. 1988) (Asst. U.S. Attorney’s fee should “be valued at a market rate”); *Ex.-Imp. Bank of the U.S. v. United California Disc. Corp.*, CV 09-2930 CASPLAX, 2011 WL 165312, at *2 (C. D. Cal Jan. 12, 2011) (awarding a reasonable market rate to government attorneys); *Hamilton v. Daley*, 777 F.2d 1207, 1213 (7th Cir. 1985) (calculating county attorneys’ fees with “reasonable billing rates in the relevant community”).

Under 28 U.S.C. § 1927, “[a]ny attorney or other person admitted to conduct cases in any court of the United States ... who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.” 28 U.S.C. § 1927. “The purpose of § 1927 may be to deter attorney misconduct, or to compensate the victims of an attorney's malfeasance, or to both compensate and deter.” *Haynes v. City & Cty. of San Francisco*, 688 F.3d 984, 987 (9th Cir. 2012).

In addition to the power set forth in Rule 11, Federal Courts have inherent power to impose sanctions “to regulate their docket, promote judicial efficiency, and deter frivolous filings.” *Business Guides, Inc. v. Chromatic Comm. Enters., Inc.*, 121 F.R.D. 402, 405 (N.D. Cal. 1988) (quot. and citations omitted) partially vacated on other grounds). “[A] court may

assess attorney's fees when a party has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'" *Chambers v. Nasco, Inc.*, 501 U.S. 32, 45–46 (1991) (citations omitted).

Here, the Court should issue monetary sanctions against Burgess and her counsel by awarding the County its reasonable attorney fees and requiring them to pay a fine to the Court's appropriate sanction fund. None of the allegations required discovery to verify. Burgess knew whether she was receiving pay and whether her accrued leave disappeared. She received her own payroll records, and her legal counsel directly received at least some of those. Further, Burgess's legal counsel did not need to ask her client whether the investigation summary was provided before termination because she was included on that email. Burgess and her legal counsel likewise could have submitted public records requests for any evidence to support those allegations before placing them in a court filing. *See* NRS 239.0107. Rule 11's reasonable-inquiry requirement has little meaning if facts within the client's knowledge and their counsel's own records may be pleaded to the contrary and left for the opposing party to disprove.

Monetary sanctions are warranted to deter further violations in this case. The County's notice and repeated informal efforts to obtain voluntary correction have not been sufficient to address the SAC's Rule 11 violations. The County therefore requests an award against Burgess and Ms. Ahmad jointly for its reasonable fees and expenses directly caused by the Rule 11 violations, including the expense reasonably incurred investigating and responding to the challenged allegations and pursuing the instant Motion and in an amount to be determined by the appropriate motion pursuant to Local Rule 54-11. The limited attorney fee award is necessary to deter repetition, because these violations occurred in the broader context of Burgess's relentless and rebarbative regime in this case.[3]

---

[3] *See* (ECF No. 49 at p. 4 lns. 4–9) (containing a fabricated statement of law that appears nowhere in the cited case, as explained in (ECF No. 57 at p. 4 lns 1–10)); *see also* (ECF No. 51 at p. 2 lns. 10–11, 17; p. 6 lns. 17–19; p. 8 lns. 18–21; p. 9 ln. 14) (containing objectively false assertions that defense counsel's colleague is her supervisor, as explained in (ECF No. 58 at p. 4 lns. 6–12)).

## IV. CONCLUSION

Rule 11 required a reasonable factual inquiry before these allegations were filed and required counsel to cease advocating them once their lack of evidentiary support became clear. Neither occurred. Instead, materially false allegations remain embedded throughout the SAC and form the basis of several claims despite Burgess and her legal counsel receiving notice, documentary proof, and repeated requests to voluntarily resolve them. The County therefore respectfully requests that the Court strike the false allegations and impose a monetary sanction against Burgess and her legal counsel with a fine and the County's reasonable fees and expenses directly caused by the Rule 11 violations. These sanctions are necessary to deter similar conduct in the course of this proceeding.

Dated this 3rd day of November, 2026.

By /s/ Lindsay L. Liddell
LINDSAY L. LIDDELL
Deputy District Attorney
ATTORNEY FOR WASHOE COUNTY

**CERTIFICATE OF SERVICE**

Pursuant to FRCP 5(b), I certify that I am an employee of the Office of the District Attorney of Washoe County, over the age of 21 years and not a party to nor interested in the within action. I certify that on this date, the foregoing was electronically filed with the United States District Court. Electronic service of the foregoing document shall be made in accordance with the Master Service List as follows:

HAWAH SAFA AHMAD

Dated this 3rd day of November, 2026.

By /s/ S. Haldeman
S. Haldeman

EXHIBIT INDEX

| | | |
|---|---|---|
| EXHIBIT 1 | Declaration of Bridget Perez | 1 page |
| EXHIBIT 2 | Declaration of Lindsay L. Liddell | 2 pages |
| EXHIBIT 3 | Emails between DDA Liddell and Hawah Ahmed | 12 pages |
| EXHIBIT 4 | Response to County Email | 2 pages |
| EXHIBIT 5 | Response to September 15, 2026 letter | 3 pages |
| EXHIBIT 6 | Declaration of Bethany Drysdale | 2 pages |
| EXHIBIT 7 | Emails Between Drysdale and Joe Hart | 4 pages |
| EXHIBIT 8 | Emails Between DDA Liddell and Joe Hart | 4 pages |
| EXHIBIT 9 | Copy of NPRA Request 26-2739 | 2 pages |
| EXHIBIT 10 | Email re: Close Out | 3 pages |
| EXHIBIT 11 | Declaration of Cole McBride | 1 page |
| EXHIBIT 12 | Declaration of Patricia Hurley | 3 pages |
| EXHIBIT 13 | Emails Between HR and Burgess | 30 pages |

EXHIBIT INDEX